# Exhibit D

BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       BBlakely@BlakelyLawGroup.com

Attorneys for Defendant
ESSENTIAL CONSULTANTS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**DEFENDANT ESSENTIAL CONSULTANT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:** **April 30, 2018**<br>**Time:** **10:00 a.m.**<br>**Location:** **350 West 1st Street**<br>**Courtroom 10C, 10th Floor**<br>**Los Angeles, CA 90012**<br><br>Action Filed:  March 6, 2018 |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................6

II.   FACTUAL BACKGROUND ..................................................................8

III.  CLIFFORD'S FIRST CAUSE OF ACTION FOR DECLARATORY
RELIEF SHOULD BE COMPELLED TO ARBITRATION ....................10

    a.   The Federal Arbitration Act Establishes A Liberal Policy Favoring
The Enforcement Of Arbitration Agreements .....................................11

    b.   Clifford Entered Into A Valid Arbitration Agreement ........................12

        1.   Clifford's Agreement To Arbitrate Is Enforceable
Regardless Of Whether DD Also Signed The Agreement .........13

        2.   Clifford Received Adequate Consideration Under The
Settlement Agreement .................................................................15

    c.   Clifford's Challenges To The Contract As A Whole Should Be
Decided By The Arbitrator, Not The Court.........................................16

    d.   The "Crux Of The Complaint" Is A Challenge To The Settlement
Agreement As A Whole, Not The Arbitration Provision ....................17

        1.   The Authorities Relied Upon By Clifford To Argue That
The Court Should Decide "Formation" Are Highly
Distinguishable ...........................................................................19

        2.   The Arbitration Provision Is Not Unconscionable ....................22

    e.   The Newly Added Second Cause Of Action Against Michael
Cohen Does Not Prevent Arbitration Of The First Cause Of Action...24

IV.  THE COURT SHOULD STAY THIS ACTION PENDING THE
OUTCOME OF THE ARBITRATION ..........................................................25

V.   CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abers v. Rounsavell*,
    189 Cal.App.4th 348 (2010)........................................................................15, 16

*Angell v. Rowlands*,
    85 Cal.App.3d 536 (1978).................................................................................13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...........................................................................................22

*Barham v. Barham*,
    33 Cal.2d 416 (1949).........................................................................................14

*Beab, Inc. v. First Western Bank & Tr. Co.*,
    204 Cal.App.2d 680 (1962)..............................................................................15

*Borgarding v. JP Morgan Chase Bank*,
    2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ...............................................24

*Brawley v. Crosby Research Found.*,
    73 Cal.App.2d 103 (1946)................................................................................16

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010)........................................................................8, 18

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440, 444 (2006) .......................................................................7, 17, 18

*Chalk v. T-Mobile USA, Inc.*,
    560 F.3d 1087 (9th Cir. 2009).........................................................................23

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009).........................................................................20

*Crestview Cemetery Ass'n v. Dieden*,
    54 Cal.2d 744 (1960).........................................................................................14

*Daily Transit Mix, LLC v. Daily Transit Mix Corp.*,
    2011 WL 5416188 (Cal. Ct. App. Nov. 9, 2011)...........................................16

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...................................................................................12, 24

*Doherty v. Barclays Bank Delaware*,
    No. 16-CV-01131-AJB-NLS, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017)...21

*Encore Prods., Inc. v. Promise Keepers*,
    53 F.Supp.2d 1101 (D. Colo. 1999) ..................................................................25

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733, 741 (9th Cir. 2014)...................................................................20

*Goldman, Sachs & Co. v. City of Reno*, *supra*,
    747 F.3d (9th Cir. 2014)..................................................................................13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ........................................................................................20

*Guadagno v. E*Trade Bank*,
    592 F.Supp.2d 1263 (C.D. Cal. 2008)......................................................12, 17

*Hilti, Inc. v. Oldach*,
    392 F.2d 368 (1st Cir. 1968) ...........................................................................25

*Kaneko v. Okuda*,
    195 Cal.App.2d 217 (1961)..............................................................................13

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) ..........................................................................................24

*Mentor Capital, Inc. v. Bhang Chocolate Co.*,
    No. 3:14-CV-3630 LB, 2014 WL 6485666 (N.D. Cal. Nov. 19, 2014) .........17

*Mohamed v. Uber Technologies, Inc.*,
    848 F.3d 1201 (9th Cir. 2016).................................................................22, 24

*Mortensen v. Bresnan Comm., LLC*,
    722 F.3d 1151 (9th Cir. 2013)........................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................11, 12

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006).........................................................................18

*Preston v. Ferrer*,
    552 U.S. 346 (2008) .................................................................................11, 17

MEMORANDUM OF POINTS AND AUTHORITIES

1   *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
2       388 U.S. 395 (1967) ..................................................................................17, 21

3   *Republic of Nicaragua v. Standard Fruit Co.*,
4       937 F.2d 469 (9th Cir. 1991)...........................................................................12

5   *San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of San Diego City Employees' Ret. Sys.*,
6       206 Cal.App.4th 594 (2012)............................................................................16

7   *Sanford v. MemberWorks, Inc.*,
8       483 F.3d 956 (9th Cir. 2007)...........................................................................19

9   *Steinberg & Lyman v. Takacs*,
10      774 F.Supp. 885 (S.D.N.Y.1991)....................................................................25

11  *Switch, LLC v. Ixmation, Inc.*,
12      No. 15-CV-01637-MEJ, 2015 WL 4463672 (N.D. Cal. July 21, 2015).........21

13  *Teledyne, Inc. v. Kone Corp.*,
        892 F.2d 1404 (9th Cir. 1989)..........................................................................21
14
15  *Tennant v. Wilde*,
        98 Cal.App. 437 (1929) ...................................................................................16
16
17  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
        925 F.2d 1136 (9th Cir. 1991)..........................................................................20

18  **<u>STATUTES</u>**

19  9 U.S.C. § 1................................................................................................................11

20  9 U.S.C. § 2................................................................................................................22

21  9 U.S.C. § 3................................................................................................................25

22  9 U.S.C. § 4................................................................................................................10

23

24

25

26

27

28

# I.   <u>INTRODUCTION</u>

Defendant and moving party Essential Consultants, LLC ("EC") and Plaintiff Stephanie Clifford aka "Stormy Daniels" aka "Peggy Peterson" aka "PP" (herein, "Clifford") are signatories to a written *Confidential Settlement Agreement and Mutual Release* dated October 28, 2016 (the "Settlement Agreement").  Declaration of Michael D. Cohen ("Cohen Decl."), Ex. A, Settlement Agreement.

This motion seeks to enforce the arbitration provision in the Settlement Agreement, which was negotiated at arms' length by the parties' respective counsel, and pursuant to which Clifford accepted $130,000 as consideration.  The strong policy favoring arbitration set forth by Congress in the Federal Arbitration Act ("FAA") dictates that this motion be granted, and that Clifford be compelled to arbitration, as she knowingly and voluntarily agreed to do.

Paragraph 5.2 of the Settlement Agreement contains an arbitration provision that requires Clifford to arbitrate any and all claims that may arise between Peggy Peterson ("PP") and David Dennison ("DD"), stating in pertinent part:

> <u>Dispute Resolution</u>.  In recognition of the mutual benefits to DD and PP of a voluntary system of alternative dispute resolution which involves binding confidential arbitration of all disputes which may arise between them, it is their intention and agreement that any and all claims or controversies arising between DD on the one hand, and PP on the other hand, shall be resolved by binding confidential Arbitration to the greatest extent permitted by law.

According to Clifford's allegations, Peggy Peterson ("PP") is a pseudonym for Clifford, and David Dennison ("DD") is a pseudonym for Defendant Donald J. Trump ("Mr. Trump").  Declaration of Brent H. Blakely ("Blakely Decl."), Ex. B, Complaint, ¶ 18 and Ex. C, First Amended Complaint ("FAC"), ¶ 19.

The first cause of action in the FAC is for Declaratory Relief against Mr.

MEMORANDUM OF POINTS AND AUTHORITIES

1  Trump (and EC). This claim undeniably falls within the arbitration provision: a
2  claim or controversy between PP and DD.

3      Clifford asserts in the FAC that the Settlement Agreement was never formed
4  because it was not signed by Mr. Trump, and thus the arbitration provision contained
5  therein is unenforceable. This argument is without merit.

6      The first paragraph of the Settlement Agreement defines the parties to the
7  agreement as EC, LLC "**and/or**" DAVID DENNISON (DD), "**on the one part**," and
8  PEGGY PETERSON (PP), "**on the other part**." Ex. A, p. 0 (emphasis added). This
9  provision demonstrates the parties' intent for the Settlement Agreement to be binding
10  once signed by EC and Clifford, and regardless of whether it was also signed by DD.

11      In conformance with this intent, and according to her own admissions, Clifford
12  and EC signed the Settlement Agreement, and Clifford accepted $130,000 in
13  consideration from EC, despite not receiving a signature from Mr. Trump. Ex. B, ¶¶
14  16, 22-23; Ex. C, ¶¶ 17, 23-24. Then, over the course of the next sixteen (16)
15  months, Clifford did not at any time: reject the Settlement Agreement; offer to return
16  or return the $130,000; or assert that the Settlement Agreement is unenforceable
17  because it was not signed by Mr. Trump, or for any other reason. Cohen Decl., ¶ 3.

18      In fact, Clifford did not assert any claim challenging the validity of the
19  Settlement Agreement until she filed this action on March 6, 2018. To this day,
20  Clifford has not returned the $130,000 she received from EC. Thus, there is no
21  question that a valid agreement to arbitrate Clifford's claims against DD (and EC)
22  was formed. *See infra* Section III.b.

23      On March 26, 2018, Clifford filed the FAC, which added several new
24  challenges purportedly directed to the enforceability of the arbitration provision
25  itself, as opposed to the enforceability of the Settlement Agreement as a whole.
26  These allegations are a sham and were added in a transparent attempt to circumvent
27  the holding in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006),
28  which requires that Clifford's challenges to the Settlement Agreement be decided by

-7-

1 | the arbitrator. Blakely Decl., ¶¶ 7-8.[1]

2 | Under the Ninth Circuit's "crux of the complaint" test, Clifford's challenges to
3 | the enforceability of the arbitration clause are effectively the same as her challenges
4 | to the Settlement Agreement as a whole. *See Bridge Fund Capital Corp. v.*
5 | *Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010). Thus, the Court
6 | need not decide those issues for purposes of the instant motion. However, to the
7 | extent the Court does consider Clifford's challenges to the arbitration provision, they
8 | should be rejected. For example, Clifford's argument that the arbitration provision is
9 | unconscionable fails for several reasons. *See infra*, Section III.d.3.

10 | Pursuant to well-established U.S. Supreme Court jurisprudence, the Court
11 | simply needs to determine that Clifford agreed to arbitrate any claim or controversy
12 | between her and DD arising under the Settlement Agreement. Clifford's admissions
13 | in her Complaint and FAC confirm that she agreed to do just that.

14 | Accordingly, EC respectfully requests that the Court issue an order compelling
15 | Clifford to arbitrate her dispute with DD (and EC).

16 | **II.  FACTUAL BACKGROUND**

17 | Clifford is an adult-film actress and exotic dancer. In October 2016, according
18 | to an exclusive news report, Clifford unsuccessfully attempted to sell a story about an
19 | alleged one-night-stand with Mr. Trump to tabloid magazines and related outlets for
20 | $200,000. Blakely Decl., Ex. D, 3/29/18 *Daily Mail* Article.

21 | Instead, on or about October 28, 2016, Clifford (who was represented by legal
22 | counsel) entered into the Settlement Agreement with EC. Ex. A, p. 14; Ex. B, ¶ 22;
23 | Ex. C, ¶ 23; Cohen Decl., ¶¶ 2-3. In the Settlement Agreement, Clifford agreed to

24 | ————————————

25 | [1] Clifford also added a second cause of action against a newly named
26 | defendant, Michael Cohen, for defamation. This claim should be dismissed pursuant
      | to California's anti-SLAPP statute. Blakely Decl., Ex. I. However, as set forth in
27 | Section III.e. below, arbitration between EC and Clifford should proceed, regardless
28 | of whether Clifford's claim against Mr. Cohen is also subject to arbitration.

1 accept $130,000 from EC in exchange for, among other things, her promise not to

2 disclose any Confidential Information (as defined in the Settlement Agreement),

3 including any of DD's "alleged sexual partners, alleged sexual actions or alleged

4 sexual conduct." Ex. A, pp. 4-5; Ex. B, ¶¶ 16, 22-23; Ex. C, ¶¶ 17, 23-24.  In the

5 Settlement Agreement, Clifford also promised to arbitrate any dispute that might later

6 arise between her and DD.  Ex. A, pp. 10.

7       EC paid Clifford the sum of $130,000, as required under the Settlement

8 Agreement.  Ex. B, ¶ 23; Ex. C, ¶ 24; Cohen Decl., ¶ 3.  For the next sixteen months,

9 Clifford did not: reject the Settlement Agreement; assert that the Settlement

10 Agreement was unenforceable because it was not signed by Mr. Trump; or make any

11 attempt to return the $130,000 that she was paid by EC.  Cohen Decl., ¶ 3.

12       During that time, Clifford performed all of her obligations under the

13 Settlement Agreement, and made no public statements disclosing Confidential

14 Information.  Cohen Decl., ¶ 4.  Prior to February 2018, Clifford's only complaint

15 relating to the Settlement Agreement was in October 2016, when she complained that

16 she was not receiving the $130,000 due to her under the Settlement Agreement

17 quickly enough.  *Id*.

18       In February 2018, Clifford threatened to breach the Settlement Agreement by

19 publicizing allegations that constitute Confidential Information.  On or about

20 February 22, 2018, EC filed an arbitration proceeding with ADR Services, Inc.

21 ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in

22 the Settlement Agreement.  Cohen Decl., ¶ 5.  Upon EC's emergency application for

23 a Temporary Restraining Order ("TRO"), the arbitrator (a retired California Superior

24 Court judge) issued an order prohibiting Clifford from violating the Settlement

25 Agreement by, among other things, disclosing any Confidential Information to the

26 media or in court filings (the "TRO").  *Id*. at ¶¶ 6-7, Ex. E, TRO.

27       Clifford has violated the Settlement Agreement and the TRO by, among other

28 things, filing the Complaint and FAC in this action, and also by disclosing

1  Confidential Information to the news media, including in a nationally televised
2  interview with Anderson Cooper on *60 Minutes*, which reportedly was watched by
3  twenty-two million viewers.  Clifford further breached the Settlement Agreement by
4  sending her attorney of record in this action, Michael Avenatti, to participate in
5  dozens of interviews on national television programs, wherein he has repeatedly
6  disclosed Confidential Information.[2]

7        Within days of filing this action, and the massive news coverage that it
8  generated, Clifford made appearances at various adult entertainment clubs, claiming
9  publicly that her pay has quadrupled from the publicity of this lawsuit.  Blakely
10  Decl., Ex. F, 3/11/18 CNN article and Ex. G, 3/9/18 *Rolling Stone* article.

11        On March 21, 2018, counsel for the parties participated in the Local Rule 7-3
12  conference of counsel.  Blakely Decl., ¶ 7.  During the conference, EC's counsel
13  specifically informed counsel for Clifford that, pursuant to *Buckeye Check Cashing,*
14  *Inc. v. Cardegna*, *supra*, Clifford's defenses to the enforcement of the Settlement
15  Agreement as a whole must be decided by the arbitrator, not the Court.  *Id.*  Five days
16  later, Clifford filed the FAC, which includes several new challenges to the arbitration
17  provision, and a second cause of action against Mr. Cohen.

18  **III.   CLIFFORD'S FIRST CAUSE OF ACTION FOR DECLARATORY**
19  **RELIEF SHOULD BE COMPELLED TO ARBITRATION**

20        Where the making of an agreement to arbitrate is not "in issue," as is the case
21  here, the District Court should order the parties to proceed with arbitration upon
22  petition of the aggrieved party.  9 U.S.C. § 4.  Section 4 states, in pertinent part:

23              A party aggrieved by the alleged failure, neglect, or refusal
24              of another to arbitrate under a written agreement for
25              arbitration may petition any United States district court

26  ───────────────

27        [2] Section 4.3.4 of the Settlement Agreement provides that any disclosure of
28  Confidential Information by Clifford's counsel is deemed to be a disclosure by her.

which, save for such agreement, would have jurisdiction under title 28…for an order directing that such arbitration proceed in the manner provided for in such agreement…. The court shall hear the parties, and **upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue**, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Id*. (emphasis added.)

Here, the Settlement Agreement contains an agreement by EC and Clifford to arbitrate any dispute between PP and DD. The Complaint and FAC were filed by Clifford against DD and EC, assert a claim arising under the Settlement Agreement, and thus undeniably fall within the scope of the arbitration provision.

Contrary to Clifford's assertion, a valid agreement to arbitrate was formed. By Clifford's own admission, she signed the Settlement Agreement, accepted the consideration required of EC thereunder and did not raise any objection to its enforceability until approximately sixteen months thereafter. Thus, Clifford knowingly and voluntarily agreed to arbitrate this dispute. The Court need not go any further to grant this motion and compel this matter to arbitration. Thereafter, Clifford's claims of invalidity or unenforceability of the Settlement Agreement should be determined by the arbitrator. *See infra,* Sections III.c. and III.d.

a.    **The Federal Arbitration Act Establishes A Liberal Policy Favoring The Enforcement Of Arbitration Agreements**

"[T]he Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.* (2000 ed. and Supp. V), establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy

1 favoring arbitration agreements."); *Mortensen v. Bresnan Comm., LLC*, 722 F.3d
2 1151, 1160 (9th Cir. 2013) ("the FAA's purpose is to give preference (instead of
3 mere equality) to arbitration provisions."). "The Act, which rests on Congress'
4 authority under the Commerce Clause, supplies not simply a procedural framework
5 applicable in federal courts; it also calls for the application, in state as well as federal
6 courts, of federal substantive law regarding arbitration." *Id.*

7      The FAA "mandates that district courts *shall* direct the parties to proceed to
8 arbitration on issues as to which an arbitration agreement **has been signed**." *Dean*
9 *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (bold added); *Republic of*
10 *Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 n.8 (9th Cir. 1991) (the FAA
11 "reflects the strong Congressional policy favoring arbitration by making such clauses
12 'valid, irrevocable, and enforceable.'"). The FAA "is phrased in mandatory terms,"
13 thus a District Court "has little discretion to deny an arbitration motion." *Republic of*
14 *Nicaragua*, *supra*, 937 F.2d at 475. "If a contract contains an arbitration clause,
15 claims brought under or against that contract are presumed arbitrable." *Guadagno v.*
16 *E\*Trade Bank,* 592 F.Supp.2d 1263, 1272 (C.D. Cal. 2008).

17      In *Gaudagno v. E\*Trade Bank*, the plaintiff filled out an online application for
18 an E\*Trade account, and clicked a box acknowledging that she had reviewed
19 E\*Trade's account agreement, which contained an arbitration clause. 592 F.Supp.2d
20 at 1267. This Court rejected plaintiff's argument that she did not assent to the
21 arbitration agreement, and granted defendant's motion to compel arbitration. *Id.* at
22 1273. In doing so, this Court held that any "[d]oubts should be resolved in favor of
23 arbitrability." *Id.* at 1272; *see also Moses H. Cone Memorial Hosp. v. Mercury*
24 *Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of
25 arbitrable issues should be resolved in favor of arbitration.").

26           **b.     <u>Clifford Entered Into A Valid Arbitration Agreement</u>**
27      The Ninth Circuit uses "general state-law principles of contract interpretation
28 to decide whether a contractual obligation to arbitrate exists." *Goldman, Sachs & Co.*

1  *v. City of Reno*, *supra*, 747 F.3d at 743 (9th Cir. 2014).  Under those principles, there

2  should be no question that an enforceable arbitration agreement was reached.

3       Clifford admits that she (and EC) signed the Settlement Agreement, that she

4  was represented by counsel in connection therewith, and that EC paid her $130,000

5  pursuant to the Settlement Agreement.  Ex. B, ¶¶ 16, 22-23.  By doing so, Clifford

6  accepted the terms of Settlement Agreement, including her obligation to arbitrate

7  contained therein.  *See* Cal. Civ. Code § 1589 ("A **voluntary acceptance of the**

8  **benefit of a transaction** is equivalent to a consent to all the obligations arising from

9  it, so far as the facts are known, or ought to be known, to the person accepting.")

10  (emphasis added); Cal. Civ. Code § 1584 ("Performance of the conditions of a

11  proposal, or the **acceptance of the consideration offered with a proposal**, is an

12  acceptance of the proposal.") (emphasis added.)

13         1.    Clifford's Agreement To Arbitrate Is Enforceable Regardless Of

14              Whether DD Also Signed The Agreement

15       Clifford is bound by the terms of the Settlement Agreement, including the

16  arbitration provision, even though it was not signed by DD.  First, the Settlement

17  Agreement contemplated a binding agreement between Clifford and EC, regardless

18  of whether DD also signed.  Second, California law does not require all parties to

19  sign a contract for it to be binding on those who did sign it.  "It is not the rule that a

20  contract, which on its face purports to be between the parties named in the

21  instrument, must invariably be executed by all whose names appear in the instrument

22  before it will be binding on any."  *Kaneko v. Okuda*, 195 Cal.App.2d 217, 225

23  (1961).  "In the absence of a showing that a contract is not to be deemed complete

24  unless signed by all parties, **the parties signing may be bound though others have**

25  **not signed**."  *Id.* (emphasis added); *see also Angell v. Rowlands*, 85 Cal.App.3d 536,

26  540 (1978).

27       Here, the first paragraph of the Settlement Agreement demonstrates that the

28  parties intended for the Settlement Agreement to be binding regardless of whether it

1  was signed by DD.  It expressly defines the parties to the agreement as EC, LLC

2  "**and/or**" DAVID DENNISON (DD), "**on the one part**," and PEGGY PETERSON

3  (PP), "**on the other part**."  Ex. A, p. 0 (emphasis added).

4        If this language is not clear enough, it is well-settled under California law that

5  the Court need look no further than Clifford's subsequent conduct to determine that

6  she intended for the Settlement Agreement to be binding without DD's signature.

7  "Where any doubt exists as to the purport of the parties' dealings as expressed in the

8  wording of their contract, the court may look to…subsequent acts or declarations of

9  the parties 'shedding light upon the question of their mutual intention at the time of

10  contracting.' (citation)."  *Barham v. Barham*, 33 Cal.2d 416, 423 (1949).  "[I]t is said

11  that 'a construction given the contract by the acts and conduct of the parties with

12  knowledge of its terms, before any controversy has arisen as to its meaning, is

13  entitled to great weight and will, when reasonable, be adopted and enforced by the

14  court.' (citation)."  *Id.*

15        In *Crestview Cemetery Ass'n v. Dieden*, 54 Cal.2d 744, 757 (1960), the

16  California Supreme Court held that the subsequent actions of the parties to a contract

17  demonstrated their belief that the "contract had been fully performed."  The Court

18  stated:  "The practical construction placed on the contract by the parties is far more

19  convincing than the construction arrived at in an attempt to escape a liability already

20  accrued."  *Id.* at 755.[3]

21

22  _____

23  [3] In doing so, the California Supreme Court quoted the following passage from its
   opinion in *Mitau v. Roddan*, 149 Cal. 1, 14 (1906):

24        It is to be assumed that parties to a contract best know what was
         meant by its terms, and are the least liable to be mistaken as to its

25        intention; that each party is alert to his own interests, and to
         insistence on his rights, and that whatever is done by the parties

26        contemporaneously with the execution of the contract is done

27        under its terms as they understood and intended it should be.
         Parties are far less liable to have been mistaken as to the intention

28        (footnote continued)

1    Clifford signed the Settlement Agreement, accepted the $130,000 that EC was

2    obligated to pay her, and, despite not receiving any signature from Mr. Trump,

3    Clifford did not reject the Settlement Agreement, did not deem it null and void

4    because it was supposedly missing a signature, and did not return, or offer to return,

5    the $130,000 she was paid, prior to filing this lawsuit approximately sixteen months

6    thereafter.  Ex. B, ¶¶ 16, 22-23; Ex. C, ¶¶ 17, 23-24; Cohen Decl., ¶ 3.  Further,

7    Clifford performed all of her obligations under the Settlement Agreement during

8    those sixteen months and made no public statements that EC is aware of disclosing

9    Confidential Information.  Cohen Decl., ¶ 4.  Prior to February 2018, Clifford's only

10   complaint relating to the Settlement Agreement was that she was not receiving the

11   payment quickly enough.  *Id*.  This is powerful evidence that Clifford intended for the

12   Settlement Agreement to be binding absent DD's signature.

13          2.    Clifford Received Adequate Consideration Under The Settlement

14                Agreement

15          Under California Civil Code § 1550, "sufficient cause or consideration" is

16   necessary for an enforceable contract.  However, "[a]dequacy of consideration need

17   not be proved where the defendant has already accepted the consideration."  *Abers v.*

18   *Rounsavell*, 189 Cal.App.4th 348, 362 (2010), citing *Beab, Inc. v. First Western Bank*

19   *& Tr. Co.*, 204 Cal.App.2d 680, 685 (1962).  Because Clifford accepted EC's

20   consideration under the Settlement Agreement ($130,000), and made no attempt to

21   _____

22          of their contract during the period while harmonious and practical
             construction reflects that intention, than they are when subsequent
23          differences have impelled them to resort to law, and one of them
             then seeks a construction at variance with the practical
24          construction they have placed upon it.
25   *Crestview Cemetery Ass'n v. Dieden*, 54 Cal.2d at 753; *see also City of Hope Nat.*
26   *Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 393 (2008) ("A party's conduct
     occurring between execution of the contract and a dispute about the meaning of the
27   contract's terms may reveal what the parties understood and intended those terms to
28   mean.")

1  reject such consideration for nearly sixteen months, there should be no question that

2  such consideration was adequate.

3         Regardless, "[a] consideration of one dollar is ordinarily sufficient to support a

4  contract at law." *Abers v. Rounsavell*, *supra*, 189 Cal.App.4th at 362. "'A written

5  instrument is presumptive evidence of a consideration' (Civ.Code, § 1614), and in

6  any event all the law requires for sufficient consideration is the proverbial

7  'peppercorn.'" *San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of*

8  *San Diego City Employees' Ret. Sys.*, 206 Cal.App.4th 594, 619 (2012).

9         Moreover, the consideration that Clifford received from EC ($130,000) was

10  sufficient to support all of her obligations under the Settlement Agreement, including

11  to arbitrate, independent of whether the Settlement Agreement also provided for non-

12  monetary consideration from DD. "[W]here there is consideration for any of the

13  agreements specified in a contract[,] the contract as a whole cannot be said to lack

14  mutuality or consideration, nor can any particular promise or agreement contained

15  therein be singled out and deemed inoperative because no special or particular

16  consideration appears to have been given or promised for it." *Brawley v. Crosby*

17  *Research Found.*, 73 Cal.App.2d 103, 118 (1946), quoting *Tennant v. Wilde*, 98

18  Cal.App. 437, 442 (1929). "In other words, '[w]hile consideration is a necessary

19  element of every contract, it is not necessary that each separate promise or covenant

20  should have a distinct consideration.'" *Daily Transit Mix, LLC v. Daily Transit Mix*

21  *Corp.*, 2011 WL 5416188, at *10 (Cal. Ct. App. Nov. 9, 2011), citing *Brawley v.*

22  *Crosby Research Found.*, *supra*, 73 Cal.App.2d at 118. Thus, Clifford should be

23  required to arbitrate this dispute, regardless of whether she received separate

24  consideration from DD under the Settlement Agreement.

25      **c.**    **Clifford's Challenges To The Contract As A Whole Should Be**

26          **Decided By The Arbitrator, Not The Court**

27         The U.S. Supreme Court has held that "a challenge to the validity of the

28  contract as a whole, and not specifically to the arbitration clause, must go to the

1 arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 444. In *Buckeye*
2 *Check Cashing*, the Court held that a claim that the subject contract was illegal and
3 void *ab initio* must be decided by the arbitrator, not the court. *Id*; *see also Preston v.*
4 *Ferrer*, *supra*, 552 U.S. at 349. The holding in *Buckeye Check Cashing* followed the
5 decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404
6 (1967), wherein the Supreme Court held that the FAA "does not permit the federal
7 court to consider claims of fraud in the inducement of the contract generally," as
8 opposed to a claim of "fraud in the inducement of the arbitration clause itself." *See*
9 *also Mentor Capital, Inc. v. Bhang Chocolate Co.*, No. 3:14-CV-3630 LB, 2014 WL
10 6485666, at *4-6 (N.D. Cal. Nov. 19, 2014) (held that claim for rescission of entire
11 agreement for failure of consideration must be decided by arbitrator), citing *Buckeye*
12 *Check Cashing v. Cardegna, supra*, 546 U.S. at 444-446.

13     "[A]s a matter of substantive federal arbitration law, an arbitration provision is
14 severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v.*
15 *Cardegna*, *supra*, 546 U.S. at 445-446. "[U]nless the challenge is to the arbitration
16 clause itself, the issue of the contract's validity is considered by the arbitrator in the
17 first instance." *Id; Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (the Supreme
18 Court requires "the basis of challenge to be directed specifically to the agreement to
19 arbitrate before the court will intervene."). In *Guadagno v. E*Trade Bank*, *supra*,
20 592 F.Supp.2d at 1270, this Court held: "If a party challenges the validity of an
21 arbitration clause itself, rather than the entire contract containing the clause, the
22 arbitration clause's validity is for the court, rather than an arbitrator, to decide."
23 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, *supra*, 546 U.S. at 445-446.)

24     **d.**     **The "Crux Of The Complaint" Is A Challenge To The Settlement**
25         **Agreement As A Whole, Not The Arbitration Provision**

26     Clifford's newly added, sham challenges to the validity of the arbitration
27 provision should be viewed as nothing more than challenges to the Settlement
28 Agreement as a whole, and thus are to be decided by the arbitrator. Following the

-17-

U.S. Supreme Court's holding in *Buckeye Check Cashing*, the Ninth Circuit Court of Appeals has "applied the 'crux of the complaint' rule as a method for differentiating between challenges to the arbitration provision alone and challenges to the entire contract." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010). "The 'crux of the complaint' matters when the complaint itself makes clear that the challenge to the arbitration clause is the same challenge that is being made to the entire contract." *Id.*

In *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1263-1264 (9th Cir. 2006), the Ninth Circuit held that "when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator." Prior to Clifford's thinly veiled attempt to circumvent the holding of *Buckeye Check Cashing, Inc.* by filing the FAC, the Complaint demonstrated that Clifford's challenges to arbitration clause are the same as her challenges to the Settlement Agreement as a whole:

- Paragraph 38 alleges, in pertinent part, that the Settlement Agreement was "never formed" because "Mr. Trump never signed" it; and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraph 39 alleges, in pertinent part, that the Settlement Agreement is "invalid, unenforceable, and/or void under the doctrine of unconscionability"; and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraph 40 alleges, in pertinent part, that the Settlement Agreement is "invalid, unenforceable, and/or void because [it] is illegal and/or violate[s] public policy"; and "as a … result, there is no agreement to arbitrate between the parties."

Ex. B, pp. 6-7. Clifford's newly asserted defenses to the enforceability of the arbitration provision in the FAC are also the same as her defenses to the validity of

the Settlement Agreement as a whole:

- Paragraph 41 alleges, in pertinent part, that "no agreement was ever formed or existed" and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraphs 42 and 43 allege that the Settlement Agreement as a whole is unconscionable, while paragraph 58 also alleges that the arbitration provision is unconscionable.

- Paragraphs 44 through 55 allege that the Settlement Agreement as a whole is void *ab initio* because it is illegal and violates public policy, while paragraphs 59 through 61 allege that the arbitration provision is void *ab initio* because it is illegal and violates public policy.

Ex. C, pp. 8-15.

Thus, the "crux of the complaint" is a challenge to the Settlement Agreement as a whole, not the arbitration provision contained therein.

1.     The Authorities Relied Upon By Clifford To Argue That The Court Should Decide "Formation" Are Highly Distinguishable

Clifford contends that her challenge to the formation of the Settlement Agreement should be decided by the Court, not the arbitrator.  However, the authorities Clifford relied upon during the parties' Local Rule 7-3 conference of counsel are highly distinguishable.  Blakely Decl., ¶ 7.

In *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 964 (9th Cir. 2007), the plaintiff alleged that she never received, much less signed, the membership agreement containing the arbitration clause, and that she did not even known about the membership until approximately 13 months after she was supposedly sent the agreement.  *Id*. at 958-959.  Under those facts, the Ninth Circuit held that the District Court should determine whether an enforceable arbitration agreement was formed.  This case is very different:  here, Clifford acknowledges that she signed and received the agreement, along with the consideration required of EC thereunder.

1    In *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1144

2 (9th Cir. 1991), the cities of Lawndale, San Marino, and Palmdale, and the Palmdale

3 Redevelopment Agency, claimed that the person who signed the subject agreements

4 on their behalf, an individual "who worked in various financial capacities for those

5 entities," did not have authority to bind them to those agreements, which opened

6 investments accounts with defendant (in which the plaintiffs lost $8 million). *Id.* at

7 1140–1141.  Under those facts, the Ninth Circuit held that the District Court should

8 determine whether the signatory to the agreements containing the arbitration clauses

9 had authority to bind the plaintiffs to those agreements. *Id.*  By contrast, Clifford has

10 not, nor can she, make any argument that she lacked the authority to enter into the

11 Settlement Agreement.

12    In *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741, 747 (9th Cir.

13 2014), the Ninth Circuit held that the forum selection clauses in Goldman, Sachs &

14 Co.'s Broker-Dealer Agreements with the City of Reno, which stated that "all actions

15 and proceedings ... shall be brought in the ... District of Nevada," superseded

16 Goldman's default obligation to arbitrate under FINRA's general rules.  Here,

17 Clifford makes no such argument.

18    In *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 303-304 (2010),

19 the Court held that the District Court should determine arbitrability of a dispute over

20 **when** the contract was formed, because this issue governed whether the arbitration

21 agreement was in existence and enforceable during the relevant time period.  Here,

22 there is no dispute that the Settlement Agreement was executed by Clifford and EC

23 more than a year before this dispute arose.

24    Moreover, the cases cited in Clifford's Motion for Expedited Jury Trial for the

25 proposition that the court should decide her challenges to the formation of the

26 Settlement Agreement also are highly distinguishable.  Dkt. No. 16, pp., 11-12.

27    In *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir.

28 2009), the Ninth Circuit held that an arbitrator did not have the authority to issue an

1  injunction against non-parties, "such as cousins of former spouses" of signatories,

2  and a "a non-party grandmother" of a signatory, to an arbitration agreement.  The

3  Court held that "these collateral relatives are not in privity with the…signatories."

4  *Id*.  Here, there is no dispute that EC is seeking to enforce the arbitration provision

5  against a signatory to the Settlement Agreement (Clifford).

6      In *Doherty v. Barclays Bank Delaware*, No. 16-CV-01131-AJB-NLS, 2017

7  WL 588446, at *4 (S.D. Cal. Feb. 14, 2017), the defendant, one of the top ten issuers

8  of credit cards in the United States, alleged that plaintiff was bound by the arbitration

9  provision contained in defendant's "Cardmember Agreement" because plaintiff was

10 an authorized user of his father's credit card account.  However, the plaintiff claimed

11 that he did not know he was an authorized user on the account, and that he was added

12 as an authorized user without his knowledge.  *Id*. at *1, 4.  Under those facts, the

13 District Court denied the defendant's motion to compel arbitration.  *Id*. at *4.  Here,

14 there is no dispute that Clifford signed the Settlement Agreement.

15     In *Switch, LLC v. Ixmation, Inc.*, No. 15-CV-01637-MEJ, 2015 WL 4463672,

16 at *3 (N.D. Cal. July 21, 2015), the plaintiff argued that "it did not sign or otherwise

17 agree to" the defendant's "Proposal," which contained the subject arbitration

18 provision.  Under those facts, the District Court denied the defendant's motion to

19 compel arbitration.  *Id*. at *5.  Again, there is no similar dispute here.

20     In contrast to the authorities relied upon by Clifford, in *Teledyne, Inc. v. Kone

21 Corp*., 892 F.2d 1404, 1410 (9th Cir. 1989), the Ninth Circuit held that the arbitrator,

22 not the District Court, must decide whether an agreement signed by both parties, but

23 that defendant claimed was an unenforceable "DRAFT", was formed.  In doing so,

24 the Court held that cases must "be submitted to arbitration unless there is a challenge

25 to the arbitration provision which is *separate* and *distinct* from any challenge to the

26 underlying contract."  *Id*. (emphasis in original), citing *Prima Paint Corp. v. Flood &

27 Conklin Mfg. Co.*, *supra*, 388 U.S. at 402-404.

28

2. <u>The Arbitration Provision Is Not Unconscionable</u>

Clifford argues that the arbitration provision in the Settlement Agreement is unconscionable based on various theories. To the extent the Court even decides this issue, it should find that none of these arguments have merit.

**First**, under the FAA, there are strict limits on the types of unconscionability arguments that may be raised against an arbitration agreement. 9 U.S.C. § 2 limits the grounds for denying enforcement of arbitration agreements to "such grounds as exist at law or in equity for the revocation of any contract." The U.S. Supreme Court has interpreted this rule to prohibit unconscionability arguments directed to the substantive effect of the arbitration clause itself. Thus, in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340-341 (2011), the Court held that a California doctrine holding that contractual waivers of class action arbitration were unconscionable was preempted by the FAA, even though it was an application of a state law rule. Thus, to the extent that Clifford seeks to use unconscionability doctrine to impose substantive limits on the arbitration clause, these arguments must fail.

**Second** and independently, the arbitration clause is not unconscionable under California law. "Under California law, unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (broad delegation of arbitrability issues to arbitrator is not unconscionable) (internal quotations omitted). "**Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable**, but they need not be present in the same degree… Recently, the California Supreme Court has emphasized that unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain… Rather, unconscionable contracts are those that are so one-sided as to shock the conscience." *Id.* (emphasis added; internal quotations omitted).

"Procedural unconscionability focuses on two factors in contract formation: oppression and surprise…. Oppression arises when there is inequality in bargaining power between the parties to a contract, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice.  Surprise involves the extent to which the supposedly agreed terms were hidden from the party seeking to avoid enforcement of the agreement." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1093-94 (9th Cir. 2009) (arbitration clause in readable type in cellular service agreement was not procedurally unconscionable).

Here, there is no procedural unconscionability.  There is no evidence that Clifford was forced to enter into the Settlement Agreement, had no meaningful choice to do so, or had no choice but to accede to the terms of the arbitration clause as drafted.  The Settlement Agreement was the antithesis of standard form adhesion contracts imposed by large corporations that the procedural ucnconscionability doctrine addresses.  Clifford had the power to walk away, the power to negotiate the terms of the agreement, and only entered into the agreement after she unsuccessfully attempted to sell her story for $200,000.  Ex. D.  Because there is no procedural unconscionability, all of Clifford's unconscionability defenses fail.

In any event, Clifford also has not shown substantive unconscionability.  Her contention is exactly what *Mohamed* states cannot constitute substantive unconscionability, namely, that she made an old fashioned bargain that she now regrets, not that any terms of the Settlement Agreement shock the conscience.  Clifford has shown no unfairness in the arbitration process (an argument that is barred under *Concepcion* anyway), and no unfairness in the terms of the arbitration clause.  For instance, Clifford has not shown how she is prejudiced by being required to go to the arbitrator to get an injunction to enforce the Settlement Agreement, or that the choice of law rule in the Settlement Agreement has harmed her in any way.  Nor has she shown that the other terms of the agreement—a straightforward promise to pay $130,000 in exchange for various confidentiality obligations—were so one-sided as to

1  shock the conscience.  If this agreement is unconscionable, then any confidentiality

2  agreement is unconscionable, and that is not the law.  *Borgarding v. JP Morgan*

3  *Chase Bank*, 2016 WL 8904413 at *9 (C.D. Cal. Oct. 31, 2016) ("A confidentiality

4  clause, however, does not, render the entire arbitration agreement substantively

5  unconscionable.").

6       Finally, even if there is a provision (such as the choice of law provision) of the

7  arbitration agreement that is found to step too far under unconscionability doctrine,

8  any such provision is severable from the rest of the arbitration agreement.  The core

9  agreement is to arbitrate all disputes arising under the Settlement Agreement;

10 restrictions on injunctive relief and special choice of law rules are not central to the

11 bargain and can be excised if the Court determines that they are unconscionable.

12 *Mohamed v. Uber Technologies, Inc*, *supra*, 848 F.3d at 1213-14 (holding that waiver

13 of private attorney general suits, which was unenforceable, was severable from

14 remainder of arbitration clause).

15       **e.  The Newly Added Second Cause Of Action Against Michael Cohen**

16           **Does Not Prevent Arbitration Of The First Cause Of Action**

17       Clifford cannot avoid arbitration of her first cause of action against DD and EC

18 on the basis that her second cause of action asserts a non-arbitrable claim against Mr.

19 Cohen.  "[W]hen a complaint contains both arbitrable and nonarbitrable claims, the

20 [Federal Arbitration] Act requires courts to 'compel arbitration of pendent arbitrable

21 claims when one of the parties files a motion to compel, even where the result would

22 be the possibly inefficient maintenance of separate proceedings in different forums.'"

23 *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011), citing *Dean Witter Reynolds Inc. v.*

24 *Byrd*, 470 U.S. 213, 217 (1985).  "The Act has been interpreted to require that if a

25 dispute presents multiple claims, some arbitrable and some not, the former must be

26 sent to arbitration even if this will lead to piecemeal litigation." *Id*. at 19.

27       "Moreover, a plaintiff cannot avoid arbitration merely by claiming that one or

28 more of its claims for relief is against a defendant who is not a signatory to the

1  agreement." *Encore Prods., Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1113 (D.

2  Colo. 1999), citing *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n. 2 (1st Cir. 1968)

3  ("arbitration should not be foreclosed simply by adding persons to a civil action who

4  are not parties to the arbitration agreement because such an inclusion would thwart

5  the federal policy in favor of arbitration"); *Steinberg & Lyman v. Takacs*, 774

6  F.Supp. 885, 888 (S.D.N.Y.1991) ("while [plaintiff] asserts that notions of judicial

7  economy favor having this Court try the entire action at one time, rather than sending

8  only two of the defendants to arbitration, such an argument does not withstand the

9  mandate of the [FAA].")

10 **IV.    THE COURT SHOULD STAY THIS ACTION PENDING THE**

11 **OUTCOME OF THE ARBITRATION**

12         The Court should stay all proceedings with respect to the first cause of action,

13 pending the completion of the arbitration.  9 U.S.C. § 3.  Section 3 provides, in

14 pertinent part:

15                 If any suit or proceeding be brought in any of the courts of

16                 the United States upon any issue referable to arbitration

17                 under an agreement in writing for such arbitration, the court

18                 in which such suit is pending, upon being satisfied that the

19                 issue involved in such suit or proceeding is referable to

20                 arbitration under such an agreement, shall on application of

21                 one of the parties stay the trial of the action until such

22                 arbitration has been had…

23 **V.    CONCLUSION**

24         For the foregoing reasons, the instant Motion to Compel Arbitration should be

25 granted; Clifford should be ordered to arbitration in the currently pending arbitration

26 between the parties with ADRS, consistent with the parties' agreement; and the first

27 cause of action in the FAC should be stayed pending the outcome of the arbitration.

28

1 | Dated: April 2, 2018          BLAKELY LAW GROUP

2

3 |                                By:  */s/ Brent H. Blakely*

4 |                                     BRENT H. BLAKELY
                                      ***Attorneys for Defendant***
5 |                                     ***ESSENTIAL CONSULTANTS, LLC***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit E

1  HARDER LLP
2  CHARLES J. HARDER (CA Bar No. 184593)
   RYAN J. STONEROCK (CA Bar No. 247132)
3  132 S. Rodeo Drive, Fourth Floor
4  Beverly Hills, California 90212
   Telephone:  (424) 203-1600
5  Facsimile:  (424) 203-1601
   Email:     CHarder@HarderLLP.com
6  Email:     RStonerock@HarderLLP.com
7
8  Attorneys for Defendant
   DONALD J. TRUMP
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  STEPHANIE CLIFFORD a.k.a.          Case No. 2:18-CV-02217
    STORMY DANIELS a.k.a. PEGGY
14  PETERSON, an individual,           **JOINDER OF DEFENDANT**
                                       **DONALD J. TRUMP**
15              Plaintiff,             **IN MOTION TO COMPEL**
                                       **ARBITRATION BY DEFENDANT**
16                                     **ESSENTIAL CONSULTANTS, LLC**
17         v.
                                       Assigned for All Purposes to the
18  DONALD J. TRUMP a.k.a. DAVID       Hon. S. James Otero
    DENNISON, an individual,
19  ESSENTIAL CONSULTANTS, LLC, a      **Date:      April 30, 2018**
20  Delaware Limited Liability Company, **Time:      10:00 a.m.**
    and DOES 1 through 10, inclusive,  **Location:  350 West 1st Street**
21                                     **Courtroom 10C, 10th Floor**
22              Defendants.            **Los Angeles, CA 90012**

23                                     Action Filed: March 6. 2018

24

25

26

27

28

   ─────────────────────────────────────────────────
                JOINDER IN MOTION TO COMPEL ARBITRATION

1    Defendant Donald J. Trump hereby joins in defendant Essential Consultants,

2  LLC's ("EC") Motion to Compel Arbitration and consents to arbitration of the claims

3  against him and EC in this matter.

4

5  Dated: April 2, 2018                    HARDER LLP

6

7                                          By: /s/ Charles J. Harder
                                               CHARLES J. HARDER
8                                              Attorneys for Defendant
                                               DONALD J. TRUMP
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
JOINDER IN MOTION TO COMPEL ARBITRATION

**Exhibit F**

1   BLAKELY LAW GROUP
2   BRENT H. BLAKELY (CA Bar No. 157292)
    1334 Parkview Avenue, Suite 280
3   Manhattan Beach, California 90266
4   Telephone:  (310) 546-7400
    Facsimile:   (310) 546-7401
5   Email:      BBlakely@BlakelyLawGroup.com
6
    Attorneys for Defendants
7   ESSENTIAL CONSULTANTS, LLC and
    MICHAEL COHEN
8
9              **UNITED STATES DISTRICT COURT**
10            **CENTRAL DISTRICT OF CALIFORNIA**
11
12  STEPHANIE CLIFFORD a.k.a.        Case No. 2:18-CV-02217-SJO-FFM
    STORMY DANIELS a.k.a. PEGGY
13  PETERSON, an individual,         **DEFENDANT MICHAEL COHEN'S**
                                     **NOTICE OF MOTION AND**
14                                   **SPECIAL MOTION TO STRIKE**
                Plaintiff,           **(CAL. CODE CIV. PROC. § 425.16)**
15                                   **OR, ALTERNATIVELY, TO**
                                     **DISMISS (FRCP 12(b)(6))**
16       v.                          **PLAINTIFF'S FIRST AMENDED**
                                     **COMPLAINT; MEMORANDUM OF**
17  DONALD J. TRUMP a.k.a. DAVID     **POINTS AND AUTHORITIES**
18  DENNISON, an individual,
    ESSENTIAL CONSULTANTS, LLC, a    [Declarations of Michael D. Cohen and
19  Delaware Limited Liability Company,  Brent H. Blakely Filed Concurrently]
20  MICHAEL COHEN, an individual, and
    DOES 1 through 10, inclusive,    Assigned for All Purposes to the
21                                   Hon. S. James Otero
22              Defendants.
                                     **Date:      May 7, 2018**
23                                   **Time:      10:00 a.m.**
24                                   **Location:  350 West 1ˢᵗ Street**
                                     **            Courtroom 10C, 10ᵗʰ Floor**
25                                   **            Los Angeles, CA 90012**
26
27                                   Action Filed: March 6, 2018
28

─────────────────────────────────────────────

1         TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on May 7, 2018 at 10:00 a.m. or as soon

3 thereafter as the matter may be heard in Courtroom 10C, located at the United States

4 District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S.

5 James Otero presiding, Defendant Michael Cohen will and hereby does move

6 pursuant to California Code of Civil Procedure § 425.16 for an order striking the

7 Second Claim for Defamation in the First Amended Complaint of Plaintiff Stephanie

8 Clifford ("Clifford" or "Plaintiff") filed on or about March 26, 2018.

9         Mr. Cohen brings this Motion on the grounds that Plaintiff's claim arises out of

10 actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights,

11 and (2) relate to matters of public interest. Thus, the anti-SLAPP statute applies, and

12 Plaintiff must prove by admissible evidence that she will probably prevail on her

13 claim.

14         As set forth herein, Plaintiff cannot meet this burden. Accordingly, Plaintiff's

15 Second Claim for Defamation should be struck, and Mr. Cohen should be awarded

16 his attorneys' fees and costs incurred in defending against this meritless claim.[1]

17         Alternatively, Mr. Cohen will and hereby does move for an order dismissing

18 the Second Claim for Defamation in the First Amended Complaint pursuant to

19 Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6).

20         This Motion shall be based on this Notice of Motion and Motion, the

21 accompanying Memorandum of Points and Authorities, the Declarations of Michael

22 D. Cohen and Brent H. Blakely filed concurrently herewith (with exhibits), the

23 anticipated reply papers, all materials that may be properly considered in connection

24 with this motion, and oral argument at the hearing. This motion is made following

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26     [1] The SLAPP statute mandates that a prevailing movant on a Special Motion to
Strike "shall" recover its attorneys' fees and costs. *See* Cal. Code Civ. Proc. §
27 425.16(c)(1); *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001). If the Court
28 grants this Motion, Mr. Cohen will file a separate motion for attorneys' fees and costs.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1    the conference of counsel pursuant to L.R. 7-3, which took place on April 2, 2018.

2

3    Dated: April 9, 2018                    BLAKELY LAW GROUP

4

5                                            By:   */s/ Brent H. Blakely*

6                                                  BRENT H. BLAKELY
                                                   **Attorneys for Defendants**
7                                                  **ESSENTIAL CONSULTANTS, LLC and**
                                                   **MICHAEL COHEN**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................ 4

II.    FACTUAL AND PROCEDURAL BACKGROUND .................................. 6

    a.    Summary of relevant allegations .......................................... 6

    b.    Summary of proceedings ...................................................... 9

III.   ARGUMENT.................................................................................10

    a.    California's Anti-SLAPP Statute Applies To Plaintiff's Second Claim For Defamation ....................................................... 10

    b.    Mr. Cohen's satisfaction of the first prong cannot be disputed ........... 12

    c.    Plaintiff cannot prevail on her defamation claim................................ 14

        1.    Plaintiff cannot establish the falsity of Mr. Cohen's statement.................................................................... 15

        2.    Mr. Cohen's statement is opinion........................................... 16

        3.    Mr. Cohen's statement is hyperbole ........................................ 18

        4.    The alleged defamatory statement is privileged ....................... 19

        5.    Plaintiff cannot establish that Mr. Cohen's statement is a defamatory statement about Plaintiff........................................ 19

        6.    Plaintiff has no special damages ............................................. 21

        7.    Mr. Cohen did not act with malice .......................................... 22

    d.    Alternatively, The Court Should Dismiss The Defamation Claim...... 23

IV.   CONCLUSION ......................................................................24

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## CASES

*Baker v. Los Angeles Herald Examiner*,
    42 Cal.3d 254 (1986) ...................................... 19

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003)............................. 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................... 27

*Braun v. Chronicle Publ'g Co.*,
    52 Cal.App.4th 1036 (1997).............................. 23

*Briggs v. Eden Council for Hope and Opportunity*,
    19 Cal.4th 1106 (1999) ...............................14, 18

*Brown v. Kelly Broadcasting Co.*,
    48 Cal.3d 711 (1989) .................................... 23

*Cabrera v. Alam*,
    197 Cal.App.4th 1077 (2011)............................. 17

*Campanelli v. Regents of University of California*,
    44 Cal.App.4th 572 (1996)............................... 19

*Clark v. Hidden Valley Lake Ass'n*,
    No. 16-CV-02009-SI, 2017 WL 4922375 (N.D. Cal. Oct. 31, 2017)............ 15

*Conroy v. Spitzer*,
    70 Cal.App.4th 1446 (1999).............................. 17

*Crane v. The Arizona Republic*,
    972 F.2d 1511 (9th Cir.1992)............................ 23

*Dora v. Frontline Video, Inc.*
    15 Cal.App.4th 536 (1993).............................. 17

*Eastwood v. National Enquirer*,
    123 F.3d 1249 (9th Cir. 1997)........................... 26

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*eDrop-Off Chicago LLC v. Burke,*
    No. CV 12-4095 GW (FMOx), 2013 WL 12131186 (C.D. Cal. 2013) ......... 15

*Emde v. San Joaquin County Central Labor Council,*
    23 Cal.2d 146 (1943) ..................................................................................... 19

*Equilon Enters., LLC v. Consumer Cause,*
    29 Cal.4th 53 (2002) ..................................................................................... 14

*Ferlauto v. Hamsher,*
    74 Cal.App.4th 1394 (1999)........................................................................... 22

*Flatley v. Mauro,*
    39 Cal.4th 299 (2006) ................................................................................... 17

*Gabrielson v. Montgomery Ward & Co.,*
    785 F.2d 762 (9th Cir. 1986).......................................................................... 27

*Gerbosi v. Gaims, Weil, West & Epstein, LLP,*
    193 Cal.App.4th 435 (2011)........................................................................... 19

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974)....................................................................................... 21

*Harte–Hanks Communications, Inc. v. Connaughton,*
    491 U.S. 657 (1989)....................................................................................... 26

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010).......................................................................... 17

*Isuzu Motors, Ltd. v. Consumers Union of United States, Inc.,*
    12 F.Supp.2d 1035 (C.D. Cal. 1998)............................................................. 23

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)........................................................................ 21

*Leidholdt v. L.F.P., Inc.,*
    860 F.2d 890 (9th Cir. 1988).......................................................................... 21

*Liberty Synergistics Inc. v. Microflo Ltd.,*
    718 F.3d 138 (2d Cir. 2013).................................................................... 15, 16

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*Macias v. Hartwell*,
        55 Cal.App.4th 669 (1997)............................................................................ 18

*Manzari v. Associated Newspapers Ltd.*,
        830 F.3d 881 (9th Cir. 2016)................................................................14, 15

*Masson v. New Yorker Magazine*,
        501 U.S. 496 (1991)...................................................................................... 20

*McGarry v. University of San Diego*,
        154 Cal.App.4th 97 (2007)........................................................................... 20

*Metabolife Int'l, Inc. v. Wornick*,
        264 F.3d 832 (9th Cir. 2001)....................................................................... 14

*Navellier v. Sletten*,
        106 Cal.App.4th 763 (2003)....................................................................18, 19

*Nicosia v. De Rooy*,
        72 F.Supp.2d 1093 (N.D. Cal. 1999).......................................................21, 22

*Nygard, Inc. v. Uusi–Kerttula*,
        159 Cal.App.4th 1027 (2008)..............................................................17, 19, 26

*Premier Medical Management Systems, Inc. v. California Ins. Guarantee*,
        136 Cal.App.4th 464 (2006).....................................................................18, 19

*Roberts v. Los Angeles County Bar Assn.*,
        105 Cal.App.4th 604 (2003).......................................................................... 18

*Rosenaur v. Scherer*,
        88 Cal.App.4th 260 (2001)............................................................................ 22

*Seelig v. Infinity Broad. Corp.*,
        97 Cal.App.4th 798 (2002)............................................................................ 17

*Smith v. Maldonado*,
        72 Cal.App.4th 637 (1999)............................................................................ 24

*Standing Committee v. Yagman*,
        55 F.3d 1430 (9th Cir. 1995)......................................................................... 22

*Summit Bank v. Rogers,*
  206 Cal.App.4th 669 (2012)............................................................................. 21

*Taus v. Loftus,*
  40 Cal.4th 683 (2007) ..................................................................................... 19

*Underwager v. Channel 9 Australia,*
  69 F.3d 361 (9th Cir. 1995).............................................................................. 22

*United Tactical Sys., LLC v. Real Action Paintball, Inc.,*
  143 F.Supp.3d 982 (N.D. Cal. 2015).............................................................. 16

*Washer v. Bank of America,*
  87 Cal.App.2d. 501 (1948)................................................................................ 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Stephanie Clifford's ("Clifford" or "Plaintiff") Second Claim for Defamation in the First Amended Complaint ("FAC") against Defendant Michael Cohen is completely without merit and appears to be a desperate attempt by Plaintiff to keep at least a portion of this case out of arbitration.

Plaintiff's claim for defamation arises out of actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights, and (2) relate to matters of public interest. Thus, the California anti-SLAPP statute applies, and Plaintiff must prove by admissible evidence that she likely will prevail on her claim.

Plaintiff cannot meet this burden. The only alleged defamatory statement made by Mr. Cohen, and purportedly about Plaintiff, is: "Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump." Plaintiff alleges that this statement is actionable because it implies that she lied about having an intimate relationship with defendant Donald Trump.

However, Plaintiff's defamation claim fails for at least the following reasons:

***First***, Mr. Cohen's statement is **substantially true**. As shown herein, Plaintiff herself has repeatedly and specifically denied having any intimate relationship with Mr. Trump, on at least three occasions: at least once in 2011, and at least twice in January 2018 (the month prior to Mr. Cohen's allegedly defamatory statement) in written public statements that she signed. (Declaration of Michael D. Cohen ("Cohen Decl."), ¶¶ 5-6, Ex. A, 1/10/18 Denial; Ex. B, 1/30/18 Denial.) Plaintiff later changed her story, and now claims she did have an intimate relationship with Mr. Trump. Thus, Plaintiff either lied then or is lying now. Accordingly, even if Mr. Cohen's statement did insinuate that Plaintiff is a liar, she has admitted that she lied, and thus, any such implication by Mr. Cohen would be entirely true. (*Id.*; Declaration of Brent Blakely ("Blakely Decl."), ¶ 3, Ex. C, Excerpt From *60 Minutes* Interview.) Stated another way, because Plaintiff has repeatedly lied to the world

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

about whether or not she had an intimate relationship with Mr. Trump, she cannot possibly complain that others, whether Mr. Cohen, or news reporters, or others, call into question Plaintiff's credibility, including any truthful statements that she has made untruthful statements to the American people.

*Second*, Mr. Cohen's statement that untrue things can hurt a person is **opinion**, not a verifiable statement of fact.

*Third*, Mr. Cohen's statement is **hyperbole**.

*Fourth*, Mr. Cohen's statement is **privileged** under the common law right of fair comment and statutory fair reporting privilege.

*Fifth*, Mr. Cohen's statement on its face is not of and concerning Plaintiff – she is not identified in the statement, either expressly or impliedly.

*Sixth*, Plaintiff **suffered no special damages**. The opposite is true: Plaintiff herself has boasted that her pay has **quadrupled** because of the publicity of the instant lawsuit and her allegations about Mr. Trump in February 2018 (which allegations are the opposite of her two written denials from January 2018, stating that she did not have an intimate relationship with him).

*Seventh*, Mr. Cohen **did not act with malice** – a necessary element. Plaintiff has not pled any facts, and will not be able to show any evidence, that Mr. Cohen acted with knowledge that the statement was false or with reckless disregard of its truth. To the contrary, even if Mr. Cohen's statement did pertain to the falsity of Plaintiff's allegations of an intimate relationship with Mr. Trump, it would have been relying upon Plaintiff's two written statements in January 2018, confirming unequivocally that no such intimate relationship ever existed. Thus, Mr. Cohen could not possibly possess reckless disregard of the truth when he would have been relying upon Plaintiff's own written statements from the prior month.

California's anti-SLAPP statute was enacted to curb frivolous lawsuits, such as this one, regarding statements made about a matter of public interest, *i.e.*, a strategic lawsuit against public participation. Plaintiff's claim against Mr. Cohen

1  falls squarely within California's anti-SLAPP statue.  Thus, for the reasons set forth
2  herein, Plaintiff's defamation claim should be stricken.

3      Alternatively, if the Court finds that California's anti-SLAPP statute does not
4  apply, it should dismiss Plaintiff's defamation claim because Plaintiff has not pled,
5  and will never be able to plead, a valid claim.

6  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7          **a.    Summary of relevant allegations**

8      Plaintiff is an adult-film actress and exotic dancer.  Plaintiff alleges in the FAC
9  that she had "an intimate relationship with Mr. Trump" in 2006-2007.  (FAC, ¶ 10,
10  ECF No. 14.)  In October 2016, according to an exclusive news report, Clifford
11  unsuccessfully attempted to sell a story about an alleged one-night-stand with Mr.
12  Trump to tabloid magazines and related outlets for $200,000.  (Blakely Decl., ¶ 4, Ex.
13  D, 3/29/18 *Daily Mail* Article.)

14      Instead, Plaintiff admittedly signed a written *Confidential Settlement*
15  *Agreement and Mutual Release* dated October 28, 2016 (the "Settlement
16  Agreement").  (*See* FAC ¶¶ 17-23 and Exs. 1-2, ECF No. 14; Cohen Decl., ¶¶ 2-3.)
17  In the Settlement Agreement, Clifford promised to arbitrate any dispute that might
18  later arise between her and DD (who Clifford alleges is Mr. Trump).  (FAC Ex. 1 [p.
19  10].)  Plaintiff also promised not to publicly disclose any Confidential Information (as
20  defined in the Settlement Agreement), including any of DD's "alleged sexual
21  partners, alleged sexual actions or alleged sexual conduct."  (*Id*. pp. 4-8.)

22      As consideration for Clifford's promises to arbitrate and to maintain
23  confidentiality, EC paid, and Clifford admittedly accepted, the sum of $130,000.
24  (*See* FAC ¶ 24 and Ex. 1 [p. 4, ¶23], ECF No. 14.)  For the next sixteen months,
25  Clifford did not reject the Settlement Agreement or make any attempt to return the
26  $130,000 that she was paid by EC.  (Cohen Decl., ¶¶ 2-3.)

27      On January 10, 2018, Plaintiff issued a signed statement denying that she had a
28  sexual and/or romantic affair with Mr. Trump (the "January 10, 2018 Written

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1  Denial"), stating:

2          I recently became aware that certain news outlets are
3          alleging that I had a sexual and/or romantic affair with
4          Donald Trump many, many, many years ago. I am stating
5          with complete clarity that this is absolutely false. My
6          involvement with Donald Trump was limited to a few
7          public appearances and nothing more. When I met Donald
8          Trump, he was gracious, professional and a complete
9          gentleman to me and EVERYONE in my presence. Rumors
10         that I have received hush money from Donald Trump are
11         completely false. If indeed I did have a relationship with
12         Donald Trump, trust me, you wouldn't be reading about it in
13         the news, you would be reading about it in my book. But
14         the fact of the matter is, these stories are not true.

15 (Cohen Decl. ¶ 5, Ex. A.)[2]

16         On January 30, 2018, Clifford issued another signed statement titled "Official
17 Statement of Stormy Daniels," wherein she *again* denied having a sexual relationship
18 with Mr. Trump (the "January 30, 2018 Written Denial") (collectively, with the
19 January 10, 2018 Written Denial, the "Clifford Written Denials"), stating:

20         Over the past few weeks I have been asked countless times
21         to comment on reports of an alleged sexual relationship I
22         had with Donald Trump many, many, many years ago. [¶]

23  _____

24         [2] Plaintiff alleges that, in January 2018, Mr. Cohen, "through intimidation and
coercive tactics, forced Ms. Clifford into signing a false statement wherein she stated
25 that reports of her relationship with Mr. Trump were false." (FAC ¶ 26, ECF No. 14.)
However, Plaintiff does not indicate which of her two January 2018 statements is
26 false, and she does not even attempt to address her other denials of the intimate
relationship (as documented herein). Further, Plaintiff's allegation is blatantly false.
27 (Cohen Decl. ¶¶ 5-7.)
28

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1  the fact of the matter is that each party to this alleged affair
2  denied its existence in 2006, 20011 [sic], 2016, 2017 and
3  now again in 2018.  I am not denying this affair because I
4  was paid 'hush money' as has been reported in overseas
5  owned tabloids.  I am denying this affair because it never
6  happened….

7  (Cohen Decl. ¶ 6, Ex. B.)

8       The Clifford Written Denials are consistent with an earlier denial made by
9  Plaintiff in October 2011, when she told *E! News* that a story claiming that she and
10  Mr. Trump had had an affair was "bulls--t."  (Blakely Decl. ¶ 7, Ex. G.)

11       Plaintiff alleges that, on or about February 13, 2018, Mr. Cohen issued a public
12  statement regarding the Settlement Agreement.  (FAC ¶ 27 and Ex. 3.)  As part of
13  that statement, wherein Mr. Cohen confirmed that the payment pursuant to the
14  Settlement Agreement to Plaintiff was lawful, and was not a campaign contribution
15  or a campaign expenditure, Plaintiff alleges that he made following defamatory
16  statement: "Just because something isn't true doesn't mean that it can't cause you
17  harm or damage.  I will always protect Mr. Trump."  (*Id.*)

18       Clifford subsequently violated the Settlement Agreement by, among other
19  things, filing the Complaint and FAC in this action, and also by disclosing
20  Confidential Information (her allegations) to the news media, including in a
21  nationally televised interview with Anderson Cooper on *60 Minutes*, which
22  reportedly was watched by twenty-two million viewers.  (Blakely Decl., ¶ 11)
23  Clifford further breached the Settlement Agreement by sending her attorney of record
24  in this action, Michael Avenatti, to participate in dozens of interviews on national
25  television programs, wherein he has repeatedly disclosed Confidential Information
26  (allegations).  (*Id.*, ¶ 12, Ex. J, Chart.)

27       Within days of filing this action, and the massive news coverage that it
28  generated, Clifford made appearances at various adult entertainment clubs, claiming

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

that her pay has "quadrupled" from the publicity of this lawsuit and her allegations. (Blakely Decl., ¶¶ 5-6, Ex. E, *CNN* article, Ex. F, *Rolling Stone* article.)

### b. <u>Summary of proceedings</u>

On or about February 22, 2018, EC filed an arbitration proceeding with ADR Services, Inc. ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in the Settlement Agreement. (Cohen Decl., ¶ 8.) Upon EC's emergency application for a Temporary Restraining Order, the arbitrator (a retired California Superior Court judge) issued an order prohibiting Clifford from violating the Settlement Agreement by, among other things, disclosing any Confidential Information to the media or in court filings. *Id.* at ¶ 9.

In response, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of Los Angeles on March 6, 2018, seeking a declaratory judgment that the Settlement Agreement is void, invalid, or unenforceable. (*See generally* Notice of Removal, Ex. 1, ECF No. 1-1.)

On March 26, 2018, Plaintiff filed the FAC adding several new purported defenses to the arbitration provision and the Second Claim for Defamation against Mr. Cohen. (ECF No. 14.)[3]

On March 27, 2018, Mr. Cohen's counsel sent a letter to Plaintiff's counsel detailing the basis for the instant motion. (Blakely Decl., ¶ 8, Ex. H.)

On April 2, 2018, Mr. Cohen's counsel and Plaintiff's counsel participated in the Local Rule 7-3 conference of counsel. (Blakely Decl., ¶10.) During the conference, Plaintiff's counsel (incorrectly) asserted that California's anti-SLAPP

_____

[3] The FAC came five days after counsel for the parties participated in a Local Rule 7-3 conference of counsel wherein EC's counsel specifically informed counsel for Plaintiff that Plaintiff's defenses to the enforcement of the Settlement Agreement as a whole must be decided by the arbitrator, not the Court. Further undeterred, on March 27, 2018, Plaintiff filed a Motion for Expedited Jury Trial, Pursuant to Section 4 of the Federal Arbitration Act, and for Limited Expedited Discovery. (ECF No. 16.) On March 29, 2018, the Court denied Plaintiff's motion. (ECF No. 17.)

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

law does not apply because Mr. Cohen was in New York when the allegedly defamatory statement was made. (*Id.*) No agreement to resolve this motion was reached during the conference. (*Id.*)

## III.    <u>ARGUMENT</u>

###    a.    <u>California's Anti-SLAPP Statute Applies To Plaintiff's Second Claim For Defamation</u>

California's anti-SLAPP law provides substantive immunity from suit for claims that interfere with the exercise of speech rights, including the "constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). The California Supreme Court has held that the statute should be interpreted broadly, stating that "whenever possible, [courts] should interpret the First Amendment and section 425.16 in a manner favorable to the exercise of freedom of speech, not its curtailment." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1119 (1999) (internal citation omitted).

"The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (quotation marks omitted). Its "burden-shifting mechanism" weeds out lawsuits "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887-88 (9th Cir. 2016) (internal quotation marks omitted).

Under the anti-SLAPP statute, the court undertakes a two-step process: first, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity"; and second, if the statute applies, the burden shifts to the plaintiff to demonstrate a probability of success on its claims based on competent, admissible evidence. *Equilon Enters., LLC v. Consumer Cause*, 29 Cal.4th 53, 67 (2002); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (stating that "defendant's anti-SLAPP

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1  motion should be granted when a plaintiff presents an insufficient legal basis for the

2  claims or when no evidence of sufficient substantiality exists to support a judgment

3  for the plaintiff") (internal citation and quotations omitted).

4        Although the anti-SLAPP statute falls within California's Code of Civil

5  Procedure, federal courts apply it to dispose of frivolous claims impinging upon free

6  speech rights. *See, e.g.*, *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887

7  (9th Cir. 2016) (applying California anti-SLAPP statute to libel and false light claims

8  in a diversity action by former pornographic model); *see also Clark v. Hidden Valley*

9  *Lake Ass'n*, No. 16-CV-02009-SI, 2017 WL 4922375, at *3 (N.D. Cal. Oct. 31,

10  2017) ("Although it is a state statute, a party may bring an anti-SLAPP motion to

11  strike state law claims in federal court.").

12        Plaintiff's counsel claims the California anti-SLAPP statute does not apply,

13  and that New York law should apply, because Mr. Cohen was in New York when he

14  made the statement at issue.  However, Plaintiff chose to file her claim against Mr.

15  Cohen in California.  Therefore, the procedural laws of California apply.  *See eDrop-*

16  *Off Chicago LLC v. Burke*, No. CV 12-4095 GW (FMOX), 2013 WL 12131186, at

17  *11-12 (C.D. Cal. Aug. 9, 2013) (holding that, in case brought by Illinois company,

18  "the Court believes the Second Circuit's recent *Liberty Synergistics* [*Liberty*

19  *Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013)] decision persuasively

20  demonstrates that this Court need not in fact proceed down that path [performing a

21  conflict of laws analysis].  Instead, it can conclude that, at least for Plaintiffs'

22  common law claims, there is no prospect that anything other than California's anti-

23  SLAPP statute would apply to the common law claims…. In other words, the Second

24  Circuit effectively reached the conclusion that no choice of law analysis was even

25  necessary with respect to the anti-SLAPP question.").

26        As the Second Circuit explained in the case relied upon by Judge Wu in *eDrop-*

27  *Off Chicago LLC v. Burke*, "a federal court exercising diversity jurisdiction generally

28  must apply the choice-of-law rules of the state in which the court sits." *Liberty*

-11-

1    *Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).[4]  The Second

2    Circuit concluded that "[w]e have no reason to doubt that a California state court

3    would apply California's anti-SLAPP rule as a matter of its own procedural rules,

4    even if it applied New York substantive law to the merits of the malicious prosecution

5    action."  *Id.* at 154.  The Second Circuit held that the same conclusion would apply

6    regardless of whether the anti-SLAPP statute is viewed as procedural or substantive.

7    *See id.* at 154-156; *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*,

8    143 F.Supp.3d 982, 1000 (N.D. Cal. 2015) (relying on *Liberty* and applying anti-

9    SLAPP statute to claims brought under California and Indiana law: "Accordingly, the

10    Court agrees with the Second Circuit and holds that California's anti-SLAPP law can

11    be applied to Real Action's counterclaims brought pursuant to Indiana law.").[5]

12            **b.**     **Mr. Cohen's satisfaction of the first prong cannot be disputed**

13          The first prong of Section 425.16 is satisfied if the claim arises from acts "in

14    furtherance of [Defendant's] right of petition or free speech," including "any written

15    or oral statement or writing made in a place open to the public or a public forum in

16    connection with an issue of public interest" or "any other conduct in furtherance of

17    the exercise of . . . the constitutional right of free speech in connection with a public

18    issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(3) & (4).

19

---

20       [4] Although the case had been transferred by agreement of the parties to the

21    District Court for the Eastern District of New York, it analyzed the issue as if it were
a U.S. District Court sitting in California.  *See Liberty Synergistics Inc. v. Microflo*

22    *Ltd.*, 718 F.3d at 154 ("The Supreme Court has held that, in such circumstances, the

23    governing law 'does not change following a transfer of venue under § 1404(a),
regardless of which party initiates the transfer. [citation] Here, that means that the

24    federal court in New York must pretend, for the purpose of determining the applicable

25    state rules of decision, that it is sitting in California.").

26       [5] As to the substantive law of defamation, Mr. Cohen will default to the laws of
California.  *See eDrop-Off Chicago LLC v. Burke*, 2013 WL 12131186 at *11 (stating

27    that, when common law claims are not specifically tied to the common law of any

28    particular jurisdiction, the court is justified in applying California law as the default).

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

The "public interest" requirement, "like all of section 425.16, is to be construed broadly." *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 808 (2002). "[A]n issue of public interest' . . . is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042 (2008).

An issue of public interest need not "involve questions of civic concern; social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010). Public interest attaches to "popular culture" and "real life events which have caught the popular imagination." *Dora v. Frontline Video, Inc.* 15 Cal.App.4th 536, 542-43 (1993). Further, there is no requirement that a defendant bring an anti-SLAPP motion prove the suit was intended to or actually did chill its speech. *Flatley v. Mauro*, 39 Cal.4th 299, 312 (2006).

***First***, Plaintiff alleges that Mr. Cohen "issued a public statement…with the intent that it be widely disseminated and repeated throughout the United States." (FAC ¶ 27, ECF No. 14; *see also* at ¶ 65 [alleging Mr. Cohen's statement was made with intent to be "disseminated and repeated throughout California and across the country (and the world) on television, on the radio, in newspapers, and on the Internet"]). Therefore, Plaintiff cannot refute that the statements at issue were "made in a place open to the public or a public forum."

***Second***, Plaintiff's FAC admits that the issues raised in Mr. Cohen's alleged statement relate to a public issue or an issue of public interest. The FAC asserts that Ms. Clifford's alleged intimate relationship with Mr. Trump is a matter of "public concern" (FAC, ¶ 52), and that Mr. Cohen allegedly sought to cover up that relationship in order to influence the 2016 U.S. presidential election (FAC, ¶¶ 17, 71). *See Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1451 (1999) ("Section 425.16 applies to suits involving statements made during political campaigns."); *Cabrera v. Alam*, 197 Cal.App.4th 1077 (2011) (holding that statements made at homeowners'

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

association's annual meeting and election of board of directors concerned an issue of
public interest); *Macias v. Hartwell*, 55 Cal.App.4th 669 (1997) (holding anti-
SLAPP statute applies to defamation actions arising out of statements made in a
union election); *see also Nelson v. City of Billings*, 2018 MT 36, ¶ 56, 412 P.3d
1058, 1077 (calling the underlying dispute **in this case** "a current national event").

 **Third**, Plaintiff went on *60 Minutes*, garnering a reported twenty-two million
viewers, to talk about her allegations related to the instant lawsuit, and Plaintiff's
counsel of record, Michael Avenatti, on her behalf, has appeared on no less than
thirty-six national television shows, to talk about this case. (Blakely Decl., ¶¶ 11-12,
Ex. J) Plaintiff and her counsel cannot realistically contend that Mr. Cohen's alleged
statement does not pertain to a matter in which the public has at least some interest.

 **Fourth**, Plaintiff cannot dispute that defamation claims are the type of claims
primarily targeted by the anti-SLAPP statute. *Briggs v. Eden Council for Hope &
Opportunity*, 19 Cal.4th 1106, 1125 (1999) ("The favored causes of action in SLAPP
suits are defamation, various business torts such as interference with prospective
economic advantage, nuisance and intentional infliction of emotional distress.").

 Because Plaintiff's defamation claim satisfies prong one of the anti-SLAPP
statute, Plaintiff must prove a probability of success. She cannot.

**c. Plaintiff cannot prevail on her defamation claim**

 "[P]laintiffs' burden as to the second prong of the anti-SLAPP test is akin to
that of a party opposing a motion for summary judgment." *Navellier v. Sletten*, 106
Cal.App.4th 763, 768 (2003). Therein, to establish a probability of prevailing on the
claim, the plaintiff must demonstrate that the complaint is both legally sufficient and
supported by a sufficient *prima facie* showing of facts to sustain a favorable
judgment. *Premier Medical Management Systems, Inc. v. California Ins. Guarantee*,
136 Cal.App.4th 464, 476 (2006). The burden is on the plaintiff to produce evidence
that would be admissible at trial, and cannot simply rely on her pleadings. *Roberts v.
Los Angeles County Bar Assn.*, 105 Cal.App.4th 604, 613-614 (2003). To defeat an

anti-SLAPP motion, a plaintiff must overcome substantive defenses.  *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal.App.4th 435, 447-448 (2011).

Moreover, it is immaterial that the complaint can be amended to state a valid claim.  *Premier Medical Management Systems, Inc.*, 136 Cal.App.4th at 476 ("On review of an anti-SLAPP motion to strike however, the standard is akin to that for summary judgment or judgment on the pleadings.  We must take the complaint as it is.").  If the plaintiff fails to carry that burden, the claim is "subject to be stricken under the statute."  *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002).

### 1. Plaintiff cannot establish the falsity of Mr. Cohen's statement

"Defamation is 'a false and unprivileged publication that exposes the plaintiff "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." [Citation.]' [Citations.]"  *Nygard*, *supra*, 159 Cal.App.4th at 1047-1048; *see also Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) ("The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' ").

Truth is an absolute defense to defamation.  *Washer v. Bank of America*, 87 Cal.App.2d. 501, 509 (1948); *see also Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 259 (1986) ("'The *sine qua non* of recovery for defamation ... is the existence of a falsehood.' [Citation.]").

To establish the defense of truth—*i.e.,* that the statement is not false—defendants do not have to prove the "literal truth" of the statement at issue.  *Emde v. San Joaquin County Central Labor Council*, 23 Cal.2d 146, 160 (1943).  "[S]o long as the imputation is substantially true so as to justify the 'gist or sting' of the remark" the truth defense is established.  *Id.*; *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 582 (1996).  The U.S. Supreme Court held:

> "The common law of libel takes but one approach to the
> question of falsity, regardless of the form of the

-15-

communication. [Citations.] It overlooks minor inaccuracies and concentrates upon substantial truth. As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if [he or] she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.' [Citations.] ... Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' [Citations.] Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' [Citations.]"

*Masson v. New Yorker Magazine*, 501 U.S. 496, 516–517 (1991).

Here, even assuming Mr. Cohen's statement can be interpreted as insinuating that Plaintiff is a liar, it is substantially true. As shown herein, Plaintiff herself repeatedly denied—in 2011 and twice in January 2018 (in writing) any intimate relationship with Mr. Trump. (Cohen Decl., ¶¶ 5-6, Ex. A, Ex. B.) In February 2018, she then alleged an intimate relationship. She either lied in 2011 and January 2018, or she lied in February 2018 and is lying now. Thus, even if Mr. Cohen's statement insinuates that Plaintiff is a liar, it would be a true statement: Plaintiff admittedly lied and therefore any person, including Mr. Cohen, a news reporter, or anyone else, is free to so state and cannot be sued by Plaintiff for defamation for making such a (truthful) statement. (Blakely Decl., ¶ 3, Ex. C.)

2. Mr. Cohen's statement is opinion

"[S]tatements of opinion are constitutionally protected." *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (2007). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion

1  may seem, we depend for its correction not on the conscience of judges and juries but

2  on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-

3  340 (1974).

4       The question whether challenged statements " 'convey the requisite factual

5  imputation' " is ordinarily a question of law for the court. *Summit Bank v. Rogers*,

6  206 Cal.App.4th 669, 696 (2012). In making those determinations, courts "apply a

7  totality of the circumstances test pursuant to which we consider both the language of

8  the statement itself and the context in which it is made." *Id.*; *see also Knievel v.

9  ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) ("First, we look at the statement in its

10  broad context, which includes the general tenor of the entire work, the subject of the

11  statements, the setting, and the format of the work. Next we turn to the specific

12  context and content of the statements, analyzing the extent of figurative or hyperbolic

13  language used and the reasonable expectations of the audience in that particular

14  situation. Finally, we inquire whether the statement itself is sufficiently factual to be

15  susceptible of being proved true or false.").

16       Here, no reasonable reader of Mr. Cohen's statement would perceive it to be an

17  assertion of objective fact. Rather, the statement is phrased more in terms of a

18  hypothetical, merely portraying Mr. Cohen's opinion in a heated debate. *See Baker*,

19  *supra*, 42 Cal.3d at 267 (a television reviewer printed a hypothetical conversation

20  between a station vice president [the plaintiff] and his writer/producer; the court

21  found no reasonable reader would conclude the plaintiff in fact had made the

22  statement attributed to him); *See Nicosia v. De Rooy*, 72 F.Supp.2d 1093, 1101 (N.D.

23  Cal. 1999) (holding that statements made on "personal web-site, and through Internet

24  discussion groups, as part of a heated debate concerning a bitter legal dispute" are less

25  likely viewed as statements of fact); *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th

26  Cir. 1988) (observing that "[e]ven apparent facts must be allowed as opinion when the

27  surrounding circumstances of a statement are those of a heated political debate")

28  (internal quotation marks omitted). Pursuant to the foregoing authorities, the

1  statement by Mr. Cohen is not defamatory as a matter of law, but rather is opinion.

2              3.  <u>Mr. Cohen's statement is hyperbole</u>

3       " '[R]hetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative

4  expression[s] of ... contempt,' and language used 'in a loose, figurative sense' have

5  all been accorded constitutional protection." *Ferlauto v. Hamsher*, 74 Cal.App.4th

6  1394, 1401 (1999).  "Moreover, in the context of the heated debate on the Internet,

7  readers are more likely to understand accusations of lying as figurative, hyperbolic

8  expressions." *Nicosia v. De Rooy*, *supra*, 72 F.Supp.2d at 1106 (N.D. Cal. 1999).

9  As the Ninth Circuit stated, "the term 'lying' applies to a spectrum of untruths

10  including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception'" and is

11  therefore no more than nonactionable rhetorical hyperbole.  *Underwager v. Channel*

12  *9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995).

13        In *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 280 (2001), the court held that

14  calling someone a liar was not actionable where the statement was made in a heated

15  oral exchange during a chance encounter of opponents in a political campaign.  In

16  those circumstances, the charge was one that "no reasonable person would [have]

17  take[n] literally," and was "the type of loose, figurative, or hyperbolic language that

18  is constitutionally protected." *Id.*  Similarly, in *Standing Committee v. Yagman*, 55

19  F.3d 1430, 1440 (9th Cir. 1995), the Ninth Circuit held that an attorney could not be

20  disciplined for calling a judge "dishonest" because the word was only "one in a

21  string of colorful adjectives" used in a letter that "together ... convey[ed] nothing

22  more substantive than [the attorney's] contempt." *Id.*  In context, the word could not

23  "reasonably be construed as suggesting that [the judge] had committed specific

24  illegal acts," and was thus mere "rhetorical hyperbole, incapable of being proved true

25  or false." *Id.*

26        Here, no reasonable reader of Mr. Cohen's statement would perceive it to be

27  anything other than a figurative, hyperbolic expression.  Pursuant to the foregoing

28  authorities, the statement by Mr. Cohen is not defamatory as a matter of law, but

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1  rather is hyperbole.

2          4.  The alleged defamatory statement is privileged

3          The common law right of fair comment protects "expressions of opinion about

4  public officials, scientists, artists, composers, performers, authors, and other persons

5  who place themselves or their work in the public eye."  *Brown v. Kelly Broadcasting*

6  *Co.*, 48 Cal.3d 711, 726 (1989) (internal quotes omitted).

7          Additionally, Civil Code section 47 provides that a fair and true report of a

8  public official proceeding, of anything said in the course thereof, or of a verified

9  charge or complaint made by any person to a public official, is privileged.  Cal. Civ.

10  Code § 47(d); *see Crane v. The Arizona Republic*, 972 F.2d 1511, 1518 (9th

11  Cir.1992) (holding that a closed investigation by a congressional committee qualified

12  for protection irrespective of whether it was denominated a "legislative" or "public

13  official" proceeding); *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1051

14  (1997) (holding that statements related to investigative audit by state auditor were

15  privileged).

16          Here, Plaintiff's work in the adult entertainment industry puts her in the public

17  eye.  Moreover, Mr. Cohen's statement was related to the FEC complaint and

18  therefore is privileged.

19          5.  Plaintiff cannot establish that Mr. Cohen's statement is a defamatory

20              statement about Plaintiff

21          The First Amendment requires that the statement on which a defamation claim

22  is based to be "of and concerning" the plaintiff.  *Isuzu Motors, Ltd. v. Consumers*

23  *Union of United States, Inc.*, 12 F.Supp.2d 1035, 1044 (C.D. Cal. 1998) (quoting and

24  citing *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042 (1986)).  "[T]he plaintiff

25  must effectively plead that **the statement at issue** either expressly mentions him or

26  refers to him by reasonable implication."  *Blatty*, 42 Cal.3d at 1046 (emphasis added).

27  The statement at issue is to be examined in context, considering the totality of the

28  circumstances.  *Isuzu Motors, Ltd.*, 12 F.Supp.2d at 1044.

Again, the only statement made by Mr. Cohen alleged to be defamatory are: "Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump." (FAC ¶ 65, ECF No. 14). This statement does not expressly or directly refer to Plaintiff.

Plaintiff alleges in conclusory fashion that "[b]oth on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was reasonably understood Mr. Cohen meant to convey that Ms. Clifford is a liar, someone who should not be trusted, and that her claims about her relationship with Mr. Trump is 'something [that] isn't true.'" (*Id.* ¶ 67.)

The leap from the general statement, that untrue things can hurt people, to the implication or insinuation that Plaintiff is a liar stretches too far. There is no clear statement impugning Plaintiff, and the Court should not stretch to find one. *See Smith v. Maldonado*, 72 Cal.App.4th 637, 645-646 (1999), as modified (June 23, 1999) ("Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the 'inducement').").

The entirely of Mr. Cohen's statements, which include the allegedly defamatory statement,[6] are as follows:

> In late January 2018, I received a copy of a complaint filed at the Federal Election Commission (FEC) by Common Cause. The complaint alleges that I somehow violated campaign finance laws by facilitating an excess, in-kind contribution. The allegations in the complaint are factually unsupported and without legal merit, and my counsel has submitted a response to the FEC.
>
> I am Mr. Trump's longtime special counsel and I have proudly

---

[6] Plaintiff's FAC conveniently omits reference to the beginning statements by Mr. Cohen wherein he discusses the allegations in the FEC complaint.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1   served in that role for more than a decade. In a private transaction in

2   2016, I used my own personal funds to facilitate a payment of $130,000

3   to Ms. Stephanie Clifford. Neither the Trump Organization nor the

4   Trump campaign was a party to the transaction with Ms. Clifford, and

5   neither reimbursed me for the payment, either directly or indirectly. The

6   payment to Ms. Clifford was lawful, and was not a campaign

7   contribution or a campaign expenditure by anyone.

8       I do not plan to provide any further comment on the FEC matter

9   or regarding Ms. Clifford.

10      Just because something isn't true doesn't mean that it can't cause

11  you harm or damage. I will always protect Mr. Trump.

12  (FAC Ex. 3, ECF No. 14.)

13  Mr. Cohen's statement says "something" and not "someone." Mr. Cohen does

14  not state that the FEC complaint was filed by Plaintiff or that she had anything to do

15  with it. Thus, contrary to Plaintiff's self-serving, conclusory allegations, a reasonable

16  person would not interpret Mr. Cohen's allegedly defamatory statement as impugning

17  Plaintiff, but rather referring to the complaint filed with the FEC by Common Cause.

18              6. Plaintiff has no special damages

19  The purportedly libelous statement by Mr. Cohen requires further

20  consideration of extrinsic facts, and therefore does not constitute libel *per se*. Cal.

21  Civil Code § 45a. "Defamatory language not libelous on its face is not actionable

22  unless the plaintiff alleges and proves that he has suffered special damage as a

23  proximate result thereof." *Id.* "'Special damages' means all damages that plaintiff

24  alleges and proves that he or she has suffered in respect to his or her property,

25  business, trade, profession, or occupation, including the amounts of money the

26  plaintiff alleges and proves he or she has expended as a result of the alleged libel,

27  and no other." Cal. Civ. Code § 48a(d)(2).

28  Here, Plaintiff has not alleged any special damages. Plaintiff's only allegation

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

of damages related to her defamation claim are: "harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life." (FAC ¶ 70, ECF No. 14.) Those damages are merely general damages. *See* Cal. Civ. Code § 48a(d)(1) ("'General damages' means damages for loss of reputation, shame, mortification, and hurt feelings.").

Further, Plaintiff cannot prove that she suffered special damages because the opposite is true: Plaintiff herself has stated that her pay has "quadrupled" from the publicity of the instant lawsuit and her allegations about Mr. Trump (that are the opposite of the Clifford Written Denials.) (Blakely Decl., ¶¶ 5-6, Ex. E, Ex. F.)

### 7. Mr. Cohen did not act with malice

"[W]hen the plaintiff is a public figure, he or she 'must also show the speaker made the objectionable statements with malice in its constitutional sense "'that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" [Citation.]' [Citation.]" *Nygard*, *supra*, 159 Cal.App.4th at 1048; *see also Masson*, *supra*, 501 U.S. at 510 (holding that malice must be shown by clear and convincing evidence).

"Reckless disregard" (1) encompasses a defendant's " 'high degree of awareness of ... probable falsity,' " or " 'serious doubts as to the truth' " of the publication, *Eastwood v. National Enquirer*, 123 F.3d 1249, 1250-51 (9th Cir. 1997) (quoting *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666-667 (1989)); or (2) applies if the defendant had " 'obvious reasons to doubt the veracity' " of its statements, but engaged in " 'purposeful avoidance of the truth.' " *Eastwood*, 123 F.3d at 1251 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Harte–Hanks*, 491 U.S. at 692).

Plaintiff's FAC has done nothing more than parrot the technical, legal language of malice. (*See* FAC ¶ 69, ECF No. 14: "Mr. Cohen made the statement knowing it was false or had serious doubts about the truth of the statements.") The FAC contains no factual allegations that Mr. Cohen acted with malice. Plaintiff also cannot provide

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1   any admissible evidence to show Mr. Cohen acted with malice, because if his

2   statement in February 2018 pertained to Plaintiff and her false accusations against Mr.

3   Trump, he would have relying upon the January 2018 Clifford Written Denials

4   wherein she professed the exact opposite of her current allegations in two written

5   statements put out to the world. Under these facts, Mr. Cohen cannot possible be said

6   to have acted with malice (reckless disregard for the truth) in making the statement at

7   issue—Plaintiff herself is responsible for any confusion that Mr. Cohen or anyone

8   else may have had regarding the truth or falsity of her multiple conflicting statements

9   on the issue of her alleged relationship with Mr. Trump.

10          **d.    <u>Alternatively, The Court Should Dismiss The Defamation Claim</u>**

11          The Court may dismiss a complaint that fails to state a claim upon which relief

12  can be granted. Fed. R. Civ. P., Rule 12(b)(6). In analyzing a motion to dismiss, the

13  complaint must contain "enough facts to state a claim to relief that is plausible on its

14  face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff's claim meets the plausibility

16  threshold when he "pleads factual content that allows the court to draw [a] reasonable

17  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

18  556 U.S. 662 (2009) (internal quotations omitted).

19          If the Court finds that California's anti-SLAPP statute does not somehow

20  apply, it should dismiss Plaintiff's Second Claim for Defamation because Plaintiff

21  has not pled, and will never be able to plead, a valid claim. For the reasons stated

22  herein, Plaintiff simply has no viable claim against Mr. Cohen as a matter of law.

23          Further, because any amendment would be futile, the Court should dismiss the

24  defamation claim with prejudice. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d

25  762, 766 (9th Cir. 1986).

26  //

27  //

28  //

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

## IV. **CONCLUSION**

For all of the foregoing reasons, the Court should strike the Second Claim for Defamation in the FAC or, alternatively, dismiss the claim with prejudice.

Dated: April 9, 2018                    BLAKELY LAW GROUP


                                        By:  */s/ Brent H. Blakely*
                                        ──────────────────────────
                                        BRENT H. BLAKELY
                                        *Attorneys for Defendants*
                                        *ESSENTIAL CONSULTANTS, LLC and*
                                        *MICHAEL COHEN*

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT