**Exhibit T**



Tweets **253**  Following **46**  Followers **58**  Likes **280**

Follow

## GiToni
@GitoniProd

Scripted and Non Scripted Television Production | Email: anthony@gitoni.com | Executive Producers: @MzGinaRodriguez & Anthony Kotzev

Encino, Los Angeles

gitoni.com

Joined May 2017

Tweet to    Message

Photos and videos

Tweets    **Tweets & replies**    **Media**

GiToni Retweeted

**Gina Rodriguez** ✓ @MzGinaRodriguez · May 13
Happy Mother's Day to all the amazing women in my life…I'm so…
instagram.com/p/BiuDSrFhXLi/…

💬    ⟲ 2    ♡ 6    ✉

GiToni Retweeted

**I hate this game™ -LA** @LAonthetrack1 · May 12
My team is looking for serious graphic designers… Must have fast turnarounds must be professional. only dm if you are good.

💬 1    ⟲ 10    ♡ 13    ✉

GiToni Retweeted

**Gina Rodriguez** ✓ @MzGinaRodriguez · May 11
Strollin' into the weekend like… ✌🏽 #tgif #gitoni

### Who to follow · Refresh · View all

**Reindeer In Here** @reinde…    ×
Follow

**I hate this game™ -LA** @L…    ×
Follow

**Jason Fine** @JASONFINE    ×
Follow

**Find people you know**
Import your contacts from Gmail

Connect other address books

### Trends for you · Change





# Exhibit U

# GITONI

Home
Talent
About
Contact



# **Contact Us**

## Gina Rodriguez

Executive Producer
Email: Gina@gitoni.com
Phone: (213) 434-9940

## Anthony Kotzev

Executive Producer
Anthony@gitoni.com

# Exhibit V



# Exhibit W

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:**   CV 18-02217 SJO (FFM) | **DATE:** June 19, 2018 |
| **TITLE:**     Stephanie Clifford v. Donald J. Trump et al. | |

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                       Not Present
Courtroom Clerk                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                            Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** [Docket No. 56]

This matter is before the Court on Plaintiff Stephanie Clifford's ("Ms. Clifford" or "Plaintiff") Motion for Reconsideration in Part of Order Imposing Stay ("Motion"), filed May 24, 2018. Defendants Essential Consultants, LLC ("EC"), Michael Cohen ("Mr. Cohen"), and Donald J. Trump ("Mr. Trump") (together, "Defendants") opposed the Motion ("Opposition") on June 1, 2018. Plaintiff replied ("Reply") on June 7, 2018. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 21, 2018. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** Plaintiff's Motion.

I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff moves the Court to reconsider a previous order (hereinafter, the "Order") imposing a stay of the action for ninety days. (*See generally* Mot., ECF No. 56; Order, ECF No. 53.) Defendants requested this stay on the grounds that the proceedings would severely prejudice Mr. Cohen's Fifth Amendment rights in light of an ongoing criminal investigation into Mr. Cohen and EC, an entity on behalf of which Mr. Cohen negotiated an allegedly invalid non-disclosure agreement with Ms. Clifford (the "Agreement") and arranged an allegedly illegal payment of $130,000 to Ms. Clifford.[1] (*See generally* Order; FAC, ECF No. 14.) After careful consideration, the Court concluded that the gravity of the criminal investigation and the various competing interests in this action counseled in favor of a temporary stay. (Order 9.) The Court premised its holding on:

(1) the lack of significant prejudice to Plaintiff; (2) the evidentiary disputes likely to
arise if the stay is not granted; (3) the potential resolution of several key issues in

---

[1]    The Agreement, which also names Mr. Trump as a party, restricts Plaintiff from discussing certain confidential information, which she contends is related to a former intimate relationship with Mr. Trump. (*See* Order 1.) The Court has yet to address the legality of the Agreement and payment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-02217 SJO (FFM)</u>     **DATE:** <u>June 19, 2018</u>

the context of the criminal investigation; (4) the potentially significant impact of this proceeding on the integrity of the criminal investigation; and (5) Mr. Cohen's significant interest in the preservation of his Fifth Amendment privilege.

(Order 9.) The Court issued the Order on April 27, 2018, and set a status conference for July 27, 2018. (Order 9.)

Despite the imposition of the stay, the media attention on this action– and the parties' willingness to publicly discuss its merits– has not waned. Mr. Avenatti,[2] Ms. Clifford, Mr. Trump, and at least one ostensible member of Mr. Trump's legal team have made regular public comments related to Plaintiff's claims.[3] (*See* Decl. Michael J. Avenatti in Supp. Mot. ("Avenatti Decl.") ¶¶ 2-6, Exs. 1-5, ECF No. 56-2; Decl. Brent H. Blakely in Supp. Opp'n ("Blakely Decl.") ¶¶ 2-3, Ex. A, ECF No. 57-4.)

II. <u>DISCUSSION</u>

In her Motion, Plaintiff argues that new facts and evidence exist which demonstrate that less drastic measures than a complete stay of proceedings are available that would adequately protect Mr. Cohen's Fifth Amendment rights. (Mot. 1.) In particular, Plaintiff argues that Mr. Trump and Mr. Giuliani's statements demonstrate that Defendants are fully equipped to defend Plaintiff's claims without Mr. Cohen's testimony, and that the action should proceed without discovery from Mr. Cohen. (Mot. 1.) Plaintiff thus requests that the Court reconsider its Order and permit the action to move forward despite the stay of discovery from Mr. Cohen. (Mot. 1.)

     A. <u>Legal Standards</u>

Under Federal Rule of Civil Procedure 59(e), a party may move the court to reconsider and amend a previous order. Fed. R. Civ. Proc. 59(e). The rule offers an "extraordinary remedy, to be used

---

[2] Plaintiff's counsel.

[3] Defendants object to the evidence offered by Plaintiff regarding the public statements of Mr. Trump and attorney Rudy Giuliani ("Mr. Giuliani"), arguing that this evidence is inadmissible hearsay. (*See* Evidentiary Objections, ECF No. 58.) While the Court notes that relevant statements by Mr. Trump or an authorized agent are generally admissible as statements offered against a party opponent, *see* Fed. R. Evid. 801(d)(2), the Court considers the proffered evidence only to the extent that it shows that the statements were made, and not as to the truth of those statements. *See* Fed. R. Evid. 801(c)(2) (hearsay evidence is an out-of-court statement used "to prove the truth of the matter asserted in the statement"). Because the Court is not considering the truth of the statements, Defendants' hearsay objections are **OVERRULED**. The Court makes no finding as to whether Mr. Giuliani is an authorized agent of Mr. Trump for the purpose of the hearsay exclusion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

**CASE NO.:** <u>CV 18-02217 SJO (FFM)</u>          **DATE:** <u>June 19, 2018</u>

sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). A "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (citing *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). A party may not use a motion for reconsideration to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.*

B.    <u>Analysis</u>

Plaintiff first argues that statements made by Mr. Trump and Mr. Giuliani regarding the scope of the FBI investigation "cast doubt" onto whether Mr. Cohen's Fifth Amendment rights are truly implicated in this action. (Mot. 9.) According to Plaintiff, statements by Mr. Trump and Mr. Giuliani that the investigation relates only to Mr. Cohen's business dealings[4] and that no wrongdoing has occurred[5] demonstrate that: (1) the scope of the investigation is unrelated to this lawsuit; and (2) Mr. Cohen has no valid reason to believe his testimony would be self-incriminating. (Mot. 10-11.) Plaintiff argues that this evidence demonstrates that Mr. Cohen's invocation of the privilege was simply an opportunistic attempt to delay resolution of the civil proceedings. (Mot. 11.)

As an initial matter, Mr. Trump or Mr. Giuliani's belief in Mr. Cohen's innocence has absolutely **no bearing** on Mr. Cohen's Fifth Amendment privilege. As the holder of the privilege, it is Mr. Cohen himself who must determine whether there is a reasonable "risk of incrimination" that would justify his silence. *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001). Plaintiff has provided no evidence demonstrating that Mr. Cohen's invocation of the privilege was disingenuous or unreasonable, as Mr. Cohen has refrained from making any statements on these topics.

More importantly, even if Mr. Cohen were to assert a belief that no wrongdoing has occurred, this would not divest him of his privilege. As the Supreme Court has noted, the "privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent

---

[4]  Mr. Trump reportedly stated on Fox News that the investigation "doesn't have to do with me. Michael is a business man. He's got a business. He also practices law. I would say, probably the big thing is his business. And they're looking at something having to do with his business. I have nothing to do with his business." (Avenatti Decl. Ex. 1 at 10.)

[5]  Mr. Trump stated on Fox News that "from what I see [Mr. Cohen] did absolutely nothing wrong. There were no campaign funds going into this which would have been a problem." (Avenatti Decl. Ex. 1 at 10-11.) Mr. Giuliani also stated in an interview that the payment "is going to turn out to be perfectly legal. That money was not campaign money." (Avenatti Decl. Ex. 2 at 30.)

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-02217 SJO (FFM)</u>          **DATE:** <u>June 19, 2018</u>

either to a confession of guilt or a conclusive presumption of perjury." *Slochower v. Bd. of Higher Ed. of City of New York*, 350 U.S. 551, 557 (1956). A witness "may have a reasonable fear of prosecution and yet be innocent of any wrongdoing." *Id.* Plaintiff's suggestion that a belief in wrongdoing is somehow required to assert the privilege is entirely baseless.

Plaintiff's evidence regarding the scope of the investigation is likewise deficient. First, even were the Court to consider the substance of Mr. Trump's statements, they do little if anything to clarify what, precisely, is being investigated. Mr. Trump asserts that "probably the big thing is his business" and "they're looking at something having to do with business." (Avenatti Decl. Ex. 1.) Mr. Cohen's "business" may well involve the $130,000 payment at issue in this action. Second, qualified statements made by Mr. Trump during a news broadcast do not outweigh the more substantial evidence from Mr. Cohen and government officials directly involved in the investigation. The Court previously found that even though "the exact scope and breadth of the criminal investigation remains unclear, both the government and Mr. Cohen have indicated that the subject matter of the criminal investigation, and the documents seized, in some part reference the $130,000 payment made to Ms. Clifford pursuant to the Agreement." (Order 4.) Mr. Trump's statements do not to alter this finding.

Plaintiff next argues that a complete stay is not necessary because she is willing to concede to a limited stay on discovery of Mr. Cohen that would fully protect his Fifth Amendment privilege. (Mot. 12.) Plaintiff does not adequately explain why this argument or concession could not have been put forth earlier in the litigation, asserting only that "we now know that Mr. Trump is also capable of testifying authoritatively and with personal knowledge about the Settlement Agreement and payment." (Mot. 12.) While this attempt to defeat the requirements for reconsideration is creative, Mr. Trump's knowledge of the payment and agreement has always been at issue in this action, and his ability to testify on these topics was not an element of the Court's decision. Furthermore, the new evidence does not contradict the Court's prior finding that Mr. Cohen is "the alleged mastermind behind the Agreement with the most direct knowledge of the facts and circumstances surrounding its formation" as it does not demonstrate that Mr. Trump was in any way involved with the negotiation or drafting of the Agreement or the initial payment to Ms. Clifford. (*See* Order 7.)

Beyond Plaintiff's willingness to agree to a limited stay, the only new evidence presented concerns public statements made by Mr. Trump that the Agreement "is in full force and effect and will be used in Arbitration for damages against Ms. Clifford" and was implemented "to stop the false and extortionist accusations made by her about an affair[.]" (Avenatti Decl. Ex. 3.) However, these statements are not markedly different from the previous claims of falsity or damage that the Court considered in its ruling. The Court held that while it "is undeniable that Plaintiff has a valid interest in the prompt resolution of her claims," Plaintiff "has not established that she has actually

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

**CASE NO.:** <u>CV 18-02217 SJO (FFM)</u>          **DATE:** <u>June 19, 2018</u>

been deterred from speaking, or that a delay in proceedings would cause undue prejudice."[6] (Order 7.)  This evidence does not substantially change this analysis, and the Court declines to reconsider its decision based on this evidence alone.

In closing, the Court again counsels against the unjustified use of "extraordinary" procedural mechanisms to advance the case.  Absent a compelling showing of good cause, the Court will not permit the parties to displace other litigants or violate the Court's rules.  While the Court is cognizant of the amount of media attention in this case, this alone is insufficient to create the exigency required for extraordinary relief.  If anything, the heightened scrutiny on this action requires that the Court ensure that the rules are scrupulously followed and that justice is administered properly and with due regard to the rights of all parties involved.

III.     <u>RULING</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.

---

[6]  In fact, the evidence shows that Ms. Clifford made her now famous appearance on "Saturday Night Live" following the above referenced tweet by Mr. Trump on May 3, 2018. (Blakely Decl. ¶ 2.)

# Exhibit X

Case 2:18-cv-06893-JLS-FFM Document 1-7 Filed 07/23/18 Page 15 of 40 Page ID
Case 2:18-cv-06893-JLS-FFM Document 1-9 Filed 05/07/18 Page 2 of 4 Page ID
#:254

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 06 2018

Sherri R. Carter, Executive Officer/Clerk
By: Tom G. Holmes, Deputy

1  Michael J. Avenatti, Bar No. 206929
2  AVENATTI & ASSOCIATES, APC
   mavenatti@eoalaw.com
3  520 Newport Center Drive, Suite 1400
   Newport Beach, CA 92660
4  Tel:   (949) 706-7000
   Fax:   (949) 706-7050
5
6  Attorneys for Plaintiff Stephanie Clifford

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE

10
   STEPHANIE CLIFFORD (AKA STORMY          Case No.   SC129384
11 DANIELS), an individual,

12            Plaintiff,

13                                          COMPLAINT FOR:
      vs.
14                                          (1) BREACH OF FIDUCIARY DUTY;
   KEITH M. DAVIDSON, an individual,        (2) AIDING AND ABETTING BREACH
15 MICHAEL COHEN, an individual, and DOES 1     OF FIDUCIARY DUTY
   through 10, inclusive
16
17            Defendants.

18                                          CASE MANAGEMENT CONFERENCE

19                                          12-3-18                      8:30am
20                                          Judge C. Karlan    Date      Dept N

21

22

23

24

25

26

27

28

                              COMPLAINT

Plaintiff Stephanie Clifford (aka Stormy Daniels) ("Ms. Clifford" or "Plaintiff") hereby alleges the following:

## THE PARTIES

1.      Plaintiff Ms. Clifford, an individual, is a resident of the State of Texas.

2.      Defendant Keith M. Davidson ("Mr. Davidson"), an individual, is a citizen of the State of California.

3.      Defendant Michael Cohen ("Mr. Cohen"), an individual, is a citizen of the State of New York.

4.      Mr. Davidson and Mr. Cohen together shall be referred to hereafter as "Defendants."

5.      The true names and capacities of the defendants DOES 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 10, inclusive, when the same have been ascertained.

6.      Plaintiff is also informed and believes and thereon alleges that DOES 1 to 10 were the agents, principals, and/or alter egos of Defendants, at all times herein relevant, and that they are therefore liable for the acts and omissions of Defendants.

## JURISDICTION AND VENUE

7.      Venue is appropriate in the County of Los Angeles, and this Court has personal jurisdiction over the Defendants and each of them by reason of the facts that: (a) Mr. Davidson resides in the West Judicial District; (b) Defendants have transacted and conducted substantial business in the State of California, the County of Los Angeles, and the West Judicial District; (c) many of Mr. Cohen's actions alleged herein were directed to and/or occurred in the State of California and the County of Los Angeles; and (d) many of the events giving rise to the claims at issue in this lawsuit arose in California, including within the County of Los Angeles and the West Judicial District.

-1-
**COMPLAINT**

## **FACTUAL BACKGROUND**

8.      Mr. Davidson is an attorney licensed in the State of California and was retained by Ms. Clifford as her personal attorney.  Except as noted herein, Mr. Davidson was ostensibly acting in his capacity as Ms. Clifford's attorney throughout the time period at issue in this complaint.

9.      Mr. Cohen is an attorney licensed in the State of New York.  Mr. Cohen worked as the "top attorney" at the Trump Organization from 2007 until at least 2016 and served as Mr. Donald J. Trump's personal attorney at all material times relating to the time period at issue.

10.      In his capacity as Ms. Clifford's attorney, Mr. Davidson owed Ms. Clifford all of the attendant duties and obligations that arise in connection with an attorney-client relationship, including the duty of loyalty and the duty to maintain client confidences.

11.      In his capacity as Ms. Clifford's attorney, Mr. Davidson communicated with Mr. Cohen in connection with an October 2016 agreement for which Mr. Cohen acted as an attorney for Mr. Donald Trump.

12.      By virtue of this agreement and his experience with Mr. Davidson, Mr. Cohen was well aware at all times that Mr. Davidson was Ms. Clifford's attorney and that Mr. Davidson owed Ms. Clifford a continuing duty of loyalty and was in a fiduciary relationship with Ms. Clifford.

13.      Unbeknownst to Ms. Clifford, after the agreement was signed by Ms. Clifford, Mr. Davidson continued to regularly communicate with Mr. Cohen to the detriment of Ms. Clifford.

14.      Mr. Davidson's communications with Mr. Cohen were inconsistent with his obligations to Ms. Clifford, including his obligation to maintain client confidences and his duty of loyalty to Ms. Clifford.

15.      Starting in January 2018 at the latest, Defendants Davidson and Cohen acted in concert to benefit not Ms. Clifford, but a client of Mr. Cohen's, namely Mr. Trump.

16.      Specifically, on the morning of January 17, 2018, Mr. Cohen became aware of an article published by *In Touch* magazine regarding Ms. Clifford and President Donald J. Trump.

17.      Believing this story to be detrimental to his own interests or those of his client, Mr. Cohen immediately colluded with Mr. Davidson in an attempt to use and manipulate Ms. Clifford in a manner designed to benefit Mr. Cohen and Mr. Trump.

18.     After learning of the magazine article, Mr. Cohen sent an iMessage to Mr. Davidson at or about 12:13 PM EST stating "Call me."

19.     On information and belief, Mr. Davidson and Mr. Cohen subsequently conversed on the telephone at which time Mr. Cohen hatched a plan to have Ms. Clifford appear on Mr. Sean Hannity's program to falsely deny the accuracy of the *In Touch* article.[1]

20.     Approximately two hours later, at 2:32 PM, Mr. Cohen again texted Mr. Davidson, stating "I have her tentatively scheduled for Hannity tonight. Call me after your trial." On information and belief, Mr. Cohen scheduled Ms. Clifford to appear on Mr. Hannity's program only after consultation with Mr. Trump.

21.     Mr. Davidson responded,

> She cannot don't [sic] today.  She is flying to LA tomorrow.  I'm trying to get her to commit for tomorrow. (3:21 PM)

22.     Unsatisfied with this response and in a panic, Mr. Cohen sent several more messages in a desperate attempt to convince Ms. Clifford, with the assistance of Mr. Hannity, to lie to the American public about her relationship with Mr. Trump via the *Fox News* broadcast:

        a)  At 3:23 PM, Mr. Cohen messaged "It's really important. Why?"

        b)  At 3:25 PM, Mr. Cohen messaged "Can you call me please."

        c)  At 3:45 PM, Mr. Cohen again messaged, "Please call me."

        d)  At 4:18 PM, Mr. Cohen messaged Mr. Davidson, "Anything?"

23.     At 4:30 PM, Mr. Davidson responded to Mr. Cohen stating that he was "Still trying."

24.     At 4:30, less than one minute later, Mr. Cohen responded to Mr. Davidson stating:

> This is no good.  We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one.

25.     At 4:52 PM, Mr. Cohen messaged Mr. Davidson asking "Please call me."

26.     At 5:01 PM Mr. Cohen again messaged Mr. Davidson stating "Cmon!"

---

[1] Mr. Cohen has previously stated that Ms. Clifford is a liar and that he did not believe her in 2016 or 2011 regarding her account of having a relationship with Mr. Trump. The fact that he attempted to place her on Mr. Hannity's show in January 2018 for a live interview completely undercuts his ridiculous assertions and further shows that his prior claims relating to her alleged lack of trustworthiness were entirely baseless.

27.    At 5:31 PM, Mr. Cohen apparently changed his mind and messaged Mr. Davidson that it would be better to wait until the next day, stating:

> Let's forget tonight. They [Fox News and the Trump Administration] would rather tomorrow so they can promote the heck out of the show.

28.    At 7:51 PM, Mr. Cohen messaged Mr. Davidson again, having apparently concluded that it was no longer is his own or his client's best interest for Ms. Clifford to appear:

> Keith, **The wise men all believe the story is dying and don't think it's smart for her to do any interviews.** Let her do her thing but no interviews at all with anyone. (emphasis added)

29.    The "wise men" referred to above included Mr. Trump.[2]

30.    At 7:52 PM, Mr. Davidson agreed without hesitation and responded, "100%."

31.    At 7:52 PM, Mr. Cohen messaged "Thanks pal."

32.    At 7:53 PM, Mr. Cohen added "Just no interviews or statements unless through you."

33.    At 7:54 PM, Mr. Davidson responded "Got it."

34.    The clear purpose of this exchange between Defendants was to collude and arrange a media appearance of Ms. Clifford, not for the benefit of Ms. Clifford or to ensure that Ms. Clifford truthfully told her side of the story to the media, but for Ms. Clifford to provide a false interview and lie to the American people to serve the best interests of Mr. Trump and Mr. Cohen.

35.    Indeed, once Mr. Cohen concluded that it was no longer in his own best interest, or those of his client, per the recommendation of these "wise men," including Mr. Trump, Mr. Cohen called off the appearance entirely and Mr. Davidson agreed without hesitation. In other words, Mr. Davidson abdicated his role as an advocate and fiduciary of his client Ms. Clifford, and instead elected to be a "puppet" for Mr. Cohen and Mr. Trump in order to advance their interests at the expense of Ms. Clifford.

36.    In late February 2018, Mr. Davidson became aware that Ms. Clifford was changing counsel and was preparing to publicly disclose her relationship with Mr. Trump.

---

[2] Mr. Trump has previously claimed that he knew nothing of the 2016 agreement or any issues relating to Ms. Clifford until much later in 2018. This exchange and sequence of events demonstrates that claim is false.

37.     Despite his ongoing duty of loyalty to Ms. Clifford, including the obligation to maintain client confidences, Mr. Davidson secretly tipped Mr. Cohen off to Ms. Clifford's plans. Mr. Davidson did so for the express benefit of Mr. Cohen and Mr. Trump.

38.     Armed with this information, and in an attempt to intimidate Ms. Clifford into silence, on or about February 27, 2018, Mr. Cohen initiated an arbitration proceeding against Ms. Clifford in order to obtain a temporary restraining order to silence Ms. Clifford and prevent her from publicly telling her story.

39.     Thereafter, in early March of 2018, Mr. Davidson again secretly tipped off Mr. Cohen regarding Ms. Clifford's plans, this time after learning that Ms. Clifford was on the verge of filing a lawsuit against Mr. Cohen and Mr. Trump.

40.     Specifically, on or about March 1, 2018, at 10:18 AM EST, Mr. Davidson sent a message to Mr. Cohen stating "Call me." On information and belief, it was during this call that Mr. Davidson first disclosed to Mr. Cohen that Ms. Clifford was planning to file a lawsuit against him and Mr. Trump the following week and that the lawsuit would publicly disclose the existence of Ms. Clifford's prior relationship with Mr. Trump.

41.     After learning of Ms. Clifford's plans through the improper disclosure of confidential information by Mr. Davidson, Mr. Cohen undertook efforts to meet the next day with Mrs. Melania Trump, in order to "get out in front" of the approaching lawsuit and publicity, and convince her that Ms. Clifford was a liar and not to be trusted.

42.     On March 2, 2018 at 3:12 PM, Mr. Davidson messaged Mr. Cohen asking "Busy?"

43.     At 3:21 PM, Mr. Cohen sent a message stating "15 minutes we should speak."

44.     At 3:34 PM, Mr. Davidson messaged "Call when u can."

45.     At 3:56 PM, Mr. Cohen messaged "Exactly 4 and I will have Larry Rosen on the line as well." Larry Rosen refers to Lawrence S. Rosen, an attorney who works with Mr. Cohen.

46.     At 3:57 PM, Mr. Davidson responded "Great."

47.     At 4:14 PM, Mr. Davidson again messaged Mr. Cohen asking, "U calling?"

48.    At 4:15 PM, Mr. Cohen responded, "With flotus. Give me a minute."[3]

49.    Upon information and belief, when Mr. Cohen met with Mrs. Trump on March 2, 2018 at Mar-a-Lago, Mr. Cohen did not disclose to Mrs. Trump that not only was Ms. Clifford far from being a liar, Mr. Cohen had begged her to appear on Mr. Hannity's show weeks earlier. Nor did he disclose that the "wise men", including Mr. Trump, had decided at the time to let the story "die."

50.    The disclosure of any information to Mr. Cohen regarding Ms. Clifford's contemplated action was a clear violation of Mr. Davidson's duty of loyalty and obligation to maintain Ms. Clifford's client confidences. These duties continued regardless of whether Mr. Davidson was in fact still Ms. Clifford's attorney. Again, Mr. Davidson's actions demonstrate he was more interested in being Mr. Cohen and Mr. Trump's "puppet" and advancing their interests instead of advancing the interests of his client consistent with his obligations under the law.

51.    Mr. Cohen, as an attorney with knowledge of Mr. Davidson's role as Ms. Clifford's counsel, knew at all times Mr. Davidson could not engage in the conduct at issue and yet colluded with him.

52.    To compound the numerous violations of attorney ethics, Mr. Cohen recorded phone calls that he had with Mr. Davidson wherein Mr. Davidson disclosed client confidences and other confidential information relating to Ms. Clifford.

53.    In furtherance of his wrongful conduct in relation to Mr. Davidson, despite request, Mr. Cohen has refused to provide Ms. Clifford with those recorded conversations that include her attorney-client privileged information.

54.    Since the termination of her attorney-client relationship with Mr. Davidson, Ms. Clifford has sought to recover from Mr. Davidson the entirety of her client file, which is, by law, her personal property. Indeed, on no fewer than five separate occasions over the last three months, Ms. Clifford has demanded the entirety of her client file, together with all text messages and similar correspondence relating to her, especially those that involve Mr. Cohen.

---

[3] The text messages set forth in this complaint are attached hereto as Exhibit A. Mr. Davidson has refused to provide copies of any text messages between him and Mr. Cohen for the time period after March 2. On information and belief, this is because said text messages further evidence his numerous breaches of fiduciary duty to Ms. Clifford as well as Mr. Cohen's complicit conduct.

55.     Pursuant to Rule 3-700 of the Rules of the State Bar of California, Ms. Clifford's client file includes any and all correspondence Mr. Davidson engaged in regarding his representation of Ms. Clifford.  This includes but is not limited to text messages and other similar correspondence.

56.     In spite of Mr. Davidson's clear obligation to return Ms. Clifford's property, Mr. Davidson has not returned to Ms. Clifford the entirety of her client file.

57.     Mr. Davidson has also not provided Ms. Clifford with all text messages and other correspondence regarding Ms. Clifford, including those that involve Mr. Cohen.

58.     Mr. Davidson's failure to provide the information demanded has prejudiced Ms. Clifford in numerous ways including, but not limited to, by purposely hampering her ability to review documents and cooperate with government inquiries regarding Mr. Cohen, Mr. Trump, and Mr. Davidson.  Indeed, Ms. Clifford has needed Mr. Davidson to disclose to her the ***entirety of the information requested*** for months and yet he has purposely delayed and obstructed her efforts.  On information and belief, he has done so in order to protect himself, Mr. Cohen and Mr. Trump, all at the detriment of Ms. Clifford.

59.     Mr. Davidson's refusal to provide the information requested is even more outrageous considering his recent conduct vis-à-vis the *Wall Street Journal*.  On information and belief, at the same time he was obstructing Ms. Clifford's efforts to obtain the information, Mr. Davidson, through his counsel, undertook efforts to plant a patently false story in the *Wall Street Journal* stating that Ms. Clifford was not being cooperative with investigators from the Southern District of New York looking into business dealings of Mr. Cohen.  This conduct is yet further evidence of Mr. Davidson's breach of fiduciary duty directed at Ms. Clifford.

60.     Ms. Clifford has been damaged in this and other ways, including having to incur substantial costs and fees, in an amount to be proven at trial, but which are well in excess of $100,000.

/ / /

/ / /

**COMPLAINT**

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendant Davidson)

61.     Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 60 above as if fully set forth herein.

62.     Mr. Davidson, by virtue of his role as Ms. Clifford's attorney, owed Ms. Clifford fiduciary duties at all material times.

63.     These duties include, but are not limited to, a duty of loyalty and a duty to maintain client confidences.

64.     These duties exist both during his representation of Ms. Clifford and continue thereafter.

65.     Mr. Davidson breached his fiduciary duty to Ms. Clifford in numerous ways detailed herein.

66.     By way of example, in the year 2018, Mr. Davidson engaged in numerous communications and concerted action with Mr. Cohen, the purpose of which was not to benefit Ms. Clifford, but to benefit Mr. Cohen and Mr. Trump.

67.     As alleged herein, in or about January of 2018, Defendants discussed and attempted to arrange at least one media appearance on Mr. Hannity's *Fox News* show, the purpose of which was not to allow Ms. Clifford to truthfully tell her story, but for her appearance to benefit Mr. Trump by controlling the media coverage resulting from an *In Touch* magazine article that had just been released.

68.     Mr. Davidson never obtained Ms. Clifford's permission or authorization to engage in these discussions or disclose any information to Mr. Cohen.

69.     Mr. Davidson's actions were designed to benefit Mr. Cohen and Mr. Trump, not Ms. Clifford, and thus Mr. Davidson breached his duty of loyalty.

70.     Mr. Davidson also breached his duties to Ms. Clifford by disclosing confidential information regarding Ms. Clifford's anticipated legal strategy to Mr. Cohen in or about February and March of 2018.

71.      Mr. Davidson further breached his duties to Ms. Clifford by refusing to return to her the entirety of her client file, as well as all correspondence relating to her, including all text messages with Mr. Cohen.

72.      Ms. Clifford has been damaged by Mr. Davidson's various breaches in an amount to be proven at trial, but which exceeds $100,000.

73.      In engaging in this conduct, Mr. Davidson knew he was violating his duties and did so anyway and acted with malice, oppression, or fraud, and is thus also responsible for punitive damages in an amount to be proven at trial according to proof.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Defendant Cohen)

74.      Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 73 above as if fully set forth herein.

75.      By virtue of his status as an attorney and his knowledge that Mr. Davidson was Ms. Clifford's attorney, Mr. Cohen had actual knowledge of Mr. Davidson's fiduciary duties owed to Ms. Clifford.

76.      In spite of this, Mr. Cohen made a conscious decision to participate in the wrongful conduct alleged herein and Mr. Davidson's breach of his duties to Ms. Clifford.

77.      Specifically, as alleged herein, Mr. Cohen provided substantial assistance to Mr. Davidson and in fact engaged in concerted activity with Mr. Davidson by attempting to arrange for the media appearance of Ms. Clifford on Mr. Hannity's show to benefit Mr. Trump, not Ms. Clifford.

78.      Mr. Cohen knew that this conduct was likely not in Ms. Clifford's best interest and thus constituted a breach of fiduciary duty on Mr. Davidson's part.  Nevertheless, Mr. Cohen provided substantial assistance and attempted to arrange the appearance.

79.      Mr. Cohen further communicated with Mr. Davidson and encouraged Mr. Davidson to disclose confidential information pertaining to Ms. Clifford's legal strategy – information that, as an attorney, he knew Mr. Davidson should keep confidential.  Mr. Cohen then proceeded to record this

information and retain the recordings, all as part of his substantial assistance aimed at aiding and abetting Mr. Davidson's breaches of fiduciary duty.

80.    Mr. Cohen used this information for his own benefit and Mr. Trump's benefit by attempting to initiate an arbitration proceeding against Ms. Clifford and force her to remain silent.  He further used this information in an effort to "get out in front" of the story and deceive Mrs. Trump.

81.    Ms. Clifford has been damaged by Mr. Cohen's misconduct in an amount to be proven at trial, but which exceeds $100,000.

82.    In engaging in this conduct, Mr. Cohen acted with malice, oppression, or fraud, and is thus also responsible for punitive damages in an amount to be proven at trial according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows

### ON THE FIRST CAUSE OF ACTION

1.    For damages in an amount to be proven at trial;

2.    For turnover of Ms. Clifford's entire client file and of all text messages and correspondence relating to her;

3.    For punitive damages;

4.    For pre-judgment and post-judgment interest;

5.    For costs of suit, including attorney's fees; and

6.    For such other and further relief as the Court may deem just and proper.

### ON THE SECOND CAUSE OF ACTION

1.    For damages in an amount to be proven at trial;

2.    For punitive damages;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit, including attorney's fees; and

5.    For such other and further relief as the Court may deem just and proper.

**COMPLAINT**

Case 2:18-cv-06893-JLS-FFM Document 1-1 Filed 07/23/18 Page 26 of 40 Page ID
#:265
Case 2:18-cv-05052-JLS Document 1 Filed 06/06/18 Page 13 of 72 Page ID #:13

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes so triable.

DATED:  June 6, 2018                                AVENATTI & ASSOCIATES, APC


                                                    _____
                                                    MICHAEL J. AVENATTI
                                                    Attorneys for Plaintiff

**COMPLAINT**

Case 2:18-cv-06893-JLS-FFM   Document 1-17   Filed 07/23/18   Page 27 of 40   Page ID
Case 2:18-cv-05092   Document 1-1   Filed 06/07/18   Page 14 of 17   Page ID #:20
#:266

EXHIBIT A

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner) A5 +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Call me | 1/17/2018 12:13:09 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | I have her tentatively scheduled for Hannity tonight. Call me after your trial | 1/17/2018 2:32:23 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | She cannot don't today. She is flying to LA tomorrow. I'm trying to get her to commit for tomorrow | 1/17/2018 3:21:27 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | It's really important. Why? | 1/17/2018 3:23:09 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Can you call me please | 1/17/2018 3:25:34 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Please call me | 1/17/2018 3:45:38 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Anything? | 1/17/2018 4:18:57 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Still trying | 1/17/2018 4:30:06 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | This is no good. We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one | 1/17/2018 4:30:43 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Please call me | 1/17/2018 4:52:42 PM(UTC-5) |

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Cmon! | 1/17/2018 5:01:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Let's forget tonight. They would rather tomorrow so they can promote the heck out of the show | 1/17/2018 5:31:44 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Keith,<br>The wise men all believe the story is dying and don't think it's smart for her to do any interviews. Let her do her thing but no interviews at all with anyone | 1/17/2018 7:51:43 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | 100% | 1/17/2018 7:52:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Thanks pal | 1/17/2018 7:52:44 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Just no interviews or statements unless through you | 1/17/2018 7:53:08 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Got it | 1/17/2018 7:54:45 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Call me | 3/1/2018 10:18:31 AM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Busy? | 3/2/2018 3:12:57 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | 15 minutes we should speak | 3/2/2018 3:21:56 PM(UTC-5) |

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Call when u can | 3/2/2018 3:34:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Exactly 4 and I will have Larry Rosen on the line as well | 3/2/2018 3:56:16 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Great | 3/2/2018 3:57:59 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | U calling? | 3/2/2018 4:14:54 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | With flotus. Give me a minute | 3/2/2018 4:15:13 PM(UTC-5) |

# Exhibit Y

BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
Email: BBlakely@BlakelyLawGroup.com

Attorneys for Defendant
MICHAEL COHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD (AKA STORMY DANIELS), an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH M. DAVIDSON, an individual, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-05052<br><br>**NOTICE OF RELATED CASE**<br><br>**[LOCAL CIVIL RULE 83-1.3]**<br><br>Complaint Filed: June 6, 2018 |

Pursuant to Local Rule 83-1.3, Defendant Michael Cohen ("Mr. Cohen") informs the Court of the following previously-filed action in this District that is related to this action: *Stephanie Clifford v. Donald J. Trump, Essential Consultants, LLC, Michael Cohen, et al.*, Case No. 2:18-CV-02217-SJO-FFM (the "Related Case"). The Related Case is related to this action because both cases "(a) arise from the same or a closely related transaction, happening, or event"; "(b) call for determination of the same or substantially related or similar questions of law and fact;" and "(c) for other reasons would entail substantial duplication of labor if heard by different judges." *See* L.R. 83-1.3.

## BRIEF FACTUAL STATEMENT

**A.    The Related Case**

In the Related Case, Plaintiff seeks a declaration that a written "Confidential Settlement Agreement and Mutual Release" (the "Settlement Agreement") signed by Plaintiff and defendant Essential Consultants, LLC ("EC") was not "formed…, or in the alternative, …is void, invalid, or otherwise unenforceable." (**Exhibit 1**, First Amended Complaint ("FAC"), Prayer for Relief, p. 17.) In the FAC, Ms. Clifford alleges that she "was represented by counsel in California whose office is located in Beverly Hills, California" in connection with the Settlement Agreement. (*Id.*, at ¶ 17.) That counsel is Keith Davidson, a defendant in this action. Mr. Cohen, the other named defendant in this action (and defendant in the Related Case), signed the Settlement Agreement on behalf of EC. Plaintiff alleges that Donald J. Trump, a defendant in the Related Case, was also party to the Settlement Agreement, along with Plaintiff and EC. (*Id.*, at ¶ 18.)

**B.    This Action**

In this action, Plaintiff asserts two causes of action for, (1) Breach of Fiduciary Duty against Mr. Davidson and (2) Aiding and Abetting Breach of Fiduciary Duty against Mr. Cohen, arising out of Mr. Davidson's representation of Plaintiff in connection with the Settlement Agreement.

1    Plaintiff alleges: "In his capacity as Ms. Clifford's attorney, Mr. Davidson

2 communicated with Mr. Cohen in connection with [the Settlement Agreement] for

3 which Mr. Cohen acted as an attorney for Mr. Donald Trump." (**Exhibit 2**,

4 Complaint, ¶ 11.) Plaintiff further alleges: "By virtue of [the Settlement Agreement]

5 and his experience with Mr. Davidson, Mr. Cohen was well aware at all times that

6 Mr. Davidson was Ms. Clifford's attorney and that Mr. Davidson owed Ms. Clifford a

7 continuing duty of loyalty and was in a fiduciary relationship with Ms. Clifford." (*Id*.

8 at ¶ 12.) Plaintiff further alleges: "Unbeknownst to Ms. Clifford, after [the

9 Settlement Agreement] was signed by Ms. Clifford, Mr. Davidson continued to

10 regularly communicate with Mr. Cohen to the detriment of Ms. Clifford." (*Id*. at ¶

11 13.)

12    Plaintiff asserts that Mr. Davidson breached his fiduciary duties by engaging

13 "in numerous communications and concerted action with Mr. Cohen, the purpose of

14 which was not to benefit Ms. Clifford, but to benefit Mr. Cohen and Mr. Trump."

15 (Exhibit 2, ¶ 66.) Those alleged communications pertain directly to the Related Case.

16 For example, Plaintiff alleges that Mr. Davidson "breached his duties to Ms. Clifford

17 by disclosing confidential information regarding Ms. Clifford's anticipated legal

18 strategy [in the Related Case] to Mr. Cohen…" (*Id*., at ¶ 70.) More specifically,

19 Plaintiff alleges that "Mr. Davidson first disclosed to Mr. Cohen that Ms. Clifford was

20 planning to file [the Related Case] against him and Mr. Trump the following week

21 and that the lawsuit would publicly disclose the existence of Ms. Clifford's prior

22 relationship with Mr. Trump." (*Id*. at ¶ 40.)

23    Thus, the Related Case and this action are related under Local Rule 83-1.3.

24 Dated: June 7, 2018              BLAKELY LAW GROUP

25

26                         By:  */s/ Brent H. Blakely*

27                              BRENT H. BLAKELY
                               Attorneys for Defendant
28                              MICHAEL COHEN

# Exhibit Z

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Stephanie Clifford | CASE NUMBER |
|---|---|
| | 2:18-cv-05052 RSWL(ASx) |
| v.       PLAINTIFF(S) | |
| Keith Davidson et al | **ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 16-05 (RELATED CASES)** |
| DEFENDANT(S). | |

### CONSENT

I hereby consent to the transfer of the above-entitled case to my calendar, pursuant to General Order 16-05.

_____       _____

6/15/11

Date             S. James Otero
            United States District Judge

### DECLINATION

I hereby decline to transfer the above-entitled case to my calendar for the reasons set forth:

_____

_____

_____

_____

_____       _____

Date             United States District Judge

### REASON FOR TRANSFER AS INDICATED BY COUNSEL

Case   2:18-cv-02217 SJO(FFMx)   and the present case:

☑ A.    Arise from the same or closely related transactions, happenings or events; or

☑ B.    Call for determination of the same or substantially related or similar questions of law and fact; or

☑ C.    For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.    Involve one or more defendants from the criminal case in common, and would entail substantial duplication of labor if heard by different judges (applicable only on civil forfeiture action).

### NOTICE TO COUNSEL FROM CLERK

Pursuant to the above transfer, any discovery matters that are or may be referred to a Magistrate Judge are hereby transferred from Magistrate Judge _____ Sagar _____ to Magistrate Judge _____ Mumm _____ .

On all documents subsequently filed in this case, please substitute the initials   SJO (FFMx)   after the case number in place of the initials of the prior judge, so that the case number will read   2:18-cv-05052 SJO(FFMx)   . This is very important because the documents are routed to the assigned judges by means of these initials

cc: ☐ *Previous Judge*     ☐ *Statistics Clerk*

CV-34 (10/16)           **ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 16-05 (Related Cases)**

# Exhibit AA

**CONFIDENTIAL PROCEEDING**

Honorable Jacqueline A. Connor (Ret.)
ADR SERVICES, INC.
1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067
(310) 201-0010 PH
(310) 201-0016 FAX
Emergency Arbitrator

## ADR SERVICES, INC.

## IN RE THE MATTER OF THE ARBITRATION BETWEEN

EC, LLC,                                    )     ADRS Case No. 18-1118-JAC
                                            )
              Claimant,                     )     **TEMPORARY RESTRAINING ORDER**
                                            )
    v.                                      )
                                            )
PEGGY PETERSON,                             )
                                            )
              Respondent.                   )
_____        )

By written emergency application with exhibits pursuant to Rule 24 of the ADR Services, Inc. Arbitration Rules, Claimant EC, LLC has requested an emergency order precluding Respondent Peggy Peterson ("Ms. Peterson") from (i) disclosing or inducing, promoting or actively inspiring anyone to disclose Confidential Information, as defined in the "Confidential Settlement Agreement and Mutual Release: Assignment of Copyright and Non-Disparagement Agreement," effective October 28, 2016 (the "Settlement Agreement") whether in the media, court filings, or otherwise, (ii) disclosing or inducing, promoting, or actively inspiring anyone to disclose the fact of the commencement and pendency of this Arbitration and any details relating thereto, including, but not limited, to the existence of this Emergency Application and any emergency order issued in response to that application (the "Emergency Application").

ADR Services, Inc., has appointed the undersigned, Honorable Jacqueline A. Connor (Ret.), as the Emergency Arbitrator to hear the emergency application. Having reviewed the emergency application, including the parties' Settlement Agreement and other exhibits, the

1

Emergency Arbitrator finds that the Settlement Agreement expressly authorizes issuance of an *ex parte* restraining order without the requirement of advance notice to Ms. Peterson in the event she has breached or threatened to breach the confidentiality obligations expressly agreed upon in the Settlement Agreement.

Upon due consideration, the Emergency Arbitrator issued a tentative ruling and order, which was accepted on submission without oral argument by Claimant and Claimant's counsel.

NOW, THEREFORE, upon Claimant's application, it is hereby ORDERED that the Emergency Application is GRANTED, in part, as follows:

1. Pending further determination by the selected or appointed Arbitrator(s), Ms. Peterson is precluded from disclosing or disclosing or inducing, promoting or actively inspiring anyone to disclose Confidential Information, as defined in the "Confidential Settlement Agreement and Mutual Release: Assignment of Copyright and Non-Disparagement Agreement," effective October 28, 2016 (the "Settlement Agreement") whether in the media, court filings, or otherwise; and

2. Pending further determination by the selected or appointed Arbitrator(s), Ms. Peterson is precluded from disclosing or inducing, promoting, or actively inspiring anyone to disclose the fact of the commencement and pendency of this Arbitration and any details relating thereto, together with all proceedings and papers filed herein including, but not limited, to EC's Emergency Application and this Order; and

3. The foregoing shall not apply if, in accordance with Paragraph 4.4.1 of the Settlement Agreement, Ms. Peterson is compelled to disclose Confidential Information to another person or entity by valid legal process, including without limitation, a subpoena duces tecum or similar legal compulsion. Ms. Peterson shall not make any such disclosure unless she has first provided DD with notice of such order or legal process not less than ten (10) days in advance of the required date of disclosure pursuant to the Written Notice provisions set forth in the parties' Settlement Agreement, providing DD with an opportunity to intervene and with full and complete cooperation should such disclosure be opposed. If the valid legal process can be stopped by Ms. Peterson's consent or at her behest, Ms. Peterson shall use best efforts to avoid the disclosure of the Confidential Information.

The Emergency Arbitrator retains the power to modify or reconsider this interim order until the appointment of an arbitrator or arbitration panel for consideration of the entire matter. (ADRS Rule 24.)

**IT IS SO ORDERED**.

DATED: February 27, 2018

Hon. Jacqueline A. Connor (Ret.)
Emergency Arbitrator

3