# Exhibit 10

1  BLAKELY LAW GROUP
2  BRENT H. BLAKELY (CA Bar No. 157292)
   1334 Parkview Avenue, Suite 280
3  Manhattan Beach, California 90266
4  Telephone:   (310) 546-7400
   Facsimile:   (310) 546-7401
5  Email:       BBlakely@BlakelyLawGroup.com

6
   Attorneys for Defendants
7  ESSENTIAL CONSULTANTS, LLC and
   MICHAEL COHEN
8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12 STEPHANIE CLIFFORD a.k.a.              Case No. 2:18-CV-02217-SJO-FFM
   STORMY DANIELS a.k.a. PEGGY
13 PETERSON, an individual,               **DEFENDANT MICHAEL COHEN'S**
                                          **NOTICE OF MOTION AND**
14                                        **SPECIAL MOTION TO STRIKE**
              Plaintiff,                  **(CAL. CODE CIV. PROC. § 425.16)**
15                                        **OR, ALTERNATIVELY, TO**
16        v.                              **DISMISS (FRCP 12(b)(6))**
                                          **PLAINTIFF'S FIRST AMENDED**
17 DONALD J. TRUMP a.k.a. DAVID           **COMPLAINT; MEMORANDUM OF**
   DENNISON, an individual,              **POINTS AND AUTHORITIES**
18 ESSENTIAL CONSULTANTS, LLC, a
19 Delaware Limited Liability Company,    [Declarations of Michael D. Cohen and
   MICHAEL COHEN, an individual, and     Brent H. Blakely Filed Concurrently]
20 DOES 1 through 10, inclusive,
21                                        Assigned for All Purposes to the
              Defendants.                 Hon. S. James Otero
22
23                                        **Date:        May 7, 2018**
24                                        **Time:        10:00 a.m.**
                                          **Location:    350 West 1st Street**
25                                        **             Courtroom 10C, 10th Floor**
26                                        **             Los Angeles, CA 90012**
27                                        Action Filed: March 6, 2018
28

─────────────────────────────────────────────────

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 7, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendant Michael Cohen will and hereby does move pursuant to California Code of Civil Procedure § 425.16 for an order striking the Second Claim for Defamation in the First Amended Complaint of Plaintiff Stephanie Clifford ("Clifford" or "Plaintiff") filed on or about March 26, 2018.

Mr. Cohen brings this Motion on the grounds that Plaintiff's claim arises out of actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights, and (2) relate to matters of public interest. Thus, the anti-SLAPP statute applies, and Plaintiff must prove by admissible evidence that she will probably prevail on her claim.

As set forth herein, Plaintiff cannot meet this burden. Accordingly, Plaintiff's Second Claim for Defamation should be struck, and Mr. Cohen should be awarded his attorneys' fees and costs incurred in defending against this meritless claim.[1]

Alternatively, Mr. Cohen will and hereby does move for an order dismissing the Second Claim for Defamation in the First Amended Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6).

This Motion shall be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Michael D. Cohen and Brent H. Blakely filed concurrently herewith (with exhibits), the anticipated reply papers, all materials that may be properly considered in connection with this motion, and oral argument at the hearing. This motion is made following

---

[1] The SLAPP statute mandates that a prevailing movant on a Special Motion to Strike "shall" recover its attorneys' fees and costs. *See* Cal. Code Civ. Proc. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001). If the Court grants this Motion, Mr. Cohen will file a separate motion for attorneys' fees and costs.

the conference of counsel pursuant to L.R. 7-3, which took place on April 2, 2018.

Dated: April 9, 2018          BLAKELY LAW GROUP

By:  */s/ Brent H. Blakely*
      BRENT H. BLAKELY
      ***Attorneys for Defendants***
      ***ESSENTIAL CONSULTANTS, LLC and***
      ***MICHAEL COHEN***

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................ 4

II.    FACTUAL AND PROCEDURAL BACKGROUND .................................. 6

       a.     Summary of relevant allegations ................................. 6

       b.     Summary of proceedings ........................................ 9

III.   ARGUMENT ..................................................................10

       a.     California's Anti-SLAPP Statute Applies To Plaintiff's Second
              Claim For Defamation ......................................... 10

       b.     Mr. Cohen's satisfaction of the first prong cannot be disputed ........... 12

       c.     Plaintiff cannot prevail on her defamation claim .............................. 14

              1.     Plaintiff cannot establish the falsity of Mr. Cohen's
                     statement .......................................................... 15

              2.     Mr. Cohen's statement is opinion ............................. 16

              3.     Mr. Cohen's statement is hyperbole ......................... 18

              4.     The alleged defamatory statement is privileged ...................... 19

              5.     Plaintiff cannot establish that Mr. Cohen's statement is a
                     defamatory statement about Plaintiff ......................... 19

              6.     Plaintiff has no special damages ............................. 21

              7.     Mr. Cohen did not act with malice ......................... 22

       d.     Alternatively, The Court Should Dismiss The Defamation Claim ...... 23

IV.    CONCLUSION ................................................................24

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

## **TABLE OF AUTHORITIES**

### **CASES**

*Baker v. Los Angeles Herald Examiner*,
    42 Cal.3d 254 (1986) ................................................................... 19

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ..................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................... 27

*Braun v. Chronicle Publ'g Co.*,
    52 Cal.App.4th 1036 (1997) ......................................................... 23

*Briggs v. Eden Council for Hope and Opportunity*,
    19 Cal.4th 1106 (1999) ...........................................................14, 18

*Brown v. Kelly Broadcasting Co.*,
    48 Cal.3d 711 (1989) ................................................................... 23

*Cabrera v. Alam*,
    197 Cal.App.4th 1077 (2011) ...................................................... 17

*Campanelli v. Regents of University of California*,
    44 Cal.App.4th 572 (1996) ........................................................... 19

*Clark v. Hidden Valley Lake Ass'n*,
    No. 16-CV-02009-SI, 2017 WL 4922375 (N.D. Cal. Oct. 31, 2017)............ 15

*Conroy v. Spitzer*,
    70 Cal.App.4th 1446 (1999) ......................................................... 17

*Crane v. The Arizona Republic*,
    972 F.2d 1511 (9th Cir.1992) ....................................................... 23

*Dora v. Frontline Video, Inc.*
    15 Cal.App.4th 536 (1993) ........................................................... 17

*Eastwood v. National Enquirer*,
    123 F.3d 1249 (9th Cir. 1997) ..................................................... 26

*eDrop-Off Chicago LLC v. Burke*,
    No. CV 12-4095 GW (FMOx), 2013 WL 12131186 (C.D. Cal. 2013)......... 15

*Emde v. San Joaquin County Central Labor Council*,
    23 Cal.2d 146 (1943) ................................................................................. 19

*Equilon Enters., LLC v. Consumer Cause*,
    29 Cal.4th 53 (2002) ................................................................................. 14

*Ferlauto v. Hamsher*,
    74 Cal.App.4th 1394 (1999)...................................................................... 22

*Flatley v. Mauro*,
    39 Cal.4th 299 (2006) ............................................................................... 17

*Gabrielson v. Montgomery Ward & Co.*,
    785 F.2d 762 (9th Cir. 1986)..................................................................... 27

*Gerbosi v. Gaims, Weil, West & Epstein, LLP*,
    193 Cal.App.4th 435 (2011)...................................................................... 19

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).................................................................................. 21

*Harte–Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989).................................................................................. 26

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010)..................................................................... 17

*Isuzu Motors, Ltd. v. Consumers Union of United States, Inc.*,
    12 F.Supp.2d 1035 (C.D. Cal. 1998)......................................................... 23

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)................................................................... 21

*Leidholdt v. L.F.P., Inc.*,
    860 F.2d 890 (9th Cir. 1988)..................................................................... 21

*Liberty Synergistics Inc. v. Microflo Ltd.*,
    718 F.3d 138 (2d Cir. 2013).................................................................15, 16

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*Macias v. Hartwell*,
    55 Cal.App.4th 669 (1997)........................................................................ 18

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016)................................................................14, 15

*Masson v. New Yorker Magazine*,
    501 U.S. 496 (1991).................................................................................. 20

*McGarry v. University of San Diego*,
    154 Cal.App.4th 97 (2007)....................................................................... 20

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001).................................................................... 14

*Navellier v. Sletten*,
    106 Cal.App.4th 763 (2003)................................................................18, 19

*Nicosia v. De Rooy*,
    72 F.Supp.2d 1093 (N.D. Cal. 1999)....................................................21, 22

*Nygard, Inc. v. Uusi–Kerttula*,
    159 Cal.App.4th 1027 (2008)..........................................................17, 19, 26

*Premier Medical Management Systems, Inc. v. California Ins. Guarantee*,
    136 Cal.App.4th 464 (2006)................................................................18, 19

*Roberts v. Los Angeles County Bar Assn.*,
    105 Cal.App.4th 604 (2003)..................................................................... 18

*Rosenaur v. Scherer*,
    88 Cal.App.4th 260 (2001)....................................................................... 22

*Seelig v. Infinity Broad. Corp.*,
    97 Cal.App.4th 798 (2002)....................................................................... 17

*Smith v. Maldonado*,
    72 Cal.App.4th 637 (1999)....................................................................... 24

*Standing Committee v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995).................................................................... 22

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*Summit Bank v. Rogers*,
206 Cal.App.4th 669 (2012)........................................................................... 21

*Taus v. Loftus*,
40 Cal.4th 683 (2007) .................................................................................... 19

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995)............................................................................ 22

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
143 F.Supp.3d 982 (N.D. Cal. 2015)............................................................. 16

*Washer v. Bank of America*,
87 Cal.App.2d. 501 (1948) ............................................................................ 19

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Stephanie Clifford's ("Clifford" or "Plaintiff") Second Claim for Defamation in the First Amended Complaint ("FAC") against Defendant Michael Cohen is completely without merit and appears to be a desperate attempt by Plaintiff to keep at least a portion of this case out of arbitration.

Plaintiff's claim for defamation arises out of actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights, and (2) relate to matters of public interest.  Thus, the California anti-SLAPP statute applies, and Plaintiff must prove by admissible evidence that she likely will prevail on her claim.

Plaintiff cannot meet this burden.  The only alleged defamatory statement made by Mr. Cohen, and purportedly about Plaintiff, is: "Just because something isn't true doesn't mean that it can't cause you harm or damage.  I will always protect Mr. Trump."  Plaintiff alleges that this statement is actionable because it implies that she lied about having an intimate relationship with defendant Donald Trump.

However, Plaintiff's defamation claim fails for at least the following reasons:

***First***, Mr. Cohen's statement is **substantially true**.  As shown herein, Plaintiff herself has repeatedly and specifically denied having any intimate relationship with Mr. Trump, on at least three occasions:  at least once in 2011, and at least twice in January 2018 (the month prior to Mr. Cohen's allegedly defamatory statement) in written public statements that she signed.  (Declaration of Michael D. Cohen ("Cohen Decl."), ¶¶ 5-6, Ex. A, 1/10/18 Denial; Ex. B, 1/30/18 Denial.)  Plaintiff later changed her story, and now claims she did have an intimate relationship with Mr. Trump.  Thus, Plaintiff either lied then or is lying now.  Accordingly, even if Mr. Cohen's statement did insinuate that Plaintiff is a liar, she has admitted that she lied, and thus, any such implication by Mr. Cohen would be entirely true.  (*Id*.; Declaration of Brent Blakely ("Blakely Decl."), ¶ 3, Ex. C, Excerpt From *60 Minutes* Interview.)  Stated another way, because Plaintiff has repeatedly lied to the world

about whether or not she had an intimate relationship with Mr. Trump, she cannot possibly complain that others, whether Mr. Cohen, or news reporters, or others, call into question Plaintiff's credibility, including any truthful statements that she has made untruthful statements to the American people.

*Second*, Mr. Cohen's statement that untrue things can hurt a person is **opinion**, not a verifiable statement of fact.

*Third*, Mr. Cohen's statement is **hyperbole**.

*Fourth*, Mr. Cohen's statement is **privileged** under the common law right of fair comment and statutory fair reporting privilege.

*Fifth*, Mr. Cohen's statement on its face is not of and concerning Plaintiff – she is not identified in the statement, either expressly or impliedly.

*Sixth*, Plaintiff **suffered no special damages**. The opposite is true: Plaintiff herself has boasted that her pay has **quadrupled** because of the publicity of the instant lawsuit and her allegations about Mr. Trump in February 2018 (which allegations are the opposite of her two written denials from January 2018, stating that she did not have an intimate relationship with him).

*Seventh*, Mr. Cohen **did not act with malice** – a necessary element. Plaintiff has not pled any facts, and will not be able to show any evidence, that Mr. Cohen acted with knowledge that the statement was false or with reckless disregard of its truth. To the contrary, even if Mr. Cohen's statement did pertain to the falsity of Plaintiff's allegations of an intimate relationship with Mr. Trump, it would have been relying upon Plaintiff's two written statements in January 2018, confirming unequivocally that no such intimate relationship ever existed. Thus, Mr. Cohen could not possibly possess reckless disregard of the truth when he would have been relying upon Plaintiff's own written statements from the prior month.

California's anti-SLAPP statute was enacted to curb frivolous lawsuits, such as this one, regarding statements made about a matter of public interest, *i.e.*, a strategic lawsuit against public participation. Plaintiff's claim against Mr. Cohen

falls squarely within California's anti-SLAPP statue.  Thus, for the reasons set forth herein, Plaintiff's defamation claim should be stricken.

Alternatively, if the Court finds that California's anti-SLAPP statute does not apply, it should dismiss Plaintiff's defamation claim because Plaintiff has not pled, and will never be able to plead, a valid claim.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   Summary of relevant allegations

Plaintiff is an adult-film actress and exotic dancer.  Plaintiff alleges in the FAC that she had "an intimate relationship with Mr. Trump" in 2006-2007.  (FAC, ¶ 10, ECF No. 14.)  In October 2016, according to an exclusive news report, Clifford unsuccessfully attempted to sell a story about an alleged one-night-stand with Mr. Trump to tabloid magazines and related outlets for $200,000.  (Blakely Decl., ¶ 4, Ex. D, 3/29/18 *Daily Mail* Article.)

Instead, Plaintiff admittedly signed a written *Confidential Settlement Agreement and Mutual Release* dated October 28, 2016 (the "Settlement Agreement").  (*See* FAC ¶¶ 17-23 and Exs. 1-2, ECF No. 14; Cohen Decl., ¶¶ 2-3.)  In the Settlement Agreement, Clifford promised to arbitrate any dispute that might later arise between her and DD (who Clifford alleges is Mr. Trump).  (FAC Ex. 1 [p. 10].)  Plaintiff also promised not to publicly disclose any Confidential Information (as defined in the Settlement Agreement), including any of DD's "alleged sexual partners, alleged sexual actions or alleged sexual conduct."  (*Id.* pp. 4-8.)

As consideration for Clifford's promises to arbitrate and to maintain confidentiality, EC paid, and Clifford admittedly accepted, the sum of $130,000.  (*See* FAC ¶ 24 and Ex. 1 [p. 4, ¶23], ECF No. 14.)  For the next sixteen months, Clifford did not reject the Settlement Agreement or make any attempt to return the $130,000 that she was paid by EC.  (Cohen Decl., ¶¶ 2-3.)

On January 10, 2018, Plaintiff issued a signed statement denying that she had a sexual and/or romantic affair with Mr. Trump (the "January 10, 2018 Written

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

Denial"), stating:

> I recently became aware that certain news outlets are alleging that I had a sexual and/or romantic affair with Donald Trump many, many, many years ago. I am stating with complete clarity that this is absolutely false. My involvement with Donald Trump was limited to a few public appearances and nothing more. When I met Donald Trump, he was gracious, professional and a complete gentleman to me and EVERYONE in my presence. Rumors that I have received hush money from Donald Trump are completely false. If indeed I did have a relationship with Donald Trump, trust me, you wouldn't be reading about it in the news, you would be reading about it in my book. But the fact of the matter is, these stories are not true.

(Cohen Decl. ¶ 5, Ex. A.)[2]

On January 30, 2018, Clifford issued another signed statement titled "Official Statement of Stormy Daniels," wherein she *again* denied having a sexual relationship with Mr. Trump (the "January 30, 2018 Written Denial") (collectively, with the January 10, 2018 Written Denial, the "Clifford Written Denials"), stating:

> Over the past few weeks I have been asked countless times to comment on reports of an alleged sexual relationship I had with Donald Trump many, many, many years ago. [¶]

---

[2] Plaintiff alleges that, in January 2018, Mr. Cohen, "through intimidation and coercive tactics, forced Ms. Clifford into signing a false statement wherein she stated that reports of her relationship with Mr. Trump were false." (FAC ¶ 26, ECF No. 14.) However, Plaintiff does not indicate which of her two January 2018 statements is false, and she does not even attempt to address her other denials of the intimate relationship (as documented herein). Further, Plaintiff's allegation is blatantly false. (Cohen Decl. ¶¶ 5-7.)

> the fact of the matter is that each party to this alleged affair denied its existence in 2006, 20011 [sic], 2016, 2017 and now again in 2018. I am not denying this affair because I was paid 'hush money' as has been reported in overseas owned tabloids. I am denying this affair because it never happened….

(Cohen Decl. ¶ 6, Ex. B.)

The Clifford Written Denials are consistent with an earlier denial made by Plaintiff in October 2011, when she told *E! News* that a story claiming that she and Mr. Trump had had an affair was "bulls--t." (Blakely Decl. ¶ 7, Ex. G.)

Plaintiff alleges that, on or about February 13, 2018, Mr. Cohen issued a public statement regarding the Settlement Agreement. (FAC ¶ 27 and Ex. 3.) As part of that statement, wherein Mr. Cohen confirmed that the payment pursuant to the Settlement Agreement to Plaintiff was lawful, and was not a campaign contribution or a campaign expenditure, Plaintiff alleges that he made following defamatory statement: "Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump." (*Id.*)

Clifford subsequently violated the Settlement Agreement by, among other things, filing the Complaint and FAC in this action, and also by disclosing Confidential Information (her allegations) to the news media, including in a nationally televised interview with Anderson Cooper on *60 Minutes*, which reportedly was watched by twenty-two million viewers. (Blakely Decl., ¶ 11) Clifford further breached the Settlement Agreement by sending her attorney of record in this action, Michael Avenatti, to participate in dozens of interviews on national television programs, wherein he has repeatedly disclosed Confidential Information (allegations). (*Id.*, ¶ 12, Ex. J, Chart.)

Within days of filing this action, and the massive news coverage that it generated, Clifford made appearances at various adult entertainment clubs, claiming

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

that her pay has "quadrupled" from the publicity of this lawsuit and her allegations. (Blakely Decl., ¶¶ 5-6, Ex. E, *CNN* article, Ex. F, *Rolling Stone* article.)

**b.    Summary of proceedings**

On or about February 22, 2018, EC filed an arbitration proceeding with ADR Services, Inc. ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in the Settlement Agreement. (Cohen Decl., ¶ 8.) Upon EC's emergency application for a Temporary Restraining Order, the arbitrator (a retired California Superior Court judge) issued an order prohibiting Clifford from violating the Settlement Agreement by, among other things, disclosing any Confidential Information to the media or in court filings. *Id.* at ¶ 9.

In response, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of Los Angeles on March 6, 2018, seeking a declaratory judgment that the Settlement Agreement is void, invalid, or unenforceable. (*See generally* Notice of Removal, Ex. 1, ECF No. 1-1.)

On March 26, 2018, Plaintiff filed the FAC adding several new purported defenses to the arbitration provision and the Second Claim for Defamation against Mr. Cohen. (ECF No. 14.)[3]

On March 27, 2018, Mr. Cohen's counsel sent a letter to Plaintiff's counsel detailing the basis for the instant motion. (Blakely Decl., ¶ 8, Ex. H.)

On April 2, 2018, Mr. Cohen's counsel and Plaintiff's counsel participated in the Local Rule 7-3 conference of counsel. (Blakely Decl., ¶10.) During the conference, Plaintiff's counsel (incorrectly) asserted that California's anti-SLAPP

---

[3] The FAC came five days after counsel for the parties participated in a Local Rule 7-3 conference of counsel wherein EC's counsel specifically informed counsel for Plaintiff that Plaintiff's defenses to the enforcement of the Settlement Agreement as a whole must be decided by the arbitrator, not the Court. Further undeterred, on March 27, 2018, Plaintiff filed a Motion for Expedited Jury Trial, Pursuant to Section 4 of the Federal Arbitration Act, and for Limited Expedited Discovery. (ECF No. 16.) On March 29, 2018, the Court denied Plaintiff's motion. (ECF No. 17.)

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1   law does not apply because Mr. Cohen was in New York when the allegedly
2   defamatory statement was made. (*Id*.) No agreement to resolve this motion was
3   reached during the conference. (*Id*.)

4   **III.**   **ARGUMENT**

5          **a.**   **California's Anti-SLAPP Statute Applies To Plaintiff's Second**
6              **Claim For Defamation**

7          California's anti-SLAPP law provides substantive immunity from suit for
8   claims that interfere with the exercise of speech rights, including the "constitutional
9   right of free speech in connection with a public issue or an issue of public interest."
10  Cal. Code Civ. Proc. § 425.16(e)(4). The California Supreme Court has held that the
11  statute should be interpreted broadly, stating that "whenever possible, [courts] should
12  interpret the First Amendment and section 425.16 in a manner favorable to the
13  exercise of freedom of speech, not its curtailment." *Briggs v. Eden Council for Hope*
14  *and Opportunity*, 19 Cal.4th 1106, 1119 (1999) (internal citation omitted).

15         "The anti-SLAPP statute was enacted to allow for early dismissal of meritless
16  first amendment cases aimed at chilling expression through costly, time-consuming
17  litigation." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)
18   (quotation marks omitted). Its "burden-shifting mechanism" weeds out lawsuits
19  "brought to deter common citizens from exercising their political or legal rights or to
20  punish them for doing so." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881,
21  887-88 (9th Cir. 2016) (internal quotation marks omitted).

22         Under the anti-SLAPP statute, the court undertakes a two-step process: first,
23  "the court decides whether the defendant has made a threshold showing that the
24  challenged cause of action is one arising from protected activity"; and second, if the
25  statute applies, the burden shifts to the plaintiff to demonstrate a probability of
26  success on its claims based on competent, admissible evidence. *Equilon Enters.,*
27  *LLC v. Consumer Cause*, 29 Cal.4th 53, 67 (2002); *see also Metabolife Int'l, Inc. v.*
28  *Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (stating that "defendant's anti-SLAPP

1   motion should be granted when a plaintiff presents an insufficient legal basis for the

2   claims or when no evidence of sufficient substantiality exists to support a judgment

3   for the plaintiff") (internal citation and quotations omitted).

4          Although the anti-SLAPP statute falls within California's Code of Civil

5   Procedure, federal courts apply it to dispose of frivolous claims impinging upon free

6   speech rights. *See, e.g.*, *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887

7   (9th Cir. 2016) (applying California anti-SLAPP statute to libel and false light claims

8   in a diversity action by former pornographic model); *see also Clark v. Hidden Valley*

9   *Lake Ass'n*, No. 16-CV-02009-SI, 2017 WL 4922375, at *3 (N.D. Cal. Oct. 31,

10  2017) ("Although it is a state statute, a party may bring an anti-SLAPP motion to

11  strike state law claims in federal court.").

12         Plaintiff's counsel claims the California anti-SLAPP statute does not apply,

13  and that New York law should apply, because Mr. Cohen was in New York when he

14  made the statement at issue. However, Plaintiff chose to file her claim against Mr.

15  Cohen in California. Therefore, the procedural laws of California apply. *See eDrop-*

16  *Off Chicago LLC v. Burke*, No. CV 12-4095 GW (FMOX), 2013 WL 12131186, at

17  *11-12 (C.D. Cal. Aug. 9, 2013) (holding that, in case brought by Illinois company,

18  "the Court believes the Second Circuit's recent *Liberty Synergistics* [*Liberty*

19  *Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013)] decision persuasively

20  demonstrates that this Court need not in fact proceed down that path [performing a

21  conflict of laws analysis]. Instead, it can conclude that, at least for Plaintiffs'

22  common law claims, there is no prospect that anything other than California's anti-

23  SLAPP statute would apply to the common law claims…. In other words, the Second

24  Circuit effectively reached the conclusion that no choice of law analysis was even

25  necessary with respect to the anti-SLAPP question.").

26         As the Second Circuit explained in the case relied upon by Judge Wu in *eDrop-*

27  *Off Chicago LLC v. Burke*, "a federal court exercising diversity jurisdiction generally

28  must apply the choice-of-law rules of the state in which the court sits." *Liberty*

-11-

*Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).[4]  The Second Circuit concluded that "[w]e have no reason to doubt that a California state court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it applied New York substantive law to the merits of the malicious prosecution action."  *Id.* at 154.  The Second Circuit held that the same conclusion would apply regardless of whether the anti-SLAPP statute is viewed as procedural or substantive.  *See id.* at 154-156; *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F.Supp.3d 982, 1000 (N.D. Cal. 2015) (relying on *Liberty* and applying anti-SLAPP statute to claims brought under California and Indiana law: "Accordingly, the Court agrees with the Second Circuit and holds that California's anti-SLAPP law can be applied to Real Action's counterclaims brought pursuant to Indiana law.").[5]

### b. Mr. Cohen's satisfaction of the first prong cannot be disputed

The first prong of Section 425.16 is satisfied if the claim arises from acts "in furtherance of [Defendant's] right of petition or free speech," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(3) & (4).

---

[4] Although the case had been transferred by agreement of the parties to the District Court for the Eastern District of New York, it analyzed the issue as if it were a U.S. District Court sitting in California.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d at 154 ("The Supreme Court has held that, in such circumstances, the governing law 'does not change following a transfer of venue under § 1404(a), regardless of which party initiates the transfer. [citation] Here, that means that the federal court in New York must pretend, for the purpose of determining the applicable state rules of decision, that it is sitting in California.").

[5] As to the substantive law of defamation, Mr. Cohen will default to the laws of California.  *See eDrop-Off Chicago LLC v. Burke*, 2013 WL 12131186 at *11 (stating that, when common law claims are not specifically tied to the common law of any particular jurisdiction, the court is justified in applying California law as the default).

Case 2:18-cv-06893-JLS-FFM Document 14-2 Filed 08/06/18 Page 19 of 108 Page ID
#:497
Case 2:18-cv-02217-SJO-FFM Document 31-2 Filed 04/09/18 Page 18 of 29 Page ID #:618

The "public interest" requirement, "like all of section 425.16, is to be construed broadly." *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 808 (2002). "[A]n issue of public interest' . . . is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042 (2008).

An issue of public interest need not "involve questions of civic concern; social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010). Public interest attaches to "popular culture" and "real life events which have caught the popular imagination." *Dora v. Frontline Video, Inc.* 15 Cal.App.4th 536, 542-43 (1993). Further, there is no requirement that a defendant bring an anti-SLAPP motion prove the suit was intended to or actually did chill its speech. *Flatley v. Mauro*, 39 Cal.4th 299, 312 (2006).

***First***, Plaintiff alleges that Mr. Cohen "issued a public statement…with the intent that it be widely disseminated and repeated throughout the United States." (FAC ¶ 27, ECF No. 14; *see also* at ¶ 65 [alleging Mr. Cohen's statement was made with intent to be "disseminated and repeated throughout California and across the country (and the world) on television, on the radio, in newspapers, and on the Internet"]). Therefore, Plaintiff cannot refute that the statements at issue were "made in a place open to the public or a public forum."

***Second***, Plaintiff's FAC admits that the issues raised in Mr. Cohen's alleged statement relate to a public issue or an issue of public interest. The FAC asserts that Ms. Clifford's alleged intimate relationship with Mr. Trump is a matter of "public concern" (FAC, ¶ 52), and that Mr. Cohen allegedly sought to cover up that relationship in order to influence the 2016 U.S. presidential election (FAC, ¶¶ 17, 71). *See Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1451 (1999) ("Section 425.16 applies to suits involving statements made during political campaigns."); *Cabrera v. Alam*, 197 Cal.App.4th 1077 (2011) (holding that statements made at homeowners'

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

association's annual meeting and election of board of directors concerned an issue of public interest); *Macias v. Hartwell*, 55 Cal.App.4th 669 (1997) (holding anti-SLAPP statute applies to defamation actions arising out of statements made in a union election); *see also Nelson v. City of Billings*, 2018 MT 36, ¶ 56, 412 P.3d 1058, 1077 (calling the underlying dispute **in this case** "a current national event").

**Third**, Plaintiff went on *60 Minutes*, garnering a reported twenty-two million viewers, to talk about her allegations related to the instant lawsuit, and Plaintiff's counsel of record, Michael Avenatti, on her behalf, has appeared on no less than thirty-six national television shows, to talk about this case. (Blakely Decl., ¶¶ 11-12, Ex. J) Plaintiff and her counsel cannot realistically contend that Mr. Cohen's alleged statement does not pertain to a matter in which the public has at least some interest.

**Fourth**, Plaintiff cannot dispute that defamation claims are the type of claims primarily targeted by the anti-SLAPP statute. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1125 (1999) ("The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress.").

Because Plaintiff's defamation claim satisfies prong one of the anti-SLAPP statute, Plaintiff must prove a probability of success. She cannot.

### c. **Plaintiff cannot prevail on her defamation claim**

"[P]laintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." *Navellier v. Sletten*, 106 Cal.App.4th 763, 768 (2003). Therein, to establish a probability of prevailing on the claim, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment. *Premier Medical Management Systems, Inc. v. California Ins. Guarantee*, 136 Cal.App.4th 464, 476 (2006). The burden is on the plaintiff to produce evidence that would be admissible at trial, and cannot simply rely on her pleadings. *Roberts v. Los Angeles County Bar Assn.*, 105 Cal.App.4th 604, 613-614 (2003). To defeat an

anti-SLAPP motion, a plaintiff must overcome substantive defenses. *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal.App.4th 435, 447-448 (2011).

Moreover, it is immaterial that the complaint can be amended to state a valid claim. *Premier Medical Management Systems, Inc.*, 136 Cal.App.4th at 476 ("On review of an anti-SLAPP motion to strike however, the standard is akin to that for summary judgment or judgment on the pleadings. We must take the complaint as it is."). If the plaintiff fails to carry that burden, the claim is "subject to be stricken under the statute." *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002).

1. Plaintiff cannot establish the falsity of Mr. Cohen's statement

"Defamation is 'a false and unprivileged publication that exposes the plaintiff "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." [Citation.]' [Citations.]" *Nygard*, *supra*, 159 Cal.App.4th at 1047-1048; *see also Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) ("The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' ").

Truth is an absolute defense to defamation. *Washer v. Bank of America*, 87 Cal.App.2d. 501, 509 (1948); *see also Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 259 (1986) ("'The *sine qua non* of recovery for defamation ... is the existence of a falsehood.' [Citation.]").

To establish the defense of truth—*i.e.,* that the statement is not false— defendants do not have to prove the "literal truth" of the statement at issue. *Emde v. San Joaquin County Central Labor Council*, 23 Cal.2d 146, 160 (1943). "[S]o long as the imputation is substantially true so as to justify the 'gist or sting' of the remark" the truth defense is established. *Id.*; *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 582 (1996). The U.S. Supreme Court held:

> "The common law of libel takes but one approach to the question of falsity, regardless of the form of the

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

|    |    |
|----|----|
| 1  | communication.  [Citations.]  It  overlooks  minor |
| 2  | inaccuracies and concentrates upon substantial truth.  As in |
| 3  | other jurisdictions, California law permits the defense of |
| 4  | substantial truth and would absolve a defendant even if [he |
| 5  | or] she cannot 'justify every word of the alleged defamatory |
| 6  | matter; it is sufficient if the substance of the charge be |
| 7  | proved true, irrespective of slight inaccuracy in the details.' |
| 8  | [Citations.] ...  Minor inaccuracies do not amount to falsity |
| 9  | so long as 'the substance, the gist, the sting, of the libelous |
| 10 | charge  be  justified.'  [Citations.]  Put  another  way,  the |
| 11 | statement  is  not  considered  false  unless  it  'would  have  a |
| 12 | different  effect  on  the  mind  of  the  reader  from  that  which |
| 13 | the pleaded truth would have produced.' [Citations.]" |

14   *Masson v. New Yorker Magazine*, 501 U.S. 496, 516–517 (1991).

15   Here, even assuming Mr. Cohen's statement can be interpreted as insinuating

16   that Plaintiff is a liar, it is substantially true.  As shown herein, Plaintiff herself

17   repeatedly denied—in 2011 and twice in January 2018 (in writing) any intimate

18   relationship with Mr. Trump.  (Cohen Decl., ¶¶ 5-6, Ex. A, Ex. B.)  In February

19   2018, she then alleged an intimate relationship.  She either lied in 2011 and January

20   2018, or she lied in February 2018 and is lying now.  Thus, even if Mr. Cohen's

21   statement insinuates that Plaintiff is a liar, it would be a true statement:  Plaintiff

22   admittedly lied and therefore any person, including Mr. Cohen, a news reporter, or

23   anyone else, is free to so state and cannot be sued by Plaintiff for defamation for

24   making such a (truthful) statement.  (Blakely Decl., ¶ 3, Ex. C.)

25   2. <u>Mr. Cohen's statement is opinion</u>

26   "[S]tatements of opinion are constitutionally protected."  *McGarry v.*

27   *University of San Diego*, 154 Cal.App.4th 97, 112 (2007).  "Under the First

28   Amendment there is no such thing as a false idea.  However pernicious an opinion

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1   may seem, we depend for its correction not on the conscience of judges and juries but

2   on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-

3   340 (1974).

4          The question whether challenged statements " 'convey the requisite factual

5   imputation' " is ordinarily a question of law for the court. *Summit Bank v. Rogers*,

6   206 Cal.App.4th 669, 696 (2012). In making those determinations, courts "apply a

7   totality of the circumstances test pursuant to which we consider both the language of

8   the statement itself and the context in which it is made." *Id.*; *see also Knievel v.*

9   *ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) ("First, we look at the statement in its

10  broad context, which includes the general tenor of the entire work, the subject of the

11  statements, the setting, and the format of the work. Next we turn to the specific

12  context and content of the statements, analyzing the extent of figurative or hyperbolic

13  language used and the reasonable expectations of the audience in that particular

14  situation. Finally, we inquire whether the statement itself is sufficiently factual to be

15  susceptible of being proved true or false.").

16         Here, no reasonable reader of Mr. Cohen's statement would perceive it to be an

17  assertion of objective fact. Rather, the statement is phrased more in terms of a

18  hypothetical, merely portraying Mr. Cohen's opinion in a heated debate. *See Baker*,

19  *supra*, 42 Cal.3d at 267 (a television reviewer printed a hypothetical conversation

20  between a station vice president [the plaintiff] and his writer/producer; the court

21  found no reasonable reader would conclude the plaintiff in fact had made the

22  statement attributed to him); *See Nicosia v. De Rooy*, 72 F.Supp.2d 1093, 1101 (N.D.

23  Cal. 1999) (holding that statements made on "personal web-site, and through Internet

24  discussion groups, as part of a heated debate concerning a bitter legal dispute" are less

25  likely viewed as statements of fact); *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th

26  Cir. 1988) (observing that "[e]ven apparent facts must be allowed as opinion when the

27  surrounding circumstances of a statement are those of a heated political debate")

28  (internal quotation marks omitted). Pursuant to the foregoing authorities, the

1   statement by Mr. Cohen is not defamatory as a matter of law, but rather is opinion.

2                    3.  Mr. Cohen's statement is hyperbole

3        " '[R]hetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative

4   expression[s] of ... contempt,' and language used 'in a loose, figurative sense' have

5   all been accorded constitutional protection." *Ferlauto v. Hamsher*, 74 Cal.App.4th

6   1394, 1401 (1999).  "Moreover, in the context of the heated debate on the Internet,

7   readers are more likely to understand accusations of lying as figurative, hyperbolic

8   expressions." *Nicosia v. De Rooy*, *supra*, 72 F.Supp.2d at 1106 (N.D. Cal. 1999).

9   As the Ninth Circuit stated, "the term 'lying' applies to a spectrum of untruths

10  including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception'" and is

11  therefore no more than nonactionable rhetorical hyperbole.  *Underwager v. Channel*

12  *9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995).

13       In *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 280 (2001), the court held that

14  calling someone a liar was not actionable where the statement was made in a heated

15  oral exchange during a chance encounter of opponents in a political campaign.  In

16  those circumstances, the charge was one that "no reasonable person would [have]

17  take[n] literally," and was "the type of loose, figurative, or hyperbolic language that

18  is constitutionally protected." *Id.*  Similarly, in *Standing Committee v. Yagman*, 55

19  F.3d 1430, 1440 (9th Cir. 1995), the Ninth Circuit held that an attorney could not be

20  disciplined for calling a judge "dishonest" because the word was only "one in a

21  string of colorful adjectives" used in a letter that "together ... convey[ed] nothing

22  more substantive than [the attorney's] contempt." *Id.*  In context, the word could not

23  "reasonably be construed as suggesting that [the judge] had committed specific

24  illegal acts," and was thus mere "rhetorical hyperbole, incapable of being proved true

25  or false." *Id.*

26       Here, no reasonable reader of Mr. Cohen's statement would perceive it to be

27  anything other than a figurative, hyperbolic expression.  Pursuant to the foregoing

28  authorities, the statement by Mr. Cohen is not defamatory as a matter of law, but

-18-

1    rather is hyperbole.

2              4.  The alleged defamatory statement is privileged

3         The common law right of fair comment protects "expressions of opinion about

4    public officials, scientists, artists, composers, performers, authors, and other persons

5    who place themselves or their work in the public eye."  *Brown v. Kelly Broadcasting*

6    *Co.*, 48 Cal.3d 711, 726 (1989) (internal quotes omitted).

7         Additionally, Civil Code section 47 provides that a fair and true report of a

8    public official proceeding, of anything said in the course thereof, or of a verified

9    charge or complaint made by any person to a public official, is privileged.  Cal. Civ.

10   Code § 47(d); *see Crane v. The Arizona Republic*, 972 F.2d 1511, 1518 (9th

11   Cir.1992) (holding that a closed investigation by a congressional committee qualified

12   for protection irrespective of whether it was denominated a "legislative" or "public

13   official" proceeding); *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1051

14   (1997) (holding that statements related to investigative audit by state auditor were

15   privileged).

16        Here, Plaintiff's work in the adult entertainment industry puts her in the public

17   eye.  Moreover, Mr. Cohen's statement was related to the FEC complaint and

18   therefore is privileged.

19              5.  Plaintiff cannot establish that Mr. Cohen's statement is a defamatory

20                  statement about Plaintiff

21        The First Amendment requires that the statement on which a defamation claim

22   is based to be "of and concerning" the plaintiff.  *Isuzu Motors, Ltd. v. Consumers*

23   *Union of United States, Inc.*, 12 F.Supp.2d 1035, 1044 (C.D. Cal. 1998) (quoting and

24   citing *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042 (1986)).  "[T]he plaintiff

25   must effectively plead that **the statement at issue** either expressly mentions him or

26   refers to him by reasonable implication."  *Blatty*, 42 Cal.3d at 1046 (emphasis added).

27   The statement at issue is to be examined in context, considering the totality of the

28   circumstances.  *Isuzu Motors, Ltd.*, 12 F.Supp.2d at 1044.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

Again, the only statement made by Mr. Cohen alleged to be defamatory are: "Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump." (FAC ¶ 65, ECF No. 14). This statement does not expressly or directly refer to Plaintiff.

Plaintiff alleges in conclusory fashion that "[b]oth on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was reasonably understood Mr. Cohen meant to convey that Ms. Clifford is a liar, someone who should not be trusted, and that her claims about her relationship with Mr. Trump is 'something [that] isn't true.'" (*Id.* ¶ 67.)

The leap from the general statement, that untrue things can hurt people, to the implication or insinuation that Plaintiff is a liar stretches too far. There is no clear statement impugning Plaintiff, and the Court should not stretch to find one. *See Smith v. Maldonado*, 72 Cal.App.4th 637, 645-646 (1999), as modified (June 23, 1999) ("Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the 'inducement').").

The entirely of Mr. Cohen's statements, which include the allegedly defamatory statement,[6] are as follows:

In late January 2018, I received a copy of a complaint filed at the Federal Election Commission (FEC) by Common Cause. The complaint alleges that I somehow violated campaign finance laws by facilitating an excess, in-kind contribution. The allegations in the complaint are factually unsupported and without legal merit, and my counsel has submitted a response to the FEC.

I am Mr. Trump's longtime special counsel and I have proudly

---

[6] Plaintiff's FAC conveniently omits reference to the beginning statements by Mr. Cohen wherein he discusses the allegations in the FEC complaint.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

served in that role for more than a decade. In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly. The payment to Ms. Clifford was lawful, and was not a campaign contribution or a campaign expenditure by anyone.

   I do not plan to provide any further comment on the FEC matter or regarding Ms. Clifford.

   Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump.

(FAC Ex. 3, ECF No. 14.)

  Mr. Cohen's statement says "something" and not "someone." Mr. Cohen does not state that the FEC complaint was filed by Plaintiff or that she had anything to do with it. Thus, contrary to Plaintiff's self-serving, conclusory allegations, a reasonable person would not interpret Mr. Cohen's allegedly defamatory statement as impugning Plaintiff, but rather referring to the complaint filed with the FEC by Common Cause.

### 6. Plaintiff has no special damages

  The purportedly libelous statement by Mr. Cohen requires further consideration of extrinsic facts, and therefore does not constitute libel *per se*. Cal. Civil Code § 45a. "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." *Id.* "'Special damages' means all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2).

  Here, Plaintiff has not alleged any special damages. Plaintiff's only allegation

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

1  of damages related to her defamation claim are: "harm to her reputation, emotional
2  harm, exposure to contempt, ridicule, and shame, and physical threats of violence to
3  her person and life."  (FAC ¶ 70, ECF No. 14.)  Those damages are merely general
4  damages.  *See* Cal. Civ. Code § 48a(d)(1) ("'General damages' means damages for
5  loss of reputation, shame, mortification, and hurt feelings.").

6       Further, Plaintiff cannot prove that she suffered special damages because the
7  opposite is true:  Plaintiff herself has stated that her pay has "quadrupled" from the
8  publicity of the instant lawsuit and her allegations about Mr. Trump (that are the
9  opposite of the Clifford Written Denials.)  (Blakely Decl., ¶¶ 5-6, Ex. E, Ex. F.)

10         7.  <u>Mr. Cohen did not act with malice</u>

11       "[W]hen the plaintiff is a public figure, he or she 'must also show the speaker
12  made the objectionable statements with malice in its constitutional sense "'that is,
13  with knowledge that it was false or with reckless disregard of whether it was false or
14  not.'" [Citation.]' [Citation.]"  *Nygard*, *supra*, 159 Cal.App.4th at 1048; *see also*
15  *Masson*, *supra*, 501 U.S. at 510 (holding that malice must be shown by clear and
16  convincing evidence).

17       "Reckless disregard" (1) encompasses a defendant's " 'high degree of
18  awareness of ... probable falsity,' " or " 'serious doubts as to the truth' " of the
19  publication, *Eastwood v. National Enquirer*, 123 F.3d 1249, 1250-51 (9th Cir. 1997)
20  (quoting *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666-667
21  (1989)); or (2) applies if the defendant had " 'obvious reasons to doubt the veracity' "
22  of its statements, but engaged in " 'purposeful avoidance of the truth.' "  *Eastwood*,
23  123 F.3d at 1251 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Harte–*
24  *Hanks*, 491 U.S. at 692).

25       Plaintiff's FAC has done nothing more than parrot the technical, legal language
26  of malice.  (*See* FAC ¶ 69, ECF No. 14: "Mr. Cohen made the statement knowing it
27  was false or had serious doubts about the truth of the statements.")  The FAC contains
28  no factual allegations that Mr. Cohen acted with malice.  Plaintiff also cannot provide

1  any admissible evidence to show Mr. Cohen acted with malice, because if his

2  statement in February 2018 pertained to Plaintiff and her false accusations against Mr.

3  Trump, he would have relying upon the January 2018 Clifford Written Denials

4  wherein she professed the exact opposite of her current allegations in two written

5  statements put out to the world.  Under these facts, Mr. Cohen cannot possible be said

6  to have acted with malice (reckless disregard for the truth) in making the statement at

7  issue—Plaintiff herself is responsible for any confusion that Mr. Cohen or anyone

8  else may have had regarding the truth or falsity of her multiple conflicting statements

9  on the issue of her alleged relationship with Mr. Trump.

10  **d.**    **Alternatively, The Court Should Dismiss The Defamation Claim**

11  The Court may dismiss a complaint that fails to state a claim upon which relief

12  can be granted.  Fed. R. Civ. P., Rule 12(b)(6).  In analyzing a motion to dismiss, the

13  complaint must contain "enough facts to state a claim to relief that is plausible on its

14  face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff's claim meets the plausibility

16  threshold when he "pleads factual content that allows the court to draw [a] reasonable

17  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

18  556 U.S. 662 (2009) (internal quotations omitted).

19  If the Court finds that California's anti-SLAPP statute does not somehow

20  apply, it should dismiss Plaintiff's Second Claim for Defamation because Plaintiff

21  has not pled, and will never be able to plead, a valid claim.  For the reasons stated

22  herein, Plaintiff simply has no viable claim against Mr. Cohen as a matter of law.

23  Further, because any amendment would be futile, the Court should dismiss the

24  defamation claim with prejudice. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d

25  762, 766 (9th Cir. 1986).

26  //

27  //

28  //

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should strike the Second Claim for Defamation in the FAC or, alternatively, dismiss the claim with prejudice.

Dated: April 9, 2018                         BLAKELY LAW GROUP


By:   */s/ Brent H. Blakely*
_____
BRENT H. BLAKELY
***Attorneys for Defendants***
***ESSENTIAL CONSULTANTS, LLC and***
***MICHAEL COHEN***

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

# Exhibit 11

Michael J. Avenatti, Bar No. 206929
AVENATTI & ASSOCIATES, APC
mavenatti@eoalaw.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel:    (949) 706-7000
Fax:    (949) 706-7050

Attorneys for Plaintiff Stephanie Clifford

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 06 2018

Sherri R. Carter, Executive Officer/Clerk
By: Tom G. Holmes, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE

| | |
|---|---|
| STEPHANIE CLIFFORD (AKA STORMY DANIELS), an individual, <br><br> Plaintiff, <br><br> vs. <br><br> KEITH M. DAVIDSON, an individual, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive <br><br> Defendants. | Case No. **SC129384** <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF FIDUCIARY DUTY;** <br> **(2) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY** <br><br><br> **CASE MANAGEMENT CONFERENCE** <br><br> _12-3-18_            _8:30am_ <br> Judge C. Karlan      **Date**    _Dept N_ |

**COMPLAINT**

Plaintiff Stephanie Clifford (aka Stormy Daniels) ("Ms. Clifford" or "Plaintiff") hereby alleges the following:

## THE PARTIES

1.     Plaintiff Ms. Clifford, an individual, is a resident of the State of Texas.

2.     Defendant Keith M. Davidson ("Mr. Davidson"), an individual, is a citizen of the State of California.

3.     Defendant Michael Cohen ("Mr. Cohen"), an individual, is a citizen of the State of New York.

4.     Mr. Davidson and Mr. Cohen together shall be referred to hereafter as "Defendants."

5.     The true names and capacities of the defendants DOES 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 10, inclusive, when the same have been ascertained.

6.     Plaintiff is also informed and believes and thereon alleges that DOES 1 to 10 were the agents, principals, and/or alter egos of Defendants, at all times herein relevant, and that they are therefore liable for the acts and omissions of Defendants.

## JURISDICTION AND VENUE

7.     Venue is appropriate in the County of Los Angeles, and this Court has personal jurisdiction over the Defendants and each of them by reason of the facts that: (a) Mr. Davidson resides in the West Judicial District; (b) Defendants have transacted and conducted substantial business in the State of California, the County of Los Angeles, and the West Judicial District; (c) many of Mr. Cohen's actions alleged herein were directed to and/or occurred in the State of California and the County of Los Angeles; and (d) many of the events giving rise to the claims at issue in this lawsuit arose in California, including within the County of Los Angeles and the West Judicial District.

# FACTUAL BACKGROUND

8.     Mr. Davidson is an attorney licensed in the State of California and was retained by Ms. Clifford as her personal attorney.  Except as noted herein, Mr. Davidson was ostensibly acting in his capacity as Ms. Clifford's attorney throughout the time period at issue in this complaint.

9.     Mr. Cohen is an attorney licensed in the State of New York.  Mr. Cohen worked as the "top attorney" at the Trump Organization from 2007 until at least 2016 and served as Mr. Donald J. Trump's personal attorney at all material times relating to the time period at issue.

10.     In his capacity as Ms. Clifford's attorney, Mr. Davidson owed Ms. Clifford all of the attendant duties and obligations that arise in connection with an attorney-client relationship, including the duty of loyalty and the duty to maintain client confidences.

11.     In his capacity as Ms. Clifford's attorney, Mr. Davidson communicated with Mr. Cohen in connection with an October 2016 agreement for which Mr. Cohen acted as an attorney for Mr. Donald Trump.

12.     By virtue of this agreement and his experience with Mr. Davidson, Mr. Cohen was well aware at all times that Mr. Davidson was Ms. Clifford's attorney and that Mr. Davidson owed Ms. Clifford a continuing duty of loyalty and was in a fiduciary relationship with Ms. Clifford.

13.     Unbeknownst to Ms. Clifford, after the agreement was signed by Ms. Clifford, Mr. Davidson continued to regularly communicate with Mr. Cohen to the detriment of Ms. Clifford.

14.     Mr. Davidson's communications with Mr. Cohen were inconsistent with his obligations to Ms. Clifford, including his obligation to maintain client confidences and his duty of loyalty to Ms. Clifford.

15.     Starting in January 2018 at the latest, Defendants Davidson and Cohen acted in concert to benefit not Ms. Clifford, but a client of Mr. Cohen's, namely Mr. Trump.

16.     Specifically, on the morning of January 17, 2018, Mr. Cohen became aware of an article published by *In Touch* magazine regarding Ms. Clifford and President Donald J. Trump.

17.     Believing this story to be detrimental to his own interests or those of his client, Mr. Cohen immediately colluded with Mr. Davidson in an attempt to use and manipulate Ms. Clifford in a manner designed to benefit Mr. Cohen and Mr. Trump.

18.     After learning of the magazine article, Mr. Cohen sent an iMessage to Mr. Davidson at or about 12:13 PM EST stating "Call me."

19.     On information and belief, Mr. Davidson and Mr. Cohen subsequently conversed on the telephone at which time Mr. Cohen hatched a plan to have Ms. Clifford appear on Mr. Sean Hannity's program to falsely deny the accuracy of the *In Touch* article.[1]

20.     Approximately two hours later, at 2:32 PM, Mr. Cohen again texted Mr. Davidson, stating "I have her tentatively scheduled for Hannity tonight. Call me after your trial." On information and belief, Mr. Cohen scheduled Ms. Clifford to appear on Mr. Hannity's program only after consultation with Mr. Trump.

21.     Mr. Davidson responded,

> She cannot don't [sic] today.  She is flying to LA tomorrow.  I'm trying to get her to commit for tomorrow. (3:21 PM)

22.     Unsatisfied with this response and in a panic, Mr. Cohen sent several more messages in a desperate attempt to convince Ms. Clifford, with the assistance of Mr. Hannity, to lie to the American public about her relationship with Mr. Trump via the *Fox News* broadcast:

   a)  At 3:23 PM, Mr. Cohen messaged "It's really important. Why?"

   b)  At 3:25 PM, Mr. Cohen messaged "Can you call me please."

   c)  At 3:45 PM, Mr. Cohen again messaged, "Please call me."

   d)  At 4:18 PM, Mr. Cohen messaged Mr. Davidson, "Anything?"

23.     At 4:30 PM, Mr. Davidson responded to Mr. Cohen stating that he was "Still trying."

24.     At 4:30, less than one minute later, Mr. Cohen responded to Mr. Davidson stating:

> This is no good.  We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one.

25.     At 4:52 PM, Mr. Cohen messaged Mr. Davidson asking "Please call me."

26.     At 5:01 PM Mr. Cohen again messaged Mr. Davidson stating "Cmon!"

---

[1] Mr. Cohen has previously stated that Ms. Clifford is a liar and that he did not believe her in 2016 or 2011 regarding her account of having a relationship with Mr. Trump. The fact that he attempted to place her on Mr. Hannity's show in January 2018 for a live interview completely undercuts his ridiculous assertions and further shows that his prior claims relating to her alleged lack of trustworthiness were entirely baseless.

27.     At 5:31 PM, Mr. Cohen apparently changed his mind and messaged Mr. Davidson that it would be better to wait until the next day, stating:

> Let's forget tonight. They [Fox News and the Trump Administration] would rather tomorrow so they can promote the heck out of the show.

28.     At 7:51 PM, Mr. Cohen messaged Mr. Davidson again, having apparently concluded that it was no longer is his own or his client's best interest for Ms. Clifford to appear:

> Keith, **The wise men all believe the story is dying and don't think it's smart for her to do any interviews.**  Let her do her thing but no interviews at all with anyone. (emphasis added)

29.     The "wise men" referred to above included Mr. Trump.[2]

30.     At 7:52 PM, Mr. Davidson agreed without hesitation and responded, "100%."

31.     At 7:52 PM, Mr. Cohen messaged "Thanks pal."

32.     At 7:53 PM, Mr. Cohen added "Just no interviews or statements unless through you."

33.     At 7:54 PM, Mr. Davidson responded "Got it."

34.     The clear purpose of this exchange between Defendants was to collude and arrange a media appearance of Ms. Clifford, not for the benefit of Ms. Clifford or to ensure that Ms. Clifford truthfully told her side of the story to the media, but for Ms. Clifford to provide a false interview and lie to the American people to serve the best interests of Mr. Trump and Mr. Cohen.

35.     Indeed, once Mr. Cohen concluded that it was no longer in his own best interest, or those of his client, per the recommendation of these "wise men," including Mr. Trump, Mr. Cohen called off the appearance entirely and Mr. Davidson agreed without hesitation.  In other words, Mr. Davidson abdicated his role as an advocate and fiduciary of his client Ms. Clifford, and instead elected to be a "puppet" for Mr. Cohen and Mr. Trump in order to advance their interests at the expense of Ms. Clifford.

36.     In late February 2018, Mr. Davidson became aware that Ms. Clifford was changing counsel and was preparing to publicly disclose her relationship with Mr. Trump.

---

[2] Mr. Trump has previously claimed that he knew nothing of the 2016 agreement or any issues relating to Ms. Clifford until much later in 2018.  This exchange and sequence of events demonstrates that claim is false.

**COMPLAINT**

37. Despite his ongoing duty of loyalty to Ms. Clifford, including the obligation to maintain client confidences, Mr. Davidson secretly tipped Mr. Cohen off to Ms. Clifford's plans. Mr. Davidson did so for the express benefit of Mr. Cohen and Mr. Trump.

38. Armed with this information, and in an attempt to intimidate Ms. Clifford into silence, on or about February 27, 2018, Mr. Cohen initiated an arbitration proceeding against Ms. Clifford in order to obtain a temporary restraining order to silence Ms. Clifford and prevent her from publicly telling her story.

39. Thereafter, in early March of 2018, Mr. Davidson again secretly tipped off Mr. Cohen regarding Ms. Clifford's plans, this time after learning that Ms. Clifford was on the verge of filing a lawsuit against Mr. Cohen and Mr. Trump.

40. Specifically, on or about March 1, 2018, at 10:18 AM EST, Mr. Davidson sent a message to Mr. Cohen stating "Call me." On information and belief, it was during this call that Mr. Davidson first disclosed to Mr. Cohen that Ms. Clifford was planning to file a lawsuit against him and Mr. Trump the following week and that the lawsuit would publicly disclose the existence of Ms. Clifford's prior relationship with Mr. Trump.

41. After learning of Ms. Clifford's plans through the improper disclosure of confidential information by Mr. Davidson, Mr. Cohen undertook efforts to meet the next day with Mrs. Melania Trump, in order to "get out in front" of the approaching lawsuit and publicity, and convince her that Ms. Clifford was a liar and not to be trusted.

42. On March 2, 2018 at 3:12 PM, Mr. Davidson messaged Mr. Cohen asking "Busy?"

43. At 3:21 PM, Mr. Cohen sent a message stating "15 minutes we should speak."

44. At 3:34 PM, Mr. Davidson messaged "Call when u can."

45. At 3:56 PM, Mr. Cohen messaged "Exactly 4 and I will have Larry Rosen on the line as well." Larry Rosen refers to Lawrence S. Rosen, an attorney who works with Mr. Cohen.

46. At 3:57 PM, Mr. Davidson responded "Great."

47. At 4:14 PM, Mr. Davidson again messaged Mr. Cohen asking, "U calling?"

48.     At 4:15 PM, Mr. Cohen responded, "With flotus.  Give me a minute."[3]

49.     Upon information and belief, when Mr. Cohen met with Mrs. Trump on March 2, 2018 at Mar-a-Lago,  Mr. Cohen did not disclose to Mrs. Trump that not only was Ms. Clifford far from being a liar, Mr. Cohen had begged her to appear on Mr. Hannity's show weeks earlier.  Nor did he disclose that the "wise men", including Mr. Trump, had decided at the time to let the story "die."

50.     The disclosure of any information to Mr. Cohen regarding Ms. Clifford's contemplated action was a clear violation of Mr. Davidson's duty of loyalty and obligation to maintain Ms. Clifford's client confidences.  These duties continued regardless of whether Mr. Davidson was in fact still Ms. Clifford's attorney.  Again, Mr. Davidson's actions demonstrate he was more interested in being Mr. Cohen and Mr. Trump's "puppet" and advancing their interests instead of advancing the interests of his client consistent with his obligations under the law.

51.     Mr. Cohen, as an attorney with knowledge of Mr. Davidson's role as Ms. Clifford's counsel, knew at all times Mr. Davidson could not engage in the conduct at issue and yet colluded with him.

52.     To compound the numerous violations of attorney ethics, Mr. Cohen recorded phone calls that he had with Mr. Davidson wherein Mr. Davidson disclosed client confidences and other confidential information relating to Ms. Clifford.

53.     In furtherance of his wrongful conduct in relation to Mr. Davidson, despite request, Mr. Cohen has refused to provide Ms. Clifford with those recorded conversations that include her attorney-client privileged information.

54.     Since the termination of her attorney-client relationship with Mr. Davidson, Ms. Clifford has sought to recover from Mr. Davidson the entirety of her client file, which is, by law, her personal property.  Indeed, on no fewer than five separate occasions over the last three months, Ms. Clifford has demanded the entirety of her client file, together with all text messages and similar correspondence relating to her, especially those that involve Mr. Cohen.

---

[3] The text messages set forth in this complaint are attached hereto as Exhibit A.  Mr. Davidson has refused to provide copies of any text messages between him and Mr. Cohen for the time period after March 2.  On information and belief, this is because said text messages further evidence his numerous breaches of fiduciary duty to Ms. Clifford as well as Mr. Cohen's complicit conduct.

**COMPLAINT**

55.     Pursuant to Rule 3-700 of the Rules of the State Bar of California, Ms. Clifford's client file includes any and all correspondence Mr. Davidson engaged in regarding his representation of Ms. Clifford. This includes but is not limited to text messages and other similar correspondence.

56.     In spite of Mr. Davidson's clear obligation to return Ms. Clifford's property, Mr. Davidson has not returned to Ms. Clifford the entirety of her client file.

57.     Mr. Davidson has also not provided Ms. Clifford with all text messages and other correspondence regarding Ms. Clifford, including those that involve Mr. Cohen.

58.     Mr. Davidson's failure to provide the information demanded has prejudiced Ms. Clifford in numerous ways including, but not limited to, by purposely hampering her ability to review documents and cooperate with government inquiries regarding Mr. Cohen, Mr. Trump, and Mr. Davidson. Indeed, Ms. Clifford has needed Mr. Davidson to disclose to her the *entirety of the information requested* for months and yet he has purposely delayed and obstructed her efforts. On information and belief, he has done so in order to protect himself, Mr. Cohen and Mr. Trump, all at the detriment of Ms. Clifford.

59.     Mr. Davidson's refusal to provide the information requested is even more outrageous considering his recent conduct vis-à-vis the *Wall Street Journal*. On information and belief, at the same time he was obstructing Ms. Clifford's efforts to obtain the information, Mr. Davidson, through his counsel, undertook efforts to plant a patently false story in the *Wall Street Journal* stating that Ms. Clifford was not being cooperative with investigators from the Southern District of New York looking into business dealings of Mr. Cohen. This conduct is yet further evidence of Mr. Davidson's breach of fiduciary duty directed at Ms. Clifford.

60.     Ms. Clifford has been damaged in this and other ways, including having to incur substantial costs and fees, in an amount to be proven at trial, but which are well in excess of $100,000.

///

///

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendant Davidson)

61.     Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 60 above as if fully set forth herein.

62.     Mr. Davidson, by virtue of his role as Ms. Clifford's attorney, owed Ms. Clifford fiduciary duties at all material times.

63.     These duties include, but are not limited to, a duty of loyalty and a duty to maintain client confidences.

64.     These duties exist both during his representation of Ms. Clifford and continue thereafter.

65.     Mr. Davidson breached his fiduciary duty to Ms. Clifford in numerous ways detailed herein.

66.     By way of example, in the year 2018, Mr. Davidson engaged in numerous communications and concerted action with Mr. Cohen, the purpose of which was not to benefit Ms. Clifford, but to benefit Mr. Cohen and Mr. Trump.

67.     As alleged herein, in or about January of 2018, Defendants discussed and attempted to arrange at least one media appearance on Mr. Hannity's *Fox News* show, the purpose of which was not to allow Ms. Clifford to truthfully tell her story, but for her appearance to benefit Mr. Trump by controlling the media coverage resulting from an *In Touch* magazine article that had just been released.

68.     Mr. Davidson never obtained Ms. Clifford's permission or authorization to engage in these discussions or disclose any information to Mr. Cohen.

69.     Mr. Davidson's actions were designed to benefit Mr. Cohen and Mr. Trump, not Ms. Clifford, and thus Mr. Davidson breached his duty of loyalty.

70.     Mr. Davidson also breached his duties to Ms. Clifford by disclosing confidential information regarding Ms. Clifford's anticipated legal strategy to Mr. Cohen in or about February and March of 2018.

71.     Mr. Davidson further breached his duties to Ms. Clifford by refusing to return to her the entirety of her client file, as well as all correspondence relating to her, including all text messages with Mr. Cohen.

72.     Ms. Clifford has been damaged by Mr. Davidson's various breaches in an amount to be proven at trial, but which exceeds $100,000.

73.     In engaging in this conduct, Mr. Davidson knew he was violating his duties and did so anyway and acted with malice, oppression, or fraud, and is thus also responsible for punitive damages in an amount to be proven at trial according to proof.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Defendant Cohen)

74.     Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 73 above as if fully set forth herein.

75.     By virtue of his status as an attorney and his knowledge that Mr. Davidson was Ms. Clifford's attorney, Mr. Cohen had actual knowledge of Mr. Davidson's fiduciary duties owed to Ms. Clifford.

76.     In spite of this, Mr. Cohen made a conscious decision to participate in the wrongful conduct alleged herein and Mr. Davidson's breach of his duties to Ms. Clifford.

77.     Specifically, as alleged herein, Mr. Cohen provided substantial assistance to Mr. Davidson and in fact engaged in concerted activity with Mr. Davidson by attempting to arrange for the media appearance of Ms. Clifford on Mr. Hannity's show to benefit Mr. Trump, not Ms. Clifford.

78.     Mr. Cohen knew that this conduct was likely not in Ms. Clifford's best interest and thus constituted a breach of fiduciary duty on Mr. Davidson's part.  Nevertheless, Mr. Cohen provided substantial assistance and attempted to arrange the appearance.

79.     Mr. Cohen further communicated with Mr. Davidson and encouraged Mr. Davidson to disclose confidential information pertaining to Ms. Clifford's legal strategy – information that, as an attorney, he knew Mr. Davidson should keep confidential.  Mr. Cohen then proceeded to record this

information and retain the recordings, all as part of his substantial assistance aimed at aiding and abetting Mr. Davidson's breaches of fiduciary duty.

80.     Mr. Cohen used this information for his own benefit and Mr. Trump's benefit by attempting to initiate an arbitration proceeding against Ms. Clifford and force her to remain silent. He further used this information in an effort to "get out in front" of the story and deceive Mrs. Trump.

81.     Ms. Clifford has been damaged by Mr. Cohen's misconduct in an amount to be proven at trial, but which exceeds $100,000.

82.     In engaging in this conduct, Mr. Cohen acted with malice, oppression, or fraud, and is thus also responsible for punitive damages in an amount to be proven at trial according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows

## **ON THE FIRST CAUSE OF ACTION**

1.     For damages in an amount to be proven at trial;

2.     For turnover of Ms. Clifford's entire client file and of all text messages and correspondence relating to her;

3.     For punitive damages;

4.     For pre-judgment and post-judgment interest;

5.     For costs of suit, including attorney's fees; and

6.     For such other and further relief as the Court may deem just and proper.

## **ON THE SECOND CAUSE OF ACTION**

1.     For damages in an amount to be proven at trial;

2.     For punitive damages;

3.     For pre-judgment and post-judgment interest;

4.     For costs of suit, including attorney's fees; and

5.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes so triable.

DATED:  June 6, 2018

AVENATTI & ASSOCIATES, APC

MICHAEL J. AVENATTI
Attorneys for Plaintiff

**COMPLAINT**

# EXHIBIT A

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner) A5 +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Call me | 1/17/2018 12:13:09 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | I have her tentatively scheduled for Hannity tonight. Call me after your trial | 1/17/2018 2:32:23 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | She cannot don't today. She is flying to LA tomorrow. I'm trying to get her to commit for tomorrow | 1/17/2018 3:21:27 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | It's really important. Why? | 1/17/2018 3:23:09 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Can you call me please | 1/17/2018 3:25:34 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Please call me | 1/17/2018 3:45:38 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Anything? | 1/17/2018 4:18:57 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Still trying | 1/17/2018 4:30:06 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | This is no good. We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one | 1/17/2018 4:30:43 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Please call me | 1/17/2018 4:52:42 PM(UTC-5) |

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Cmon! | 1/17/2018 5:01:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Let's forget tonight. They would rather tomorrow so they can promote the heck out of the show | 1/17/2018 5:31:44 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Keith, The wise men all believe the story is dying and don't think it's smart for her to do any interviews. Let her do her thing but no interviews at all with anyone | 1/17/2018 7:51:43 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | 100% | 1/17/2018 7:52:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Thanks pal | 1/17/2018 7:52:44 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Just no interviews or statements unless through you | 1/17/2018 7:53:08 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Got it | 1/17/2018 7:54:45 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Call me | 3/1/2018 10:18:31 AM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Busy? | 3/2/2018 3:12:57 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner) +1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | 15 minutes we should speak | 3/2/2018 3:21:56 PM(UTC-5) |

| Participants | From | Body | Timestamp: Time |
|---|---|---|---|
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Call when u can | 3/2/2018 3:34:21 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | Exactly 4 and I will have Larry Rosen on the line as well | 3/2/2018 3:56:16 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | Great | 3/2/2018 3:57:59 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1310936XXXX Keith Davidson Private | U calling? | 3/2/2018 4:14:54 PM(UTC-5) |
| +1310936XXXX Keith Davidson Private (owner)<br>+1646853XXXX Michael Cohen | +1646853XXXX Michael Cohen | With flotus. Give me a minute | 3/2/2018 4:15:13 PM(UTC-5) |

# Exhibit 12

1 AVENATTI & ASSOCIATES, APC
2 Michael J. Avenatti, CA State Bar No. 206929
Ahmed Ibrahim, CA State Bar No. 238739
3 520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
4 Telephone:  949.706.7000
5 Facsimile:   949.706.7050

6 Attorneys for Plaintiff Stephanie Clifford
7 a.k.a. Stormy Daniels a.k.a. Peggy Peterson

8

9                    **UNITED STATES DISTRICT COURT**

10                    **CENTRAL DISTRICT OF CALIFORNIA**

11

12
STEPHANIE CLIFFORD a.k.a.
13 STORMY DANIELS, an individual,
14                       Plaintiff,
15          vs.
16

17
KEITH .M DAVIDSON, an individual,
18 MICHAEL COHEN, an individual, and
DOES 1 THROUGH 10, inclusive
19

20                    Defendants.
21

| | |
|---|---|
| | CASE NO.:  2:18-cv-05052 RSWL (ASx)<br>Assigned for All Purposes to the<br>Honorable S. James Otero<br><br>**PLAINTIFF STEPHANIE CLIFFORD'S NOTICE OF MOTION AND MOTION TO REMAND**<br><br>**Hearing Date:  July 23, 2018**<br>**Hearing Time:  10:00 a.m.**<br>**Location:  Courtroom 10C**<br><br>**California Superior Court Action Filed:  June 6, 2018** |

22

23

24

25

26

27

28

1    **PLEASE TAKE NOTICE** that on July 23, 2018, at 10:00 a.m., in Courtroom 10C
2    of the above-captioned Court, Plaintiff Stephanie Clifford a.k.a. Stormy Daniels
3    ("Plaintiff") will and does hereby move this Court pursuant to 28 U.S.C. section 1441(b)
4    for an order remanding this action to the Superior Court of California for the County of
5    Los Angeles, where the action was originally filed.

6    Plaintiff makes this motion on the ground that removal is improper under forum
7    defendant exception provided for under 28 U.S.C. section 1441(b)(2) because defendant
8    Keith Davidson ("Mr. Davidson") is a citizen of the State of California.  That defendant
9    Michael Cohen ("Mr. Cohen") elected to file a notice of removal the day after this action
10   was filed—and before Plaintiff had a reasonable opportunity to serve either defendant—
11   does not change the analysis.  The consensus view among courts in the Central District,
12   including this Court, is that diversity jurisdiction under the factual and procedural
13   circumstances presently before the Court cannot stand.  As aptly summarized by this
14   Court, "permitting removal under § 1441(b) by a non-forum defendant before any
15   defendant has been served is not in keeping with the purpose of the forum defendant rule
16   *because it promotes gamesmanship by defendants*."  Austin v. AstraZeneca Pharm., LP,
17   No. CV1301544SJOJCGX, 2013 WL 12142637, at *2 (C.D. Cal. Apr. 22, 2013)
18   (emphasis added).  Stated differently, "a literal reading of § 1441(b) in combination with
19   the advent of electronic filing and online dockets *promotes procedural gamesmanship by*
20   *defendants racing to the courthouse in order to remove cases to federal court before the*
21   *plaintiff can serve a forum defendant*."  Id. (emphasis added).  This is a textbook example
22   of such gamesmanship.

23   This motion is based on this Notice, the accompanying Memorandum of Points and
24   Authorities, the accompanying Declaration of Michael J. Avenatti, the complete files and
25   records in this action, and upon such oral and documentary evidence as may be allowed
26   at the hearing of this motion.

27   The parties met and conferred with regards to this motion between June 8 and June
28

**PLAINTIFF'S STEPHANIE CLIFFORD'S NOTICE OF MOTION AND MOTION TO REMAND**

1  14, but were unable to resolve their dispute.  [Declaration of Michael Avenatti, ¶¶12-20,

2  22, Exs. 10-14.]

3

4  DATED:  June 22, 2018                    AVENATTI & ASSOCIATES, APC

5

6

7                                          /s/ Michael J. Avenatti
                                           MICHAEL J. AVENATTI
8                                          Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S STEPHANIE CLIFFORD'S NOTICE OF MOTION AND MOTION TO REMAND**

1

AVENATTI & ASSOCIATES, APC
2
Michael J. Avenatti, CA State Bar No. 206929
Ahmed Ibrahim, CA State Bar No. 238739
3
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
4
Telephone:  949.706.7000
5
Facsimile:   949.706.7050

6
Attorneys for Plaintiff Stephanie Clifford
7
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

8

9
UNITED STATES DISTRICT COURT
10
CENTRAL DISTRICT OF CALIFORNIA

11

12
STEPHANIE CLIFFORD a.k.a.
13
STORMY DANIELS, an individual,
14
                    Plaintiff,
15
        vs.
16
17
KEITH .M DAVIDSON, an individual,
18
MICHAEL COHEN, an individual, and
DOES 1 THROUGH 10, inclusive
19
20
                   Defendants.
21
22

CASE NO.:  2:18-cv-05052 RSWL (ASx)
Assigned for All Purposes to the
Honorable S. James Otero

**PLAINTIFF STEPHANIE CLIFFORD'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

**Hearing Date:  July 23, 2018**
**Hearing Time:  10:00 a.m.**
**Location:  Courtroom 10C**

**California Superior Court Action Filed:  June 6, 2018**

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Stephanie Clifford aka Stormy Daniels ("Plaintiff"), a resident of Texas, filed this action in the Superior Court for the County of Los Angeles on June 6, 2018. The next day, defendant Michael Cohen ("Mr. Cohen"), a citizen of New York, removed the action to this Court based on diversity of citizenship.  Although undisputed that defendant Keith Davidson's ("Mr. Davidson") status as a California resident defendant destroys diversity jurisdiction and thus he could not remove this action to federal court under the "forum defendant" exception, Mr. Cohen contends he was justified in removing this action because Mr. Davidson had not been served at the time of removal.

Mr. Cohen maintains this position even though Plaintiff attempted to serve Mr. Davidson in the 24 hour period between the filing of the Complaint and the filing of the removal petition, and even though Mr. Davidson clearly had notice of the Complaint as proven by (a) his release of a statement responding the Complaint within hours of its filing and (b) his preparation and filing of three separate and detailed pleadings within hours of the filing of the removal petition.  Indeed, Mr. Davidson's attorneys even agreed to accept service on the day the Complaint was filed, only to "un-accept" service hours later—*apparently so that he could coordinate and conspire with Mr. Cohen to try their chances at creating federal diversity jurisdiction where none otherwise would exist.*

Mr. Cohen and Mr. Davidson's ("Defendants") procedural stunt must fail.  The consensus view among courts in the Central District is that diversity jurisdiction under the factual and procedural circumstances presently before the Court cannot stand. Defendants rely on a literal and hyper-technical interpretation of the forum defendant exception under 28 U.S.C. section 1441(b)(2), arguing that the exception does not apply unless the local forum defendant has been "properly joined and served."  Courts in this District, however, uniformly reject this approach because doing so would create an unintended absurdity.  As aptly summarized by this Court, "permitting removal under § 1441(b) by a non-forum defendant before any defendant has been served is not in keeping

1  with the purpose of the forum defendant rule *because it promotes gamesmanship by*

2  *defendants*." <u>Austin v. AstraZeneca Pharm., LP</u>, No. CV1301544SJOJCGX, 2013 WL

3  12142637, at *2 (C.D. Cal. Apr. 22, 2013) (emphasis added).  Stated differently, "a literal

4  reading of § 1441(b) in combination with the advent of electronic filing and online

5  dockets *promotes procedural gamesmanship by defendants racing to the courthouse in*

6  *order to remove cases to federal court before the plaintiff can serve a forum defendant.*"

7  <u>Id.</u> (emphasis added).  This is a textbook example of such gamesmanship.

8       Therefore, because removal was improper under the forum defendant exception of

9  28 U.S.C. section 1441(b)(2), Plaintiff respectfully requests the Court immediately

10  remand this matter back to the Superior Court of California, County of Los Angeles.

11

12  **II.    FACTUAL BACKGROUND**

13       Plaintiff filed this action against Mr. Davidson and Mr. Cohen on June 6, 2018 in

14  the Superior Court for the State of California, County of Los Angeles, Central District.

15  [Dkt No. 1, Ex. 1 (hereafter, "Complaint").]  Plaintiff asserts two causes of action in the

16  Complaint for:  (1) breach of fiduciary duty against Mr. Davidson, and (2) aiding and

17  abetting breach of fiduciary duty against Mr. Cohen.

18       Plaintiff is a resident of the State of Texas.  [Complaint, ¶1.]    Mr.  Davidson  is

19  Plaintiff's former attorney licensed and active in the State of California, with his office in

20  Beverly Hills, and is a resident, citizen, and domiciliary of the State of California.

21  [Avenatti Decl., Ex. 1; Dkt No. 1 at 2:9-13.]   Mr. Cohen is a resident, citizen and

22  domiciliary of the State of New York.  [Dkt No. 1 at 2:9-13.]

23       Plaintiff's  Complaint  was  filed  at  approximately  11:18  a.m.  Pacific  Time.

24  [Avenatti Decl., ¶3.]  By 12:16 p.m., counsel for Mr. Davidson sent this e-mail to

25  Plaintiff's counsel:  "I understand that you have filed a lawsuit against Mr. Davidson.  **I**

26  **will accept service on this [sic] behalf**.  Please send me a copy of the complaint."

27  [Avenatti Decl., ¶4, Ex. 2 (emphasis added).]  In reliance on this e-mail, Plaintiff's

28  counsel called off efforts to serve Mr. Davidson later that night after attempted service at

1  his office was unsuccessful.  [Avenatti Decl., ¶5.]

2       By 1:10 p.m. at the latest that same day, Mr. Davidson's attorneys had apparently

3  obtained a copy of the Complaint on their own, as they released a statement responding to

4  the lawsuit.  [Avenatti Decl., ¶6.]  That Mr. Davidson already was able to release a

5  statement through his attorneys responding to the Complaint reinforced Plaintiff's

6  counsel's belief that Mr. Davidson would not attempt to play games relating to service.

7       But at 6:57 p.m., Plaintiff's counsel received an e-mail from counsel for Mr.

8  Davidson stating:  "Please note that I previously misspoke.  I am not authorized to accept

9  service on Mr. Davidson's behalf."  [Avenatti Decl., Ex. 3.]

10      Even though they already had a copy of the Complaint, Plaintiff's counsel

11 nevertheless e-mailed a copy to Mr. Davidson's attorneys at 7:27 p.m.  [Avenatti Decl.,

12 Ex. 4.]  Counsel for Mr. Davidson responded that the service was ineffective and stated

13 "we are not authorized to accept service of this complaint."  [Avenatti Decl., Ex. 5.]

14      The next day at approximately 9:00 a.m. on June 7, Mr. Cohen filed a Notice of

15 Removal.  [Dkt No. 1; Avenatti Decl., ¶10, Ex. 6.]  Mr. Davidson did not join in the

16 removal petition.  [Dkt No. 1 at 1:2-6.]  Plaintiff also filed a Notice of Related Cases.

17 [Dkt No. 4.]

18      The same day, between 3:59 p.m. and 4:13 p.m., Mr. Davidson—who Plaintiff

19 anticipates will argue he was not served with the Complaint, which Defendants intend to

20 use to form the basis for their argument that removal to this Court was proper—filed an

21 Answer and Counterclaims against Plaintiff, Plaintiff's counsel, and Mr. Cohen.

22 [Avenatti Decl., ¶11, Exs. 7-9.]

23      Shortly after Defendants' filing of their notice of removal, on June 8, this matter

24 was assigned to the Honorable Ronald S. Lew.  [Dkt No. 9.]

25      The parties met and conferred with regards to this motion between June 8 and June

26 14, but were unable to resolve their dispute.  [Avenatti Decl., ¶¶12-20, Exs. 10-14.]  Mr.

27 Cohen confirmed he would oppose the motion.  Plaintiff anticipates Mr. Cohen may

28 contend that the parties did not adequately meet and confer.  Consistent with their

1   conduct in improperly removing this case, unfortunately, Mr. Cohen's gamesmanship

2   continued in connection with the meet and confer obligations relating to this motion, as

3   summarized below.

4          Immediately recognizing the absence of legal merit for the removal according to

5   well-settled authority among courts in the Central District (as shown below), beginning

6   on June 8, Plaintiff's counsel attempted to conduct a meet and confer with Defendants'

7   counsel so that the case could immediately be remanded to state court either by way of a

8   stipulation between the parties or a motion to remand.   [Avenatti Decl., ¶12.]   In

9   furtherance of Plaintiff's efforts to avoid delay, Plaintiff's counsel sent voluminous legal

10  authority from the Central District, including from two decisions of this Court, clearly

11  demonstrating that removal was improper.  [Avenatti Decl., Exs. 10, 11.]

12         Instead of simply accepting Plaintiff's invitation to meet and confer telephonically

13  with regards to a motion that it is now clear Defendants intended to oppose from the very

14  beginning, Defendants, apparently on a quest to manipulate the timing of which motions

15  would be put before the Court first, repeatedly dodged Plaintiff and delayed.  [Avenatti

16  Decl., Ex. 10 (see emails from B. Blakely dated June 8, 11, 12, and 13).]  Plaintiff's

17  counsel made multiple requests over five days between June 8 and June 13 to meet and

18  confer.  [Id.]  Mr. Blakely, however, refused to participate in any meet and confer with

19  Plaintiff's counsel, insisting that the parties conduct an in-person meet and confer when

20  he returned to Los Angeles from a trip.  [Avenatti Decl., ¶14, Ex. 10.]  This, despite the

21  fact that at the time, this case was assigned to Judge Lew, who does not require the

22  parties to meet and confer in person.  [Avenatti Decl., ¶15, Ex. 12.]

23         The reason for Mr. Blakely's curious delay became clear on June 14.  [Avenatti

24  Decl., ¶16.]  On that day, Mr. Blakely, for the first time, disclosed to Plaintiff's counsel

25  just **nine minutes** before the parties' planned 5:00 p.m. conference call that Mr. Cohen

26  intended to file an *ex parte* application to impose a restraining order (i.e., a "gag order")

27  on Plaintiff's counsel in a completely different case – the Clifford v. Trump case before

28  this Court (Case No. CV 18-02217 SJO (FFM)).  [Avenatti Decl., Ex. 10.]  In other

1    words, Mr. Cohen delayed conferring with Plaintiff for **six days** about Plaintiff's motion

2    to remand in order to attempt to game the system and when his counsel knew from the

3    very beginning that he would be opposing the motion.  [Avenatti Decl., ¶18.]  But when

4    it came to his *ex parte* application for a gag order, he gave Plaintiff a paltry **nine minutes**

5    of notice.  [Avenatti Decl., ¶19.]  It is clear why Mr. Blakely acted this way.  He wanted

6    to delay Plaintiff from filing her motion to remand by an additional week (under the 7

7    day waiting period of Local Rule 7-3) and to thus postpone the hearing on the motion, but

8    wanted to "sandbag" Plaintiff with the "emergency" application for a gag order.

9        Indeed, Mr. Blakely cannot credibly argue that he did not know until June 14 when

10   he returned from his trip that he wanted to move for a gag order:  that is because Mr.

11   Cohen filed his *ex parte* application (a voluminous filing) less than **two hours** after the

12   parties completed their telephonic meet and confer on June 14.  [Avenatti Decl., ¶17, Ex.

13   13.]  Mr. Cohen's counsel had been apparently working on the request for a gag order for

14   days—during the time he had been avoiding Plaintiff's request for a meet and confer,

15   relying on an excuse that he was out of town.  He nevertheless failed to disclose to

16   Plaintiff's counsel in any of the extensive meet and confer correspondence between June

17   8 and June 13 that Mr. Cohen would be moving for a gag order and the parties had to

18   meet and confer in the other case.[1]  [Avenatti Decl., Ex. 10.]

19       Plaintiff's counsel and Mr. Blakely met and conferred regarding the present motion

20   during the aforementioned June 14 phone call, and were unable to resolve their dispute.

21   [Avenatti Decl., ¶22.]  Mr. Davidson did not participate in the call because, as he

22   explained in an e-mail:  "I am out of the country and unavailable.  That being said, I take

23   no position on the issue of remand and will therefore not participate.  Please let me know

24   the results of your call."  [Avenatti Decl., Ex. 14.]

25       On June 15, assignment of this case was transferred to this Court.  [Dkt No. 11.]

26

27

─────────────

28   [1] The Court denied *ex parte* relief.  [Avenatti Decl., Ex. 15.]

## III.   ARGUMENT

### A.   Removal Is Improper Under the Forum Defendant Exception.

Mr. Cohen's removal is improper under 28 U.S.C. section 1441(b)(2) because Mr. Davidson is a citizen of California.  Therefore, this case must be remanded.

Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants *is a citizen of the State in which such action is brought*."  28 U.S.C. § 1441(b)(2) (emphasis added).  "This 'forum defendant' rule 'reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state."  See, e.g., Spencer v. U.S. Dist. Court for N. Dist. of Ca., 393 F.3d 867, 870 (9th Cir. 2004); Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006) ("Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court. . . . The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought.").  "It is thus clear that the presence of a local defendant at the time removal is sought bars removal."  Spencer, 393 F.3d at 870.

Here, Mr. Davidson is a citizen of California.  [Complaint, ¶2; Dkt No. 1 at 2:9-13, 4:14-19; Avenatti Decl., ¶2, Ex. 1.]  His presence as a defendant in this action precludes removal.  This ends the analysis.  Plaintiff's motion to remand should be granted.

### B.   Defendants' Gamesmanship Does Not Save Diversity Jurisdiction.

Mr. Cohen contends that removal is proper because he is a citizen of New York, and at the time he filed his Notice of Removal, Mr. Davidson, the "forum defendant," had not been served.  Mr. Cohen is incorrect.  Procedural gamesmanship does not save federal court jurisdiction based on diversity.

"The Ninth Circuit 'has specifically rejected the contention that section 1441(b) implies that service is the key factor in determining diversity.'"  Gonzalez v. J.S. Paluch

1   Co., No. CV 12-08696 DDP FMOX, 2013 WL 100210, at *3 (C.D. Cal. Jan. 7, 2013)

2   (quoting Preseau v. Prudential Ins. Co., 591 F.2d 74, 78 (9th Cir. 1979)); see also

3   Clarence E. Morris, Inc. v. Vitek, 412 F.2d 1174, 1176 (9th Cir. 1969) ("Whenever

4   federal jurisdiction in a removal case depends upon complete diversity, the existence of

5   diversity is determined from the fact of citizenship of the parties named and not from the

6   fact of service.").

7        "The strong consensus in the Central District . . . is to focus on the purpose and not

8   the literal language of § 1441(b)(2)."   Black v. Monster Beverage Corp., No.

9   EDCV1502203MWFDTB, 2016 WL 81474, at *3 (C.D. Cal. Jan. 7, 2016).  "To adopt 'a

10  literal interpretation of the 'joined and served' provision [would promote] gamesmanship

11  by defendants through allowing removal before a plaintiff has a meaningful chance to

12  serve any defendant.'"   Id. (quoting Standing v. Watson Pharm., Inc., No. CV09-0527

13  DOC (ANX), 2009 WL 842211, at *4 (C.D. Cal. Mar. 26, 2009)).  "Viewing the words

14  'joined and served' in light of the statute's goal to permit only out-of-state defendants to

15  litigate in federal courts, a more sensible reading 'is to prevent plaintiffs from improperly

16  joining forum defendants that they do not actually intend to pursue in order to prevent

17  removal.'"   Id. (quoting Standing, 2009 WL 842211, at *3).  "But where a forum

18  defendant is not fraudulently joined, following the plain meaning of the statute would

19  'both undermine[ ] the general purpose of the forum defendant rule (i.e. to keep certain

20  cases in state court) and inappropriately prevent[ ] plaintiffs from litigating in the forum

21  of their choice.'"   Id. (quoting Standing, 2009 WL 842211, at *4).

22       Courts within this district (including this Court) follow this rationale and find

23  removal improper in circumstances similar to those presently before the Court.  See, e.g.,

24  Pinter v. Arthury J. Gallagher Serv. Co., LLC, No. CV159449FMODTBX, 2016 WL

25  614348, at *4 (C.D. Cal. Feb. 16, 2016) (rejecting "assertion that unserved defendants

26  may be ignored for purposes of determining whether complete diversity of citizenship

27  exists and whether removal is proper."); Vallejo v. Amgen, Inc., No.

28  CV1303666BROMANX, 2013 WL 12147584, at *3 (C.D. Cal. Aug. 30, 2013) (granting

1  remand of case removed by non-forum defendant before forum defendant could be served
2  because the defendants' interpretation "would effectively circumvent Congress's entire
3  statutory scheme and render § 1441(b)(2) superfluous."); Khashan v. Ghasemi, No.
4  CV10-00543MMM(CWX), 2010 WL 1444884, at *2-3 (C.D. Cal. Apr. 5, 2010)
5  (remanding in action filed by Arizona resident where non-forum defendants removed
6  before forum defendant was served); Mohammed v. Watson Pharms. Inc., No. SA CV09-
7  0079 DOC ANX, 2009 WL 857517, at *3 (C.D. Cal. Mar. 26, 2009) (holding that
8  removal before any defendant had been served was improper because a literal
9  interpretation of "and served" thwarts the purpose of § 1441(b)).

10       This Court's decision in Austin v. AstraZeneca Pharm., LP, No.
11  CV1301544SJOJCGX, 2013 WL 12142637 (C.D. Cal. Apr. 22, 2013), is instructive.
12  There, this Court, after careful analysis and consideration, including a review of the
13  underlying purpose of the exception and district court decisions from outside of
14  California, concluded that "permitting removal under § 1441(b) by a non-forum
15  defendant before any defendant has been served is not in keeping with the purpose of the
16  forum defendant rule *because it promotes gamesmanship by defendants*." Id. at *2
17  (emphasis added). The Court found "removal is improper when it occurs before the
18  plaintiff has served any defendant in the case. This finding is consistent with Ninth
19  Circuit precedent requiring district courts to strictly construe the removal statute against
20  removal jurisdiction." Austin, 2013 WL 12142637, at *2.

21       In reaching this conclusion, the Court agreed with those courts recognizing "that a
22  literal reading of § 1441(b) in combination with the advent of electronic filing and online
23  dockets *promotes procedural gamesmanship by defendants racing to the courthouse in*
24  *order to remove cases to federal court before the plaintiff can serve a forum defendant.*"
25  Id. (emphasis added). The Court ruled "[t]his gamesmanship is **especially egregious**
26  where, as here, *a defendant removes the case before any defendant has been served*
27  *because such conduct undermines the forum defendant rule and inappropriately prevents*
28  *plaintiffs from choosing the forum*." Id. (emphasis added); see also Burr v. Medtronic

**PLAINTIFF'S STEPHANIE CLIFFORD'S MOTION TO REMAND**

1   Minimed, Inc., No. CV1104732SJORZX, 2011 WL 13220775, at *4 (C.D. Cal. Aug. 9,
2   2011) ("[R]emoval under § 1441(b) by a non-forum defendant where no forum
3   defendants have yet been served is improper because it promotes gamesmanship by
4   defendants and likely deprives plaintiffs of a meaningful opportunity to effectuate
5   service.") (Otero, J.)

6        That is exactly what happened here.  In the hopes of "gaming" the diversity
7   jurisdiction statute, Mr. Cohen filed the Notice of Removal only 24 hours after Plaintiff
8   filed her lawsuit, thus ensuring that Plaintiff would not have sufficient time to serve the
9   forum defendant, Mr. Davidson.  The conduct of both Defendants reeks of procedural
10  gamesmanship with the aim of forcing federal diversity jurisdiction where none exists.
11  This is apparent from the following timeline:

12

| **Date & Time** | **Event** |
|---|---|
| June 6, 2018, 11:18 am | Plaintiff files Complaint in LA Superior Court |
| June 6, 2018, 12:16 pm | Mr. Davidson's attorney agrees to accept service of the Complaint on behalf of Mr. Davidson; Plaintiff's counsel calls off efforts to serve Mr. Davidson |
| June 6, 2018, 1:10 pm | Mr. Davidson issues a statement responding to the lawsuit, calling it "outrageously frivolous" |
| June 6, 2018, 6:57 pm | Mr. Davidson's attorney suddenly changes his mind and claims he is no longer authorized to accept service |
| June 6, 2018, 7:27 pm | Plaintiff's counsel e-mails a copy of the Complaint to counsel for Mr. Davidson |
| June 7, 2018, 9:00 am | Mr. Cohen files his Notice of Removal |
| June 7, 2018, 3:59 pm-4:13 pm | Mr. Davidson (who now claims he was not served) files: (1) Answer, (2) Counterclaim, and Cross-Claim |

**PLAINTIFF'S STEPHANIE CLIFFORD'S MOTION TO REMAND**

1    Mr. Davidson thus clearly had notice of the Complaint shortly after it was filed—

2    enough notice to send out a public statement less than two hours after its filing and to

3    prepare and file three separate (and detailed) pleadings just one day after filing.  Yet, to

4    exploit a mistakenly perceived loophole to force jurisdiction in this Court, he then

5    appears to have colluded with Mr. Cohen to "un-accept" service to allow Mr. Cohen to

6    file his Notice of Removal.  Federal court jurisdiction should not be decided based on

7    who is served first or which Defendant races fastest to the courthouse.  This is precisely

8    the kind of "gamesmanship" this Court and others find "egregious," and exactly the type

9    of absurdity that would result from adopting a literal and hyper-technical interpretation of

10   section 1441(b)(2).  Removal, therefore, was improper.

11

12   **IV.    CONCLUSION**

13       For the reasons stated above, Plaintiff respectfully requests the Court GRANT her

14   motion to remand, and remand this case back to the Superior Court for the State of

15   California, County of Los Angeles.

16   DATED:  June 22, 2018                    AVENATTI & ASSOCIATES, APC

17

18

19                                              /s/ Michael J. Avenatti
                                            _____
20                                          MICHAEL J. AVENATTI
                                            Attorneys for Plaintiff

21

22

23

24

25

26

27

28

**PLAINTIFF'S STEPHANIE CLIFFORD'S MOTION TO REMAND**

# Exhibit 13

Case 2:18-cv-05052-SJO-FFM   Document 49   Filed 08/02/18   Page 1 of 7   Page ID #:854

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 __XXX__
Scan Only _____

=========================================================================

**CASE NO.:**   **CV 2:18-05052 SJO (FFMx)**       **DATE:**  **August 2, 2018**

**TITLE:**      **Stephanie Clifford v. Keith Davidson et al.**

=========================================================================

**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**       **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

=========================================================================

**PROCEEDINGS (in chambers):  ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**
[Docket No. 15]

This matter is before the Court on Plaintiff Stephanie Clifford's ("Ms. Clifford" or "Plaintiff") Motion to Remand Case to Los Angeles Superior Court ("Motion"), filed June 22, 2018.  Defendant Michael Cohen ("Mr. Cohen" or "Defendant") opposed the Motion ("Opposition") on July 2, 2018. Plaintiff replied ("Reply") on July 9, 2018.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 23, 2018.  *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Plaintiff's Motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The central dispute presented to the Court is the extent to which either party will be permitted to engage in gamesmanship and litigation tactics designed to circumvent the rules, requirements, and orders of this Court. Both sides have a laundry list of complaints concerning the other party's behavior and request that the Court consider the propriety, in light of these complaints, of issuing an order remanding the action back to Los Angeles Superior Court.  The relevant procedural history is as follows.

On March 6, 2018, Ms. Clifford filed a complaint in the Superior Court of the State of California for the County of Los Angeles seeking declaratory judgment that an agreement (the "Agreement") between herself,  Essential Consultants, LLC ("EC"), and Donald J. Trump ("Mr. Trump") is void, invalid, or unenforceable (the "DJ Action").  (*See* Notice of Removal, Ex. 1 ("DJ Compl."), 2:18-cv-02217-SJO-FFM, ECF No. 1-1.)  EC removed the DJ Action to this Court on March 16, 2018. (Notice of Removal, 2:18-cv-02217-SJO-FFM, ECF No. 1.)  On March 26, 2018, Plaintiff filed a First Amended Complaint ("FAC") adding a claim for defamation against Mr. Cohen, named in the Agreement as the attorney for EC.  (*See generally* FAC, 2:18-cv-02217-SJO-FFM, ECF No. 14.)

On April 5, 2018, Mr. Trump and EC filed an *ex parte* application requesting that the Court grant the defendants an extension of time to respond to the FAC.  (*Ex Parte* Application for Extension of Time,  2:18-cv-02217-SJO-FFM, ECF No. 26.)  Addressing the parties' dispute over whether

Case 2:18-cv-06893-JLS-FFM   Document 14-2   Filed 08/06/18   Page 65 of 108   Page ID
#:543
Case 2:18-cv-05052-SJO-FFM   Document 49   Filed 08/02/18   Page 2 of 7   Page ID #:855

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | **XXX** |

**CASE NO.:   CV 2:18-05052 SJO (FFMx)          DATE:  August 2, 2018**

each side had adequately complied with the Court's "meet and confer" requirement, the Court noted that "[t]he instant dispute could, and should, have been resolved in a civil manner by the parties without intervention by the Court." (Order Granting Def's Ex Parte Appl. 2, 2:18-cv-02217-SJO-FFM, ECF No. 28.)

The issue of a failure to meet and confer was brought before the Court again on April 9, 2018, in objections filed by EC and Mr. Cohen to Ms. Clifford's Motion for Expedite Jury Trial. (Objections, 2:18-cv-02217-SJO-FFM, ECF No. 32.)  The Court ruled that "[a]s this is the second time in this one month old action a failure to meet and confer has been brought before the Court, every further motion presented to the Court must include either (1) a stipulation signed by both parties that confirms a meet and confer has occurred, or (2) a declaration from the moving party explaining the exhaustive efforts undertaken to conduct a meet and confer and the exact reasons why the parties have failed to do so." (Order Responding to Def.'s Objections, 2:18-cv-02217-SJO-FFM, ECF No. 35.)

On April 13, 2018, Mr. Cohen and EC moved *ex parte* to stay the DJ Action on the grounds that the proceedings would severely prejudice Mr. Cohen's Fifth Amendment rights in light of an ongoing criminal investigation into Mr. Cohen and EC. (Ex Parte Appl. To Stay Case, 2:18-cv-02217-SJO-FFM, ECF No. 38.)  The Court granted the stay (the "Stay Order") on April 27, 2018, noting that while "the exact scope and breadth of the criminal investigation remains unclear, both the government and Mr. Cohen have indicated that the subject matter of the criminal investigation, and the documents seized, in some part reference the $130,000 payment made to Ms. Clifford pursuant to the Agreement." (Order Granting Def's Ex Parte Appl. to Stay Case, 2:18-cv-02217-SJO-FFM, ECF No. 53.)  Plaintiff moved the Court to reconsider the Stay Order on May 24, 2018, and the Court denied Plaintiff's motion on June 19, 2018.  (Mot. for Reconsideration, 2:18-cv-02217-SJO-FFM, ECF No. 56; Order Denying Pl's Mot. For Reconsideration, 2:18-cv-02217-SJO-FFM, ECF No. 63.)

On June 6, 2018, Plaintiff filed the instant action in the Superior Court of the State of California for the County of Los Angeles, alleging that her former attorney Keith Davidson ("Mr. Davidson"), who negotiated the Agreement with Mr. Cohen, breached his fiduciary duty to Plaintiff by acting in "concerted action with Mr. Cohen" to benefit Mr. Trump at Ms. Clifford's expense.  (Notice of Removal Ex. 1 ("Compl.") ¶ 66, ECF No. 1-1.)  Plaintiff also alleges that Mr. Cohen "aided and abetted" this breach of fiduciary duty.  (Compl. ¶¶ 74-82.)  Plaintiff's complaint (the "Complaint") is based on a variety of text message exchanges between Mr. Davidson and Mr. Cohen, an unauthorized attempt by Mr. Davidson to arrange a media appearance for Ms. Clifford for the benefit of Mr. Trump, and Mr. Davidson's alleged failure to return the entirety of Plaintiff's client file, including the totality of his correspondence with Mr. Cohen. (*See generally* Compl.)  Plaintiff requests damages from both parties and the return of her client file from Mr. Davidson. (Compl. 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | __XXX__ |
| Scan Only | ____ |

CASE NO.:  **CV 2:18-05052 SJO (FFMx)**          DATE:  <u>August 2, 2018</u>

Plaintiff's counsel, Michael Avenatti ("Mr. Avenatti"), filed the Complaint at approximately 11:18 a.m. PST.  (Decl. Michael J. Avenatti ("Avenatti Decl.") ¶ 3, ECF No. 15-2.)  At 12:16 p.m., Mr. Avenatti received an e-mail from attorney Michael D. Padula ("Mr. Padula"), stating that "I understand you have filed a lawsuit against Mr. Davidson. I will accept service on this [sic] behalf. Please send me a copy of the complaint."  (Avenatti Decl. ¶ 4, Ex. 2.)  Mr. Avenatti, who had previously attempted to serve Mr. Davidson at his office, ceased his attempts at personal service. (Avenatti Decl. ¶ 5.)  At 1:10 p.m., a public statement responding to the lawsuit was released on Mr. Davidson's behalf, indicating that Mr. Davidson's self-identified attorneys had received a copy of the Complaint. (Avenatti Decl. ¶ 6.)  At 6:57 p.m., Mr. Avenatti received a second e-mail from Mr. Padula, requesting that Mr. Avenatti "[p]lease note that I previously misspoke. I am not authorized to accept service on Mr. Davidson's behalf."  (Avenatti Decl. Ex. 3.)  Mr. Avenatti sent Mr. Padula an e-mail at 7:27 p.m. with a copy of the Complaint attached.  (Avenatti Decl Ex. 4.) Gene Rossi, who was included on the e-mail exchanges between the parties, responded at 8:06 p.m. that "[a]s Michael Padula made very clear and informed you earlier today . . . we are not authorized to accept service of this complaint."  (Avenatti Decl. Ex. 5.)

At exactly 9:00 a.m. on June 7, Mr. Cohen filed the Notice of Removal.  (*See* Notice of Removal, ECF No. 1.)  In the Notice of Removal, Mr. Cohen states that he "is informed and believes that Mr. Davidson has not been served with a copy of the Summons or Complaint in the Action." (Notice of Removal 2.)  A few hours later, Mr. Davidson filed an answer, a counterclaim for defamation against Ms. Clifford, Mr. Avenatti, and law firms Avenatti & Associates and Eagan Avenatti, LLP, and a crossclaim for violation of the California Invasion of Privacy Act against Mr. Cohen. (Answer, ECF No. 5; Counterclaim, ECF No. 6; Crossclaim, ECF No. 7.)

On June 8, 2018, Mr. Avenatti contacted counsel for Mr. Cohen, Brent Blakely ("Mr. Blakely"), to conduct a meet and confer on the motion for remand.  (Avenatti Decl. Ex. 10.)  Mr. Blakely refused multiple requests for a telephonic meet and confer, indicating that he would prefer to meet and confer in person, as strongly encouraged by the local rules, when he returned to Los Angeles approximately one week later.  (Avenatti Decl. Ex. 10.)  The parties held a meet and confer on June 14, just before which Mr. Blakely informed Mr. Avenatti that he would be filing an *ex parte* application for a  restraining order against him in the DJ Action.  (Avenatti Decl. Ex. 10.)  Mr. Blakely filed the *ex parte* application that same day.  (Ex Parte Application for Restraining Order, 2:18-cv-02217-SJO-FFM, ECF No. 60.)  Finding that "Defendant has not demonstrated . . . that immediate, irreparable injury would occur in the absence of emergency *ex parte* relief," the Court opted to treat the Application as a regularly noticed motion and set a briefing schedule pursuant to local rule.  (Order Setting Briefing Schedule 1, 2:18-cv-02217-SJO-FFM, ECF No. 61.)

The instant action was transferred to this Court on June 15, 2018.  (ECF No. 11.)  Plaintiff's Motion followed on June 22, 2018.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | **XXX** |
| Scan Only | ____ |

---

**CASE NO.:** <u>CV 2:18-05052 SJO (FFMx)</u>     **DATE:** <u>August 2, 2018</u>

---

II.     <u>DISCUSSION</u>

In her Motion, Plaintiff argues that removal of this action is a clear violation of the "forum defendant rule," which prohibits removal to federal court on the basis of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  (*See generally* Mot., ECF No. 15; 28 U.S.C.A. § 1441.)  The parties do not dispute that Ms. Clifford resides in Texas, Mr. Davidson resides in and is a citizen of California, and Mr. Cohen resides in and is a citizen of New York.  (*See* Compl. ¶¶ 1-3.)    Defendant responds that the action is an improper attempt by Plaintiff to forum shop and bypass the Stay Order, that Mr. Davidson is a fraudulently joined party, that the Court should interpret the statute to permit removal before any defendant has been served, including the forum defendant, and that the Court has supplemental jurisdiction over the action.  (*See generally* Opp'n, ECF No. 18.)  The Court analyzes the parties' arguments below.

A.     <u>The Forum Defendant Rule</u>

The "forum defendant rule" serves as a restriction on the removal of an action from state to federal court, and thus addresses the "removal jurisdiction" of the federal court.  *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).  Unlike subject matter jurisdiction, an objection to removal jurisdiction is "procedural," and a Court may decline to remand an action based on the rule if an objection is not made within 30 days after the filing of the notice of removal.  *Id.*  District courts are divided over whether the rule's requirement that the forum defendant is "properly joined **and served**" in the  action indicates that removal is permitted when the plaintiff has not yet had a meaningful opportunity to effectuate service on any defendant.  *See* Christopher M Strogonsky et al, *Removal Jurisdiction: Congressional Intent or Litigation Gamesmanship?*, S.10 No. 1 In-House Def. Q. 12 (2015) (noting that a majority of district courts permit pre-service removal based on the "plain language" of the statute, while approximately a third of district courts hold that allowing removal in these circumstances would be "absurd").

This Court has previously addressed the proper application of the forum defendant rule in *Austin v. AstraZeneca Pharm., LP*, No. CV1301544SJOJCGX, 2013 WL 12142637, at *2 (C.D. Cal. Apr. 22, 2013) (Otero, J.).  In *Austin*, the Court noted:

> The purpose of the forum defendant rule is related to the rationale of federal diversity jurisdiction generally in that "[r]emoval based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court . . . . The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).  The requirement that a forum defendant be "properly joined and served" was added to the removal statute in 1948.  *See Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 644 (D.N.J. 2008)

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | **XXX** |
| Scan Only | ____ |

---

**CASE NO.:  CV 2:18-05052 SJO (FFMx)**      **DATE:  August 2, 2018**

---

(examining the legislative history surrounding the addition of the "and served" language to § 1441(b)). The purpose of adding this language was to combat the increasing tendency of plaintiffs to join forum defendants they did not intend to pursue solely for the purpose of defeating federal diversity jurisdiction. *See Sullivan*, 575 F. Supp. 2d at 645; *Mohammed*, 2009 WL 857517, at *3; *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003). In other words, the purpose of the amendment was to prevent procedural gamesmanship by plaintiffs. *Mohammed*, 2009 WL 857517, at *3.

Many courts have recently recognized that a literal reading of § 1441(b) in combination with the advent of electronic filing and online dockets promotes procedural gamesmanship by defendants racing to the courthouse in order to remove cases to federal court before the plaintiff can serve a forum defendant . . . . This gamesmanship is especially egregious where, as here, a defendant removes the case before any defendant has been served because such conduct undermines the forum defendant rule and inappropriately prevents plaintiffs from choosing the forum.

*Id.* at *2. The Court thus held that because it "may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statue," *Albertson's, Inc. v. Comm'r*, 42 F.3d 537, 545 (9th Cir. 1994), section 1441(b) forecloses removal before the plaintiff has a meaningful opportunity to serve the defendant. *Id.* at *3.

Here, there has been clear gamesmanship designed to subvert the application of the forum defendant rule and bring this action to federal court. While Defendant urges the Court to depart from its previous ruling and find that the "plain language" of the statute governs, in part because of Plaintiff's own litigation gamesmanship and forum shopping, statutory interpretation is not amenable to adjustment on the sole basis of the Court's whim. To hold as Defendant requests would be to hold that pre-service removal is proper where the plaintiff has engaged in **more** gamesmanship than the defendant, creating inconsistency and uncertainty for future litigants as to when the rule applies. As Defendant has not demonstrated that there is a compelling, novel **legal** reason to overturn its prior ruling, and the Ninth Circuit has yet to weigh in on the issue, the Court declines to revisit its holding in *Austin*.

　　B.　　Sham Defendants

Defendant next argues that the forum defendant rule should not apply because Keith Davidson is a "sham defendant," and that Plaintiff's claim against Davidson is "a clumsy ploy to continue to litigate against Mr. Cohen." (Opp'n 10.) Under Ninth Circuit law, "[i]t is a commonplace that fraudulently joined defendants will not defeat removal[.]" *Ritchey v. Upjohn Drug Co.*, 139 F.3d

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Priority | |
|---|---|
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | **XXX** |
| Scan Only | _____ |

CASE NO.:  **CV 2:18-05052 SJO (FFMx)**        DATE:  <u>August 2, 2018</u>

1313, 1318 (9th Cir. 1998).  Defendant argues that "Clifford's claim against Davidson is devoid of merit and has no chance of success," and thus Mr. Davidson was fraudulently joined.  (Opp'n 10.)

Even if the Court agreed with Defendant regarding the merits of the underlying claims, this does not in itself indicate that Mr. Davidson was fraudulently **joined** in the action.  The gravamen of Plaintiff's claims, that Mr. Davidson breached his fiduciary duty, are directed specifically toward Mr. Davidson.  (*See generally* Compl.) The claims that Mr. Cohen "aided and abetted" this breach are tangential and directly related to the claims against Mr. Davidson.  If anything, the facts would support a claim that **Mr. Cohen** was fraudulently joined in the action, not that Mr. Davidson was himself fraudulently joined to the action.  Unfortunately for Mr. Cohen, however, it is Mr. Davidson's citizenship that matters for the purpose of the forum defendant rule, and if the Court does not have removal jurisdiction, it cannot rule on the merits of these claims.

  C. <u>Supplemental Jurisdiction and Administrative Discretion</u>

Defendant finally argues that the Court has "supplemental subject matter jurisdiction" over Plaintiff's claims, and that it should exercise its "inherent authority" to manage cases to either dismiss Mr. Cohen as a defendant, dismiss the entire action, or stay the lawsuit.  (Opp'n 15-19.)  The Ninth Circuit has made it clear, however, that "[s]upplemental jurisdiction must be exercised in the same action that furnishes the basis for exercise of supplemental jurisdiction."  *Ortolf v. Silver Bar Mines, Inc.*, 111 F.3d 85, 86 (9th Cir. 1997), as amended on denial of reh'g (June 10, 1997).  While the factual circumstances in the cases may overlap to some extent, these are clearly separate claims in two separately filed actions.  Supplemental jurisdiction is therefore inappropriate.

As to Defendant's argument regarding "inherent authority," the Court does not have the authority to issue rulings or manage cases over which it does not have jurisdiction.  Though the Ninth Circuit has made it clear that an objection to removal jurisdiction is waivable, Defendant points to no case that suggests that a district court may ignore or decline to follow the forum defendant rule if an objection is properly raised by the plaintiff within the thirty day time limit.  Moreover, while the Court agrees that the resolution of these issues in one court would promote judicial economy, California courts are capable of resolving all of the objections raised by Defendant, including the substantive merits of Plaintiff's claims, personal jurisdiction over Mr. Cohen, and the preservation of Mr. Cohen's Fifth Amendment privilege.

As a final matter, the Court notes that the resolution of this issue is based on the application of removal jurisdiction only, and the Court is not condoning or making findings regarding Plaintiff's alleged gamesmanship and oppressive litigation tactics.  Ms. Clifford and Mr. Cohen are parties to an action that still remains before this Court and **must** follow the rules and requirements thereof, including the requirement that the parties meet and confer seven days prior to the filing of a properly noticed motion.  This meeting, absent good cause, must occur **in person**.  Failure

MINUTES FORM 11
CIVIL GEN       Page  6  of  7     Initials of Preparer _____

___ : ___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **Priority** | _____ |
| **Send** | |
| **Enter** | |
| **Closed** | |
| **JS-5/JS-6** | **XXX** |
| **Scan Only** | _____ |

**CASE NO.:** <u>CV 2:18-05052 SJO (FFMx)</u>     **DATE:** <u>August 2, 2018</u>

to comply with the rules may result in sanctions or other measures the Court deems appropriate.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand.

IT IS SO ORDERED.

# Exhibit 14

1  Brent H. Blakely (SBN 157292)
2  bblakely@blakelylawgroup.com
   Jessica C. Covington (SBN 301816)
3  jcovington@blakelylawgroup.com
4  BLAKELY LAW GROUP
   1334 Parkview Avenue, Suite 280
5  Manhattan Beach, California 90266
6  Telephone: (310) 546-7400
   Facsimile: (310) 546-7401
7
8  Attorneys for Defendant
   MICHAEL COHEN
9

10          **UNITED STATES DISTRICT COURT**

11         **CENTRAL DISTRICT OF CALIFORNIA**

12

13  STEPHANIE CLIFFORD (AKA          Case No. 2:18-cv-05052-SJO (FFMx)
    STORMY DANIELS), an individual,
14                                   **DEFENDANT MICHAEL**
                                     **COHEN'S NOTICE OF RULE**
15          Plaintiffs,              **12(b)(2) MOTION TO DISMISS**
                                     **ALL CLAIMS AGAINST HIM DUE**
16          v.                       **TO LACK OF PERSONAL**
                                     **JURISDICTION; MEMORANDUM**
17  KEITH M. DAVIDSON, an individual, **OF POINTS AND AUTHORITIES**
18  MICHAEL COHEN, an individual, and
    DOES 1 through 10, inclusive,     **Date:      August 6, 2018**
19                                    **Time:      10:00 a.m.**
20          Defendants.              **Location:  Courtroom 10C**

21                                     **Hon. S. James Otero**
22
23                                   Complaint Filed:  June 6, 2018

24  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25          PLEASE TAKE NOTICE that on August 6, 2016, at 10:00 a.m., or as soon

26  thereafter as the matter can be heard in Courtroom 10C of the United States District

27  Court for the Central District of California located in the United States Courthouse at

28  350 W. 1st Street, Los Angeles, California 90012, Defendant Michael Cohen

                                      1

("Defendant" or "Cohen") will and hereby does move the Court for an order dismissing Plaintiff Stephanie Clifford's ("Plaintiff") and Defendant Keith M. Davidson's respective claims against him.

This Motion will be and is made pursuant to Federal Rule of Civil Procedure 12(b)(2) and will be and is made on the grounds that this Court lacks personal jurisdiction over Cohen.

This Motion will be and is based upon this notice; the attached memorandum of points and authorities; the declaration of Jessica C. Covington; the records, papers and pleadings on file in this action; and such further oral and/or documentary evidence and argument as may be presented prior to or at the hearing of the Motion.

This Motion is made following the meeting between Ahmed Ibrahim, counsel for Plaintiff, and Brent H. Blakely and Jessica C. Covington, counsel for Cohen, which took place on June 26, 2018 at the offices of Cohen's counsel. The parties discussed Cohen's position that the exercise of personal jurisdiction by this Court was improper due to Cohen's lack of contact with the state of California. Plaintiff disagreed and would not dismiss the claims against Cohen based on this position. (Declaration of Jessica C. Covington ("Covington Dec."), ¶ 3) Cohen continued this meet and confer process when Ms. Covington sent a letter to Plaintiff, further explaining Cohen's position regarding lack of personal jurisdiction, including an analysis of purposeful direction. However, Cohen did not receive a response to this communication. (Covington Dec., ¶ 4)

This Motion is made following the meeting between counsel for Cohen and Davidson, which took place also took place on June 26, 2018. (Covington Dec., ¶ 5)

Dated:  July 3, 2018                    BLAKELY LAW GROUP

                                        By:  */s/ Jessica C. Covington*
                                             Brent H. Blakely
                                             Jessica C. Covington
                                             **Attorneys for Defendant Michael Cohen**

2
DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL
CLAIMS AGINST HIM DUE TO LACK OF PERSONAL JURISDICTION

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Defendant Michael Cohen ("Cohen") is a resident of the State of New York, with no offices or continuous presence in the state of California whatsoever. Still, Plaintiff Stephanie Clifford's ("Plaintiff") has filed the present action against Cohen in this forum.  Plaintiff's sole jurisdictional hook is linked to phone calls made and text messages sent by Cohen to Keith Davidson, a resident of California, when the latter was acting as counsel of Plaintiff. However, such isolated and insignificant communications fall far well short of the "minimum contacts" with the forum state required for Cohen to submit to jurisdiction here. The Complaint is devoid of allegations that Cohen was ever present in the state of California when these communications occurred, or that Cohen somehow directed these communications or any relevant action toward the State of California. This is because no such California-related actions on the part of Cohen exist.

Additionally, in filing the Crossclaim against Cohen, Davidson relies on the allegations of Plaintiff's Complaint to establish personal jurisdiction, simply stating that Cohen has submitted to the jurisdiction of this Court. However, Cohen has done no such thing. In fact, in his Answer to the Complaint, Cohen expressly objects to the Complaint based on lack of personal jurisdiction.

Where there are no minimum contacts between Cohen and the state of California that gave rise to the claims as alleged in the Complaint and Crossclaims, this Court's exercise of personal jurisdiction over Cohen would be improper as a matter of law.

**II.    <u>THIS COURT LACKS JURISDICTION OVER COHEN</u>**

To proceed with their claims against Cohen in California, Plaintiff and Davidson must first establish that this Court has *in personam* jurisdiction over Cohen. *Pennoyer v. Neff*, 95 U.S. 714, 720-722 (1877).  Cohen, a resident of New York, has

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS
PLAINTIFF'S CLAIM AGINST HIM DUE TO LACK OF PERSONAL JURISDICTION

not consented to jurisdiction in California.[1]  Further, he does not have the requisite minimum contacts with the State of California.  *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff's jurisdictional allegations are taken as true only if they are uncontroverted by the defendant. *Id.* However, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Thus, courts must identify which statements in the complaint are factual allegations, which are legal conclusions, and disregard the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In the Complaint to this action, Plaintiff has vaguely alleged that Cohen has "transacted and conducted substantial business in the State of California," that many of the alleged actions by Cohen "were directed to and/or occurred in the State of California," and "many of the events giving rise to the claims at issue in this lawsuit arose in California…" (*See* Complaint, ¶ 7)   These are the very type of conclusory allegations which the Supreme Court has instructed courts to disregard.  *Ashcroft*, 556 U.S. at 681.

Similarly, in his Crossclaim, Davidson alleges that Cohen has submitted

---

[1] In removing this case to federal court, Mr. Cohen in no way consented to personal jurisdiction. *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) ("[I]f the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal. . . .")

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL
CLAIMS AGAINST HIM DUE TO LACK OF PERSONAL JURISDICTION

1  himself to this Court's jurisdiction (Docket No. 7, Crossclaim, ¶ 9). The latter
2  statement is false as in his Answer to Plaintiff's Complaint, Cohen expressly objects
3  to the Complaint based on lack of personal jurisdiction (Docket No. 19, Cohen's
4  Answer to Complaint ("Answer"), ¶ 7 and p. 14), and has not filed any other
5  document, paper, or pleading wherein he has acknowledged and/or submitted to this
6  Court's jurisdiction. (Declaration of Jessica C. Covington ("Covington Dec."), ¶ 6)
7  *See* Fed.R.Civ.P. 12(h).

8         Neither the Complaint nor the Crossclaim allege that Cohen was physically
9  present in the state of California when he performed the acts allegedly arising to the
10 claims therein. Nor do those pleadings allege any connection between Cohen and the
11 state of California. In fact, Davidson's Crossclaim makes it clear that the alleged
12 conversations between him and Cohen were never held face-to-face. (Crossclaim, ¶ 7)
13 This is because when the alleged communications occurred, Cohen was in the state of
14 New York where he resides.  Furthermore, such communications were made with
15 Davidson only in his capacity as Plaintiff's counsel, and there are no contacts on the
16 part of Cohan that would give rise to an action within the state of California.

17     **A.**    **Neither Plaintiff Nor Davidson Can Establish General Jurisdiction**
18            **Over Cohen**

19         Pursuant to due process, a defendant may be subject to either general or
20 specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S. A. v. Hall*,
21 466 U.S. 408 (1984). General jurisdiction allows a plaintiff to sue a defendant in the
22 forum regardless of the subject matter of the litigation. However, "only a limited set
23 of affiliations with a forum will render a defendant amenable to general jurisdiction in
24 that State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017)
25 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)) (internal quotations
26 omitted) Indeed, "[f]or an individual, the paradigm forum for the exercise of general
27 jurisdiction is the individual's domicile." *Id.*

28         The Complaint and Crossclaim are both devoid of allegations that Cohen is

subject to general jurisdiction in California, and they therefore implicitly acknowledge that general jurisdiction does not exist. Given that Cohen is a resident of the New York, he is not subject to the exercise of general jurisdiction by this Court.

**B.   Neither Plaintiff Nor Davidson Can Establish Specific Jurisdiction Over Cohen**

Personal jurisdiction over a nonresident defendant is only proper if a rule or statute confers jurisdiction over the defendant, and the exercise of personal jurisdiction over the defendant does not offend due process. *Doe v. Unocal Corp.*, 248 F.3d 915, 921-22 (9th Cir. 2001). Due process is only satisfied for this purpose if the defendant has "certain minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The inquiry into the "minimum contacts" required to create specific jurisdiction focuses on the relationship among "the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). For a state to exercise jurisdiction consistent with due process, that relationship must arise "from actions by the defendant himself that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted). "The plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *High Tech Pet Prods. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2014 U.S. Dist. LEXIS 29772 at *17 (E.D. Cal. Mar. 6, 2014).

Because the California long-arm statute is coextensive with the due process clause of the Fourteenth Amendment, "the jurisdictional analysis under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 801. When analyzing specific personal jurisdiction, the Ninth Circuit utilizes a three-prong test. First, in a case such as this one, the defendant must either purposely direct his activities toward

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL CLAIMS AGAINST HIM DUE TO LACK OF PERSONAL JURISDICTION

California, or purposefully avail himself of the privilege of doing business in California, and by doing so invoke the benefits and protections of the forum state. *Id.* at 802. Second, the claim must arise out of or relate to the defendant's California activities. *Id.* Third, the court's exercise of personal jurisdiction over the defendant must be reasonable and comport with the notions of fair play and substantial justice. *Id.*

### i.      Cohen Did Not Purposefully Direct Any Relevant Activity Towards the State of California

With regard to the first element, the court applies the purposeful availment test when the underlying claims of the action arise from a contract. *Id.* The purposeful direction test is applied when the underlying claims are based in alleged tortious conduct. *Id.* Because Cohen is facing a claim of aiding and abetting and a cross-claim for violation of the California Invasion of Privacy Act, the application of the purposeful direction test is appropriate here.

Purposeful direction "requires that the defendant…have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). It is true that actions may be directed at the forum state, even when such action occurred elsewhere. *Id.* However, "random, fortuitous, or attenuated contact" do not amount to the requisite connection to the forum.  *Burger King Corp.*, 471 U.S. at 476-78. Moreover, "[i]f any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

Here, there is no dispute that purposely placing phone calls and sending text messages to Davidson amounts to an "intentional act" for purposes of the purposeful direction analysis. However, these phone calls and text messages fall far short of an act that is expressly aimed at the state of California. There are no allegations that the

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL CLAIMS AGAINST HIM DUE TO LACK OF PERSONAL JURISDICTION

1   communications between Cohen and Davidson occurred while Cohen was in the state

2   of California. Indeed, there is no evidence that Davidson was even in the State of

3   California when any of the alleged communications took place.  "It is well-settled in

4   the Ninth Circuit and other circuits that phone calls, mailings, and facsimile do not

5   provide for personal jurisdiction." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.

6   1985). Further, "[f]or a State to exercise jurisdiction consistent with due process, the

7   defendant's suit-related conduct must create a ***substantial*** connection with the forum

8   State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). The court looks

9   to "the defendant's contacts ***with the forum State itself***, not the defendant's contacts

10   with persons who reside there." *Id.* (emphasis added); *see also*, *Senne v. Kan. City*

11   *Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1027-28 (N.D. Cal. 2015). Moreover,

12   the Supreme Court has consistently rejected the notion that the minimum contacts

13   inquiry can be satisfied by a mere demonstration of contact between a plaintiff/third-

14   party and a forum state. *Walden*, 571 U.S. at 286 (citing *Helicopteros Nacionales de*

15   *Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another

16   party or a third person is not an appropriate consideration when determining whether

17   a defendant has sufficient contacts with a forum State to justify an assertion of

18   jurisdiction").

19        The relationship between a defendant and the forum state "must arise out of

20   contacts that the defendant himself creates with the forum state," and "the plaintiff

21   cannot be the only link between the defendant and the forum." *Id.* (citing *Burger King*

22   *Corp.*, 471 U.S. at 475, 478). Here, Cohen's contacts are grounded in Plaintiff's

23   decision to hire an attorney based in California, not a connection to the state itself.

24   Such contact with a party to the action or a third-party within a forum state do not

25   amount to "express aiming" for purposes of purposeful direction. *Id.* Further, to the

26   extent that Cohen did communicate with Davidson, it was only in the context of

27   Davidson acting as Plaintiff's counsel (Crossclaim, ¶ 6), meaning the act of

28   calling/texting would have been aimed at Plaintiff, and not her representative. Clifford

1    is a resident of Texas. (Complaint, ¶ 1) As such, to the extent that Cohen's

2    communications, if they ever did amount to "express aiming" at any forum, they

3    would be aimed toward the state of Texas.

4       Outside of these communications with Davidson, there are no allegations that

5    Cohen committed any other acts that lead to the present lawsuit. Plaintiff and

6    Davidson have failed to assert such an association between California, Cohen, and the

7    actions that gave rise to the claim against him. As such, Plaintiff and Davidson have

8    failed to show that Cohen's actions were expressly aimed at the forum state.

9       Regarding the final prong of the purposeful direction analysis, because Plaintiff

10   is a resident of Texas, any purported act on the part of Cohen that ills her would cause

11   foreseeable harm in the state of Texas and not California. *Calder v. Jones*, 465 U.S.

12   783, 788-89 (1984). Indeed, the Complaint is devoid of claims that Plaintiff suffered

13   harm in California. *See generally*, Complaint. As such, Plaintiff fails to show that

14   Cohen knew that his actions would likely cause harm in California. *See e.g.*, *Bristol-*

15   *Myers Squibb*, 137 S. Ct. at 1781-82 ("The relevant plaintiffs are not California

16   residents and do not claim to have suffered harm in that State. In addition, as in

17   *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere. It

18   follows that the California courts cannot claim specific jurisdiction.") (citing *World-*

19   *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Plaintiff therefore

20   has not satisfied the purposeful direction test as required for this Court to claim

21   personal jurisdiction over Cohen.

22       On the other hand, Davidson is a resident of California, so it follows that any

23   foreseeable harm to him would occur in this forum. However, this point is moot

24   because Davidson fails to meet the second prong of this analysis, and thereby fails to

25   establish purposeful direction. *See Pebble Beach Co.*, 453 F.3d at 1155.

26       **ii.**     **The Claims Against Cohen Do Not Arise Out of Forum-**

27                 **Related Activities Performed by Cohen**

28       Because Plaintiff and Davidson are unable to show that Cohen purposely

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL
CLAIMS AGINST HIM DUE TO LACK OF PERSONAL JURISDICTION

1  directed the relevant activities toward the state of California, it is not necessary to
2  address whether the claims of this action arise out of or relate to such activities or
3  whether the court's exercise of personal jurisdiction over the defendant would be
4  reasonable. However, for the sake of completion, we will discuss the final two
5  elements of the specific jurisdiction analysis.

6       For the same reasons that Cohen did not perform acts expressly aimed at the
7  forum state, the claims against Cohen do not arise out of forum-related activities.
8  Cohen's communications with Davidson do not amount to activity related to or aimed
9  at the state of California, and therefore the claims against Cohen that are based on
10  those communications do not arise out of activities related to this forum.

11      **iii.**    **This Court's Exercise of Jurisdiction Over Cohen Would be**
12      **Unreasonable**

13       The exercise of jurisdiction is reasonable if it comports with traditional notions
14  of fair play and substantial justice. In the Ninth Circuit, courts determine whether
15  personal jurisdiction in reasonable by considering seven factors:

16          (1) the extent of a defendant's purposeful interjection; (2) the
17          burden on the defendant in defending in the forum; (3) the
        extent of conflict with the sovereignty of the defendant's
18          state; (4) the forum state's interest in adjudicating the dispute;
19          (5) the most efficient judicial resolution of the controversy;
        (6) the importance of the forum to the plaintiff's interest in
20          convenient and effective relief; and (7) the existence of an
21          alternative forum.

22  *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2014 U.S. Dist. LEXIS 146408,
23  *21-22 (N.D. Cal. Oct. 14, 2014) (citing *Rio Props. v. Rio Int'l Interlink*, 284 F.3d
24  1007, 1021 (9th Cir. 2002)).

25       For the same reasons set forth above regarding Cohen's lack of contact in or
26  related to the forum state, purposeful interjection into California on the part of Cohen
27  is simply non-existent. The first factor therefore supports a holding that the exercise
28  of personal jurisdiction over Cohen would be unreasonable. Though he lives in the

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL
CLAIMS AGINST HIM DUE TO LACK OF PERSONAL JURISDICTION

1  state of New York, the burden on Cohen to defend himself in California would

2  admittedly be minimal, due to modern advances in technology, communications, and

3  transportation, making the second factor neutral. *See, Sinatra v. Nat'l Enquirer*, 854

4  F.2d 1191, 1199 (9th Cir. 1988).

5       When discussing conflict with the sovereignty of Cohen's state of residence,

6  New York, "[t]his factor is given relatively little weight when all of the parties are in

7  the United States…. Accordingly, this factor is neutral." *D. Brutke's Victory Hills,*

8  *LLC v. Tutera*, 2013 U.S. Dist. LEXIS 101750, *36 (D. Or. July 22, 2013) (citing

9  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993), holding

10  modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

11  1199, 1207 (9th Cir. 2006) ("In determining how much weight to give this factor, we

12  have focused on the presence or absence of connections to the United States in

13  general, not just to the forum state.").

14       A forum state maintains a strong interest in providing reparations for its injured

15  residents. *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.

16  1998). Here, neither Plaintiff nor Cohen are California residents, but Davidson does.

17  As such, when considering Plaintiff's claims, this factor weighs in favor of Cohen's

18  position that this Court's exercise of personal jurisdiction over him would be

19  unreasonable. However, when facing Davidson's claims, this factor weighs in favor

20  of the exercise of personal jurisdiction over Cohen.

21       The factor of efficient judicial resolution focuses on the locations of evidence

22  and witnesses. As with considering the burden on defendant, this factor "is no longer

23  weighed heavily given the modern advances in communication and transportation,"

24  and is therefore neutral. *D. Brutke's Victory Hills*, 2013 U.S. Dist. LEXIS 101750,

25  *36-37 (citing *Panavision*, 141 F.3d 1323-24). Similarly, because in the Ninth Circuit

26  does not view the plaintiff's convenience of relief as an issue of paramount

27  importance, that factor is neutral as well. *Dole Foods*, 303 F.3d at 1116.

28       Finally, with respect to the existence of an alternative forum, the state of New

DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS ALL
CLAIMS AGAINST HIM DUE TO LACK OF PERSONAL JURISDICTION

York would be the appropriate forum for Plaintiff's claims against Cohen. "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011). Indeed, given that Cohen has not had any substantial contacts with this forum that are related to the claim against him, and that he is a resident of New York, it would be unreasonable for this forum to exercise personal jurisdiction over Cohen. Further, because the state of New York can properly exercise general jurisdiction over Cohen, a suitable alternative forum does exist. This factor therefore supports a holding that the exercise of personal jurisdiction over Cohen would be unreasonable.

Regarding Plaintiff's claims, three of the factors considered when determining whether the exercise of personal jurisdiction over a defendant is reasonable weigh in favor of Cohen's position, while four factors are neutral. Regarding Davidson's claims, two factors weigh in favor of Cohen's position, one weighs in favor of the exercise of jurisdiction over him in this forum, and four factors are neutral. Accordingly, his Court should find that its exercise of personal jurisdiction over Cohen in this action would be unreasonable.

## III.   **CONCLUSION**

For the foregoing reasons, Defendant Michael Cohen respectfully requests that this Court GRANT his Motion and dismiss all claims against him for lack of personal jurisdiction.

Dated: July 3, 2018                     BLAKELY LAW GROUP

By:   */s/ Jessica C. Covington*
      Brent H. Blakely
      Jessica C. Covington
      ***Attorneys for Defendant Michael Cohen***

# Exhibit 15

1  AVENATTI & ASSOCIATES, APC
2  Michael J. Avenatti, CA State Bar No. 206929
   Ahmed Ibrahim, CA State Bar No. 238739
3  520 Newport Center Drive, Suite 1400
   Newport Beach, CA 92660
4  Telephone:  949.706.7000
5  Facsimile:   949.706.7050

6  Attorneys for Plaintiff Stephanie Clifford
7  a.k.a. Stormy Daniels

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10
   STEPHANIE CLIFFORD a.k.a.              CASE NO.:  2:18-cv-05052-SJO-FFM
11 STORMY DANIELS, an individual,         Assigned for All Purposes to the
                                          Honorable S. James Otero
12                Plaintiff,
                                          PLAINTIFF STEPHANIE
13         vs.                            CLIFFORD'S OPPOSITION TO
                                          DEFENDANT MICHAEL COHEN'S
14                                        RULE 12(b)(2) MOTION TO
                                          DISMISS ALL CLAIMS AGAINST
15 KEITH M. DAVIDSON, an individual,      HIM DUE TO LACK OF PERSONAL
16 MICHAEL COHEN, an individual, and      JURISDICTION
   DOES 1 THROUGH 10, inclusive
17                                        Hearing Date:  August 6, 2018
18                Defendants.             Hearing Time:  10:00 a.m.
19                                        Location:  Courtroom 10C
20
                                          California Superior Court Action
21                                        Filed:  June 6, 2018
22 AND RELATED COUNTER-CLAIMS
23 AND CROSS-CLAIMS
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL BACKGROUND.....................................................................2

III.   ARGUMENT...............................................................................................5

       A.   Mr. Cohen's Motion Should Be Denied Because It Is
            Untimely. ........................................................................................6

       B.   Mr. Cohen Fails to Proffer Any Evidence to Support His
            Motion. ............................................................................................6

       C.   The Text Messages and Telephone Calls that Form the Basis
            of the Claims Were Purposefully Directed to California. ..............8

            1.   Mr. Cohen Engaged In Intentional Acts Directed to
                 California.............................................................................8

            2.   Mr. Cohen's Conduct Was Expressly Aimed at the
                 Forum State. .......................................................................9

            3.   Mr. Cohen's Conduct Caused Harm in the Forum. ..........14

       D.   Plaintiff's Claims Arise Out Of Mr. Cohen's Forum Related
            Activities.......................................................................................15

       E.   The Exercise of Jurisdiction Over Mr. Cohen Is Reasonable. .....17

       F.   In the Alternative, the Court Should Order Jurisdictional
            Discovery.......................................................................................20

IV.    CONCLUSION .........................................................................................20

Case 2:18-cv-06893-JLS-FFM   Document 14-2   Filed 08/06/18   Page 87 of 108   Page ID
#:565
Case 2:18-cv-05052-SJO-FFM   Document 32   Filed 07/16/18   Page 3 of 24   Page ID #:598

1

## <u>TABLE OF AUTHORITIES</u>

2

3

## <u>CASES</u>

4

Am. Master Lease LLC v. Idanta Partners, Ltd.,

5
    225 Cal.App.4th 1451 (2014) ..................................................................9

6

Bancroft & Masters, Inc. v. Augusta Nat. Inc.,

7
    223 F.3d 1082 (9th Cir. 2000) ..................................................9, 16, 17

8

Brainerd v. Governors of the Univ. of Alberta,

9
    873 F.2d 1257 (9th Cir. 1989) ....................................1, 9, 10, 13

10

Calder v. Jones,

11
    465 U.S. 783 (1984)..................................................................6, 8, 13

12

Carteret Sav. Bank, FA v. Shushan,

13
    954 F.2d 141 (3d Cir. 1992) ..................................................................11

14

Chapman v. Krutonog,

15
    256 F.R.D. 645 (D. Haw. 2009) ..........................................................13

16

CollegeSource, Inc. v. AcademyOne,

17
    653 F.3d 1066 (9th Cir. 2011) ..................................................17, 18, 19

18

Cummings v. W. Trial Lawyers Ass'n,

19
    133 F. Supp. 2d 1144 (D. Ariz. 2001) ........................................13

20

Data Disc v. Systems Technology Associates,

21
    557 F.2d 1280 (9th Cir. 1977) ..............................................................13

22

Dole Food Co. v. Watts,

23
    303 F.3d 1104 (9th Cir. 2002) ..................................................passim

24

Felland v. Clifton,

25
    682 F.3d 665 (7th Cir. 2012)..............................................................12

26

Hall v. LaRonde,

27
    56 Cal.App.4th 1342 (1997) ................................................................6

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S
RULE 12(b)(2) MOTION TO DISMISS**

Keeton v. Hustler Magazine,
    465 U.S. 770 (1984)...............................................................................14, 15

Mavrix Photo v. Brand Techs.,
    647 F.3d 1218 (9th Cir. 2011) ......................................................7, 8, 13, 15

Meade Instruments Corp. v. Reddwarf Starware LLC,
    No. SA CV 98-240-GLT (ANx), 1998 WL 377041 (C.D. Cal. May 11, 1998).........14

Panavision Int'l, L.P. v. Toeppen,
    141 F.3d 1316 (9th Cir. 1998) ............................................................18, 19

Schneider v. Hardesty,
    669 F.3d 693 (6th Cir. 2012)...............................................................11, 12

Wells Fargo & Co. v. Wells Fargo Exp. Co.,
    556 F.2d 406 (9th Cir. 1977) ....................................................................20

Wien Air Alaska, Inc. v. Brandt,
    195 F.3d 208 (5th Cir. 1999) ........................................................10, 11, 14

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
    433 F.3d 1199 (9th Cir. 2006) .......................................................6, 7, 8, 15

## STATUTES

Cal. Code Civ. Proc. § 410.10............................................................6

## RULES

Fed. R. Civ. P. 12(b) ...................................................................6

-iii-

## I.     INTRODUCTION[1]

This action alleges that Plaintiff Stephanie Clifford's ("Plaintiff" or "Ms. Clifford") attorney, defendant Keith M. Davidson ("Mr. Davidson"), a California resident, breached his fiduciary duties to Plaintiff and that Defendant Michael Cohen ("Mr. Cohen") aided and abetted those breaches.  The Complaint sets forth in detail the communications between Cohen and Mr. Davidson in California whereby Cohen enlisted Mr. Davidson to act in a manner detrimental to Plaintiff and in favor of Cohen's client, Donald J. Trump.  [Dkt. No. 1-1 ¶¶15-53.]  The communications from Mr. Cohen, in the form of text messages and phone calls, were directed to Mr. Davidson in California, specifically Los Angeles, by Mr. Cohen.  Mr. Cohen also initiated arbitration proceedings against Plaintiff in California.  [Id. ¶38; Avenatti Decl. ¶4.]  By virtue of these communications and conduct, Mr. Cohen therefore purposely directed his actions to the forum state.  See Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989) (telephonic communications and a single letter aimed at the forum were sufficient to establish specific jurisdiction.).  Even though Plaintiff is not herself a California resident, these communications harmed Plaintiff in California because Mr. Davidson's breach occurred in California.  See Dole Food Co. v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002) (jurisdictionally significant harm can occur "where the bad acts occurred.").  The cause of action against Mr. Cohen arises *directly* out of these communications.  Mr. Cohen does not meet his heavy burden to establish a "compelling" case that the exercise of jurisdiction would be unreasonable.  Id. at 1114.  Accordingly, and as argued herein, it is proper to exercise personal jurisdiction over Mr. Cohen.  Mr. Cohen's Motion should thus be denied.[2]

---

[1] The Court should not reach this Motion because it lacks subject matter jurisdiction as argued in Plaintiff's previously filed Motion to Remand.

[2] It also cannot be said that jurisdiction over Mr. Cohen in California would be inconvenient or unexpected.  In addition to his decision to initiate an arbitration proceeding in California and to litigate the pending Clifford v. Trump matter without having objected to personal jurisdiction, Mr. Cohen engaged in conduct in California as a "lawyer" through his representation of Elliott Broidy, "a Los Angeles-based investor," in

Continued on the next page

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S
RULE 12(b)(2) MOTION TO DISMISS**

## II.    FACTUAL BACKGROUND

As alleged, Mr. Davidson is an attorney licensed in the State of California and was retained by Plaintiff as her personal attorney.  [Dkt. No. 1-1 ¶8.]  Mr. Davidson resides in the West Judicial District of this Court.  [Id. at ¶7; Dkt. No. 7 ¶1.]  Mr. Davidson's law offices are located in Beverly Hills.  [Dkt. No. 7 at 1:1-4.]  For most of the relevant time period at issue, Mr. Davidson was ostensibly acting in his capacity as Plaintiff's attorney and agent in California.  [Dkt. No. 1-1 ¶8; Dkt. No. 5 ¶8.]  Mr. Cohen is an attorney licensed in the State of New York and, during the relevant time period, served as Donald J. Trump's attorney.  [Dkt. No. 1-1 ¶9.]

In his capacity as Plaintiff's attorney, Mr. Davidson communicated with Mr. Cohen in connection with an October 2016 agreement for which Mr. Cohen acted as an attorney for Mr. Donald J. Trump.  [Id. ¶11.]  Mr. Cohen was thus well aware at all times that Mr. Davidson was Plaintiff's attorney and that Mr. Davidson owed Plaintiff a continuing duty of loyalty and was in a fiduciary relationship with Plaintiff.  [Id. ¶12.]

As alleged in the Complaint, on the morning of January 17, 2018, Mr. Cohen became aware of an article published by *In Touch* magazine regarding Plaintiff and President Donald J. Trump.  [Id. ¶16.]  Believing this article to be harmful to his client, Mr. Cohen proceeded to enlist Mr. Davidson to assist him in an attempt to use and manipulate Plaintiff in a manner designed to benefit Mr. Cohen and Mr. Trump.  [Id. ¶17.]  Mr. Cohen sent the first of many iMessages to Mr. Davidson at or about 12:13 PM EST stating "Call me."  [Id. ¶18; Avenatti Decl. Ex. 1.]  This message was sent from Mr. Cohen's phone to Mr. Davidson's phone which has a Los Angeles area code (310). [Avenatti Decl. Ex. 1.]  As previously noted, Mr. Davidson is a California resident and his offices are also located in the West Judicial District in Beverly Hills.  [Dkt. No. 1-1 ¶7; Dkt. No. 7 at 1:1-4.]

---

Continued from the previous page
connection with Mr. Broidy's $1.6 million settlement with a former Playboy model who Broidy allegedly impregnated.  <https://www.washingtonpost.com/politics/trump-lawyer-negotiated-16-million-settlement-for-gop-donor-with-playboy-model/2018/04/13/2f05_1f90-3f3e-11e8-974f-aacd97698cef_story.html?utm_term=.2acb53bd94f2>

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS**

1    Over the course of that day, January 17, 2018, Mr. Cohen and Mr. Davidson

2    exchanged at least seventeen (17) messages the purpose of which was to attempt to

3    arrange for Plaintiff to appear on Mr. Sean Hannity's television program to *falsely* deny

4    the accuracy of the *In Touch* article.   [Dkt. No. 1-1 ¶¶19-35; Avenatti Decl. Ex. 1.]

5    Plaintiff alleges that Mr. Cohen and Davidson discussed this plan on the phone after Mr.

6    Cohen initially texted Mr. Davidson, asking him to call him.   [Dkt. No. 1-1 ¶¶18-19;

7    Avenatti Decl. Ex. 1.]   Thereafter, at 2:32 PM, Mr. Cohen texted Mr. Davidson, stating "I

8    have her tentatively scheduled for Hannity tonight. Call me after your trial."   [Dkt. No. 1-

9    1 ¶20; Avenatti Decl. Ex. 1.]   Plaintiff alleges on information and belief, Mr. Cohen

10   scheduled Plaintiff to appear on Mr. Hannity's program only after consultation with Mr.

11   Trump.   [Id.]

12   When Mr. Davidson responded that Plaintiff was not available at that time, Mr.

13   Cohen sent several more messages in a desperate attempt to convince Plaintiff, with the

14   assistance of Mr. Hannity, to lie to the American public about her relationship with Mr.

15   Trump via the *Fox News* broadcast.   [Dkt. No. 1-1 ¶22.]   Specifically, at one point, Mr.

16   Cohen sent the following message:

17        This is no good.  We need her as by doing tomorrow you just create another news
          cycle instead of putting an end to this one.
18
19   [Dkt. No. 1-1 ¶24; Avenatti Decl. Ex. 1.]   Mr. Cohen then proceeded to send rapid fire

20   messages requesting that Mr. Davidson call him and wondering why he hadn't heard

21   anything from him.   [Dkt. No. 1-1 ¶¶25-26; Avenatti Decl. Ex. 1.]

22   Shortly thereafter, however, Mr. Cohen apparently changed his mind about the

23   necessity of Plaintiff appearing on the Hannity show that night, sending a message to Mr.

     Davidson stating:
24
          Let's forget tonight. They [Fox News and the Trump Administration] would
25        rather tomorrow so they can promote the heck out of the show.

26   [Dkt. No. 1-1 ¶27; Avenatti Decl. Ex. 1.]

27   Later that night, Mr. Cohen again changed his mind and messaged Mr. Davidson

28   again, having apparently concluded that it was no longer is his own or his client's best

PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS

1   interest for Plaintiff to appear at all:

2       Keith, The wise men all believe the story is dying and don't think it's smart for
3       her to do any interviews.  Let her do her thing but no interviews at all with
        anyone.

4   [Dkt. No. 1-1 ¶28; Avenatti Decl. Ex. 1.]  Mr. Davidson agreed without hesitation and

5   responded, "100%."  [Dkt. No. 1-1 ¶30; Avenatti Decl. Ex. 1.]

6       As Plaintiff alleges, the clear purpose of this exchange between Defendants was to

7   arrange a media appearance of Plaintiff, not for the benefit of Plaintiff or to ensure that

8   Plaintiff truthfully told her side of the story to the media, but for Plaintiff to provide a

9   false interview and lie to the American people to serve the best interests of Mr. Trump

10  and Mr. Cohen.  [Dkt. No. 1-1 ¶34.]  Once Mr. Cohen concluded that it was no longer in

11  his own best interest, or those of his client, per the recommendation of these "wise men,"

12  including Mr. Trump, Mr. Cohen called off the appearance entirely and Mr. Davidson

13  agreed without hesitation.  [Dkt. No. 1-1 ¶35.]  In other words, Mr. Davidson abdicated

14  his role as an advocate and fiduciary of his client Ms. Clifford, and instead elected to be a

15  "puppet" for Mr. Cohen and Mr. Trump in order to advance their interests at the expense

16  of Plaintiff.  [Id.]  Mr. Cohen accomplished this entirely via communications directed by

17  telephone and text message to Mr. Davidson in California.  [Avenatti Decl. Ex. 1.]

18      Thereafter, in late February 2018, Mr. Davidson became aware that Plaintiff was

19  changing counsel and was preparing to publicly disclose her relationship with Mr.

20  Trump.  [Dkt. No. 1-1 ¶36.]  Despite his on-going duty of loyalty to Ms. Clifford,

21  including the obligation to maintain client confidences, Mr. Davidson secretly tipped Mr.

22  Cohen off to Plaintiff's plans.  [Id. ¶37.]  Armed with this information, and in an attempt

23  to intimidate Plaintiff into silence, on or about February 27, 2018, Mr. Cohen initiated an

24  arbitration proceeding in California against Plaintiff in order to obtain a temporary

25  restraining order to silence Plaintiff and prevent her from publicly telling her story.  [Id.

26  ¶38; Avenatti Decl. ¶4.]

27      Again, in early March of 2018, Mr. Davidson once more secretly tipped off Mr.

28  Cohen regarding Plaintiff's plans, this time after learning that Plaintiff was on the verge

-4-

1   of filing a lawsuit against Mr. Cohen and Mr. Trump. [Dkt. No. 1-1 ¶39.] Specifically,

2   on or about March 1, 2018, Mr. Cohen and Mr. Davidson engaged in at least eight (8)

3   more text messages and at least one phone call during which call Plaintiff believes that

4   Mr. Davidson first disclosed to Mr. Cohen that Plaintiff was planning to file a lawsuit

5   against him and Mr. Trump the following week and that the lawsuit would publicly

6   disclose the existence of Plaintiff's prior relationship with Mr. Trump. [Dkt. No. 1-1 ¶

7   40; Avenatti Decl. Ex. 1.]

8       The disclosure of any information to Mr. Cohen regarding Plaintiff's contemplated

9   action was a clear violation of Mr. Davidson's duty of loyalty and obligation to maintain

10  Plaintiff's client confidences. [Dkt. No. 1-1 ¶50.]   Mr. Cohen, as an attorney with

11  knowledge of Mr. Davidson's role as Ms. Clifford's counsel, knew at all times Mr.

12  Davidson could not engage in the conduct at issue. [Id. ¶ 51.] Moreover, to compound

13  the numerous violations of attorney ethics, Mr. Cohen recorded phone calls that he had

14  with Mr. Davidson wherein Mr. Davidson disclosed client confidences and other

15  confidential information relating to Plaintiff. [Id. ¶52.] Despite Plaintiff's request, Mr.

16  Cohen has refused to provide Plaintiff with the recorded conversations including her

17  attorney-client privileged information. [Id. ¶53.]

18      Accordingly, Plaintiff brings this action to remedy both the breach of duty by Mr.

19  Davidson as her attorney and Mr. Cohen's efforts to aid and abet Mr. Davidson's breach.

20  As set forth above, Mr. Cohen's conduct in connection with his wrong-doing is based

21  entirely on his communications, via text message and telephone calls, with Mr. Davidson

22  in California. [See Avenatti Decl. Ex. 1.]  As argued herein, this Court has jurisdiction

23  over Mr. Cohen on the basis of these actions directed toward the forum and out of which

24  the claims at issue directly arise.

25  **III.   ARGUMENT**

26      The exercise of personal jurisdiction over Mr. Cohen is proper based on his

27  communications with Plaintiff's attorney, Mr. Davidson, in California, and the fact that

28  this action arises *directly* out of those communications.  Further, Mr. Cohen fails to

1    establish that the exercise of jurisdiction would be unreasonable, which is his burden.

2    **A.    Mr. Cohen's Motion Should Be Denied Because It Is Untimely.**

3    Before examining the merits of Mr. Cohen's motion, as a threshold matter, Mr.

4    Cohen's motion must be summarily denied as untimely.  After improperly removing this

5    action from state court on June 7, 2018, Mr. Cohen was required to file a responsive

6    pleading no later than June 28, 2018.  [Dkt. No. 16.]  Mr. Cohen did not file an Answer

7    until July 2, 2018.  [Dkt. No. 19.]  Mr. Cohen was also required to file any Rule 12

8    motion he wished to make by June 28.  Fed. R. Civ. P. 12(b) ("A motion asserting any of

9    these defenses must be made before pleading if a responsive pleading is allowed.").  Mr.

10   Cohen did not do so and instead filed the present Motion on July 3, 2018.  [Dkt. No. 24.]

11   Both Mr. Cohen's Answer and this Motion are untimely.  Pursuant to this Court's Civil

12   Case Standing Order the ("Court will not decide late-filed motions, and a party or counsel

13   who files such late papers may be subject to sanctions…"  [CV Standing Order ¶24(d).]

14   The Court should not therefore consider this Motion at all.

15   **B.    Mr. Cohen Fails to Proffer Any Evidence to Support His Motion.**

16   "The Due Process Clause of the Fourteenth Amendment to the United States

17   Constitution permits personal jurisdiction over a defendant in any State with which the

18   defendant has 'certain minimum contacts . . . such that the maintenance of the suit does

19   not offend 'traditional notions of fair play and substantial justice.'"  <u>Calder v. Jones</u>, 465

20   U.S. 783, 788 (1984).  "In judging minimum contacts, a court properly focuses on 'the

21   relationship among the defendant, the forum, and the litigation.'"  <u>Id.</u>  "Where, as here,

22   there is no applicable federal statute governing personal jurisdiction, the district court

23   applies the law of the state in which the district court sits."  <u>Yahoo! Inc. v. La Ligue</u>

24   <u>Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1205 (9th Cir. 2006).

25   California's long arm statute provides that a court may "exercise jurisdiction on any basis

26   that is not inconsistent with the Constitution of this state or of the United States."  Cal.

27   Code Civ. Proc. § 410.10; <u>see</u> <u>also</u> <u>Hall v. LaRonde</u>, 56 Cal.App.4th 1342, 1344 (1997)

28   ("We hold that the use of electronic mail and the telephone by a party in another state

-6-

1   may establish sufficient minimum contacts with California to support personal
2   jurisdiction.").  Thus, because "California's long-arm jurisdictional statute is coextensive
3   with federal due process requirements, the jurisdictional analyses under state law and
4   federal due process are the same." Yahoo!, 433 F.3d at 1205.  While general and specific
5   jurisdiction are possible bases, Plaintiff does not contend that general personal
6   jurisdiction exists.

7       Specific jurisdiction in the Ninth Circuit is analyzed under a three-prong test:

8   (1) The non-resident defendant must *purposefully direct his activities* or
9   consummate some transaction with the forum or resident thereof; *or* perform
    some act by which he *purposefully avails himself* of the privilege of conducting
10  activities in the forum, thereby invoking the benefits and protections of its laws;
11  (2) the claim must be one which arises out of or relates to the defendant's forum-
    related activities; and (3) the exercise of jurisdiction must comport with fair play
12  and substantial justice, i.e. it must be reasonable.

13  Mavrix Photo v. Brand Techs., 647 F.3d 1218, 1227–28 (9th Cir. 2011) (emphasis in
14  original).  Plaintiff bears the burden of proof as to the first two prongs. Id. at 1228.
15  However, once Plaintiff meets her burden, "the burden then shifts to [Mr. Cohen] to set
16  forth a '*compelling case*' that the exercise of jurisdiction would not be reasonable." Id.
17  (emphasis added).

18      Mr. Cohen does not submit any additional evidence in support of his Motion and
19  relies upon the argument that the factual allegations in the Complaint are legally
20  insufficient to establish personal jurisdiction.  Mr. Cohen does not seek to contradict or
21  rebut the allegations.[3]  Thus, in order to meet her burden, Plaintiff need only make a
22  prima facie showing of personal jurisdiction.  Dole Food Co. v. Watts, 303 F.3d 1104,
23  1108 (9th Cir. 2002).  "[U]ncontroverted allegations in the complaint must be taken as
24  true." Id.  However, to the extent that there are "[c]onflicts between parties over
25  statements contained in affidavits" they "must be resolved in the plaintiff's favor." Id.

26      Here, Plaintiff meets her burden and Mr. Cohen fails to meet his burden to as to

27  _____
    [3] Mr. Cohen does argue that the allegations are conclusory.  However, this argument
28  proceeds simply by taking allegations out of context and ignoring the detailed allegations
    regarding the communications directed by Mr. Cohen to California as set forth above.

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

reasonableness.  The Motion should thus be denied.

C.  **The Text Messages and Telephone Calls that Form the Basis of the Claims Were Purposefully Directed to California.**

Jurisdiction exists because Mr. Cohen purposefully directed the text messages and other communications at the heart of this action to Mr. Davidson, Plaintiff's attorney and agent, in California.

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." Mavrix, 647 F.3d at 1228.  However, as the Ninth Circuit has explained, "in cases involving tortious conduct," like this one and as opposed to contract based claims, "we most often employ a purposeful direction analysis." Id.  That analysis "focuses on the forum in which the defendant's actions *were felt*, whether or not the actions themselves occurred within the forum." Yahoo!, 433 F.3d at 1206 (emphasis added).  "By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract." Id. (alterations in original).  The "effects test" that is employed in a tort action like this one generally "requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Mavrix, 647 F.3d at 1228.  This test has its origin in the Supreme Court's decision in Calder v. Jones, 465 U.S. at 788.  See Mavrix, 647 F.3d at 1206 ("In this circuit, we construe *Calder* to impose three requirements…").

As discussed below, Plaintiff can establish that each of these requirements are met.  Mr. Cohen's Motion should therefore be denied.

1.  **Mr. Cohen Engaged In Intentional Acts Directed to California.**

Plaintiff alleges that Mr. Cohen acted intentionally by purposely directing communications, including text messages and phone calls, to Mr. Davidson in California.  Moreover, the cause of action at issue as to Mr. Cohen, aiding and abetting a breach of fiduciary duty, constitutes intentional conduct.  Liability for aiding and abetting breach of

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS**

1  fiduciary duty is "imposed on one who aids and abets the commission of an intentional

2  tort if the person . . . knows the other's conduct constitutes a breach of duty and gives

3  substantial assistance or encouragement to the other to so act." Am. Master Lease LLC

4  v. Idanta Partners, Ltd., 225 Cal.App.4th 1451, 1475 (2014). Liability "depends on proof

5  the defendant had actual knowledge of the specific primary wrong the defendant

6  substantially assisted." Id. Mr. Cohen concedes that for the jurisdictional analysis,

7  "purposely placing phone calls and sending text messages to Davidson amounts to an

8  'intentional act'…" [Dkt. No. 24 at 5:25-26.] Accordingly, this element is met. See

9  Dole, 303 F.3d at 1111 ("Because it is clear that Dole has sufficiently alleged that Watts

10  and Boenneken acted intentionally, we skip to the 'express aiming' requirement.").

11  **2.  Mr. Cohen's Conduct Was Expressly Aimed at the Forum State.**

12  Here, Mr. Cohen directed his communications to Mr. Davidson, Plaintiff's agent

13  and attorney at the time, in California. Mr. Cohen's communications to Mr. Davidson,

14  and vice versa, form the basis of the claims in this action for breach of fiduciary duty and

15  aiding and abetting breach of fiduciary duty. Mr. Cohen's communications were thus

16  aimed at the forum state of California and are a proper basis to find personal jurisdiction.

17  Contrary to Mr. Cohen's contention, communications directed to the forum state

18  can and do frequently form a proper basis for establishing personal jurisdiction. See,

19  Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1088 (9th Cir. 2000)

20  (single letter was sufficient to establish personal jurisdiction in California); Brainerd v.

21  Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989) (telephonic

22  communications and a single letter aimed at the forum were sufficient to establish

23  specific jurisdiction.). For example, in Brainerd, the Ninth Circuit concluded that the

24  defendant intentionally directed his activities towards the forum on the basis of two

25  telephone calls and one letter in spite of the fact that the defendant "was not engaged in a

26  commercial enterprise, and does not otherwise conduct business in Arizona." 873 F.3d at

27  1259. The Court noted that it was "difficult to conclude that [the defendant] has enjoyed

28  the benefits or invoked the protection of the forum's laws." Id. Nevertheless, because

1  the claims arose out of the communications directed to the forum, the Court reversed the

2  district court's order dismissing for lack of personal jurisdiction.  Id. at 1260-61.

3       The Ninth Circuit's decision in Dole Food v. Watts, further establishes the

4  appropriateness of finding personal jurisdiction based on Mr. Cohen's communications

5  and actions aimed at California.  In Dole the allegations centered on a scheme to defraud,

6  the "centerpiece of the scheme was a plan, proposed by [the defendants], to change

7  Dole's European distribution approach from a 'cost and freight' system to a 'landed duty

8  paid' ('LDP') system."  303 F.3d at 1109.  The plaintiff alleged in connection with the

9  dispute and the existence of personal jurisdiction in California that the defendants

10 "communicated frequently with management in Dole's California's offices via telephone,

11 fax, and mail about the design and implementation of the LDP system."  Id.  The Ninth

12 Circuit concluded that the defendants' actions were expressly aimed at the forum state

13 and that personal jurisdiction was appropriate because the defendants "knew that Dole's

14 principal place of business was in California, knew that the decisionmakers for Dole were

15 located in California, and communicated directly with those California decisionmakers."

16 Id. at 1112.  Moreover, these communications were made in order to "induce them to

17 implement a new importing system, and, as a consequence, to enter into significant and

18 detrimental contractual arrangements."   Id.   Accordingly, the exercise of personal

19 jurisdiction based on these communications was proper and the Court reversed the district

20 court's conclusion to the contrary.  Id. at 1120.

21      This conclusion is in accord with the law in general and multiple other circuits

22 have found similarly.  For example, the Fifth Circuit's decision in Wien Air Alaska v.

23 Brandt is instructive.  In that case, the plaintiff asserted causes of action against its

24 attorney, including breach of fiduciary duty, and the only contacts with the forum state

25 included "letters, faxes, and phone calls to Texas by [the attorney] whose contents

26 contained fraudulent misrepresentations and promises and whose contents failed to

27 disclose material information."  Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th

28 Cir. 1999).  The Fifth Circuit noted that it was an "inescapable fact of modern

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1  commercial life that a substantial amount of business is transacted solely by mail and

2  wire communications across state lines, thus obviating the need for physical presence

3  within a State in which business is conducted." Id. at 213.  The Fifth Circuit found these

4  contacts sufficient to establish specific personal jurisdiction because "when the claim

5  arises from a breach of fiduciary duty based on a failure to disclose material information,

6  the fact that the lawyer continually communicated with the forum while steadfastly

7  failing to disclose material information shows the purposeful direction of material

8  omissions to the forum state."   Id.   The Court further distinguished cases finding

9  communications   alone   insufficient   on   the   grounds   that   in   those   actions   "the

10  communications with the forum did not actually give rise to a cause of action" and

11  "merely solicited business from the forum, negotiated a contract, formed an initial

12  attorney-client relationship, or involved services not alleged to form the basis of the

13  complaint."   Id.   Accordingly, the Fifth Circuit reversed the district court's decision

14  dismissing for lack of personal jurisdiction.  Id. at 216; see also Carteret Sav. Bank, FA v.

15  Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (personal jurisdiction proper over an attorney

16  on the basis of telephone calls and letters coupled with attendance at a single meeting).

17        The Sixth Circuit's decision in Schneider v. Hardesty is similarly instructive.

18  There, the action centered on the allegations that the defendant, a resident of Utah,

19  solicited the plaintiff, a resident of Ohio, to participate in a fraudulent investment scheme.

20  669 F.3d 693, 695 (6th Cir. 2012).  For purposes of the jurisdictional analysis, two letters

21  written but not personally sent by the defendant to the plaintiff in Ohio were the basis for

22  asserting personal jurisdiction.  Id. at 696.  The plaintiff "alleged that the two letters

23  written by [the defendant] contained false and misleading statements" that were used to

24  solicit participation in the fraudulent scheme.  Id.  In deciding the issue, the Sixth Circuit

25  noted that it has "held previously that purposeful availment may exist when a defendant

26  makes telephone calls and sends facsimiles into the forum state and such communications

27  'form the bases for the action.'"  Id. at 702.  Thus, the Sixth Circuit found that the letters

28  constituted purposeful availment sufficient to support personal jurisdiction even though

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1    the defendant did not personally mail the letters himself because the defendant "knew, or

2    at least should have known, that the letters were bound for an investor in Ohio." Id. at

3    703.  The Sixth Circuit reversed the district court's conclusion to the contrary. Id. at 704.

4        The Seventh Circuit's decision in Felland v. Clifton likewise addresses

5    communications to a forum state as a basis for personal jurisdiction and considered

6    specifically whether the Arizona resident defendant's "multiple communications to the

7    [the plaintiff] in Wisconsin are properly characterized as actions 'purposefully directed'

8    at the forum state with regard to the alleged fraudulent scheme."  682 F.3d 665, 673 (7th

9    Cir. 2012).  The Seventh Circuit concluded that the defendant's "communications to [the

10    plaintiff's] Wisconsin address were part of a comprehensive and ongoing scheme to

11    perpetuate this initial fraud" and that the misrepresentations communicated to the

12    plaintiff in Wisconsin "were 'expressly aimed' at Wisconsin; under the doctrine

13    established in *Burger King* and *Calder*…" Id. at 675-676.  Accordingly, the Seventh

14    Circuit reversed the district court's determination otherwise. Id. at 679.

15        The same conclusion should be reached here.  The Complaint sets forth numerous

16    text messages sent by Mr. Cohen to Mr. Davidson in California as well as telephonic

17    communications that form the basis of the cause of action asserted against Mr. Cohen.

18    [Dkt. No. 1-1 ¶¶ 16-53; Avenatti Decl. Ex. 1.]  Mr. Davidson is a California resident, his

19    law practice is located in Beverly Hills, and the phone number used by Mr. Cohen is a

20    Los Angeles based number with a "(310)" area code.  [Dkt. No. 1-1 ¶¶7-8; Dkt. No. 7 ¶1,

21    1:1-4; Avenatti Decl. Ex. 1.]  Mr. Davidson is not an unrelated third party, but both a

22    Defendant in this action and Plaintiff's attorney acting as such in California.  [Dkt. No. 1-

23    1 ¶8; Dkt. No. 5 ¶8.]  Thus, Mr. Cohen's conduct was aimed at Mr. Davidson in

24    California.   Mr. Cohen also initiated arbitration proceedings in California against

25    Plaintiff.  [Id. ¶38, Avenatti Decl. ¶4.] The breach of fiduciary duty here at issue both for

26    the direct claim against Mr. Davidson and for the aiding and abetting claim against Mr.

27    Cohen occurred in California where Mr. Davidson is located.  Mr. Cohen intentionally

28    aided and abetted this breach, knowing that Mr. Davidson was Plaintiff's attorney and

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1   that his conduct breached his duties to her, and that aid was directed to California and
2   accomplished in California.  [Dkt. No. 1-1 ¶¶73-81.]  These facts are sufficient to
3   establish that the conduct was expressly aimed at California.

4   Indeed, as set forth above, the Ninth Circuit found in Brainerd that the defendant
5   intentionally directed his activities towards the forum on the basis of two telephone calls
6   and one letter in spite of the fact that the defendant "was not engaged in a commercial
7   enterprise, and does not otherwise conduct business in Arizona."  873 F.3d at 1259.
8   Similarly, the Dole decision relied on the fact that the defendants "knew that Dole's
9   principal place of business was in California, knew that the decisionmakers for Dole were
10   located in California, and communicated directly with those California decisionmakers."
11   303 F.3d at 1112.  The same holds true here with respect to Mr. Cohen's communications
12   with Mr. Davidson.[4]

13   Mr. Cohen principally relies on Peterson v. Kennedy for the proposition that
14   "ordinarily 'use of the mails, telephone, or other international communications simply do
15   not qualify as purposeful activity invoking the benefits and protection of the [forum]
16   state.'"  771 F.2d 1244, 1262 (9th Cir. 1985).  As the above cited authority indicates – all
17   of which post-date Peterson – this is not an accurate statement of the current state of the
18   law.  Rather, the "effects test" that is employed in a tort action like this one governs.
19   Mavrix, 647 F.3d at 1228.  This test has its origin in the Supreme Court's decision in
20   Calder v. Jones, 465 U.S. at 788.  See Mavrix, 647 F.3d at 1206.  By contrast, the Court
21   in Peterson relies on a test articulated in Data Disc v. Systems Technology Associates,
22   557 F.2d 1280, 1287 (9th Cir. 1977).  That decision predates Calder by roughly seven (7)
23   years.  Thus, as other courts have noted, although Peterson has not been overruled, "many
24   Ninth Circuit personal jurisdiction cases involving certain types of tort claims . . . apply
25   the more liberal 'effects test.'"  Cummings v. W. Trial Lawyers Ass'n, 133 F. Supp. 2d
26   1144, 1152 (D. Ariz. 2001); see also Chapman v. Krutonog, 256 F.R.D. 645, 650 (D.

27   ─────────────
    [4] Additionally, it is worth noting that Mr. Davidson's own claims against Mr. Cohen
28   establish that the conduct was aimed at California.  [See Dkt. No. 7 ¶¶1-18.]

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1    Haw. 2009) (same).

2          Accordingly, to the extent that <u>Peterson</u> is good law, it simply does not apply to

3    tort based actions like this one and, by itself, cannot be taken to mean that Mr. Cohen's

4    conduct is insufficient to amount to purposefully directed activity within the meaning of

5    the law.  <u>See</u> <u>Meade Instruments Corp. v. Reddwarf Starware LLC</u>, No. SA CV 98-240-

6    GLT (ANx), 1998 WL 377041, at *2 (C.D. Cal. May 11, 1998) (noting the case law

7    regarding the insufficiency of communications is "inconsistent with the current trend in

8    jurisdictional analysis.").     Indeed, as the Fifth Circuit noted, decisions finding

9    communications alone insufficient do so because "the communications with the forum

10   did not actually give rise to a cause of action" like they do here.  <u>Wien Air Alaska</u>, 195

11   F.3d at 213.  That is not the case here where the cause of action alleged arises directly

12   from the communications.

13         Accordingly, Mr. Cohen's argument is thus premised on disregarding the law

14   regarding express aiming in the context of communications.   The clear weight of

15   authority in the Ninth Circuit and elsewhere establishes that communications directed to

16   the forum state constitute express aiming.   Plaintiff can and does establish that Mr.

17   Cohen's communications to California are sufficient to establish personal jurisdiction.

18         **3.**    **Mr. Cohen's Conduct Caused Harm in the Forum.**

19         Mr. Cohen's conduct caused harm in California because Mr. Cohen aided and

20   abetted the breach of Plaintiff's attorney's fiduciary duty in California.  This conduct thus

21   caused jurisdictionally significant harm to Plaintiff in California.

22         Mr. Cohen's argument to the contrary is focused on the fact that Plaintiff is not a

23   resident of California and, as Mr. Cohen argues, could not have been harmed in

24   California.  This is simply not true as a matter of fact or law.  Indeed, the law is clear that

25   Plaintiff's residence is not by itself dispositive of any issue pertaining to jurisdiction.

26   Rather, as the Supreme Court has made clear, "plaintiff's residence in the forum State is

27   not a separate requirement, and lack of residence will not defeat jurisdiction established

28   on the basis of defendant's contacts."  <u>Keeton v. Hustler Magazine</u>, 465 U.S. 770, 780

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1  (1984).  The Ninth Circuit has further clarified "that the 'brunt' of the harm need not be

2  suffered in the forum state" in order for jurisdictionally significant harm to have been

3  caused in the forum state.  <u>Yahoo!</u>, 433 F.3d at 1207.  On the contrary, if "a

4  jurisdictionally sufficient amount of harm is suffered in the forum state, *it does not matter*

5  *that even more harm might have been suffered in another state*."  <u>Id.</u> (emphasis added).

6      It is thus clear that the harm at issue is not confined to a single forum and

7  "[j]urisdictionally sufficient harm may be suffered in multiple forums."  <u>Mavrix</u>, 647

8  F.3d at 1231.  Jurisdictionally significant harm is not limited to the location, or domicile,

9  of the party harmed.  Rather, as the Ninth Circuit has found, the harm can be suffered

10  "both where the bad acts occurred" and, in the case of a corporation, "where the

11  corporation has its principal place of business" or residence.  <u>Dole</u>, 303 F.3d at 1113.

12  The "existence of jurisdiction in one forum does not necessarily negate the existence of

13  jurisdiction in another forum."  <u>Id.</u>  For example, in <u>Mavrix</u>, the plaintiff was a Florida

14  corporation with its principal place of business in Miami.  647 F.3d at 1221.  However,

15  the Ninth Circuit concluded that the harm in question occurred both in Florida and

16  California such that the exercise of personal jurisdiction in California was justified.  <u>Id.</u> at

17  1231-32.  In <u>Keeton</u>, the Supreme Court found jurisdiction despite the fact that the

18  plaintiff, an individual, was not a resident and that it was "undoubtedly true that the bulk

19  of the harm done to petitioner occurred outside [the forum]."  465 U.S. at 780.

20      Here, Plaintiff was harmed in California by the breaches of her attorney's, Mr.

21  Davidson's, fiduciary duties that were aided and abetted by Mr. Cohen.  Mr. Davidson's

22  breaches took place in California where Mr. Davidson's residence and business are

23  located.  [Dkt. No. 1-1 ¶¶7-8; Dkt. No. 7 ¶1, 1:1-4.]  Mr. Cohen also initiated arbitration

24  proceedings against Plaintiff in California.  [<u>Id.</u> ¶38; Avenatti Decl. ¶4.]  It is immaterial

25  that Plaintiff is not a California resident or that even the "bulk" of the harm done may

26  have been felt outside of California.  Mr. Cohen's conduct caused harm in California.

27      **D.     Plaintiff's Claims Arise Out Of Mr. Cohen's Forum Related Activities.**

28      The allegations against Mr. Cohen in this action arise directly out of his forum

1  related actions.

2      "The second requirement for specific jurisdiction is that the contacts constituting

3  purposeful availment must be the ones that give rise to the current suit." Bancroft &

4  Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).  Courts in the

5  Ninth Circuit "measure this requirement in terms of 'but for' causation." Id.  This

6  requirement is easily met in this action.

7      Here, the text messages directed to Mr. Davidson in California sent by Mr. Cohen

8  form the basis for Plaintiff's claims against both Mr. Davidson and Mr. Cohen.  [Dkt. No.

9  1-1 at ¶¶15-53 (detailing communications and conduct between Mr. Cohen and Mr.

10  Davidson).]  But for these contacts, there would be no claim in this action.  Indeed, as

11  alleged in the Complaint, it was through these communications directed to California and

12  Mr. Davidson, as Plaintiff's attorney and agent at the time, that Mr. Cohen aided and

13  abetted Mr. Davidson's breach by providing substantial assistance to Mr. Davidson and

14  in fact engaged in concerted activity with Mr. Davidson by attempting to arrange for the

15  media appearance of Plaintiff on Sean Hannity's television show on *Fox News* to benefit

16  Mr. Trump, not Ms. Clifford.  [Dkt. No. 1-1 at ¶77.]  As alleged, "Mr. Cohen knew that

17  this conduct was likely not in Ms. Clifford's best interest and thus constituted a breach of

18  fiduciary duty on Mr. Davidson's part." [Id. at ¶78.]  Nevertheless, and in spite of this

19  Mr. Cohen provided substantial assistance and attempted to arrange the appearance.  [Id.]

20  Mr. Cohen further communicated with Mr. Davidson and encouraged Mr. Davidson to

21  disclose confidential information pertaining to Plaintiff's legal strategy – information

22  that, as an attorney, he knew Mr. Davidson should keep confidential.  [Id. at ¶78.]  Mr.

23  Cohen then proceeded to record this information and retain the recordings, all as part of

24  his substantial assistance aimed at aiding and abetting Mr. Davidson's breaches of

25  fiduciary duty and then Mr. Cohen used this information for his own benefit and Mr.

26  Trump's benefit by attempting to initiate an arbitration proceeding against Plaintiff and

27  force her to remain silent.  [Id. at ¶¶79-80.]  Mr. Cohen further used this information

28  gained through the communications with Mr. Davidson in California in an effort to "get

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1   out in front" of the story.  [Id. at ¶80.]

2         As in the Dole action, it is "obvious" that claims against Mr. Cohen "arise directly

3   out of [his] contacts with the forum."  303 F.3d at 1114.  Mr. Cohen's argument against

4   this factor amounts to the proposition that because Mr. Cohen "did not perform acts

5   expressly aimed at the forum state, the claims against Cohen do not arise out of forum-

6   related activities."  [Dkt. No. 24 at 8:6-7.]  Mr. Cohen does not advance an alternate

7   argument that, even if he did engage in forum related activities, the claims do not arise

8   from them.  [Id.]  Thus, his argument fails for the same reasons discussed above.

9         Plaintiff's claims arise out of Mr. Cohen's forum related activities and the exercise

10  of specific jurisdiction on the basis of these activities is proper.

11        **E.    The Exercise of Jurisdiction Over Mr. Cohen Is Reasonable.**

12        Here, the exercise of personal jurisdiction over Mr. Cohen is reasonable and Mr.

13  Cohen does not satisfy his heavy burden to establish otherwise.  Indeed, as argued below,

14  each of the seven factors the Court should consider to resolve this issue either

15  demonstrate reasonableness or are, at worst, neutral.  Accordingly, Mr. Cohen does not

16  meet his heavy burden to establish that the exercise of jurisdiction is unreasonable.

17        "Once it has been decided that a defendant purposefully established minimum

18  contacts with a forum," the burden shifts to the party opposing jurisdiction to establish

19  that the exercise of jurisdiction would be unreasonable.  Dole, 303 F.3d at 1114.  Cases in

20  the Ninth Circuit "emphasize the *heavy burden* on both domestic and foreign defendants

21  in proving a '*compelling case*' of unreasonableness to defeat jurisdiction."  Id. at 1117

22  (emphasis added).  In order to assess reasonableness and whether a compelling case has

23  been made, courts consider the following factors:

24        (1) the extent of the defendants' purposeful injection into the forum state's
          affairs; (2) the burden on the defendant of defending in the forum; (3) the extent
25        of the conflict with the sovereignty of the defendant's state; (4) the forum state's
          interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
26        controversy; (6) the importance of the forum to the plaintiff's interest in
          convenient and effective relief; and (7) the existence of an alternative forum.
27

28  CollegeSource, Inc. v. AcademyOne, 653 F.3d 1066, 1079 (9th Cir. 2011)

1       Mr. Cohen does not acknowledge that the burden is on him to establish the

2  unreasonableness of jurisdiction let alone make the compelling case that he is required to

3  make.  Indeed, Mr. Cohen concedes that as to Plaintiff four out of seven of the factors are

4  "neutral" and only three weigh in favor of his argument.  [Dkt. No.  24 at 10:11-13.]  It is

5  not at all clear that this argument amounts to a "compelling case" of unreasonableness.

6  <u>Dole</u>, 303 F.3d at 1117.  Nevertheless, the Court should not take Mr. Cohen's argument

7  at face value and an examination of each of the factors reveals that every single one

8  weighs in favor of exercising personal jurisdiction over Mr. Cohen in this action or is, at

9  worst, neutral.  Mr. Cohen thus fails to carry his burden of making a "compelling case" of

10  the unreasonableness of jurisdiction.

11       *First*, as to purposeful injection, Mr. Cohen simply reiterates his argument that he

12  did not direct his activities towards California and asserts that purposeful injection is

13  "simply non-existent."  [Dkt. No. 24 at 8:27.]  Mr. Cohen offers no additional argument

14  that even if he expressly aimed his conduct to the forum, the Court should not find

15  purposeful injection.  [<u>Id.</u>]  Accordingly, his argument should be rejected for the same

16  reasons discussed above as to express aiming.  See <u>CollegeSource</u>, 653 F.3d at 1080

17  (finding purposeful injection because the defendant simply "reiterates its unsuccessful

18  arguments that it did not expressly aim any acts at California…").

19       *Second*, Mr. Cohen acknowledges that the "burden on Cohen to defend himself in

20  California would admittedly be minimal."  [Dkt. No. 24 at 9:1-2.]  Indeed, unless the

21  burden is "so great as to constitute a deprivation of due process," the burden "will not

22  overcome clear justifications for the exercise of jurisdiction."  <u>Panavision Int'l, L.P. v.</u>

23  <u>Toeppen</u>, 141 F.3d 1316, 1323 (9th Cir. 1998).  This factor is not simply neutral as Mr.

24  Cohen claims; it weighs against him and in favor of exercising jurisdiction.

25       *Third*, as to sovereignty, Mr. Cohen argues this factor should be given little weight

26  and is neutral.  [Dkt. No. 24 at 9:5-6.]  Mr. Cohen offers no argument that the "exercise

27  of jurisdiction in California would conflict with the sovereignty" of New York and as

28  such the factor favors the exercise of jurisdiction.  <u>Panavision</u>, 141 F.3d at 1323.

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1    *Fourth*, Mr. Cohen admits that California "maintains a strong interest in providing

2    reparations for its injured residents." [Dkt. No. 24 at 9:14-15 (citing Panavision, 141

3    F.3d at 1323).] Mr. Cohen contends, however, that because Plaintiff is not a resident of

4    California, this interest is negated. However, Mr. Cohen also acknowledges that as to

5    Mr. Davidson's claims, California does have a strong interest. [Id. at 9:19-20.] Mr.

6    Cohen's argument ignores the harm Plaintiff has suffered in California and discussed

7    above. Mr. Cohen aided and abetted Mr. Davidson's breach of fiduciary duties to

8    Plaintiff. This breach occurred in California and Plaintiff was harmed by it.

9    Accordingly, California also has a strong interest as to Plaintiff's claims for the same

10   reason it does as to Mr. Davidson's. See Dole, 303 F.3d at 1116 (noting that the fact that

11   the party is present in multiple states and countries does not alter the conclusion that

12   California has an interest in the action.). This factor weighs in favor of jurisdiction.

13   *Fifth*, Mr. Cohen again acknowledges that the factor focusing on efficient judicial

14   resolution does not weigh against jurisdiction, claiming instead that it is neutral. [Dkt.

15   No. 24 at 9:21-24.] This factor "focuses on the location of the evidence and witnesses."

16   Panavision, 141 F.3d at 1323. Certainly, Mr. Davidson, a key witness, is present in this

17   district. Mr. Cohen does not argue that there is another forum with greater ease of access

18   to evidence and witnesses. Accordingly, this factor weighs in favor of jurisdiction.

19   *Sixth*, Mr. Cohen correctly points out that courts in the Ninth Circuit do not give

20   much weight to the plaintiff's inconvenience. Dole, 303 F.3d at 1116; Panavision, 141

21   F.3d at 1324. This factor is thus, at worst, neutral – as Mr. Cohen concedes. [Dkt. No.

22   24 at 9:25-27.]

23   *Seventh*, and finally, "[w]hether another reasonable forum exists becomes an issue

24   only when the forum state is shown to be unreasonable." CollegeSource, 653 F.3d at

25   1080. Mr. Cohen has not made this showing. However, it is important to emphasize that

26   Mr. Cohen is incorrect that New York is a suitable alternative forum. If Mr. Cohen's

27   view of personal jurisdiction holds sway then there may be no basis for a New York court

28   to exercise personal jurisdiction over Mr. Davidson. As a consequence, there is no other

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

1    court in which Plaintiff can resolve her claims against all the parties at once.  As the

2    Ninth Circuit in <u>Dole</u> concluded, when there "might not be any single alternative forum

3    that has subject matter and personal jurisdiction over all parties and issues" this factor

4    weighs in favor of the reasonableness of the exercise of jurisdiction.  303 F.3d at 1116.

5    The same conclusion should be reached here, as to hold otherwise would likely require

6    piecemeal and inefficient litigation as well as risk inconsistent results.

7        In sum, none of the seven factors discussed weigh strongly against the exercise of

8    personal jurisdiction.  At worst, the factor regarding Plaintiff's convenience is neutral.  In

9    order to establish the unreasonableness of the exercise of jurisdiction, Mr. Cohen bears

10   the "heavy burden" of proving a "'compelling case' of unreasonableness." <u>Dole</u>, 303

11   F.3d at 1114.   Mr. Cohen fails to meet that burden.   Accordingly, the exercise of

12   jurisdiction is proper and Mr. Cohen's Motion should be denied.

13         **F.**     **In the Alternative, the Court Should Order Jurisdictional Discovery**

14        Finally, insofar as the Court remains unconvinced regarding the existence of

15   personal jurisdiction, "it is clear that a court may allow discovery to aid in determining

16   whether it has in personam or subject matter jurisdiction."  <u>Wells Fargo & Co. v. Wells</u>

17   <u>Fargo Exp. Co.</u>, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).  To the extent that there is any

18   doubt regarding any of the facts, it should be resolved in Plaintiff's favor. <u>Dole</u>, 303 F.3d

19   at 1108.   However, Plaintiff also requests the opportunity to conduct jurisdictional

20   discovery to the extent that the Court is uncertain of the existence of personal

21   jurisdiction. [<u>See</u> Avenatti Decl. ¶¶ 5-6.]

22   **IV.**    **CONCLUSION**

23        For the reasons stated above, Plaintiff respectfully requests the Court DENY Mr.

24   Cohen's Motion to Dismiss.

25   DATED:  July 16, 2018          AVENATTI & ASSOCIATES, APC

26

27                          /s/ Michael J. Avenatti

28                       MICHAEL J. AVENATTI
                         Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**