1  AVENATTI & ASSOCIATES, APC
   Michael J. Avenatti, State Bar No. 206929
2  Ahmed Ibrahim, State Bar No. 238739
   520 Newport Center Drive, Suite 1400
3  Newport Beach, CA 92660
   Telephone:  949.706.7000
4  Facsimile:   949.706.7050

5  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  STEPHANIE CLIFFORD a.k.a.           CASE NO.:  2:18-cv-06893-SJO-FFM
    STORMY DANIELS,
12                                       **PLAINTIFF'S OPPOSITION TO**
                    Plaintiff,           **DEFENDANT DONALD J. TRUMP'S**
13                                       **SPECIAL MOTION TO**
            vs.                          **DISMISS/STRIKE COMPLAINT**
14                                       **PURSUANT TO ANTI-SLAPP**
                                         **STATUTE OR, ALTERNATIVELY,**
15  DONALD J. TRUMP,                     **TO DISMISS COMPLAINT**
                                         **PURSUANT TO FRCP 12(b)(6)**
16                  Defendant.
17                                       Assigned to the Hon. S. James Otero

18                                       Action Filed: April 30, 2018

19

20

21                                       **Hearing Date:  September 24, 2018**
                                         **Hearing Time: 10:00 a.m.**
22                                       **Location:        350 West 1st Street**
                                         **Courtroom 10C**
23                                       **Los Angeles, CA 90012**

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................1

II.    FACTUAL BACKGROUND.......................................................2

III.   LEGAL STANDARD .................................................................5

       A.   Mr. Trump's Motion is Treated as a Motion for Summary
            Judgment in Federal Court. ...........................................5

       B.   Rule 12(b)(6) Motions are Decided on the Face of the
            Complaint. ......................................................................6

       C.   Standard of Review Under the TCPA. .............................6

IV.    ARGUMENT...............................................................................7

       A.   Mr. Trump's Motion is Untimely.....................................7

       B.   New York Law Applies.....................................................8

            1.   New York, Not Texas, Law Governs this Motion. ...............8

            2.   If the TCPA Applies, Under the Federal Rules of
                 Procedure, Plaintiff Must Be Afforded an Opportunity
                 for Discovery.............................................9

       C.   Clifford Has Met Her Burden on the Claim for Defamation. .......11

            1.   Mr. Trump's Statement is a False Statement of Fact.........11

            2.   Plaintiff is Not Required to Prove But Has Incurred
                 Damages..............................................14

            3.   Plaintiff is Not Required to Prove Malice at This Time. ..........18

       C.   Mr. Trump's Alternate Requests for Relief Should Also Be
            Denied.........................................................20

       D.   If Mr. Trump's Motion is Granted, Plaintiff is Entitled to
            Amend. ......................................................20

V.     CONCLUSION .........................................................................20

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

<u>Aeroplate Corp. v. Arch Ins. Co.</u>,
   No. CVF061099AWISMS, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) ......................9

<u>Am. Dental Ass'n v. Khorrami</u>,
   No. CV 02-3853 DT(CTX), 2003 WL 24141019 (C.D. Cal. July 14, 2003) ................11

<u>Backes v. Misko</u>,
   486 S.W.3d 7 (Tex. App. 2015) ......................................................................................14

<u>Bennett v. Computer Assocs. Int'l</u>,
   932 S.W.2d 197 (Tex. App. 1996) ..................................................................................15

<u>Bentley v. Bunton</u>,
   94 S.W.3d 561 (Tex. 2002) .....................................................................................passim

<u>Block v. First Blood Assocs.</u>,
   691 F. Supp. 685 (S.D.N.Y. 1988) ...................................................................................8

<u>Brady v. Klentzman</u>,
   515 S.W.3d 878 (Tex. 2017) ..........................................................................................16

<u>Bulletin Displays v. Regency Outdoor, Advert.</u>,
   448 F. Supp. 2d 1172 (C.D. Cal. 2006)............................................................................5

<u>Competitive Techs. v. Fujitsu Ltd.</u>,
   286 F. Supp. 2d 1118 (N.D. Cal. 2003)........................................................................8, 9

<u>Condit v. Dunne</u>,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..............................................................................8

<u>D Magazine Partners, L.P. v. Rosenthal</u>,
   529 S.W.3d 429 (Tex. 2017) .....................................................................................passim

<u>Dallas Morning News, Inc. v. Tatum</u>,
   No. 16-0098, 2018 WL 2182625 (Tex. May 11, 2018) ..................................................14

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

Eastwood v. Nat'l Enquirer, Inc.,
    123 F.3d 1249 (9th Cir. 1997) ...................................................................18

Escobedo v. State,
    202 S.W.3d 844 (Tex. App. 2006) ............................................................15

Fawcett v. Grosu,
    498 S.W.3d 650 (Tex. App. 2016) ............................................................15

Fiber Sys. Int'l v. Roehrs,
    470 F.3d 1150 (5th Cir. 2006) ..................................................................15

Flowers v. Carville,
    310 F.3d 1118 (9th Cir. 2002) ..................................................................18

Fresno Motors, LLC v. Mercedes Benz USA, LLC,
    771 F.3d 1119 (9th Cir. 2014) ....................................................................6

Gray v. HEB Food Store No. 4,
    941 S.W.2d 327 (Tex. App. 1997) ............................................................16

Hoskins v. Fuchs,
    517 S.W.3d 834 (Tex. App. 2016) .......................................................11, 12

Hurtado v. Superior Court,
    11 Cal. 3d 574 (1974) ................................................................................8

In re Lipsky,
    460 S.W.3d 579 (Tex. 2015) .................................................................7, 19

Larez v. City of Los Angeles,
    946 F.2d 630 (9th Cir. 1991) ....................................................................17

Lee v. City of Los Angeles,
    250 F.3d 668 (9th Cir. 2001) .................................................................6, 20

Masson v. New Yorker Magazine, Inc.,
    501 U.S. 496 (1991).................................................................................18

Mathiew v. Subsea 7 (US) LLC,
    No. 4:17-CV-3140, 2018 WL 1515264 (S.D. Tex. Mar. 9, 2018)..................10

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

Metabolife Int'l, Inc. v. Wornick,
   264 F.3d 832 (9th Cir. 2001) ..............................................................9, 18, 19

Milkovich v. Lorain Journal Co.,
   497 U.S. 1 (1990).................................................................................12, 13

Miller Weisbrod, L.L.P. v. Llamas-Soforo,
   511 S.W.3d 181 (Tex. App. 2014) .........................................................7, 8

Miranda v. Byles,
   390 S.W.3d 543 (Tex. App. 2012) ..........................................................17

Misko v. Backes,
   No. 3:16-CV-3080-M (BT), 2018 WL 2335466 (N.D. Tex. May 4, 2018)...................10

Morrill v. Cisek,
   226 S.W.3d 545 (Tex. App. 2006) ..........................................................15

Overstock.com, Inc. v. Gradient Analytics,
   151 Cal. App. 4th 688 (2007).............................................................18, 19

Ramos v. Henry C. Beck Co.,
   711 S.W.2d 331 (Tex. App. 1986) ..........................................................15

Reich v. Purcell,
   67 Cal. 2d 551 (1967) ..............................................................................9

Rogers v. Home Shopping Network,
   57 F. Supp. 2d 973 (C.D. Cal. 1999).......................................................5, 9

Rudkin v. Roger Beasley Imports,
   No. A-17-CV-849-LY, 2017 WL 6622561 (W.D. Tex. Dec. 28, 2017)........................10

Serafine v. Blunt,
   466 S.W.3d 352 (Tex. App. 2015) ........................................................5, 10

State Med. Ass'n of Tex. v. Comm. for Chiropractic Ed.,
   236 S.W.2d 632 (Tex. Civ. App. 1951)......................................................14

Van Der Linden v. Khan,
   535 S.W.3d 179 (Tex. App. 2017) ..........................................................15

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

<u>Verizon Delaware v. Covad Commc'ns,</u>
   377 F.3d 1081 (9th Cir. 2004) ...................................................................20

<u>Walker v. Hartman,</u>
   516 S.W.3d 71 (Tex. App. 2017) ...........................................................6, 18

<u>Warner Bros. Entm't v. Jones,</u>
   538 S.W.3d 781 (Tex. App. 2017) .........................................................7, 18

<u>Z.F. v. Ripon Unified Sch. Dist.,</u>
   482 F. App'x 239 (9th Cir. 2012) .............................................................5, 9

## <u>STATUTES</u>

N.Y. Civ. Rights Law § 76-a ........................................................................8

Tex. Civ. Prac. & Rem. Code § 27.001 .......................................................6

Tex. Civ. Prac. & Rem. Code § 27.001 .......................................................1

Tex. Civ. Prac. & Rem. Code § 27.003 ..................................................7, 8, 9

Tex. Civ. Prac. & Rem. Code § 27.005 .......................................................6

## <u>RULES</u>

Fed. R. Civ. P., Rule 12 .................................................................1, 5, 8, 10

Fed. R. Civ. P., Rule 15(a) ..........................................................................20

USDC, Central District California, Local Rule 7-3 ......................................1

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

## I.     INTRODUCTION

Defendant Donald J. Trump's ("Mr. Trump") Motion to Strike seeks dismissal of Plaintiff Stephanie Clifford's ("Plaintiff" or "Ms. Clifford") defamation claim.  Plaintiff's claim is based on her account that she and her child were threatened by a stranger in 2011 after she gave an interview to *In Touch* magazine regarding her affair with Mr. Trump. Plaintiff recently released a sketch of the man who threatened her.  But the very next day, Mr. Trump defamed Plaintiff by tweeting to his audience of millions:  "A sketch years later about a nonexistent man.  A total con job, playing the Fake News Media for Fools (but they know it)!"  Mr. Trump's Motion to Strike should be denied for many reasons.

*First*, Mr. Trump's Motion is premised on the application of the Texas Citizens' Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code § 27.001, *et seq*.  Assuming for the sake of argument that the TCPA governs, Mr. Trump's Motion is untimely as it was not filed within 60 days of service.[1]

*Second*, the TCPA does not govern this action and Mr. Trump.  Rather, New York law should govern and Mr. Trump does not claim that any law in New York protects his defamatory statement.

*Third*, even if the Court finds that Texas law governs, strict application of the TCPA in Federal Court conflicts with the Federal Rules of Civil Procedure and therefore, this Motion must be treated either as a Rule 12 motion or a Rule 56 motion for summary judgment.  In the latter instance, Plaintiff is entitled to discovery (which she requests) to substantiate her claim and this Motion cannot be granted.

*Fourth*, even considered on the merits of the TCPA, Mr. Trump's Motion must still

---

[1] In addition, Mr. Trump's Motion is procedurally improper because he failed to wait seven days to file this Motion after the parties' meet and confer discussion. L.R. 7-3.  The conference occurred on August 23, but the motion was filed August 27.  To compound matters, when Plaintiff's counsel advised Mr. Trump's counsel of a conflict with the September 24 hearing date, counsel refused to reschedule the hearing.  The net effect of this gamesmanship was to saddle Plaintiff with the least amount of time possible to file a response to the Motion—i.e., seven days.  The Court has time and again cautioned the parties to follow the Local Rules and this Court's standing order, but Mr. Trump purposefully refused in order to score a tactical advantage. This conduct should result in a blanket denial of the motion.

be denied.  This is so because Mr. Trump's statement is a false statement of fact, not opinion, and is not hyperbole.  Mr. Trump's statement contains at least two distinct and verifiably false factual statements:  (1) that the man who threatened Plaintiff in 2011 does not exist and, consequently, that Plaintiff is lying about the encounter and ever having been threatened when she contemplated going public about her affair with Mr. Trump, and thus has committed a crime; and (2) that Plaintiff is engaged in a "con job" or is acting fraudulently as to Mr. Trump, the public, and the media.  As a result, Mr. Trump's attack on Plaintiff constitutes defamation *per se* and Plaintiff is not required to prove actual damages.  However, Plaintiff has in fact incurred damages.  [See Declaration of Stephanie Clifford ("Clifford Decl.") ¶¶4-5.]  Lastly, Plaintiff is not required to prove malice at this time.  Until Plaintiff has an opportunity to conduct discovery, her allegations in the Complaint are entirely sufficient and the Motion must be denied.

## II.    FACTUAL BACKGROUND

Aside from the issue of damages, Mr. Trump does not submit evidence to contradict the allegations in the Complaint.  Mr. Trump does not submit his own declaration or evidence purporting to challenge Plaintiff's account of the facts underlying her Complaint.  Rather, the Motion is premised on the incorrect assertion that Plaintiff's claims are insufficient under the law.  Consequently, the uncontested operative facts are as follows.

In May 2011, Ms. Clifford agreed to cooperate with *In Touch* magazine in connection with an article about her relationship with Mr. Trump that the magazine was preparing at the urging of Ms. Clifford's ex-husband, who had approached the magazine without approval from Ms. Clifford.  [Dkt. No. 1 ¶6.]  Plaintiff agreed to participate only after being told the story was going to run with or without her cooperation.  [Id.]

A few weeks after speaking with *In Touch* magazine, while Plaintiff was in Las Vegas, Nevada, she was approached and threatened by a man regarding her intention to tell the story of her relationship with Mr. Trump.  The threat occurred in the presence of Ms. Clifford's infant daughter, in a parking lot.  [Id. ¶7.]  The man approached Ms.

Clifford and said to her, "Leave Trump alone. Forget the story."  [Id. ¶ 8.]  The man then leaned around and looked at Ms. Clifford's infant daughter and said, "That's a beautiful little girl.  It'd be a shame if something happened to her mom."  [Id. ¶9.]

Ms. Clifford was shaken by the experience and understood the man's statement to be a direct threat.  [Id. ¶10.]  However, because Ms. Clifford was frightened she did not at the time go to the police and did not seek to go public with her story at that time.  [Id. ¶11.]  Ultimately, the story was not run by *In Touch* in 2011 because, Plaintiff believes, Mr. Trump's personal attorney, Michael Cohen threatened and intimidated the magazine into not proceeding with the story.  [Id. ¶12.]  Mr. Trump was elected President of the United States on November 8, 2016.  [Id. ¶13.]

Thereafter, on or about April 17, 2018 on behalf of Ms. Clifford, a sketch of the man who threatened her in 2011 was released publicly.  [Id. ¶14.]  The sketch was created in consultation with Ms. Lois Gibson, one of the foremost forensic artists in the world. [Id.]  Ms. Gibson met with Ms. Clifford for an extended period of time while compiling the sketch and asked her numerous questions about the encounter and the assailant.  [Id.]

Although no discovery has taken place in this action, and Mr. Trump does not offer evidence contradicting these allegations, Ms. Clifford has confirmed the accuracy of these allegations and the sketch on several occasions.  [See Avenatti Decl. Exhs. 1-2; see also Harder Decl. Exhs. B-C.]  Additionally, Plaintiff here confirms the accuracy and truth of her account.  [Clifford Decl. ¶¶ 2-3.]

Nevertheless, after the sketch was made public, on April 18, 2018, Mr. Trump, from his verified personal Twitter account (@realDonaldTrump) posted the following false statement regarding Ms. Clifford, the sketch, and her account of the incident in 2011:

> A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!

[Dkt. No. 1 ¶15; Avenatti Decl. Exh. 3.]  The statement posted by Mr. Trump was in response to another tweet posted by the account DeplorablyScottish (@ShennaFoxMusic) which showed side-by-side images of the sketch of Ms. Clifford's harasser and a picture

of Ms. Clifford and her husband.  [Id. ¶16.]

Mr. Trump's statement falsely attacks the veracity of Ms. Clifford's account.  [Id. ¶17.]  Mr. Trump's statement was false because Ms. Clifford was in fact threatened in 2011 as she has recounted and the sketch was the result of her recollection regarding the appearance of the assailant.  [Id. ¶29; Clifford Decl. ¶¶2-3.]  Nevertheless, Mr. Trump accuses Ms. Clifford of committing a crime in that it effectively states that Ms. Clifford falsely accused another individual of committing a crime. [Dkt. No. 1 ¶29.]  Mr. Trump's statement is malicious, false, and defamatory.  [Id. ¶¶17, 30-32.]  Plaintiff alleges that in making the statement, Mr. Trump used his national and international audience of millions of people to make a false factual statement.  [Id.]  Plaintiff alleges that in doing so, Mr. Trump knew that his false statement would be read around the world and that Ms. Clifford would be subjected to threats of violence, economic harm, and reputational damage.  [Id. ¶17.]  Plaintiff has in fact been subjected to such harm.  [Clifford Decl. ¶¶4-5.]

Mr. Trump made his statement either knowing it was false, had serious doubts about the truth of his statement, or made the statement with reckless disregard for its truth or falsity.  [Dkt. No. 1 ¶30.]  Indeed, given the circumstances surrounding the threatening incident and that Ms. Clifford had not gone public with her story at the time of the possible *In Touch* story, it is reasonable to infer that the person who threatened Ms. Clifford could have been acting directly or indirectly on behalf of Mr. Trump and/or Mr. Cohen.  [Id. ¶31.]  In which case, Mr. Trump would have had actual knowledge of the falsity of his statement.  [Id.]  Alternately, Mr. Trump acted in reckless disregard of the truth or falsity of his statement as he would have had absolutely no plausible basis for his assertion and defamatory statement.  [Id. ¶32.]

On the basis of these allegations, the Complaint alleges a single cause of action for defamation against Mr. Trump.  [Id. ¶¶21-38.]

-4-

## III.   LEGAL STANDARD

### A.   Mr. Trump's Motion is Treated as a Motion for Summary Judgment in Federal Court.

*First,* federal courts in this Circuit hold with respect to California's anti-SLAPP statute that "[i]f a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." Rogers v. Home Shopping Network, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999).  Further, "[i]f a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies."  Id.; see also Z.F. v. Ripon Unified Sch. Dist., 482 F. App'x 239, 240 (9th Cir. 2012) (if an anti-SLAPP motion "is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted"); Bulletin Displays v. Regency Outdoor Advert., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) ("If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56").

There is no reason to treat a motion under the TCPA any differently.  See Serafine v. Blunt, 466 S.W.3d 352, 386 (Tex. App. 2015) (Pemberton, J. *concurring*) (noting that "[t]he California statute … was … a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA.").  Indeed, Mr. Trump seeks alternate relief under California law and contends that under either statute, "the result would be the same."  [Dkt. No. 28 at 16:26-28.]

Here, at least as to the issue of damages, Mr. Trump is using his Motion under the TCPA in a manner akin to a motion for summary judgment.  Therefore, as to any issue contradicting the pleadings, "[t]he court views the evidence in the light most favorable to the non-moving party," "draws all justifiable inferences in favor of the non-moving

1    party," and cannot grant summary judgment "where divergent ultimate inferences may

2    reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz

3    USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

4         **B.    Rule 12(b)(6) Motions are Decided on the Face of the Complaint.**

5         *Second*, as to any issues raised regarding the sufficiency of the allegations in the

6    Complaint, when a court considers a Rule 12(b)(6) motion to dismiss, "[r]eview is limited

7    to the complaint" and "[a]ll factual allegations set forth in the complaint are taken as true

8    and construed in the light most favorable to [p]laintiffs."  Lee v. City of Los Angeles, 250

9    F.3d 668, 688 (9th Cir. 2001) (citations and quotations omitted).   "[F]actual challenges to

10   a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under

11   Rule 12(b)(6)."  Id.  Here, Mr. Trump seeks dismissal under Rule 12(b)(6), but his Motion

12   is accompanied by a declaration and multiple exhibits.  These must be disregarded if the

13   Court performs a Rule 12(b)(6) analysis.

14        **C.    Standard of Review Under the TCPA.**

15        *Finally*, assuming for the sake of argument that Texas substantive law governs the

16   resolution of this Motion, Mr. Trump bears the initial burden of establishing that "by a

17   preponderance of the evidence that the legal action is based on, relates to, or is in response

18   to the party's exercise of … the right of free speech."  Tex. Civ. Prac. & Rem. Code §

19   27.005(b).   The "right of free speech" within the meaning of the TCPA "means a

20   communication made in connection with a matter of public concern" which in turn can

21   refer or relate to "a public official or public figure."  Tex. Civ. Prac. & Rem. Code §§

22   27.001(3), 7(D).  Assuming this burden is met, the TCPA also requires that the "court may

23   not dismiss a legal action under this section if the party bringing the legal action

24   establishes by clear and specific evidence a prima facie case for each essential element of

25   the claim in question."  Tex. Civ. Prac. & Rem. Code § 27.005(c).  "When considering the

26   motion to dismiss, the court considers both the pleadings and any supporting and opposing

27   affidavits."  D Magazine Partners, L.P. v. Rosenthal, 529 S.W.3d 429, 434 (Tex. 2017).

28   Importantly, the pleadings themselves are evidence.  See Walker v. Hartman, 516 S.W.3d

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

71, 81 (Tex. App. 2017) ("We conclude that Hartman's live pleadings and affidavits, which we are required to consider as evidence under the TCPA…").

The "clear and specific evidence" standard for a prima facie case is not a high burden. The Texas Supreme Court has held that the TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." In re Lipsky, 460 S.W.3d 579, 591 (Tex. 2015). It further "does not impose a higher burden of proof than that required of the plaintiff at trial." Id. The Texas Supreme Court thus "disapprove[d] those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal." Id. Plaintiff need only "provide enough detail to show the factual basis for [her] claim." Id. In a defamation action such as this one when the "pleadings and evidence … establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff," this is "sufficient to resist a TCPA motion." Id. "If a plaintiff provides evidence that establishes a prima facie case if left uncontradicted and unexplained, the prima facie case only disappears 'when the true facts are conclusively shown by other evidence.'" Warner Bros. Entm't v. Jones, 538 S.W.3d 781, 801 (Tex. App. 2017).

As discussed herein, should the TCPA apply, Plaintiff meets this standard and Mr. Trump cannot conclusively show otherwise.

## IV.   ARGUMENT

### A.   Mr. Trump's Motion is Untimely.

Assuming that the TCPA applies, Mr. Trump's Motion is untimely. The TCPA unambiguously provides that a "motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b); see also Miller Weisbrod, L.L.P. v. Llamas-Soforo, 511 S.W.3d 181, 194 (Tex. App. 2014) (sixty-day time limit reflects "the legislature's intent to expeditiously resolve TCPA cases."). Mr. Trump waived service on May 23, 2018. [Dkt. No. 7.] Mr. Trump was thus obligated to file this Motion on or before July 23, 2018. He did not do so. Accordingly, Mr. Trump's Motion is untimely under Texas law and must

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

1   be denied.  Tex. Civ. Prac. & Rem. Code § 27.003(b).[2]

2   **B.   New York Law Applies.**

3       **1.   New York, Not Texas, Law Governs this Motion.**

4       Mr. Trump's Motion seeks to apply Texas law.  However, the law of New York, the

5   state where Mr. Trump resides [Dkt. No. 1 at 2], should govern this Motion.  New York's

6   statute is significantly narrower and applies only to actions related to applying for permits,

7   zoning changes, licenses, or similar entitlements from the government.  N.Y. Civ. Rights

8   Law § 76-a.  It is therefore apparent that Plaintiff's claim is outside of the scope of New

9   York's anti-SLAPP statute.  Mr. Trump, a non-Texas resident, cannot seek the protections

10  of the TCPA when the law of his own domicile does not protect his conduct.

11      Indeed, anti-SLAPP laws such as the TCPA serve to protect the defendant, so the

12  state of the defendant's residence is the only one that has an interest in the application of

13  its law.  See Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1158–59 (N.D.

14  Cal. 2003) ("California appears to have no governmental interest in having its [anti-

15  SLAPP] law applied" where none of the counterclaim defendants resided in California);

16  Hurtado v. Superior Court, 11 Cal. 3d 574, 581, 522 (1974) ("Mexico has no interest in

17  applying its limitation of damages—Mexico has no defendant residents to protect and has

18  no interest in denying full recovery to its residents injured by non-Mexican defendants.").

19  On the other hand, New York "has an interest in regulating the conduct of its citizens, the

20  state has an interest in having its defamation rules apply when an allegedly defamatory

21  statement is uttered within that state."  Condit v. Dunne, 317 F. Supp. 2d 344, 353

22  (S.D.N.Y. 2004); see also Block v. First Blood Assocs., 691 F. Supp. 685, 698 (S.D.N.Y.

23  1988) (concluding that New York law would apply to defamation claim because "New

24  York has a compelling interest in policing tortious conduct committed in New York, by a

25  ─────────────────────
[2] Although on August 16 the parties did discuss the timing of Mr. Trump's "response to

26  Ms. Clifford's defamation complaint," the Motion was already untimely.  [See Avenatti
    Decl. Exh. 4.]  There was no agreement to revive expired deadlines.  [Id.]  Moreover,

27  Plaintiff understood "response to the complaint" to refer to Rule 12 of the Federal Rules,
    not an argument raised under Texas law – an issue that Plaintiff had no notice Mr. Trump

28  intended to raise at the time.  [Avenatti Decl. ¶5.]

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

New York attorney, with reference to future or pending litigation in New York."); <u>Reich v. Purcell</u>, 67 Cal. 2d 551, 556 (1967) ("A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile. . .").

Here, there is no reason to apply the TCPA – a Texas statute – to protect Mr. Trump, a New York citizen.  New York law should govern.[3]

### 2.  If the TCPA Applies, Under the Federal Rules of Procedure, Plaintiff Must Be Afforded an Opportunity for Discovery.

Insofar as Mr. Trump challenges the pleadings, under the Federal Rules, Plaintiff must be afforded the opportunity to conduct discovery.  Mr. Trump's Motion should therefore be denied as premature until discovery has been conducted.

As federal courts in California have held with respect to California's anti-SLAPP law, "if a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been developed sufficiently to permit summary judgment under Rule 56."  <u>Rogers</u>, 57 F. Supp. 2d at 982; <u>see also</u> <u>Z.F.</u>, 482 F. App'x at 240 (if an anti-SLAPP motion "is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted").  This is so in spite of the fact that Code of Civil Procedure section 425.16(g) provides for a stay of discovery upon the filing of an anti-SLAPP motion – as does the TCPA.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 27.003(c).  This is necessary because Rule 56(f) *requires* "rather than merely permit[s] discovery" when "the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 846 (9th Cir. 2001).  Thus, "[i]f the motion challenges the factual basis of the plaintiff's case, and relies on declarations and affidavits produced through the discovery process, then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature."  <u>Aeroplate</u>

---

[3] For the same reason, there is no reason to apply California's anti-SLAPP law.  <u>See</u> <u>Competitive Techs.</u>, 286 F. Supp. 2d at 1158–59 ("California appears to have no governmental interest in having its [anti-SLAPP] law applied" where none of the counterclaim defendants resided in California).

Corp. v. Arch Ins. Co., No. CVF061099AWISMS, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 9, 2006).  There is no reason to treat the TCPA differently.  See Serafine, 466 S.W.3d at 386.  Indeed, Mr. Trump contends that California's anti-SLAPP statute is "substantially congruent to Texas' statute…"  [Dkt. No. 28 at 16:26-28.]

Likewise, *federal courts in Texas have also refused to apply the TCPA in federal court due to its conflict with Rules 12 and 56*.  See, e.g., Mathiew v. Subsea 7 (US) LLC, No. 4:17-CV-3140, 2018 WL 1515264, at *7 (S.D. Tex. Mar. 9, 2018), report and recommendation adopted, No. 4:17-CV-3140, 2018 WL 1513673 (S.D. Tex. Mar. 26, 2018) (the "TCPA directly conflicts with the 'integrated program' Rules 12 and 56 create for determining whether to grant pre-trial judgment in cases in federal court because it changes the burdens of proof applicable to both parties" and as a result "the procedural mechanisms of the TCPA must yield to the Federal Rules of Civil Procedure."); Rudkin v. Roger Beasley Imports, No. A-17-CV-849-LY, 2017 WL 6622561, at *3 (W.D. Tex. Dec. 28, 2017), report and recommendation approved, No. A-17-CV-849-LY, 2018 WL 2122896 (W.D. Tex. Jan. 31, 2018) ("Even if the [TCPA] is viewed to be somehow substantive, it still cannot be applied in federal court, as its provisions conflict with Rules 12 and 56, rules well within Congress's rulemaking authority.  Accordingly, the motion to dismiss under the TCPA should be denied.").  The Court should reach the same conclusion.  At a minimum, Plaintiff is first entitled to discovery under the Federal Rules, which must take precedence.  See Misko v. Backes, No. 3:16-CV-3080-M (BT), 2018 WL 2335466, at *2 (N.D. Tex. May 4, 2018), report and recommendation adopted, No. 3:16-CV-3080-M (BT), 2018 WL 2329306 (N.D. Tex. May 23, 2018) ("If there is a direct conflict between a state substantive law and a federal procedural rule, however, the federal court applies the federal rule, rather than the substantive state law.").

Here, because Mr. Trump challenges Plaintiff's allegations as to damages and malice, Plaintiff must be afforded an opportunity to conduct discovery.  In particular, Plaintiff requires discovery into the circumstances surrounding Mr. Trump's tweet, such as why he posted it and what his knowledge of the underlying factual circumstances of the

threatening incident in 2011 was when he posted the tweet. [Avenatti Decl. ¶6.]   For example, proof that Mr. Trump had reasons to doubt the veracity of his assertion (e.g., if he was himself involved in the 2011 threat or knew about it), or that he purposefully avoided learning the truth, bear directly on the question of malice but are issues about which Mr. Trump himself is uniquely and exclusively situated to provide.   See <u>Am. Dental Ass'n v. Khorrami</u>, No. CV 02-3853 DT(CTX), 2003 WL 24141019, at *7 (C.D. Cal. July 14, 2003) ("Plaintiff's burden of establishing Defendant's 'actual malice' requires that Defendant produce any information that may have caused Defendant to entertain substantial doubt").   Accordingly, Mr. Trump's Motion should be denied to afford Plaintiff an opportunity to conduct discovery.

### C.   Clifford Has Met Her Burden on the Claim for Defamation.

Nevertheless, if the Court decides to apply the TCPA and proceeds to a determination on the merits of the Motion, Plaintiff can meet her burden.   The elements of a claim for defamation are well-established.   See <u>D Magazine Partners</u>, 529 S.W.3d at 434 (listing elements).   "In making the initial determination of whether a publication is capable of a defamatory meaning, [courts] examine its 'gist.'"   <u>Id.</u>   The Court must "construe the publication 'as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.'"   <u>Id.</u>   Here, Mr. Trump argues only that his statement was not a statement of fact, that Plaintiff has no damages, and that she cannot prove the requisite level of fault.   Each of these arguments fails.

### 1.   Mr. Trump's Statement is a False Statement of Fact.

Mr. Trump's Motion is premised on the incorrect assertion that his statement is not actionable as matter of law because it is a statement of opinion.   Mr. Trump is mistaken. Under Texas law, "to be actionable, a statement must assert an objectively verifiable fact rather than an opinion."   <u>Hoskins v. Fuchs</u>, 517 S.W.3d 834, 840 (Tex. App. 2016).   Thus, Texas courts "classify a statement as fact or opinion *based on the statement's verifiability and the entire context in which the statement was made*."   <u>Id.</u> (emphasis added).

In <u>Bentley v. Bunton</u>, for example, "the host of a call-in talk show televised on a

public-access channel in a small community repeatedly accused a local district judge of being corrupt." Bentley v. Bunton, 94 S.W.3d 561, 566–67 (Tex. 2002). In that action, the Texas Supreme Court addressed the question of whether the accusation that the plaintiff was "corrupt" constituted an opinion or statement of fact. Resolution of the issue hinged on the "verifiability" of the accusation "and the context in which [the accusations] were made." Id. at 852. As the Texas Supreme Court stated, the accusation that someone is corrupt "may be merely epithetic in the context of amorphous criticism," or "it may also be used as a statement of fact that can be proved true or false…" Id. at 581-582. Indeed, "[c]orrupt conduct, determined as a matter of fact, may be punished under Texas law in numerous situations." Id. at 582. In discussing the distinction between statements of fact and opinion, the Texas Supreme Court cited with approval the U.S. Supreme Court's discussion in Milkovich v. Lorain Journal as follows:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. … Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

Bentley, 94 S.W.3d at 583 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990)). Based on the context of the accusation, which included reference to a supposed investigation, the Texas Supreme Court concluded that the accusation of corruption was "a matter of verifiable fact," albeit false, not "constitutionally protected opinion." Id.

Here, Mr. Trump, from his verified personal Twitter account (@realDonaldTrump), made the following false factual statement regarding Plaintiff, the sketch, and her account of the incident in 2011: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" [Dkt. No. 1 ¶15; Avenatti Decl. Exh. 3.] The statement posted by Mr. Trump was in response to another tweet posted by the account DeplorablyScottish (@ShennaFoxMusic), which showed side-by-side images of the sketch of Ms. Clifford's harasser and a picture of Ms. Clifford and her husband. [Id. ¶16; Avenatti Decl. Exh. 3.]

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

Notably, Mr. Trump does not submit any evidence purporting to establish the truth of his statement or the falsity of Plaintiff's.  Nevertheless, the statement itself contains at least two distinct and verifiable factual statements: (1) that the man who threatened Plaintiff in 2011 does not exist and, consequently, that Plaintiff is lying about the encounter and ever having been threatened when she contemplated going public about her affair with Mr. Trump; and (2) that Plaintiff is engaged in a "con job" or is "[s]omeone who defrauds a victim by first gaining the victim's confidence and then, through trickery, obtaining money or property; a swindler."   CONFIDENCE MAN, Black's Law Dictionary (10th ed. 2014).  These are both verifiable statements – it is either true or it isn't true that the man exists, that Plaintiff is being truthful about the threatening incident, or that she is engaged in a fraud on Mr. Trump, the media, and the public.

Context is relevant to Mr. Trump's statement because it was issued in response to Ms. Clifford's appearance on *The View* and media attention regarding her revelation that she had an affair with Mr. Trump.  A reasonable reader of the statement might therefore read this statement, coming from Mr. Trump (the person Plaintiff states she had an affair with) to be based on a factual assertion that Plaintiff is lying about being threatened for going public about the affair because the affair itself never happened.  Again, this is a factual, verifiable statement.  Plaintiff did have an affair with Mr. Trump and she was threatened when she contemplated coming forward about it.  [Clifford Decl. ¶¶2-3.] And Plaintiff continues to be threatened in response to Mr. Trump's tweet.  [Id. ¶¶3-4.]

Indeed, it bears emphasizing that Mr. Trump is not an unaffiliated individual on the Internet speculating without any pretense of knowledge.  Aside from Plaintiff, *Mr. Trump is one of the few people in the world who has personal knowledge of the true facts of their affair*.  In light of this, Mr. Trump cannot declare his statement to be a mere opinion and avoid the reasonable implication that he has factual knowledge supporting the statement.  See Bentley, 94 S.W.3d at 583 ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth.").

For these reasons, this action is entirely distinguishable from Dallas Morning News

v. Tatum, cited by Mr. Trump.  There, the Texas Supreme Court held that the statement at issue did not in fact "implicitly accuse the [plaintiffs] of being deceptive people in the abstract or by nature." Dallas Morning News, Inc. v. Tatum, No. 16-0098, 2018 WL 2182625, at *17 (Tex. May 11, 2018).   Rather, "it accuses them of a single, understandable act of deception, undertaken with motives that should not incite guilt or embarrassment."  Id.  Further, it held that the statement at issue used "language that conveys a personal viewpoint rather than an objective recitation of fact," which included "So I guess," "I think," and "I understand."  Id.  Mr. Trump's statement is not analogous at all and is not in any manner equivocal or neutral – it states flat out that Plaintiff's assailant does not exist and accuses her of fraud and committing a crime.

For the same reasons, it is not hyperbole.  A statement is not hyperbole when it asserts "an objectively verifiable fact."  Backes v. Misko, 486 S.W.3d 7, 26 (Tex. App. 2015).  In fact, Mr. Trump does not even support his argument with citation to Texas law actually holding that a similar statement was hyperbole.  Mr. Trump's worry over the chilling impact on politics if he is held accountable is unfounded.  Most politicians take care to ensure that their statements are supportable by actual facts.  Mr. Trump apparently does not feel so constrained and there is unlikely to be a meaningful chilling effect by holding Mr. Trump accountable.

### 2.    Plaintiff is Not Required to Prove But Has Incurred Damages.

Mr. Trump incorrectly argues that Plaintiff cannot demonstrate damages.  *First*, as noted above, damages are an essential element of a claim for defamation "unless the statement constitutes defamation per se" as in this case.  D Magazine Partners, 529 S.W.3d at 434.  It has long been the law in Texas "that written or printed words which charge dishonesty of fraud, or rascality and general depravity are generally libelous per se." State Med. Ass'n of Tex. v. Comm. for Chiropractic Ed., 236 S.W.2d 632, 634 (Tex. Civ. App. 1951); see also Dkt. No. 28 at 11:13-14 (conceding that statements that "unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity" are defamatory *per se*).  Where an alleged defamatory statement "could reasonably be

1   construed to accuse [the plaintiff] of committing a crime, it is defamatory per se…"  D

2   Magazine Partners, 529 S.W.3d at 439; see also Ramos v. Henry C. Beck Co., 711 S.W.2d

3   331, 334 (Tex. App. 1986) (if the statement at issue "falsely imputes criminal conduct to

4   the plaintiff, it is slander per se."). Similarly, "[i]f there is a question whether the hearer

5   could reasonably understand the statement in a defamatory sense," to impute the

6   commission of a crime, "an ambiguity exists, and a fact issue is presented." Ramos, 711

7   S.W.2d at 334.

8       Thus, for example, "Texas case law firmly establishes that falsely accusing

9   someone of stealing or calling someone a 'thief' constitutes defamation per se." Fiber

10  Sys. Int'l v. Roehrs, 470 F.3d 1150, 1162 (5th Cir. 2006). Similarly, "[f]alsely calling

11  someone a 'crook' … or falsely accusing him of stealing property falls within the

12  parameters of slander per se…" Bennett v. Computer Assocs. Int'l, 932 S.W.2d 197, 200

13  (Tex. App. 1996). Accusing an individual of forging documents is defamatory per se.

14  Morrill v. Cisek, 226 S.W.3d 545, 550 (Tex. App. 2006). Falsely "accusing someone of

15  having admitted that he provided financial support to terrorists constitutes defamation per

16  se." Van Der Linden v. Khan, 535 S.W.3d 179, 198 (Tex. App. 2017). Accusing

17  someone of conduct amounting to moral turpitude amounts to defamation per se. Fawcett

18  v. Grosu, 498 S.W.3d 650, 662 (Tex. App. 2016). Notably, any crime involving

19  "dishonesty, fraud, deceit, [or] misrepresentation" constitutes a crime of moral turpitude

20  within the meaning of the law. Escobedo v. State, 202 S.W.3d 844, 848 (Tex. App. 2006).

21      Contrary to Mr. Trump's argument, whether a publication accuses someone of a

22  crime, for example, need not be entirely "unambiguous" and can be determined from

23  "gist" of the publication or whether "a reasonable person could view it as accusing" the

24  plaintiff of a crime. D Magazine Partners, 529 S.W.3d at 437. For example, in D

25  Magazine, the Texas Supreme Court examined a defamatory article in detail to determine

26  that it could be reasonably understood to accuse the plaintiff of a crime. The Texas

27  Supreme Court came to the conclusion that it could despite the fact that the "article never

28  expressly accuses [the plaintiff] of lying or fraudulently obtaining benefits, and D

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

Magazine insists that each statement in the article is literally, or at least substantially, true." Id. at 438.  Nevertheless, the Texas Supreme Court concluded that "[v]iewing the article as a whole … a reasonable person could perceive it as accusing [the plaintiff] of providing false information to the Commission (either affirmatively or by omission) in order to obtain benefits to which she was not entitled."  Id.  Because of this, "it is defamatory per se, and [the plaintiff] need not show actual damages."  Id. at 439.

Mr. Trump's tweet is not nearly so subtle and outright accuses Plaintiff of fraud, dishonesty, lying to the public, and falsely reporting the crime that was the threatening incident that took place in 2011.  Further, Mr. Trump refers to Plaintiff's actions as a "con job."  This in itself refers to fraudulent or criminal conduct because, as discussed above, "confidence man" or "con man" is defined as "[s]omeone who defrauds a victim by first gaining the victim's confidence and then, through trickery, obtaining money or property; a swindler."  CONFIDENCE MAN, Black's Law Dictionary (10th ed. 2014).

Mr. Trump argues that he cannot have accused Plaintiff of committing a crime because she did not in fact report the crime to the authorities.  This argument amounts to the circular and absurd logic that in order for Plaintiff to be falsely accused of committing a crime, she must have actually taken all the steps necessary to commit the crime.  On the contrary, "the charge of violating a criminal statute need not be made in a technical manner."  Gray v. HEB Food Store No. 4, 941 S.W.2d 327, 329 (Tex. App. 1997). Instead, the inquiry is whether "an ordinary person would draw a reasonable conclusion" that the Plaintiff had been accused of a crime.  Id.  For all the reasons, discussed herein, the statement by Mr. Trump is reasonably interpreted to accuse Plaintiff of falsifying the account of the threatening incident and behaving in a criminal and fraudulent manner – committing a "con job."  Accordingly, Plaintiff is not required to prove damages.

Second, even if Ms. Clifford is required to prove damages, she is able to do so.  The law in Texas is clear that damages in the defamation context can be for "non-economic losses, such as mental anguish or lost reputation" and these damages "are, by their nature, incapable of precise mathematical measure."  Brady v. Klentzman, 515 S.W.3d 878, 887

(Tex. 2017); see also Bentley, 94 S.W.3d at 605 (affirming award of "$7 million in mental anguish damages and $150,000 in damages to his character and reputation."); Miranda v. Byles, 390 S.W.3d 543, 556 (Tex. App. 2012) (damages were based on testimony that the accusations had caused "alienation from the rest of [the plaintiff's] family and that they no longer felt safe traveling to the valley for family functions…").

Here, Plaintiff can establish that as a result of Mr. Trump's statement, she has received an increase in threats and abuse, including scorn and ridicule, directed at her by certain members of the public. [Clifford Decl. ¶4.]  These threats and abuse include death threats and threats of physical violence and, as a result, she has felt emotional distress and mental anguish.  [Id.]  It is apparent to her, based on the increase in these threats, that Mr. Trump's statement has injured and harmed Plaintiff's reputation among certain members of the public.  [Id.]  Indeed, this is not surprising.  When the President of the United States falsely accuses you of falsifying an account of a crime and defrauding the President, the public, and the media, it is not a stretch to believe this will provoke a response and harm to Plaintiff.  Indeed, Plaintiff has felt an increased need to maintain personal security and her concern for her own safety has increased since the tweet.  [Id. ¶5.]

Mr. Trump cites news articles for the false proposition that Clifford's pay had quadrupled, but hearsay news articles cannot be used in this manner.  See Larez v. City of Los Angeles, 946 F.2d 630, 642-44 (9th Cir. 1991) (even if newspaper quotations were themselves admissions or statements by a party opponent, the newspaper articles were still hearsay and inadmissible, in part because the reporters who heard the speaker could have testified).  Further, neither of the articles Mr. Trump cites actually state that Clifford's pay has quadrupled; the word "quadrupled" appears in the context of a hypothetical.  [Harder Decl. Exhs. P, Q.]  In any event, the news articles do not actually state that Plaintiff was not harmed by Mr. Trump's statement.  In fact, Mr. Trump's argument is a red herring.  Ms. Clifford's injury is the impact of Mr. Trump accusing her of committing a crime and characterizing her as a dishonest fraud and a liar.

### 3.      Plaintiff is Not Required to Prove Malice at This Time.

Malice is the "publication of a statement with knowledge of falsity or reckless disregard as to truth or falsity." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 511 (1991). The reckless disregard prong may be established in a wide variety of ways. The Ninth Circuit has held that a plaintiff can prevail by showing the defendant had "high degree of awareness of ... probable falsity," "entertained serious doubts as to the truth of his publication," or "had obvious reasons to doubt the veracity, but engaged in purposeful avoidance of the truth." Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1251 (9th Cir. 1997) (citations and quotations omitted). Courts will also consider "[a] failure to investigate . . ., anger and hostility toward the plaintiff . . , reliance upon sources known to be unreliable . . ., or known to be biased against the plaintiff [as evidence that] the publisher himself had serious doubts regarding the truth of his publication." Overstock.com, Inc. v. Gradient Analytics, 151 Cal. App. 4th 688, 709–10 (2007).[4]

Plaintiff is entitled to discovery on the issue of malice. See Flowers v. Carville, 310 F.3d 1118, 1131 (9th Cir. 2002) ("Actual malice is a subjective standard that turns on the defendant's state of mind; it is typically proven by evidence beyond the defamatory publication itself."). In the absence of discovery, the pleadings must be accepted.[5] See Id. ("'[T]he issue of 'actual malice' ... cannot be properly disposed of by a motion to dismiss,' where the plaintiff has had no opportunity to present evidence in support of his allegations.") (quoting Metabolife Int'l v. Wornick, 264 F.3d 832, 848 (9th Cir. 2001)).

---

[4] Texas law is the same. "In the defamation context, 'actual malice' means 'that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'" Warner Bros., 538 S.W.3d at 805. "Showing reckless disregard requires more than mere negligence and 'a departure from reasonably prudent conduct.'" Id. Thus, "[t]o establish reckless disregard, a public figure must provide sufficient evidence that the publisher 'entertained serious doubts as to the truth of his publication' or had 'a high degree of awareness of ... probable falsity.'" Id. Additionally, "lack of care or an injurious motive in making a statement … are factors to be considered." Bentley, 94 S.W.3d at 596. Similarly, "a purposeful avoidance of the truth is" evidence and "[i]magining that something may be true is not the same as belief." Id.

[5] Even under the TCPA, the pleadings are evidence. See Walker, 516 S.W.3d at 81 ("We conclude that Hartman's live pleadings and affidavits, which we are required to consider as evidence under the TCPA…"). Mr. Trump has not submitted an affidavit on this issue.

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

Thus, until Plaintiff has conducted discovery, her allegation in the Complaint regarding malice are sufficient.  See Id. ("That [the plaintiff] averred the required state of mind generally, without alleging corroborating evidence, does not defeat her complaint").

Nevertheless, even in the absence of discovery, Mr. Trump has not established that malice has not been demonstrated.  *Mr. Trump submits no declaration of his own or any evidence to establish that he did not act with the requisite fault.  This is fatal to his position.*  Thus, here the operative allegations are that Mr. Trump made his statement either knowing it was false, had serious doubts about the truth of his statement, or made the statement with reckless disregard for its truth or falsity." [Dkt. No. 1 ¶30.]

*First*, given the circumstances surrounding the threatening incident, and that Ms. Clifford had not gone public with her story at the time of the *In Touch* interview, it is possible to infer that the person who threatened Ms. Clifford could have been acting directly or indirectly on behalf of Mr. Trump or Mr. Cohen.  [Id. ¶31.]  In which case, Mr. Trump would have had actual knowledge of the falsity of his statement.  [Id.]  Mr. Trump argues that this cannot be inferred because other people did know of the affair and Plaintiff's intention to go public.  This possibility does not negate the inference of malice raised by Plaintiff and the fact that at the time of the incident, Mr. Trump was one of very few people who knew of the affair or her intention to go public and certainly one of only a few that had a motive to "keep her quiet."  As the Texas Supreme Court has clarified, circumstantial evidence is sufficient to meet a plaintiff's burden under the TCPA.  In re Lipsky, 460 S.W.3d at 591.

*Second*, if Mr. Trump did not have actual knowledge of the circumstances, then Mr. Trump acted in reckless disregard of the truth or falsity of his statement as he would have had absolutely no plausible basis for his assertion.  [Id. ¶32.]  This is not simply a failure to investigate as Mr. Trump contends.  Rather, the inference of malice here is bolstered by the media attention and controversy surrounding Plaintiff and Mr. Trump and her public disclosure of the fact of their affair.  As cited, "anger and hostility toward the plaintiff" can be considered as evidence of malice.  Overstock.com, 151 Cal. App. 4th at 709–10;

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**

see also Bentley, 94 S.W.3d at 596 (an "injurious motive in making a statement" can be considered as evidence of malice.).  Here, Ms. Clifford's account of the affair is accurate and, as a result, it is a fact Mr. Trump is keenly aware of.  He thus had reason to know the inaccuracy of his tweet.  Further, in light of the extensive negative publicity the Harder Declaration itself evidences, Mr. Trump had a motive to injure Plaintiff.  This, coupled with a lack of any investigation, establishes malice even in the absence of discovery.

**C.    Mr. Trump's Alternate Requests for Relief Should Also Be Denied.**

Mr. Trump requests that the action be dismissed pursuant to California's anti-SLAPP law or Rule 12(b)(6).  Mr. Trump does not advance additional arguments under California's law and there is no reason to believe it should govern this action.  [See footnote 2, supra.]  Further, under Rule 12(b)(6), the Court must disregard Mr. Trump's challenges to the allegations in the Complaint as to damages and malice.  Lee, 250 F.3d at 688.  Mr. Trump's request should be denied for the same reasons discussed above.

**D.    If Mr. Trump's Motion is Granted, Plaintiff is Entitled to Amend.**

In the event the Court grants Mr. Trump's Motion, which it should not, Plaintiff requests the ability to amend.  The Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  Verizon Delaware v. Covad Commc'ns, 377 F.3d 1081, 1091 (9th Cir. 2004).  Plaintiff should, therefore, be permitted to amend.

**V.    CONCLUSION**

For the reasons stated herein, Plaintiff requests that Mr. Trump's Motion be denied.

Dated:  September 3, 2018                    AVENATTI & ASSOCIATES, APC

                                                     By:  _____/s/ Michael J. Avenatti_____
                                                            Michael J. Avenatti
                                                            Ahmed Ibrahim
                                                            Attorneys for Plaintiff Stephanie Clifford
                                                            a.k.a. Stormy Daniels

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO STRIKE**