BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       BBlakely@BlakelyLawGroup.com

Attorneys for Defendants
ESSENTIAL CONSULTANTS, LLC and
MICHAEL COHEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**DEFENDANT MICHAEL COHEN'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE (CAL. CODE CIV. PROC. § 425.16) OR, ALTERNATIVELY, TO DISMISS (FRCP 12(b)(6)) PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declarations of Michael D. Cohen and Brent H. Blakely Filed Concurrently]<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:       May 7, 2018**<br>**Time:       10:00 a.m.**<br>**Location:   350 West 1st Street**<br>**             Courtroom 10C, 10th Floor**<br>**             Los Angeles, CA 90012**<br><br>Action Filed: March 6, 2018 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 7, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendant Michael Cohen will and hereby does move pursuant to California Code of Civil Procedure § 425.16 for an order striking the Second Claim for Defamation in the First Amended Complaint of Plaintiff Stephanie Clifford ("Clifford" or "Plaintiff") filed on or about March 26, 2018.

Mr. Cohen brings this Motion on the grounds that Plaintiff's claim arises out of actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights, and (2) relate to matters of public interest. Thus, the anti-SLAPP statute applies, and Plaintiff must prove by admissible evidence that she will probably prevail on her claim.

As set forth herein, Plaintiff cannot meet this burden. Accordingly, Plaintiff's Second Claim for Defamation should be struck, and Mr. Cohen should be awarded his attorneys' fees and costs incurred in defending against this meritless claim.[1]

Alternatively, Mr. Cohen will and hereby does move for an order dismissing the Second Claim for Defamation in the First Amended Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6).

This Motion shall be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Michael D. Cohen and Brent H. Blakely filed concurrently herewith (with exhibits), the anticipated reply papers, all materials that may be properly considered in connection with this motion, and oral argument at the hearing. This motion is made following

---

[1] The SLAPP statute mandates that a prevailing movant on a Special Motion to Strike "shall" recover its attorneys' fees and costs. *See* Cal. Code Civ. Proc. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001). If the Court grants this Motion, Mr. Cohen will file a separate motion for attorneys' fees and costs.

1 │ the conference of counsel pursuant to L.R. 7-3, which took place on April 2, 2018.

2

3 │ Dated: April 9, 2018                    BLAKELY LAW GROUP

4

5 │                                   By:  */s/ Brent H. Blakely*

6 │                                        BRENT H. BLAKELY
   │                                        **Attorneys for Defendants**

7 │                                        **ESSENTIAL CONSULTANTS, LLC and**
   │                                        **MICHAEL COHEN**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
# **TABLE OF CONTENTS**

3
I.    INTRODUCTION ................................................................ 4

4
II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

5
    a.    Summary of relevant allegations ........................................ 6

6
    b.    Summary of proceedings ................................................. 9

7
III.  ARGUMENT ...................................................................10

8
    a.    California's Anti-SLAPP Statute Applies To Plaintiff's Second Claim For Defamation ................................................... 10

9
    b.    Mr. Cohen's satisfaction of the first prong cannot be disputed ........... 12

10
    c.    Plaintiff cannot prevail on her defamation claim ............................... 14

11
        1.    Plaintiff cannot establish the falsity of Mr. Cohen's statement ................................................................ 15

12
        2.    Mr. Cohen's statement is opinion ............................................ 16

13
        3.    Mr. Cohen's statement is hyperbole ........................................ 18

14
        4.    The alleged defamatory statement is privileged ...................... 19

15
        5.    Plaintiff cannot establish that Mr. Cohen's statement is a defamatory statement about Plaintiff........................................ 19

16
        6.    Plaintiff has no special damages ............................................. 21

17
        7.    Mr. Cohen did not act with malice .......................................... 22

18
    d.    Alternatively, The Court Should Dismiss The Defamation Claim ...... 23

19
IV.  CONCLUSION .................................................................24

20
21
22
23
24
25
26
27
28

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## CASES

*Baker v. Los Angeles Herald Examiner*,
    42 Cal.3d 254 (1986) ....................................................... 19

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003)....................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................... 27

*Braun v. Chronicle Publ'g Co.*,
    52 Cal.App.4th 1036 (1997).......................................... 23

*Briggs v. Eden Council for Hope and Opportunity*,
    19 Cal.4th 1106 (1999) ............................................14, 18

*Brown v. Kelly Broadcasting Co.*,
    48 Cal.3d 711 (1989) .................................................... 23

*Cabrera v. Alam*,
    197 Cal.App.4th 1077 (2011)....................................... 17

*Campanelli v. Regents of University of California*,
    44 Cal.App.4th 572 (1996)............................................ 19

*Clark v. Hidden Valley Lake Ass'n*,
    No. 16-CV-02009-SI, 2017 WL 4922375 (N.D. Cal. Oct. 31, 2017)............ 15

*Conroy v. Spitzer*,
    70 Cal.App.4th 1446 (1999)........................................... 17

*Crane v. The Arizona Republic*,
    972 F.2d 1511 (9th Cir.1992)........................................ 23

*Dora v. Frontline Video, Inc.*
    15 Cal.App.4th 536 (1993)............................................ 17

*Eastwood v. National Enquirer*,
    123 F.3d 1249 (9th Cir. 1997)....................................... 26

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*eDrop-Off Chicago LLC v. Burke,*
    No. CV 12-4095 GW (FMOx), 2013 WL 12131186 (C.D. Cal. 2013)......... 15

*Emde v. San Joaquin County Central Labor Council,*
    23 Cal.2d 146 (1943) ...................................................................................... 19

*Equilon Enters., LLC v. Consumer Cause,*
    29 Cal.4th 53 (2002) ...................................................................................... 14

*Ferlauto v. Hamsher,*
    74 Cal.App.4th 1394 (1999)........................................................................ 22

*Flatley v. Mauro,*
    39 Cal.4th 299 (2006) .................................................................................... 17

*Gabrielson v. Montgomery Ward & Co.,*
    785 F.2d 762 (9th Cir. 1986)........................................................................ 27

*Gerbosi v. Gaims, Weil, West & Epstein, LLP,*
    193 Cal.App.4th 435 (2011)........................................................................ 19

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ...................................................................................... 21

*Harte–Hanks Communications, Inc. v. Connaughton,*
    491 U.S. 657 (1989) ...................................................................................... 26

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010)........................................................................ 17

*Isuzu Motors, Ltd. v. Consumers Union of United States, Inc.,*
    12 F.Supp.2d 1035 (C.D. Cal. 1998) ........................................................... 23

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)...................................................................... 21

*Leidholdt v. L.F.P., Inc.,*
    860 F.2d 890 (9th Cir. 1988)........................................................................ 21

*Liberty Synergistics Inc. v. Microflo Ltd.,*
    718 F.3d 138 (2d Cir. 2013)..................................................................15, 16

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*Macias v. Hartwell*,
   55 Cal.App.4th 669 (1997)......................................................... 18

*Manzari v. Associated Newspapers Ltd.*,
   830 F.3d 881 (9th Cir. 2016)...................................................14, 15

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991)................................................................ 20

*McGarry v. University of San Diego*,
   154 Cal.App.4th 97 (2007)........................................................ 20

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001)..................................................... 14

*Navellier v. Sletten*,
   106 Cal.App.4th 763 (2003).....................................................18, 19

*Nicosia v. De Rooy*,
   72 F.Supp.2d 1093 (N.D. Cal. 1999).........................................21, 22

*Nygard, Inc. v. Uusi–Kerttula*,
   159 Cal.App.4th 1027 (2008)............................................17, 19, 26

*Premier Medical Management Systems, Inc. v. California Ins. Guarantee*,
   136 Cal.App.4th 464 (2006).....................................................18, 19

*Roberts v. Los Angeles County Bar Assn.*,
   105 Cal.App.4th 604 (2003)...................................................... 18

*Rosenaur v. Scherer*,
   88 Cal.App.4th 260 (2001)........................................................ 22

*Seelig v. Infinity Broad. Corp.*,
   97 Cal.App.4th 798 (2002)........................................................ 17

*Smith v. Maldonado*,
   72 Cal.App.4th 637 (1999)........................................................ 24

*Standing Committee v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995)..................................................... 22

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

*Summit Bank v. Rogers*,
  206 Cal.App.4th 669 (2012)......................................................................... 21

*Taus v. Loftus*,
  40 Cal.4th 683 (2007) ................................................................................. 19

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995)........................................................................ 22

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F.Supp.3d 982 (N.D. Cal. 2015).......................................................... 16

*Washer v. Bank of America*,
  87 Cal.App.2d. 501 (1948).......................................................................... 19

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Stephanie Clifford's ("Clifford" or "Plaintiff") Second Claim for Defamation in the First Amended Complaint ("FAC") against Defendant Michael Cohen is completely without merit and appears to be a desperate attempt by Plaintiff to keep at least a portion of this case out of arbitration.

Plaintiff's claim for defamation arises out of actions that (1) were taken in furtherance of Mr. Cohen's First Amendment rights, and (2) relate to matters of public interest.  Thus, the California anti-SLAPP statute applies, and Plaintiff must prove by admissible evidence that she likely will prevail on her claim.

Plaintiff cannot meet this burden.  The only alleged defamatory statement made by Mr. Cohen, and purportedly about Plaintiff, is: "Just because something isn't true doesn't mean that it can't cause you harm or damage.  I will always protect Mr. Trump."  Plaintiff alleges that this statement is actionable because it implies that she lied about having an intimate relationship with defendant Donald Trump.

However, Plaintiff's defamation claim fails for at least the following reasons:

***First***, Mr. Cohen's statement is **substantially true**.  As shown herein, Plaintiff herself has repeatedly and specifically denied having any intimate relationship with Mr. Trump, on at least three occasions:  at least once in 2011, and at least twice in January 2018 (the month prior to Mr. Cohen's allegedly defamatory statement) in written public statements that she signed.  (Declaration of Michael D. Cohen ("Cohen Decl."), ¶¶ 5-6, Ex. A, 1/10/18 Denial; Ex. B, 1/30/18 Denial.)  Plaintiff later changed her story, and now claims she did have an intimate relationship with Mr. Trump.  Thus, Plaintiff either lied then or is lying now.  Accordingly, even if Mr. Cohen's statement did insinuate that Plaintiff is a liar, she has admitted that she lied, and thus, any such implication by Mr. Cohen would be entirely true.  (*Id.*; Declaration of Brent Blakely ("Blakely Decl."), ¶ 3, Ex. C, Excerpt From *60 Minutes* Interview.)  Stated another way, because Plaintiff has repeatedly lied to the world

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

about whether or not she had an intimate relationship with Mr. Trump, she cannot possibly complain that others, whether Mr. Cohen, or news reporters, or others, call into question Plaintiff's credibility, including any truthful statements that she has made untruthful statements to the American people.

*Second*, Mr. Cohen's statement that untrue things can hurt a person is **opinion**, not a verifiable statement of fact.

*Third*, Mr. Cohen's statement is **hyperbole**.

*Fourth*, Mr. Cohen's statement is **privileged** under the common law right of fair comment and statutory fair reporting privilege.

*Fifth*, Mr. Cohen's statement on its face is not of and concerning Plaintiff – she is not identified in the statement, either expressly or impliedly.

*Sixth*, Plaintiff **suffered no special damages**.  The opposite is true:  Plaintiff herself has boasted that her pay has **quadrupled** because of the publicity of the instant lawsuit and her allegations about Mr. Trump in February 2018 (which allegations are the opposite of her two written denials from January 2018, stating that she did not have an intimate relationship with him).

*Seventh*, Mr. Cohen **did not act with malice** – a necessary element.  Plaintiff has not pled any facts, and will not be able to show any evidence, that Mr. Cohen acted with knowledge that the statement was false or with reckless disregard of its truth.  To the contrary, even if Mr. Cohen's statement did pertain to the falsity of Plaintiff's allegations of an intimate relationship with Mr. Trump, it would have been relying upon Plaintiff's two written statements in January 2018, confirming unequivocally that no such intimate relationship ever existed.  Thus, Mr. Cohen could not possibly possess reckless disregard of the truth when he would have been relying upon Plaintiff's own written statements from the prior month.

California's anti-SLAPP statute was enacted to curb frivolous lawsuits, such as this one, regarding statements made about a matter of public interest, *i.e.*, a strategic lawsuit against public participation.  Plaintiff's claim against Mr. Cohen

falls squarely within California's anti-SLAPP statue.  Thus, for the reasons set forth herein, Plaintiff's defamation claim should be stricken.

Alternatively, if the Court finds that California's anti-SLAPP statute does not apply, it should dismiss Plaintiff's defamation claim because Plaintiff has not pled, and will never be able to plead, a valid claim.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   Summary of relevant allegations

Plaintiff is an adult-film actress and exotic dancer.  Plaintiff alleges in the FAC that she had "an intimate relationship with Mr. Trump" in 2006-2007.  (FAC, ¶ 10, ECF No. 14.)  In October 2016, according to an exclusive news report, Clifford unsuccessfully attempted to sell a story about an alleged one-night-stand with Mr. Trump to tabloid magazines and related outlets for $200,000.  (Blakely Decl., ¶ 4, Ex. D, 3/29/18 *Daily Mail* Article.)

Instead, Plaintiff admittedly signed a written *Confidential Settlement Agreement and Mutual Release* dated October 28, 2016 (the "Settlement Agreement").  (*See* FAC ¶¶ 17-23 and Exs. 1-2, ECF No. 14; Cohen Decl., ¶¶ 2-3.)  In the Settlement Agreement, Clifford promised to arbitrate any dispute that might later arise between her and DD (who Clifford alleges is Mr. Trump).  (FAC Ex. 1 [p. 10].)  Plaintiff also promised not to publicly disclose any Confidential Information (as defined in the Settlement Agreement), including any of DD's "alleged sexual partners, alleged sexual actions or alleged sexual conduct."  (*Id.* pp. 4-8.)

As consideration for Clifford's promises to arbitrate and to maintain confidentiality, EC paid, and Clifford admittedly accepted, the sum of $130,000.  (*See* FAC ¶ 24 and Ex. 1 [p. 4, ¶23], ECF No. 14.)  For the next sixteen months, Clifford did not reject the Settlement Agreement or make any attempt to return the $130,000 that she was paid by EC.  (Cohen Decl., ¶¶ 2-3.)

On January 10, 2018, Plaintiff issued a signed statement denying that she had a sexual and/or romantic affair with Mr. Trump (the "January 10, 2018 Written

Denial"), stating:

> I recently became aware that certain news outlets are alleging that I had a sexual and/or romantic affair with Donald Trump many, many, many years ago.  I am stating with complete clarity that this is absolutely false.  My involvement with Donald Trump was limited to a few public appearances and nothing more.  When I met Donald Trump, he was gracious, professional and a complete gentleman to me and EVERYONE in my presence.  Rumors that I have received hush money from Donald Trump are completely false. If indeed I did have a relationship with Donald Trump, trust me, you wouldn't be reading about it in the news, you would be reading about it in my book.  But the fact of the matter is, these stories are not true.

(Cohen Decl. ¶ 5, Ex. A.)[2]

On January 30, 2018, Clifford issued another signed statement titled "Official Statement of Stormy Daniels," wherein she *again* denied having a sexual relationship with Mr. Trump (the "January 30, 2018 Written Denial") (collectively, with the January 10, 2018 Written Denial, the "Clifford Written Denials"), stating:

> Over the past few weeks I have been asked countless times to comment on reports of an alleged sexual relationship I had with Donald Trump many, many, many years ago. [¶]

---

[2] Plaintiff alleges that, in January 2018, Mr. Cohen, "through intimidation and coercive tactics, forced Ms. Clifford into signing a false statement wherein she stated that reports of her relationship with Mr. Trump were false."  (FAC ¶ 26, ECF No. 14.) However, Plaintiff does not indicate which of her two January 2018 statements is false, and she does not even attempt to address her other denials of the intimate relationship (as documented herein).  Further, Plaintiff's allegation is blatantly false. (Cohen Decl. ¶¶ 5-7.)

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

the fact of the matter is that each party to this alleged affair denied its existence in 2006, 20011 [sic], 2016, 2017 and now again in 2018.  I am not denying this affair because I was paid 'hush money' as has been reported in overseas owned tabloids.  I am denying this affair because it never happened….

(Cohen Decl. ¶ 6, Ex. B.)

The Clifford Written Denials are consistent with an earlier denial made by Plaintiff in October 2011, when she told *E! News* that a story claiming that she and Mr. Trump had had an affair was "bulls--t."  (Blakely Decl. ¶ 7, Ex. G.)

Plaintiff alleges that, on or about February 13, 2018, Mr. Cohen issued a public statement regarding the Settlement Agreement.  (FAC ¶ 27 and Ex. 3.)  As part of that statement, wherein Mr. Cohen confirmed that the payment pursuant to the Settlement Agreement to Plaintiff was lawful, and was not a campaign contribution or a campaign expenditure, Plaintiff alleges that he made following defamatory statement: "Just because something isn't true doesn't mean that it can't cause you harm or damage.  I will always protect Mr. Trump."  (*Id.*)

Clifford subsequently violated the Settlement Agreement by, among other things, filing the Complaint and FAC in this action, and also by disclosing Confidential Information (her allegations) to the news media, including in a nationally televised interview with Anderson Cooper on *60 Minutes*, which reportedly was watched by twenty-two million viewers.  (Blakely Decl., ¶ 11) Clifford further breached the Settlement Agreement by sending her attorney of record in this action, Michael Avenatti, to participate in dozens of interviews on national television programs, wherein he has repeatedly disclosed Confidential Information (allegations).  (*Id.*, ¶ 12, Ex. J, Chart.)

Within days of filing this action, and the massive news coverage that it generated, Clifford made appearances at various adult entertainment clubs, claiming

that her pay has "quadrupled" from the publicity of this lawsuit and her allegations. (Blakely Decl., ¶¶ 5-6, Ex. E, *CNN* article, Ex. F, *Rolling Stone* article.)

### b.   <u>Summary of proceedings</u>

On or about February 22, 2018, EC filed an arbitration proceeding with ADR Services, Inc. ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in the Settlement Agreement.  (Cohen Decl., ¶ 8.)  Upon EC's emergency application for a Temporary Restraining Order, the arbitrator (a retired California Superior Court judge) issued an order prohibiting Clifford from violating the Settlement Agreement by, among other things, disclosing any Confidential Information to the media or in court filings.  *Id.* at ¶ 9.

In response, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of Los Angeles on March 6, 2018, seeking a declaratory judgment that the Settlement Agreement is void, invalid, or unenforceable.  (*See generally* Notice of Removal, Ex. 1, ECF No. 1-1.)

On March 26, 2018, Plaintiff filed the FAC adding several new purported defenses to the arbitration provision and the Second Claim for Defamation against Mr. Cohen.  (ECF No. 14.)[3]

On March 27, 2018, Mr. Cohen's counsel sent a letter to Plaintiff's counsel detailing the basis for the instant motion.  (Blakely Decl., ¶ 8, Ex. H.)

On April 2, 2018, Mr. Cohen's counsel and Plaintiff's counsel participated in the Local Rule 7-3 conference of counsel.  (Blakely Decl., ¶10.)  During the conference, Plaintiff's counsel (incorrectly) asserted that California's anti-SLAPP

---

[3] The FAC came five days after counsel for the parties participated in a Local Rule 7-3 conference of counsel wherein EC's counsel specifically informed counsel for Plaintiff that Plaintiff's defenses to the enforcement of the Settlement Agreement as a whole must be decided by the arbitrator, not the Court.  Further undeterred, on March 27, 2018, Plaintiff filed a Motion for Expedited Jury Trial, Pursuant to Section 4 of the Federal Arbitration Act, and for Limited Expedited Discovery.  (ECF No. 16.)  On March 29, 2018, the Court denied Plaintiff's motion.  (ECF No. 17.)

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

law does not apply because Mr. Cohen was in New York when the allegedly defamatory statement was made. (*Id*.) No agreement to resolve this motion was reached during the conference. (*Id*.)

## III.  **ARGUMENT**

### a.  **California's Anti-SLAPP Statute Applies To Plaintiff's Second Claim For Defamation**

California's anti-SLAPP law provides substantive immunity from suit for claims that interfere with the exercise of speech rights, including the "constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). The California Supreme Court has held that the statute should be interpreted broadly, stating that "whenever possible, [courts] should interpret the First Amendment and section 425.16 in a manner favorable to the exercise of freedom of speech, not its curtailment." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1119 (1999) (internal citation omitted).

"The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (quotation marks omitted). Its "burden-shifting mechanism" weeds out lawsuits "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887-88 (9th Cir. 2016) (internal quotation marks omitted).

Under the anti-SLAPP statute, the court undertakes a two-step process: first, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity"; and second, if the statute applies, the burden shifts to the plaintiff to demonstrate a probability of success on its claims based on competent, admissible evidence. *Equilon Enters., LLC v. Consumer Cause*, 29 Cal.4th 53, 67 (2002); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (stating that "defendant's anti-SLAPP

motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff") (internal citation and quotations omitted).

Although the anti-SLAPP statute falls within California's Code of Civil Procedure, federal courts apply it to dispose of frivolous claims impinging upon free speech rights. *See, e.g.*, *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) (applying California anti-SLAPP statute to libel and false light claims in a diversity action by former pornographic model); *see also Clark v. Hidden Valley Lake Ass'n*, No. 16-CV-02009-SI, 2017 WL 4922375, at *3 (N.D. Cal. Oct. 31, 2017) ("Although it is a state statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court.").

Plaintiff's counsel claims the California anti-SLAPP statute does not apply, and that New York law should apply, because Mr. Cohen was in New York when he made the statement at issue.  However, Plaintiff chose to file her claim against Mr. Cohen in California.  Therefore, the procedural laws of California apply. *See eDrop-Off Chicago LLC v. Burke*, No. CV 12-4095 GW (FMOX), 2013 WL 12131186, at *11-12 (C.D. Cal. Aug. 9, 2013) (holding that, in case brought by Illinois company, "the Court believes the Second Circuit's recent *Liberty Synergistics* [*Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013)] decision persuasively demonstrates that this Court need not in fact proceed down that path [performing a conflict of laws analysis].  Instead, it can conclude that, at least for Plaintiffs' common law claims, there is no prospect that anything other than California's anti-SLAPP statute would apply to the common law claims…. In other words, the Second Circuit effectively reached the conclusion that no choice of law analysis was even necessary with respect to the anti-SLAPP question.").

As the Second Circuit explained in the case relied upon by Judge Wu in *eDrop-Off Chicago LLC v. Burke*, "a federal court exercising diversity jurisdiction generally must apply the choice-of-law rules of the state in which the court sits." *Liberty*

*Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).[4]  The Second Circuit concluded that "[w]e have no reason to doubt that a California state court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it applied New York substantive law to the merits of the malicious prosecution action."  *Id.* at 154.  The Second Circuit held that the same conclusion would apply regardless of whether the anti-SLAPP statute is viewed as procedural or substantive. *See id.* at 154-156; *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F.Supp.3d 982, 1000 (N.D. Cal. 2015) (relying on *Liberty* and applying anti-SLAPP statute to claims brought under California and Indiana law: "Accordingly, the Court agrees with the Second Circuit and holds that California's anti-SLAPP law can be applied to Real Action's counterclaims brought pursuant to Indiana law.").[5]

### b.    Mr. Cohen's satisfaction of the first prong cannot be disputed

The first prong of Section 425.16 is satisfied if the claim arises from acts "in furtherance of [Defendant's] right of petition or free speech," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(3) & (4).

_____

[4] Although the case had been transferred by agreement of the parties to the District Court for the Eastern District of New York, it analyzed the issue as if it were a U.S. District Court sitting in California.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d at 154 ("The Supreme Court has held that, in such circumstances, the governing law 'does not change following a transfer of venue under § 1404(a), regardless of which party initiates the transfer. [citation] Here, that means that the federal court in New York must pretend, for the purpose of determining the applicable state rules of decision, that it is sitting in California.").

[5] As to the substantive law of defamation, Mr. Cohen will default to the laws of California.  *See eDrop-Off Chicago LLC v. Burke*, 2013 WL 12131186 at *11 (stating that, when common law claims are not specifically tied to the common law of any particular jurisdiction, the court is justified in applying California law as the default).

The "public interest" requirement, "like all of section 425.16, is to be construed broadly." *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 808 (2002). "[A]n issue of public interest' . . . is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042 (2008).

An issue of public interest need not "involve questions of civic concern; social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010). Public interest attaches to "popular culture" and "real life events which have caught the popular imagination." *Dora v. Frontline Video, Inc.* 15 Cal.App.4th 536, 542-43 (1993). Further, there is no requirement that a defendant bring an anti-SLAPP motion prove the suit was intended to or actually did chill its speech. *Flatley v. Mauro*, 39 Cal.4th 299, 312 (2006).

*First*, Plaintiff alleges that Mr. Cohen "issued a public statement…with the intent that it be widely disseminated and repeated throughout the United States." (FAC ¶ 27, ECF No. 14; *see also* at ¶ 65 [alleging Mr. Cohen's statement was made with intent to be "disseminated and repeated throughout California and across the country (and the world) on television, on the radio, in newspapers, and on the Internet"]). Therefore, Plaintiff cannot refute that the statements at issue were "made in a place open to the public or a public forum."

*Second*, Plaintiff's FAC admits that the issues raised in Mr. Cohen's alleged statement relate to a public issue or an issue of public interest. The FAC asserts that Ms. Clifford's alleged intimate relationship with Mr. Trump is a matter of "public concern" (FAC, ¶ 52), and that Mr. Cohen allegedly sought to cover up that relationship in order to influence the 2016 U.S. presidential election (FAC, ¶¶ 17, 71). *See Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1451 (1999) ("Section 425.16 applies to suits involving statements made during political campaigns."); *Cabrera v. Alam*, 197 Cal.App.4th 1077 (2011) (holding that statements made at homeowners'

-13-
MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

association's annual meeting and election of board of directors concerned an issue of public interest); *Macias v. Hartwell*, 55 Cal.App.4th 669 (1997) (holding anti-SLAPP statute applies to defamation actions arising out of statements made in a union election); *see also Nelson v. City of Billings*, 2018 MT 36, ¶ 56, 412 P.3d 1058, 1077 (calling the underlying dispute **in this case** "a current national event").

   **Third**, Plaintiff went on *60 Minutes*, garnering a reported twenty-two million viewers, to talk about her allegations related to the instant lawsuit, and Plaintiff's counsel of record, Michael Avenatti, on her behalf, has appeared on no less than thirty-six national television shows, to talk about this case. (Blakely Decl., ¶¶ 11-12, Ex. J) Plaintiff and her counsel cannot realistically contend that Mr. Cohen's alleged statement does not pertain to a matter in which the public has at least some interest.

   **Fourth**, Plaintiff cannot dispute that defamation claims are the type of claims primarily targeted by the anti-SLAPP statute. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1125 (1999) ("The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress.").

   Because Plaintiff's defamation claim satisfies prong one of the anti-SLAPP statute, Plaintiff must prove a probability of success. She cannot.

### c.  Plaintiff cannot prevail on her defamation claim

   "[P]laintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." *Navellier v. Sletten*, 106 Cal.App.4th 763, 768 (2003). Therein, to establish a probability of prevailing on the claim, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment. *Premier Medical Management Systems, Inc. v. California Ins. Guarantee*, 136 Cal.App.4th 464, 476 (2006). The burden is on the plaintiff to produce evidence that would be admissible at trial, and cannot simply rely on her pleadings. *Roberts v. Los Angeles County Bar Assn.*, 105 Cal.App.4th 604, 613-614 (2003). To defeat an

anti-SLAPP motion, a plaintiff must overcome substantive defenses.  *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal.App.4th 435, 447-448 (2011).

Moreover, it is immaterial that the complaint can be amended to state a valid claim.  *Premier Medical Management Systems, Inc.*, 136 Cal.App.4th at 476 ("On review of an anti-SLAPP motion to strike however, the standard is akin to that for summary judgment or judgment on the pleadings.  We must take the complaint as it is.").  If the plaintiff fails to carry that burden, the claim is "subject to be stricken under the statute."  *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002).

1. Plaintiff cannot establish the falsity of Mr. Cohen's statement

"Defamation is 'a false and unprivileged publication that exposes the plaintiff "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." [Citation.]' [Citations.]"  *Nygard*, *supra*, 159 Cal.App.4th at 1047-1048; *see also Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) ("The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' ").

Truth is an absolute defense to defamation.  *Washer v. Bank of America*, 87 Cal.App.2d. 501, 509 (1948); *see also Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 259 (1986) ("'The *sine qua non* of recovery for defamation ... is the existence of a falsehood.' [Citation.]").

To establish the defense of truth—*i.e.,* that the statement is not false—defendants do not have to prove the "literal truth" of the statement at issue.  *Emde v. San Joaquin County Central Labor Council*, 23 Cal.2d 146, 160 (1943).  "[S]o long as the imputation is substantially true so as to justify the 'gist or sting' of the remark" the truth defense is established.  *Id.*; *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 582 (1996).  The U.S. Supreme Court held:

"The common law of libel takes but one approach to the question of falsity, regardless of the form of the

-15-

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

communication.   [Citations.]     It   overlooks   minor
inaccuracies and concentrates upon substantial truth.  As in
other jurisdictions, California law permits the defense of
substantial truth and would absolve a defendant even if [he
or] she cannot 'justify every word of the alleged defamatory
matter; it is sufficient if the substance of the charge be
proved true, irrespective of slight inaccuracy in the details.'
[Citations.] ...  Minor inaccuracies do not amount to falsity
so long as 'the substance, the gist, the sting, of the libelous
charge  be  justified.'  [Citations.]    Put  another  way,  the
statement  is  not  considered  false  unless  it  'would  have  a
different  effect  on  the  mind  of  the  reader  from  that  which
the pleaded truth would have produced.' [Citations.]"

*Masson v. New Yorker Magazine*, 501 U.S. 496, 516–517 (1991).

Here, even assuming Mr. Cohen's statement can be interpreted as insinuating that Plaintiff is a liar, it is substantially true.  As shown herein, Plaintiff herself repeatedly denied—in 2011 and twice in January 2018 (in writing) any intimate relationship with Mr. Trump.  (Cohen Decl., ¶¶ 5-6, Ex. A, Ex. B.)  In February 2018, she then alleged an intimate relationship.  She either lied in 2011 and January 2018, or she lied in February 2018 and is lying now.  Thus, even if Mr. Cohen's statement insinuates that Plaintiff is a liar, it would be a true statement:  Plaintiff admittedly lied and therefore any person, including Mr. Cohen, a news reporter, or anyone else, is free to so state and cannot be sued by Plaintiff for defamation for making such a (truthful) statement.  (Blakely Decl., ¶ 3, Ex. C.)

2.  Mr. Cohen's statement is opinion

"[S]tatements of opinion are constitutionally protected."  *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (2007).  "Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion

may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974).

The question whether challenged statements " 'convey the requisite factual imputation' " is ordinarily a question of law for the court. *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 696 (2012). In making those determinations, courts "apply a totality of the circumstances test pursuant to which we consider both the language of the statement itself and the context in which it is made." *Id.*; *see also Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) ("First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.").

Here, no reasonable reader of Mr. Cohen's statement would perceive it to be an assertion of objective fact. Rather, the statement is phrased more in terms of a hypothetical, merely portraying Mr. Cohen's opinion in a heated debate. *See Baker*, *supra*, 42 Cal.3d at 267 (a television reviewer printed a hypothetical conversation between a station vice president [the plaintiff] and his writer/producer; the court found no reasonable reader would conclude the plaintiff in fact had made the statement attributed to him); *See Nicosia v. De Rooy*, 72 F.Supp.2d 1093, 1101 (N.D. Cal. 1999) (holding that statements made on "personal web-site, and through Internet discussion groups, as part of a heated debate concerning a bitter legal dispute" are less likely viewed as statements of fact); *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th Cir. 1988) (observing that "[e]ven apparent facts must be allowed as opinion when the surrounding circumstances of a statement are those of a heated political debate") (internal quotation marks omitted). Pursuant to the foregoing authorities, the

1   statement by Mr. Cohen is not defamatory as a matter of law, but rather is opinion.

2                     3.  Mr. Cohen's statement is hyperbole

3       " '[R]hetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative

4   expression[s] of ... contempt,' and language used 'in a loose, figurative sense' have

5   all been accorded constitutional protection." *Ferlauto v. Hamsher*, 74 Cal.App.4th

6   1394, 1401 (1999).  "Moreover, in the context of the heated debate on the Internet,

7   readers are more likely to understand accusations of lying as figurative, hyperbolic

8   expressions." *Nicosia v. De Rooy*, *supra*, 72 F.Supp.2d at 1106 (N.D. Cal. 1999).

9   As the Ninth Circuit stated, "the term 'lying' applies to a spectrum of untruths

10  including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception'" and is

11  therefore no more than nonactionable rhetorical hyperbole.  *Underwager v. Channel*

12  *9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995).

13      In *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 280 (2001), the court held that

14  calling someone a liar was not actionable where the statement was made in a heated

15  oral exchange during a chance encounter of opponents in a political campaign.  In

16  those circumstances, the charge was one that "no reasonable person would [have]

17  take[n] literally," and was "the type of loose, figurative, or hyperbolic language that

18  is constitutionally protected." *Id.*  Similarly, in *Standing Committee v. Yagman*, 55

19  F.3d 1430, 1440 (9th Cir. 1995), the Ninth Circuit held that an attorney could not be

20  disciplined for calling a judge "dishonest" because the word was only "one in a

21  string of colorful adjectives" used in a letter that "together ... convey[ed] nothing

22  more substantive than [the attorney's] contempt." *Id.*  In context, the word could not

23  "reasonably be construed as suggesting that [the judge] had committed specific

24  illegal acts," and was thus mere "rhetorical hyperbole, incapable of being proved true

25  or false." *Id.*

26      Here, no reasonable reader of Mr. Cohen's statement would perceive it to be

27  anything other than a figurative, hyperbolic expression.  Pursuant to the foregoing

28  authorities, the statement by Mr. Cohen is not defamatory as a matter of law, but

                                    -18-

rather is hyperbole.

4.  The alleged defamatory statement is privileged

The common law right of fair comment protects "expressions of opinion about public officials, scientists, artists, composers, performers, authors, and other persons who place themselves or their work in the public eye." *Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 726 (1989) (internal quotes omitted).

Additionally, Civil Code section 47 provides that a fair and true report of a public official proceeding, of anything said in the course thereof, or of a verified charge or complaint made by any person to a public official, is privileged.  Cal. Civ. Code § 47(d); *see Crane v. The Arizona Republic*, 972 F.2d 1511, 1518 (9th Cir.1992) (holding that a closed investigation by a congressional committee qualified for protection irrespective of whether it was denominated a "legislative" or "public official" proceeding); *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1051 (1997) (holding that statements related to investigative audit by state auditor were privileged).

Here, Plaintiff's work in the adult entertainment industry puts her in the public eye.  Moreover, Mr. Cohen's statement was related to the FEC complaint and therefore is privileged.

5.  Plaintiff cannot establish that Mr. Cohen's statement is a defamatory statement about Plaintiff

The First Amendment requires that the statement on which a defamation claim is based to be "of and concerning" the plaintiff.  *Isuzu Motors, Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1044 (C.D. Cal. 1998) (quoting and citing *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042 (1986)).  "[T]he plaintiff must effectively plead that **the statement at issue** either expressly mentions him or refers to him by reasonable implication."  *Blatty*, 42 Cal.3d at 1046 (emphasis added).  The statement at issue is to be examined in context, considering the totality of the circumstances.  *Isuzu Motors, Ltd.*, 12 F.Supp.2d at 1044.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

Again, the only statement made by Mr. Cohen alleged to be defamatory are: "Just because something isn't true doesn't mean that it can't cause you harm or damage.  I will always protect Mr. Trump." (FAC ¶ 65, ECF No. 14).  This statement does not expressly or directly refer to Plaintiff.

Plaintiff alleges in conclusory fashion that "[b]oth on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was reasonably understood Mr. Cohen meant to convey that Ms. Clifford is a liar, someone who should not be trusted, and that her claims about her relationship with Mr. Trump is 'something [that] isn't true.'"  (*Id.* ¶ 67.)

The leap from the general statement, that untrue things can hurt people, to the implication or insinuation that Plaintiff is a liar stretches too far.  There is no clear statement impugning Plaintiff, and the Court should not stretch to find one.  *See Smith v. Maldonado*, 72 Cal.App.4th 637, 645-646 (1999), as modified (June 23, 1999) ("Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the 'inducement').").

The entirely of Mr. Cohen's statements, which include the allegedly defamatory statement,[6] are as follows:

> In late January 2018, I received a copy of a complaint filed at the Federal Election Commission (FEC) by Common Cause.  The complaint alleges that I somehow violated campaign finance laws by facilitating an excess, in-kind contribution. The allegations in the complaint are factually unsupported and without legal merit, and my counsel has submitted a response to the FEC.
>
> I am Mr. Trump's longtime special counsel and I have proudly

---

[6] Plaintiff's FAC conveniently omits reference to the beginning statements by Mr. Cohen wherein he discusses the allegations in the FEC complaint.

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

served in that role for more than a decade. In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly. The payment to Ms. Clifford was lawful, and was not a campaign contribution or a campaign expenditure by anyone.

I do not plan to provide any further comment on the FEC matter or regarding Ms. Clifford.

Just because something isn't true doesn't mean that it can't cause you harm or damage. I will always protect Mr. Trump.

(FAC Ex. 3, ECF No. 14.)

Mr. Cohen's statement says "something" and not "someone."  Mr. Cohen does not state that the FEC complaint was filed by Plaintiff or that she had anything to do with it.  Thus, contrary to Plaintiff's self-serving, conclusory allegations, a reasonable person would not interpret Mr. Cohen's allegedly defamatory statement as impugning Plaintiff, but rather referring to the complaint filed with the FEC by Common Cause.

6.  <u>Plaintiff has no special damages</u>

The purportedly libelous statement by Mr. Cohen requires further consideration of extrinsic facts, and therefore does not constitute libel *per se*.  Cal. Civil Code § 45a.  "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."  *Id.*  "'Special damages' means all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other."  Cal. Civ. Code § 48a(d)(2).

Here, Plaintiff has not alleged any special damages.  Plaintiff's only allegation

of damages related to her defamation claim are: "harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life." (FAC ¶ 70, ECF No. 14.) Those damages are merely general damages. *See* Cal. Civ. Code § 48a(d)(1) ("'General damages' means damages for loss of reputation, shame, mortification, and hurt feelings.").

Further, Plaintiff cannot prove that she suffered special damages because the opposite is true: Plaintiff herself has stated that her pay has "quadrupled" from the publicity of the instant lawsuit and her allegations about Mr. Trump (that are the opposite of the Clifford Written Denials.) (Blakely Decl., ¶¶ 5-6, Ex. E, Ex. F.)

### 7. Mr. Cohen did not act with malice

"[W]hen the plaintiff is a public figure, he or she 'must also show the speaker made the objectionable statements with malice in its constitutional sense "'that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" [Citation.]' [Citation.]" *Nygard*, *supra*, 159 Cal.App.4th at 1048; *see also Masson*, *supra*, 501 U.S. at 510 (holding that malice must be shown by clear and convincing evidence).

"Reckless disregard" (1) encompasses a defendant's " 'high degree of awareness of ... probable falsity,' " or " 'serious doubts as to the truth' " of the publication, *Eastwood v. National Enquirer*, 123 F.3d 1249, 1250-51 (9th Cir. 1997) (quoting *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666-667 (1989)); or (2) applies if the defendant had " 'obvious reasons to doubt the veracity' " of its statements, but engaged in " 'purposeful avoidance of the truth.' " *Eastwood*, 123 F.3d at 1251 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Harte–Hanks*, 491 U.S. at 692).

Plaintiff's FAC has done nothing more than parrot the technical, legal language of malice. (*See* FAC ¶ 69, ECF No. 14: "Mr. Cohen made the statement knowing it was false or had serious doubts about the truth of the statements.") The FAC contains no factual allegations that Mr. Cohen acted with malice. Plaintiff also cannot provide

any admissible evidence to show Mr. Cohen acted with malice, because if his statement in February 2018 pertained to Plaintiff and her false accusations against Mr. Trump, he would have relying upon the January 2018 Clifford Written Denials wherein she professed the exact opposite of her current allegations in two written statements put out to the world.  Under these facts, Mr. Cohen cannot possible be said to have acted with malice (reckless disregard for the truth) in making the statement at issue—Plaintiff herself is responsible for any confusion that Mr. Cohen or anyone else may have had regarding the truth or falsity of her multiple conflicting statements on the issue of her alleged relationship with Mr. Trump.

### d.   <u>Alternatively, The Court Should Dismiss The Defamation Claim</u>

The Court may dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P., Rule 12(b)(6).  In analyzing a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff's claim meets the plausibility threshold when he "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted).

If the Court finds that California's anti-SLAPP statute does not somehow apply, it should dismiss Plaintiff's Second Claim for Defamation because Plaintiff has not pled, and will never be able to plead, a valid claim.  For the reasons stated herein, Plaintiff simply has no viable claim against Mr. Cohen as a matter of law.

Further, because any amendment would be futile, the Court should dismiss the defamation claim with prejudice.  *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

//

//

//

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should strike the Second Claim for Defamation in the FAC or, alternatively, dismiss the claim with prejudice.

Dated: April 9, 2018                    BLAKELY LAW GROUP


                                        By:   */s/ Brent H. Blakely*
                                              BRENT H. BLAKELY
                                              ***Attorneys for Defendants***
                                              ***ESSENTIAL CONSULTANTS, LLC and***
                                              ***MICHAEL COHEN***

MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT