| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |

**CASE NO.:** CV 18-06893 SJO (FFMx)     **DATE:** October 15, 2018

**TITLE:**     Stephanie Clifford v. Donald J. Trump

========================================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                   Not Present
Courtroom Clerk                                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                       Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO DISMISS/STRIKE COMPLAINT** [Docket No. 28]**; ORDER DENYING AS MOOT DEFENDANT DONALD J. TRUMP'S ALTERNATIVE MOTION TO DISMISS COMPLAINT** [Docket No. 28]

This matter is before the Court on Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff Stephanie Clifford's Complaint Pursuant To Anti-SLAPP Statute ("Special Motion") Or Alternatively Defendant's Motion To Dismiss Complaint Pursuant To FRCP 12(b)(6) ("Motion"), filed August 27, 2018. Plaintiff opposed the Special Motion and the Motion ("Opposition") on September 3, 2018. Plaintiff replied ("Reply") on September 10, 2018. The Court held argument on the Special Motion and the Motion on September 24, 2018. (*See* Transcript of Proceedings, ECF No. 34.) For the following reasons, the Court **GRANTS** Defendant's Special Motion To Dismiss/Strike. The Court **DENIES AS MOOT** Defendant's alternative Motion To Dismiss.

I.     FACTUAL AND PROCEDURAL BACKGROUND

   A.     Plaintiff's Allegations In The Operative Complaint

Plaintiff Stephanie Clifford filed the operative Complaint against Defendant Donald J. Trump on April 30, 2018 in the Southern District of New York. In the Complaint, Ms. Clifford alleges as follows.

Ms. Clifford began an intimate relationship with Mr. Trump in the summer of 2006. (Compl.¶ 5, ECF No. 1.) In May of 2011, she agreed to cooperate with *In Touch Magazine* in connection with an article about her relationship with Mr. Trump. (Compl. ¶ 6.) She agreed to speak to the magazine after her ex-husband approached the magazine without her approval. (Compl. ¶ 6.) A few weeks after agreeing to speak to the magazine, a man approached and threatened Ms. Clifford in Las Vegas, Nevada. (Compl.¶ 7.) The man purportedly approached Ms. Clifford, threatened Ms. Clifford's daughter, and told her to "Leave Trump alone. Forget the story." (Compl. ¶¶ 8-9.)

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

CASE NO.:   <u>CV 18-06893 SJO (FFMx)</u>           DATE:  <u>October 15, 2018</u>

After Mr. Trump was elected President of the United States on November 8, 2016, Ms. Clifford worked with a sketch artist to render a sketch of the person who had purportedly threatened her in 2011.  (Compl. ¶ 14.)  Ms. Clifford released the sketch publicly on April 17, 2018.  (Compl. ¶ 14.)

The next day, on April 18, 2018, Mr. Trump, from his personal Twitter account (@RealDonaldTrump), posted a purportedly false statement regarding Ms. Clifford, the sketch, and Ms. Clifford's account of the threatening incident that took place in 2011.  (Compl.¶ 15.)  Mr. Trump's tweet read as follows: "A sketch years later about a nonexistent man.  A total con job, playing the Fake News Media for Fools (but they know it)!"  (Compl.¶ 15.)  Mr. Trump posted this tweet in response to another tweet posted by an account named DeplorablyScottish (@ShennaFoxMusic), which showed side-by-side images of the sketch released by Ms. Clifford and a picture of Ms. Clifford and her husband.  (Compl. ¶ 16.)

Based on this tweet, Ms. Clifford brings the instant lawsuit against Mr. Trump for defamation.  (*See* Compl. ¶¶ 21-38.)  She argues that Mr. Trump's tweet attacks the veracity of her account of the threatening incident that took place in 2011.  (Compl.¶ 17.)  She also contends that Mr. Trump's tweet suggests that she is falsely accusing an individual of committing a crime against her. (Compl. ¶ 17.)  According to Plaintiff, "Mr. Trump meant to convey that Ms. Clifford is a liar, someone who should not be trusted, that her claims about the threatening encounter are false, and that she was falsely accusing the individual depicted in the sketch of committing a crime, where no crime had been committed."  (Compl. ¶ 28.)  As a result, she contends that Mr. Trump's tweet was false and defamatory, and that the tweet was defamation *per se* because it charged her with committing a serious crime.  (Compl. ¶¶ 17, 19.)

Ms. Clifford goes on to claim that Mr. Trump acted with actual malice in issuing the tweet because he knew the falsity of his tweet.  This is because, according to Ms. Clifford, the person who threatened her in 2011 acted at the direction of Mr. Trump or Mr. Trump's attorney, Michael Cohen.  (Compl. ¶ 31.)  In the alternative, she contends that Mr. Trump acted with reckless disregard for the truth or falsity of his tweet because he had no way of knowing whether the 2011 incident had occurred.  (Compl. ¶ 32.)

Finally, Ms. Clifford contends that she suffered damages as a result of the tweet because Mr. Trump's statement exposed her to "hatred, contempt, ridicule, and shame, and discouraged others from associating or dealing with her."  (Compl.¶ 33.)  Therefore, she "has suffered damages in an amount to be proven at trial, including but not limited to, harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life."  (Compl. ¶ 34.)  Mr Clifford claims that she has retained the services of professional bodyguards and other protective services because of the threats that she has received.  (Compl. ¶ 36.)

      B.    <u>Procedural History</u>

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority \_\_\_\_\_
Send \_\_\_\_\_
Enter \_\_\_\_\_
Closed \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>   **DATE:** <u>October 15, 2018</u>

Ms. Clifford first brought this lawsuit in the United States District Court for the Southern District of New York. She initially contended that venue was appropriate in the Southern District of New York because it is the district in which Mr. Trump resides. (Compl. ¶ 4.)

On July 23, 2018, Mr. Trump filed a motion to transfer the case from the Southern District of New York to this Court pursuant to 28 U.S.C. § 1404(a). (*See* Motion To Transfer, ECF No. 11.) Defendant argued in part that this lawsuit relates to other litigation before this Court involving Plaintiff and Defendant concerning the enforceability of a non-disclosure agreement. (*See* Memorandum In Support of Motion To Transfer at 1, ECF No. 11-1.)

Plaintiff initially opposed the transfer, arguing in part that the instant action was not closely related to the other litigation before this Court. (*See* Response In Opposition To Motion To Transfer, ECF No. 13 at 1.) After a meet and confer process, Plaintiff and Defendant jointly agreed to transfer Plaintiff's defamation case to this Court. On August 8, 2018, the district court in the Southern District of New York granted Plaintiff and Defendant's joint stipulation to transfer. (*See* ECF No. 17, ECF No. 18.)

On August 27, 2018, Defendant brought the instant Special Motion To Dismiss/Strike Plaintiff's Complaint. In the Special Motion, Defendant contends that Ms. Clifford's Complaint fails to state a cause of action for defamation because (1) Mr. Trump's tweet is a protected opinion, (2) Ms. Clifford did not suffer damages as a result of the tweet, and (3) Mr. Trump did not act with malice or reckless disregard for the truth when he issued the tweet. (*See* Special Motion at 1.) Defendant argues that Ms. Clifford's lawsuit is a Strategic Lawsuit Against Public Participation ("SLAPP"). (*See id.*)

The Court held argument on September 24, 2018 and subsequently submitted this matter.

II.  ANALYSIS

   A.  Choice of Law

Before addressing the substance of Defendant's Special Motion To Dismiss/Strike, this Court must decide which state's substantive law governs its analysis. Applying New York choice-of-law principles, Defendant argues that the Texas Citizens Participation Act ("TCPA" or "Texas Anti-SLAPP statute") governs this case. (*See* Special Motion at 7-9.) Plaintiff disagrees, arguing that New York's anti-SLAPP law governs this dispute because Mr. Trump is a citizen of the state of New York. (*See* Opposition at 8.)

The Court applies the Texas anti-SLAPP statute because Ms. Clifford brought this diversity action in the Southern District of New York, and a state court in New York would apply the TCPA to this case.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: CV 18-06893 SJO (FFMx)          DATE: October 15, 2018

1. New York Choice-of-Law Provisions Govern This Court's Analysis of Defendant's Special Motion.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In *Van Dusen v. Barrack*, the United States Supreme Court held that where a defendant seeks to transfer an action to another district court in the country, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." 376 U.S. 612, 639 (1964). In *Ferens v. John Deere Company*, the Supreme Court extended this rule to those cases where a plaintiff initiates a transfer. 494 U.S. 516, 525 (1990).

Ms. Clifford, a citizen of the state of Texas, brings this defamation action against Mr. Trump, a citizen of the state of New York.[1] This Court has diversity jurisdiction under 28 U.S.C. Section 1332. The instant case is a diversity action transferred to this Court from the Southern District of New York with the consent of both parties. Therefore, the Court applies New York choice-of-law principles to determine which forum's substantive law governs the Court's analysis of the Special Motion To Dismiss/Strike.

2. Under New York Choice Of Law Principles, Texas Law Applies To Plaintiff's Allegations of Defamation and the Special Motion To Dismiss/Strike.

Under New York's choice-of-law principles, the law of the situs of the injury generally applies to a tort lawsuit involving diverse parties. *See Stoyanovskiy v. Amerada Hess Corp.*, 286 A.D.2d 727, 728 (2001). However, in this day and age, with the publication of statements in online fora, the tort of defamation often involves a plaintiff injured in several jurisdictions. For multistate defamation actions, where the situs of the injury may be in multiple jurisdictions, "New York applies the law of the state with the most significant interest in litigation," which generally is the state where a plaintiff is domiciled. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d. Cir. 1999). Plaintiff alleges in the Complaint that Ms. Clifford is a "resident of the State of Texas," (Compl. ¶ 1), and conceded during argument on September 24, 2018 that Ms. Clifford is domiciled in Texas. (*See* Transcript of Proceedings at 11: 7.) Therefore, this Court applies Texas law to Plaintiff's allegations of defamation and Defendant's Special Motion To Dismiss/Strike.[2]

---

[1] Defendant Mr. Trump argues that he is a citizen of Washington D.C. because he resides at the White House, not in New York city. For purposes of the Court's choice-of-law analysis here, the Court is required to apply Texas law to Ms. Clifford's defamation action, whether Mr. Trump is a citizen of New York or Washington D.C.

[2] In analyzing Defendant's Special Motion To Dismiss/Strike under the TCPA, the Court borrows from courts' analysis of California's anti-SLAPP statute. "The California

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: <u>CV 18-06893 SJO (FFMx)</u>       DATE: <u>October 15, 2018</u>

The Restatement (Second) Conflicts of Law supports this Court's holding that Texas law applies. In defamation lawsuits involving "multistate communication," a court must apply "the local law of the state where the plaintiff has suffered the greatest injury by reason of [her] loss of reputation," which "will usually be the state of the plaintiff's domicil if the matter complained of has there been published."  Restatement (Second) of Conflict of Laws § 150 (1971).

      B.    <u>Defendant's Special Motion To Strike/Dismiss Is Analogous To A Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6).</u>

Having concluded that the TCPA applies to the Complaint and the Special Motion, the Court next determines if it is appropriate to adjudicate the Special Motion at the present stage of litigation before any discovery has taken place.  Plaintiff argues that Mr. Trump's Special Motion should be adjudicated as a motion for summary judgment.  (*See* Opposition at 5-6; Transcript of Proceedings at 15:3-16:6, 17:5-24.)  If this were the case, the parties would be permitted to pursue discovery prior to a ruling on the Special Motion.  Plaintiff's argument, however, has no merit.

For purposes of the Federal Rules of Civil Procedure, a motion brought on anti-SLAPP grounds can either be analogous to a motion to dismiss or a motion for summary judgment.  If a defendant moves to strike/dismiss based on purely legal arguments and the fact that a complaint does not allege sufficient facts to support its stated causes of action, this Court analyzes the motion under the standards set out in Federal Rule of Civil Procedure 8 and 12(b)(6).  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018).  If a defendant makes a factual challenge to a complaint, including by providing alternate facts to challenge the allegations in a complaint, this Court treats the motion to strike/dismiss as a motion for summary judgment.  *See id.*

Here, Mr. Trump's Special Motion is analogous to a motion to dismiss because it makes three main arguments, all of which assume the truth of the allegations in the Complaint and ask this Court to dismiss Plaintiff's action because these facts do not sustain a cause of action for defamation.  First, Defendant argues that although Plaintiff alleges that the President made a defamatory statement in a tweet,[3] the statement, as alleged in the Complaint, is a constitutionally-

---

statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA."  *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

[3] For purposes of arguing the Motion To Strike/Dismiss, Defendant accepts that Mr. Trump sent the tweet stating "A sketch years later about a nonexistent man.  A total con job, playing the Fake News Media for Fools (but they know it)!" Defendant assumes that Mr. Trump issued this tweet and argues that Plaintiff cannot sue Defendant for defamation

Case 2:18-cv-06893-SJO-FFM Document 36 Filed 10/15/18 Page 6 of 14 Page ID #:1028

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 18-06893 SJO (FFMx)    DATE: October 15, 2018

protected opinion. (*See* Special Motion at 9-10.) Second, Defendant argues that Plaintiff has not sufficiently alleged damages as a result of Mr. Trump's purported defamation because the damages that she suffered could have arisen from an alternate cause. (*See* Special Motion at 11-14.) Third, Defendant argues that Plaintiff has not alleged sufficient facts to show that Mr. Trump acted with actual malice or reckless disregard for the truth, aside from Plaintiff's conclusory statements that Mr. Trump had knowledge of the threat that Plaintiff received in 2011. (*See* Special Motion at 14-16.) Each of these arguments largely assume the truth of the Complaint, but nevertheless make the point that the Complaint does not allege sufficient facts to meet each prong of the defamation standard.

In addition to these three arguments, Defendant's Special Motion sets forth some facts beyond those alleged in the Complaint.[4] For example, Defendant argues that Ms. Clifford did not sufficiently allege that she suffered damages because, in fact, she benefitted economically from Mr. Trump's defamatory statement. To prove this, Defendant points to evidence outside the Complaint of Ms. Clifford's economic well-being. (*See* Special Motion at 13-14.) In making its ruling, the Court takes no position as to any argument concerning the purported benefit that Ms. Clifford received as a result of the tweet in question. The remainder of Defendant's arguments are properly brought at the present stage of litigation.

      C.    <u>Defendant's Special Motion To Dismiss/Strike Is Timely</u>.

The next threshold inquiry is whether the Special Motion is timely. Plaintiff contends that it is not, because Mr. Trump should have brought the Special Motion within 60 days of May 23, 2018, as required by the TCPA. This is the date on which Mr. Trump waived service of Ms. Clifford's defamation action. (*See* Opposition at 7.)

The Court holds that although Mr. Trump may not have complied with the filing deadline, there is good cause to permit the Special Motion to proceed given the procedural history of this case, which includes a transfer to this Court from a district court in the Southern District of New York.

---

based on the content of the tweet.

[4] Plaintiff and Defendant have filed evidentiary objections to several of the factual submissions. In doing so, both parties correctly point out that this Court should not take into account facts outside the Complaint in deciding this Special Motion. Aside from otherwise judicially-noticeable facts, the Court does not take into account facts outside the Complaint in reaching its final holding that Mr. Trump's tweet is a non-actionable opinion that cannot be the subject of a defamation claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 18-06893 SJO (FFMx)</u>       DATE: <u>October 15, 2018</u>

Plaintiff's argument concerning the applicability of the 60-day deadline in federal court raises an unresolved issue of law. Like the TCPA, California's anti-SLAPP statute contains a 60-day requirement. No court in this Circuit, or the Fifth Circuit, has ruled on whether an anti-SLAPP motion, brought as a motion to dismiss as opposed to a motion for summary judgment, is subject to the 60-day deadline. To be sure, federal courts have held that the 60-day deadline in California's anti-SLAPP statute does not apply to anti-SLAPP motions that are analogous to motions for summary judgment. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citing *Rogers*, 57 F. Supp. 2d at 982). The 60-day deadline is a procedural rule under the *Erie* doctrine that conflicts with Federal Rule of Civil Procedure 56. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016). This is because the 60-day deadline seeks to limit discovery and allow for anti-SLAPP motions at an early stage of litigation, while Rule 56 seeks to promote discovery, requiring motions for summary judgment after litigation has proceeded for some time. *See id.* As analyzed above, however, Mr. Trump's anti-SLAPP motion is analogous to a motion to dismiss, not a motion for summary judgment. The discovery rationale that underpins a case like *Metabolife International* does not exist here.

Nevertheless, the Court does not need to address the applicability of the 60-day deadline to the Special Motion because there is "good cause" to permit it to proceed. *See Schimmel v. McGregor*, 438 S.W.3d 847, 856 (Tex. App. 2014) (holding that the TCPA allows a court to waive the motion filing deadline where "good cause" exists). Ms. Clifford initially filed her defamation action in the Southern District of New York, and there was some dispute as to whether that district was the appropriate venue for this case. After briefing on the matter, Ms. Clifford's defamation action was transferred to this Court on August 8, 2018. After the transfer, Defendant did not delay bringing this Special Motion, filing it on August 27, 2018, nineteen days after the transfer and well-within the 21-day deadline in which a defendant must normally file a responsive pleading after a plaintiff files a complaint. *See* Fed. Rule Civ. P. Rule 12(a). Importantly, the instant case did not proceed in any material respect after Plaintiff's initial filing of the Complaint in April 2018. This limits the prejudice that Plaintiff may face from an untimely anti-SLAPP motion. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1100 (C.D. Cal. 2004). Defendant's filing of this Special Motion after the 60-day deadline also does not frustrate the TCPA's purpose of dismissing improper lawsuits at an early stage of litigation. *See id.* (holding that one purpose of California's 60-day deadline for anti-SLAPP motions was to dismiss lawsuits early in litigation). Accordingly, "good cause" exists to allow Defendant to proceed with this Special Motion, even if the filing did not comply with the TCPA's 60-day deadline.

  D. <u>Standard Under The TCPA</u>

Having determined (1) that the TCPA applies to the Special Motion and Ms. Clifford's defamation action, (2) that this Court treats the Special Motion as analogous to a motion to dismiss under

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  <u>CV 18-06893 SJO (FFMx)</u>     DATE:  <u>October 15, 2018</u>

Federal Rule of Civil Procedure 12(b)(6), and (3) that there is "good cause" to permit the Special Motion after the expiration of 60 days from the initial filing of the Complaint, the Court next applies the substantive requirements of the TCPA to the Special Motion and the allegations in the Complaint.

Texas offers robust protection for the freedom of speech. The TCPA, like analogous anti-SLAPP statutes in other jurisdictions including California, seeks to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002.

Analysis of an anti-SLAPP motion under the TCPA proceeds in three steps. First, a defendant must show, by a preponderance of the evidence, that a plaintiff's complaint is based on, relates to, or is in response to the defendant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b); *In re Lipsky*, 460 S.W.3d 579, 586 (Texas 2015). The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). A communication includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" includes an issue related to: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). Second, the burden then shifts to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Third, the defendant can still prevail under the TCPA if he/she "establishes by a preponderance of the evidence each essential element of a valid defense" to the plaintiff's claim. *Id.* § 27.005(d). *See also ExxonMobil Pipeline Company v. Coleman*, 512 S.W.3d 895, 898-99 (summarizing the standard under the TCPA).

Here, Defendant's Special Motion does not allege any defenses to plaintiff's defamation claim. The Court addresses the other two steps of the TCPA analysis in turn.

        1.    <u>Plaintiff's Defamation Lawsuit Relates To Defendant's Right of Free Speech.</u>

There is little dispute that Ms. Clifford's Complaint relates to Mr. Trump's exercise of his right of free speech on an issue of public concern. In reaching this conclusion, the Court is mindful of the fact that Texas "look[s] to the entire communication as well as the context of the communication in which the allegedly defamatory statement is made." *Cruz v. Van Sickle*, 452 S.W.3d 503, 514 (Tex. App. 2014). Here, the statement at issue is Mr. Trump's reaction to Plaintiff's release of the

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  \_\_\_\_\_
Send      \_\_\_\_\_
Enter     \_\_\_\_\_
Closed    \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

CASE NO.:  <u>CV 18-06893 SJO (FFMx)</u>         DATE:  <u>October 15, 2018</u>

sketch of a person who threatened Plaintiff in connection with a purported affair that she had with Mr. Trump.  Although Mr. Trump was not the President at the time of the purported affair or the purported threat that Plaintiff received, Mr. Trump is now the President and was the President at the time of the tweet.  Moreover, Mr. Trump issued the tweet in the context of Plaintiff publicly styling herself as an adversary to the President, including in filings before this Court.  (*See, e.g.*, First Amended Complaint in *Stephanie Clifford v. Donald Trump et al.* at ¶ 17, No. 2:18-cv-02217-SJO-FFM (arguing that "Mr. Trump, with the assistance of his attorney Mr. Cohen, aggressively sought to silence Ms. Clifford as part of an effort to avoid her telling the truth, thus helping to ensure he won the Presidential Election").)  The tweet in question, therefore, relates to an issue involving a public official on a matter of public concern.  *See id.* (holding that the TCPA applies to a defamation claim involving "a public official or public figure," including a candidate for judicial office).  Accordingly, the TCPA applies to the Special Motion To Dismiss/Strike.

> 2. <u>Plaintiff Fails To Establish a Prima Facie Case For Defamation.</u>

The Court next analyzes whether Plaintiff has established a prima facie case for defamation.  To prevail on a cause of action for defamation under Texas law, Plaintiff must allege that: (1) Mr. Trump published a false statement; (2) that defamed Ms. Clifford; (3) with the requisite degree of fault regarding the truth of the statement (negligence if Ms. Clifford is a private individual or malice if Ms. Clifford is a public individual); and (4) damages (unless the statement constitutes defamation per se).  *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).

> a. <u>False Statement</u>

In the Special Motion, Mr. Trump argues that the tweet at issue is a non-actionable opinion, not a statement of fact about Ms. Clifford.  (Special Motion at 9.)  "Expressions of opinion may be derogatory and disparaging; nevertheless they are protected by the First Amendment of the United States Constitution and by article I, section 8 of the Texas Constitution."  *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App. 2006).

The Court agrees with Mr. Trump's argument because the tweet in question constitutes "rhetorical hyperbole" normally associated with politics and public discourse in the United States.  The First Amendment protects this type of rhetorical statement.

"It is well settled that 'the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTROK Television, Inc.*, 38 S.W. 3d 103, 115 (Tex. 2000)).  To assess whether a statement is "rhetorical hyperbole," this Court looks to the statement "as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it."

JS-6                  UNITED STATES DISTRICT COURT        Priority     _____
                         CENTRAL DISTRICT OF CALIFORNIA        Send        _____
                                                         Enter         _____
                                CIVIL MINUTES - GENERAL           Closed        _____
                                                                            JS-5/JS-6    _____
                                                                            Scan Only    _____

**CASE NO.:**   <u>CV 18-06893 SJO (FFMx)</u>         **DATE:**  <u>October 15, 2018</u>

*Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App. 2015).  Because Mr. Trump's tweet involves a matter of public concern, including purported acts committed by the now President of the United States, the Court applies the following three principles to determine if the tweet is actionable for defamation (the "*Bentley/Milkovich*" analysis). *See Bentley*, 94 S.W.3d at 580.  *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (setting out the standard summarized below).

    1.     A statement on matters of public concern must be provable as false before there can be liability for defamation.

    2.     The United States Constitution protects statements that cannot reasonably be interpreted as stating actual facts about an individual made in debate over public matters in order to provide assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of the United States.

    3.     Where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth, and where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault.

Mr. Trump's tweet stated as follows: "A sketch years later about a nonexistent man.  A total con job, playing the Fake News Media for Fools (but they know it)!"  When the first step in the *Bentley/Milkovich* analysis is applied to this tweet, Plaintiff correctly points out that Mr. Trump's tweet contains two verifiably true/false statements: (1) that the man who threatened Ms. Clifford in 2011 does not exist and therefore, that Plaintiff is lying about her encounter with him; and (2) that Ms. Clifford is engaging in a "con job" or is lying to Mr. Trump, the public, and the media about the threat (and by implication her affair with Mr. Trump).  If the man who threatened Ms. Clifford in 2011 does exist, or if Ms. Clifford is not lying to Mr. Trump, the public, and the media about the threats that she received or her affair with Mr. Trump, Mr. Trump's tweet would be verifiable as false.

Plaintiff's argument crumbles when it comes to the second step in the *Bentley/Milkovich* analysis. Mr. Trump's tweet constitutes "rhetorical hyperbole," which is "'extravagant exaggeration [that is] employed for rhetorical effect.'" *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex. App. 2015) (quoting *Am. Broad. Cos. v. Gill,* 6 S.W.3d 19, 30 (Tex. App. 1999)).  Specifically, Mr. Trump's tweet displays an incredulous tone, suggesting that the content of his tweet was not meant to be understood as

Case 2:18-cv-06893-SJO-FFM Document 36 Filed 10/15/18 Page 11 of 14 Page ID #:1033

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: CV 18-06893 SJO (FFMx)        DATE: October 15, 2018

a literal statement about Plaintiff. Instead, Mr. Trump sought to use language to challenge Plaintiff's account of her affair and the threat that she purportedly received in 2011. As the United States Supreme Court has held, a published statement that is "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage" cannot constitute a defamatory statement. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 32 (1990).

Mr. Trump also issued the tweet in the context of Plaintiff presenting herself as a political adversary to the President. *Rehak Creative Services, Inc. v. Witt* is instructive in this regard. *See* 404 S.W.3d 716 (Tex. App. 2013), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). In *Rehak*, an advertising agency that worked with Jim Murphy, a state representative serving in the Texas House of Representatives, sued Ann Witt, a candidate who ran against Murphy in the Republican primary. *Id.* at 722. The advertising agency sued Witt for defamation on the grounds that Witt's website contained a series of defamatory statements against Murphy, including Witt's accusations that Murphy "sidestepped" the Texas Constitution by serving as a legislator while receiving payment as a consultant. *Id.* at 720. Witt's website also compared Murphy to a character in the book and musical, *How to Succeed in Business Without Really Trying*, accused Murphy of "ripping off taxpayers," and stated that among Jim Murphy's "sleazy steps" to success included "STEP 6: Reward your supporters with government contracts." *Id.* at 721. The Texas Court of Appeals held that none of the statements on Witt's website constituted defamation in large part because Witt's "website's tone" and the "campaign context" of the statements suggested that the statements constituted "rhetorical hyperbole" that was part of politics. *Id.* at 730. The website "demonstrate[d] an attempt to deliver a political message about the use of public money in an exaggerated, provocative and amusing way," expression that lies at "the heart of the First Amendment." *Id.* at 730. *See also Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App. 2015) (collecting cases on "rhetorical hyperbole" in the political context).

The instant case is similar to *Rehak* in that Mr. Trump, as President, made a hyperbolic statement against a person who has sought to publicly present herself as a political adversary to him. In filings before this Court, Ms. Clifford has challenged the legitimacy of Mr. Trump's victory in the 2016 Presidential election. Mr. Trump's tweet served as a public rejoinder to allegations made by Plaintiff. If this Court were to prevent Mr. Trump from engaging in this type of "rhetorical hyperbole" against a political adversary, it would significantly hamper the office of the President. Any strongly-worded response by a president to another politician or public figure could constitute an action for defamation. This would deprive this country of the "discourse" common to the political process. In short, should Plaintiff publicly voice her opinions about Mr. Trump, Mr. Trump is entitled to publicly voice non-actionable opinions about Plaintiff. To allow Plaintiff to proceed with her defamation action would, in effect, permit Plaintiff to make public allegations against the President without giving him the opportunity to respond. Such a holding would violate the First Amendment.

JS-6                     UNITED STATES DISTRICT COURT                    Priority
                          CENTRAL DISTRICT OF CALIFORNIA                 Send
                                                                          Enter
                                                                          Closed
                              CIVIL MINUTES - GENERAL                     JS-5/JS-6
                                                                          Scan Only

CASE NO.: CV 18-06893 SJO (FFMx)          DATE: October 15, 2018

Mr. Trump also made a one-off rhetorical comment, not a sustained attack on the veracity of Plaintiff's claims. This distinguishes the instant case from other cases where courts have determined that public statements constituted defamation. In *Bentley*, for example, the host of a call-in talk show on a public-access channel repeatedly accused a judge of being corrupt. *See Bentley*, 94 S.W.3d at 584. When confronted about the veracity of the allegations, the talk show host doubled down, falsely claiming that he had proof of the judge's corruption, including public records and records of conversations with courthouse employees. *See id.* The Texas Supreme Court held that while a "single, excited reference to [the judge's corruption] might be taken to be rhetorical hyperbole . . . [the host's] characterization of [the judge's] conduct as criminal is only part of [the host's] efforts over many months to prove [the judge] corrupt." *Id.* at 581. Here, Mr. Trump's tweet falls far more in line with a "single, excited reference." Unlike the defendant in *Bentley*, Mr. Trump provided no support for his views in the tweet nor did not he repeat the allegations in the tweet.

Accordingly, the Court grants the Special Motion because Mr. Trump's statement constituted "rhetorical hyperbole" that is protected by the First Amendment.

> b.  Actual Malice or Reckless Disregard For The Truth

Having determined that Mr. Trump's tweet is non-actionable, the Court's analysis of the Special Motion ends. In the interest of completeness, the Court briefly addresses a few of the other arguments made by the parties in the briefing.

The parties spend some time debating whether Mr. Trump acted with "actual malice" or "reckless disregard for the truth" in issuing the tweet in question. Assuming that Plaintiff is a "public figure," Plaintiff would have to show that Defendant acted with "actual malice" or "reckless disregard for the truth" to prevail on a cause of action for defamation. *See Bentley*, 94 S.W.3d at 580.

Plaintiff's focus on the actual malice argument comes as no surprise because Plaintiff stands on thin ice in asserting that Mr. Trump's tweet is an actionable statement. Instead, Plaintiff seeks to use her defamation action to engage in a "fishing expedition" concerning the conclusory allegations in the Complaint. The Court will not permit Plaintiff to exploit the legal process in this way.

Specifically, Plaintiff contends that she needs to conduct discovery to determine if Mr. Trump was involved in the 2011 threat against her or if he purposefully avoided learning about the 2011 threat. *See* Opposition at 11. Plaintiff believes that discovery pertaining to these issues will help her to establish that Mr. Trump acted with actual malice or reckless disregard for the truth (i.e. if Ms. Clifford can provide evidence showing that Mr. Trump knew of the 2011 threat, then he tweeted a lie when he challenged Plaintiff's reporting of the 2011 threat). (*See* Transcript of Proceedings

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |
|---|---|---|

**CASE NO.:** CV 18-06893 SJO (FFMx)      **DATE:** October 15, 2018

---

at 29:23-30:4.) However, Plaintiff's reasoning is entirely circular. She assumes that Mr. Trump knew of the 2011 threat, argues in her Complaint and her briefing that Mr. Trump knew of the 2011 threat, and then asks this Court for discovery to prove that Mr. Trump knew of the 2011 threat. In doing so, Plaintiff does not allege facts establishing how Mr. Trump knew or did not know about the 2011 threat in the first place. Plaintiff must do this to sustain a cause of action for defamation.

        c.     <u>Damages</u>

Defendant's Special Motion also alleges that Plaintiff has not adequately pleaded damages. (Special Motion at 11-14.) The Court declines to address this. As with the issue of actual malice, the Court does not need to reach the damages question because it grants the Special Motion on other grounds.

    D.     <u>Leave To Amend</u>

Having granted the Special Motion, the Court next determines if it should grant Plaintiff leave to amend the Complaint. While recognizing that courts in this Circuit sometimes do grant plaintiffs the opportunity to amend a complaint before granting an anti-SLAPP motion to strike, the Court holds that Ms. Clifford should not have this opportunity because any amendment would be futile. *See Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (denying leave to amend on futility grounds).

The Court holds that Mr. Trump's tweet is "rhetorical hyperbole" and is protected by the First Amendment. Plaintiff cannot amend the Complaint in a way that challenges this holding. During argument on this matter, Plaintiff suggested that she could amend her Complaint to "shore up the malice allegations" and to "provide context for the statement to show that, in fact, it was not political nature at the time it was made." (Transcript of Proceedings at 44: 8-13.) The former amendments are futile because this Court rules that Mr. Trump's tweet is protected by the First Amendment. The issue of malice is irrelevant to this holding. The latter amendments are futile because there is no way for Plaintiff to amend the Complaint to transform the tweet from "rhetorical hyperbole" into an actionable statement. *See Gardner*, 563 F.3d at 992. "A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)). Plaintiff cannot change Mr. Trump's tweet or the basic context of the tweet. Nor can Plaintiff withdraw factual allegations that she has made in pleadings before this Court. In the other litigation before

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV 18-06893 SJO (FFMx)         **DATE:** October 15, 2018

this Court, Ms. Clifford argues that Mr. Trump sought to silence her as a strategy to win the Presidential election, a clear argument against the legitimacy of Mr. Trump's Presidency. (*See* First Amended Complaint in *Stephanie Clifford v. Donald Trump et al.* at ¶ 17, No. 2:18-cv-02217-SJO-FFM.) Mr. Trump issued the tweet as a rejoinder against an individual challenging him in the public arena. This is the definition of protected rhetorical hyperbole. The Court denies Plaintiff leave to amend the Complaint.

       E.    <u>Attorney's Fees</u>

Having granted the Special Motion and denied Plaintiff leave to amend, the Court finally holds that Defendant is entitled to attorney's fees. Texas law is unambiguous that "the TCPA requires an award of 'reasonable attorney's fees' to the successful movant." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Id.* (quoting *Garcia v. Gomez,* 319 S.W.3d 638, 642 (Tex.2010)).

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Special Motion To Strike/Dismiss. Defendant is entitled to attorney's fees under the Texas Citizen Participation Act. Should Defendants move for attorneys' fees, the motion must be filed within **fourteen (14)** days from the date of this order. The Court **DENIES AS MOOT** Defendant's Motion To Dismiss.

IT IS SO ORDERED.