HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       CHarder@HarderLLP.com
             RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>Defendant. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT DONALD J. TRUMP FOR ATTORNEYS' FEES AND MONETARY SANCTIONS**<br><br>[Declaration of Charles J. Harder Filed Concurrently Herewith]<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:       November 26, 2018**<br>**Time:       10:00 a.m.**<br>**Location:  350 West 1st Street**<br>**            Courtroom 10C, 10th Floor**<br>**            Los Angeles, CA 90012**<br><br>Action Filed:  April 30, 2018 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 26, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendant Donald J. Trump ("Mr. Trump") will move and hereby does move, pursuant to Tex. Civ. Practice & Rem. Code § 27.009 and this Court's Order granting Mr. Trump's Motion to Strike [ECF No. 36], for an Order compelling plaintiff Stephanie Clifford ("Plaintiff") to reimburse Mr. Trump for $341,559.50 in attorneys' fees incurred in connection with defending this action, plus additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion, and for monetary sanctions in an amount appropriate to deter Plaintiff from bringing a similar action in the future.

This Motion shall be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Charles J. Harder, the anticipated reply papers, all materials that may be properly considered in connection with this motion, and oral argument at the hearing.

On October 18, 2018, Mr. Trump's attorneys sent a letter to Plaintiff's attorney, Michael Avenatti, attempting to schedule a meet and confer with Plaintiff about this Motion in accordance with Local Rule 7-3. [Harder Dec., Ex. O.] On the same date, Mr. Avenatti stated that he could not be available to meet and confer in person or by telephone until eight (8) days later, Friday, October 26, 2018, and promised to meet and confer, in person, at the offices of Mr. Trump's counsel on October 26 at 11:00 a.m. [Harder Dec., Ex. P.] Thereafter, on the morning of October 26, counsel for Plaintiff, Ahmed Ibrahim, informed Mr. Trump's counsel that the meet and confer would take place over the telephone, not in person. [Harder Dec., Ex. P.] Accordingly, counsel for the parties met and conferred by telephone on October 26, 2018. The parties were unable to reach a resolution and Plaintiff's counsel advised

/ / /

1   that Plaintiff would oppose Mr. Trump's Motion.  [Harder Dec., ¶ 15.]

2

3   Dated: October 29, 2018                HARDER LLP

4

5                                          By:  /s/ Charles J. Harder

                                                CHARLES J. HARDER
6                                               Attorneys for Defendant
                                                DONALD J. TRUMP
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES AND SANCTIONS

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ............................................................................3

III.   PROCEEDURAL HISTORY ...........................................................................5

IV.    ARGUMENT .....................................................................................................6

   A. The TCPA Requires an Award of Mr. Trump's Fees and Sanctions ........6

   B. Mr. Trump's Fees Are Reasonable ..........................................................8

     1.  The First Factor Supports Granting the Motion.......................................9

       a.  Initial Analysis, Strategy and Defense.................................10

       b.  The Motion to Transfer ........................................................10

       c.  The Motion to Strike.............................................................11

       d.  The Motion for Attorneys' Fees ..........................................13

     2.  Experience, Reputation and Ability of the Attorneys ...........................14

     3.  The Fee Customarily Charged in the Locality ......................................16

     4.  The Other *Andersen* Factors Support the Requested Fees..................17

   C. Sanctions Against Plaintiff Are Mandatory..........................................18

V.     CONCLUSION................................................................................................20

MOTION FOR ATTORNEYS' FEES AND SANCTIONS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. Corp. v. Interior Buildout & Turnkey Const., Inc.*,
  21 S.W.3d 732 (Tex. App. 2000) ...................................................................9

*Aecom Energy & Construction, Inc., Plaintiff, v. John Ripley*,
  2018 WL 4904774 (C.D. Cal. 2018) ...........................................................17

*Am. Heritage Capital, LP v. Gonzalez*,
  436 S.W.3d 865 (Tex. App. 2014) ..........................................................7, 20

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
  945 S.W.2d 812 (Tex. 1997) ..................................................................9, 16

*Charalambopoulos v. Grammer*,
  2016 WL 915739 (N.D. Tex. 2016) .............................................................13

*Cox Media Grp., LLC v. Joselevitz*,
  524 S.W.3d 850 (Tex. App. 2017) ................................................................8

*Cruz v. Van Sickle*,
  452 S.W.3d 503 (Tex. App. 2014) ............................................................7, 8

*Fein v. Kesterson*,
  2010 WL 4902281 (C.D. Cal. 2010) ...........................................................13

*Hill v. Berryhill*,
  2018 WL 4039912 (C.D. Cal. 2018) ...........................................................17

*Kinney v. BCG Attorney Search, Inc.*,
  2014 WL 1432012 (Tex. App. Apr. 11, 2014).......................................19, 20

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  2007 WL 5279897 (C.D. Cal. 2007) ...........................................................17

*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) .......................................................................6

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. 2017).............................................................17

*Open Source Sec., Inc. v. Perens*,
   2018 WL 2762637 (N.D. Cal. 2018) ........................................................17

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. 2015),
   *aff'd*, 847 F.3d 657 (9th Cir. 2017) ..........................................................17

*Petco Animal Supplies, Inc. v. Schuster*,
   144 S.W.3d 554 (Tex. App. 2004) ..............................................................9

*Rich v. Range Res. Corp.*,
   535 S.W.3d 610 (Tex. App. 2017) .............................................................18

*Serafine v. Blunt*,
   2017 WL 2224528 (Tex. App. 2017) ..........................................................18

*Stephen Wynn v. Chanos*,
   No. 14-CV-04329 (N.D. Cal. 2015) ...........................................12, 16, 17

*Sullivan v. Abraham*,
   488 S.W.3d 294 (Tex. 2016) .....................................................................7, 8

*United States v. Twin Falls*,
   806 F.2d 862 (9th Cir.1986) ........................................................................6

**Statutes**

Tex. Civ. Prac. & Rem. Code § 27.009 ...............................................1, 7, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Donald J. Trump ("Mr. Trump") hereby moves for reimbursement of his attorneys' fees, and for monetary sanctions, after prevailing on his Motion to Dismiss/Strike Plaintiff's defamation claim (the "Motion to Strike"), and obtaining a complete dismissal of this action with prejudice.  Mr. Trump seeks reimbursement of fees in the amount of $341,559.50 plus any additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion.  A detailed breakdown of these fees is attached as Exhibit A to the concurrently filed declaration of Charles J. Harder.  These fees were necessary and reasonable for the reasons discussed herein.

This motion is governed by the Texas anti-SLAPP statute (the "TCPA"), which provides that "the court shall award to the moving party . . . court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action… and…sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions."  Tex. Civ. Prac. & Rem. Code § 27.009.  The TCPA broadly requires an award of fees "in defending against the legal action," and is not limited to Mr. Trump's Motion to Strike, but rather includes fees incurred by Mr. Trump from the inception of the dispute through its conclusion.  *See* Section IV.A., *infra*.

From the outset of this case, Plaintiff's gamesmanship caused Mr. Trump to incur substantial additional fees.  Initially, Plaintiff's attorney, Michael Avenatti, publicly proclaimed that Plaintiff's defamation claim would be filed in her already pending action against Mr. Trump in this Court (*Clifford v. Trump*, Case No. 2:18-cv-02217) (the "Dec. Relief Action").  Yet one business day after this Court issued an order staying the Dec. Relief Action for ninety days (the "Stay Order"), Plaintiff filed her defamation claim in the Southern District of New York ("SDNY")—an obvious attempt to avoid the Stay Order.

**Forty (40) days** before Mr. Trump filed the motion to transfer this action (the "Motion to Transfer"), Mr. Trump's counsel informed Plaintiff's counsel that they would file a Motion to Transfer this action from the SDNY to the Central District of California ("CDCA")—the venue where it should have been filed in the first place. Plaintiff's counsel stated they would oppose the motion. After the Motion to Transfer was filed, and one day after Plaintiff filed her Opposition to the motion, Plaintiff changed her mind and stipulated to transfer this action to the CDCA. By that point, Mr. Trump had already incurred the fees for the Motion to Transfer.

Plaintiff never should have filed this action in the first place. This Court has effectively so stated on at least two occasions. At the hearing on the Motion to Strike, the Court stated: "I'm troubled that there's a claim here for defamation in the first instance." [ECF No. 34, p. 28:5-6.][1] In the Order granting the Motion to Strike, the Court stated: "Plaintiff seeks to use her defamation action to engage in a 'fishing expedition' concerning the conclusory allegations in the Complaint. The Court will not permit Plaintiff to exploit the legal process in this way." [ECF No. 36, p. 12.] Plaintiff filed this action, not because it had any merit, but instead for the ulterior purposes of raising her media profile, engaging in political attacks against the President by herself and her attorney (who has appeared on more than 150 national television news interviews attacking the President and now is exploring a run for the Presidency himself in 2020), and to depose Mr. Trump and take discovery.

This Motion seeks reimbursement of the fees that Mr. Trump has actually incurred in this action. Mr. Trump's counsel has earned these fees by prevailing on the two major motions in this case: the Motion to Transfer and Motion to Strike (which involved complex factual and legal issues related to political speech and the First Amendment), while securing a complete dismissal of this action, with prejudice, and an award of fees. Mr. Trump's counsel prevailed, even with the sustained media

---

[1] Unless otherwise specified, all ECF references are to the docket in this action.

1  attack campaign by Plaintiff and her attorney against Mr. Trump and his counsel.

2      Any questions regarding the reasonableness of Mr. Trump's fees should be

3  resolved in favor of Mr. Trump.  This action is virtually unprecedented in American

4  legal history.  Plaintiff not only brought a meritless claim for defamation against the

5  sitting President of the United States, but she also has engaged, along with her

6  attorney, in massive national publicity relating to the case and the related Dec. Relief

7  Action, which has included three national television appearances by Plaintiff, more

8  than 150 by her attorney, Plaintiff's publication of a book, and Plaintiff's national

9  tour of live entertainment establishments, for four-times her normal performance fee.

10      This Motion also seeks reasonable sanctions against Plaintiff, which are

11  mandatory under the TCPA, in an amount within the Court's discretion that is

12  sufficient to deter Plaintiff from bringing similar actions in the future.  *See* Section

13  IV.C., *infra*.  Here, a substantial sanctions award is appropriate given the conduct of

14  Plaintiff and her attorney in connection with this action, and also the benefits

15  (financial and otherwise) that Plaintiff has received from maintaining this public

16  litigation against Mr. Trump.  Plaintiff should receive no benefit whatsoever from

17  having filed this meritless action.  Therefore, she should be required to pay to Mr.

18  Trump monetary sanctions in an amount equal to or greater than the fee award.

19      This action is Plaintiff's second meritless defamation action.  She filed her first

20  action against Michael Cohen on March 26, 2018, for which Mr. Cohen responded by

21  filing a special motion to strike pursuant to California's anti-SLAPP law.  [ECF Nos.

22  14, 31 (Dec. Relief Action).]  Plaintiff filed this action thirty-five (35) days later.

23  Plaintiff and her lawyer heavily publicized both lawsuits and derived benefits

24  therefrom.  The Court should deliver a clear message that meritless defamation

25  actions are unacceptable, should never happen again, and will yield her no benefits.

26  **II.**   **FACTUAL BACKGROUND**

27      Plaintiff alleges that she began "an intimate relationship with Mr. Trump in the

28  summer of 2006." [ECF No. 1, ¶ 5.]  Plaintiff further alleges that, in 2011, "in Las

Vegas, Nevada, [Plaintiff] was approached and threatened by a man regarding her intention to tell the story of her relationship with Mr. Trump" to *In Touch* Magazine. [ECF No. 1, ¶ 7.]  There is no evidence that Plaintiff reported this incident to anyone until approximately seven years later in April 2018.

On October 26, 2016, Plaintiff entered into a Settlement Agreement (the "Settlement Agreement") with Essential Consultants, LLC ("EC"), wherein Plaintiff promised not to publicly disclose her allegations of an alleged affair with Mr. Trump. [ECF No. 14 (Dec. Relief Action), ¶¶ 17-23, Ex. 1, pp. 4-8.]  As consideration, Plaintiff admittedly accepted and received the sum of $130,000.  [*Id.*, ¶ 24, Ex. 1.]

On March 6, 2018, Plaintiff filed the Dec. Relief Action.  [ECF No. 14 (Dec. Relief Action).]  Thereafter, Plaintiff embarked on an extensive publicity campaign which has included appearances on *60 Minutes*, *The View*, *Saturday Night Live*, and press conferences outside of U.S. courthouses, as well as widespread television news appearances by her litigation counsel, Michael Avenatti, amplifying her claims of an affair with Mr. Trump.  [ECF No. 28-1, Exs. B-E.]  Plaintiff also released a book, entitled *Full Disclosure*, which purports to tell her story about her alleged relationship with Mr. Trump.  [ECF No. 87-1 (Dec. Relief Action), Ex. H.]

During Plaintiff's appearance on *The View* on April 17, 2018, Plaintiff and Mr. Avenatti released a sketch that they said depicted the unidentified man who they allege threatened Plaintiff in 2011.  [ECF No. 1, ¶ 14.]  On April 18, 2018, Mr. Trump tweeted the following: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!"  [*Id.*, ¶ 15.]  On the same day, Mr. Avenatti publicly stated in an interview with Wolf Blitzer that Plaintiff intended to file her defamation claim **in the Dec. Relief Action**:

AVENATTI: We're likely going to be amending our complaint. We're looking at doing that now to **add a defamation claim directly against the president**… And we're likely to file it **in the same case that we're already in**, and we're going to add a claim.

1  [ECF No. 28-1, Ex. M.] (Emphasis added.)  During that interview, Mr. Avenatti

2  called Mr. Trump's tweet "another gift from the heavens."  [*Id.*]

3       On April 27, 2018, the Court stayed the Dec. Relief Action for ninety days (the

4  "Stay Order"), effectively preventing Plaintiff from filing her defamation claim in the

5  Dec. Relief Action during that time.  [ECF No. 53 (Dec. Relief Action).]

6  **III.   PROCEDURAL HISTORY**

7       On April 30, 2018, one business day after the Stay Order, Plaintiff filed this

8  action in SDNY.  [ECF No. 1.]  On May 23, 2018, Mr. Trump's counsel waived

9  service of the Complaint.  [ECF No. 7.]  On June 12, 2018, counsel for Mr. Trump,

10  Mr. Harder, requested a ninety (90) day continuance of the Initial Pretrial Conference,

11  which was then scheduled for June 21, 2018.  [Harder Decl., Ex. B.]  At that time, Mr.

12  Harder informed counsel for Plaintiff, Ahmed Ibrahim, that Mr. Trump intended "to

13  file a motion to transfer this action pursuant to 28 U.S.C. § 1404(a) or, in the

14  alternative, to dismiss or stay this action pursuant to the "First-Filed" rule" (the

15  "Motion to Transfer").  [*Id.*]  Mr. Harder stated:  "This motion will be based, in large

16  part, upon the previously filed [Dec. Relief Action]."  [*Id.*]

17       On June 12, 2018, Mr. Ibrahim stipulated to a forty-five (45) day continuance

18  of the Initial Pretrial Conference.  [Harder Decl., Ex. B.]  Counsel for Mr. Trump then

19  prepared a draft letter motion to the Court requesting the continuance, and transmitted

20  it to Mr. Ibrahim on June 12, 2018.  [*Id.*]  On June 13, 2018, Mr. Ibrahim stated that

21  Plaintiff's only proposed revision to the motion was to add the following sentence:

22  "Plaintiff intends to oppose the Motion to Transfer."  [*Id.*]  On June 13, 2018, Mr.

23  Trump filed the consent motion with the Court.  [ECF No. 9.]  On the same date, the

24  Court continued the Initial Pretrial Conference to August 15, 2018.  [ECF No. 10.]

25       On July 23, 2018, Mr. Trump filed the Motion to Transfer, which included a

26  supporting Declaration and twenty-seven (27) exhibits.  [ECF No. 11.]  On August 6,

27  2018, Plaintiff filed her Opposition to the Motion to Transfer, which included a

28  supporting Declaration and fifteen (15) exhibits.  [*Id.*, Nos. 13, 14.]  On August 7,

1   2018, Plaintiff filed a corrected version of the Opposition.  [*Id*., No. 16.]

2       On August 7, 2018, Plaintiff's counsel stated:  "After some consideration,

3   Plaintiff is amenable to a stipulation consenting to transfer of this action to the Central

4   District of California."  [Harder Decl., Ex. C.]  On August 8, 2018, the Court granted

5   the parties' stipulation and issued an Order transferring this action to the CDCA.

6   [ECF No. 18.]  On August 13, 2018, Mr. Trump filed a Notice of Related Case.  [ECF

7   No. 23.]  On August 17, 2018, this action was transferred to the Honorable S. James

8   Otero, before whom the Dec. Relief Action is pending.  [ECF No. 26.]

9       Between August 20, 2018 and August 23, 2018, the parties met and conferred

10  regarding the anticipated Motion to Strike, but Plaintiff's counsel refused to

11  voluntarily dismiss the action, thus requiring Mr. Trump to proceed with the Motion

12  to Strike.  [ECF No. 28-1, ¶ 21.]  On August 27, 2018, Mr. Trump filed the Motion to

13  Strike which included a supporting declaration and nineteen (19) exhibits.  [ECF No.

14  28.]  On September 3, 2018, Plaintiff filed her Opposition to the Motion to Strike,

15  which included the Opposition Brief, two (2) supporting Declarations and five (5)

16  exhibits.  [ECF No. 30.]  On September 10, 2018, Mr. Trump filed his Reply brief in

17  support of the Motion to Strike.  [ECF No 32.]  On September 24, 2018, the Court

18  held a hearing on the Motion to Strike, stating: "I'm troubled that there's a claim here

19  for defamation in the first instance."  [ECF No. 34, p. 28:5-6.]

20      On October 15, 2018, the Court issued its Order granting the Motion to Strike.

21  [ECF No. 36.]  In the Order, the Court stated: "Plaintiff seeks to use her defamation

22  action to engage in a 'fishing expedition' concerning the conclusory allegations in the

23  Complaint.  The Court will not permit Plaintiff to exploit the legal process in this

24  way."  [*Id*.]  The Court also held that Mr. Trump "is entitled to attorney's fees."  [*Id*.]

25  **IV.   ARGUMENT**

26      **A.   The TCPA Requires an Award of Mr. Trump's Fees and Sanctions**

27      This motion is governed by the TCPA.  *See United States v. Twin Falls*, 806

28  F.2d 862, 879 (9th Cir.1986); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir.

2002).  The TCPA provides, in pertinent part:

> (a) If the court orders dismissal of a legal action under this chapter, the court **shall** award to the moving party:
>
> (1) court costs, reasonable **attorney's fees**, and other expenses **incurred in defending against the legal action** as justice and equity may require;
>
> (2) **sanctions** against the party who brought the legal action as the court determines sufficient to **deter the party who brought the legal action** from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)-(2) (emphasis added).

The award of attorney's fees is mandatory.  *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *Cruz v. Van Sickle*, 452 S.W.3d 503, 522 (Tex. App. 2014).  Further, because the TCPA requires an award of fees "incurred in defending against the legal action," the award includes **all fees incurred from the inception of the dispute through its conclusion**, not just those related to the anti-SLAPP motion.

In *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865 (Tex. App. 2014), the Court of Appeal affirmed an award of fees to defendant for "preparatory" services, including responding to a pre-lawsuit email, researching plaintiff's potential claims and settlement negotiations.  *Id.* at 879-80.  In doing so, the Court of Appeals held: "[w]e must construe [Tex. Civ. Prac. & Rem. Code § 27.009]…liberally to effectuate its purpose and intent fully," and that defendant was entitled to all the fees he incurred after plaintiff sent an email about the dispute because "[i]n order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings…[o]nce a cause of action has arisen and resulted in a claim or demand, even one made pre-suit, securing legal services to oppose or contest the cause of action is a natural choice and a reasonable course of action."  *Id.*

In *Cruz v. Van Sickle*, 452 S.W.3d 503 (Tex. App. 2014), the Court of Appeal affirmed an award of fees that were incurred by the defendant after the case was dismissed, **including fees to prepare defendant's motion for attorneys' fees**.  *Id.* at

526.  In doing so, the Court of Appeal held: "[w]e do not read the statutory language so narrowly.  We are required to construe the Act liberally to effectuate its purpose and intent fully," and that the post-dismissal fees were properly awarded because "[a]ll of the fees were incurred in connection with [defendant's] defense of [plaintiff's] lawsuit against him."  *Id.*

Mr. Trump is entitled the recovery of all of the requested fees, including those related to his counsel's analysis of Plaintiff's claims in this action, the Motion to Transfer, the Motion to Strike, and the instant Motion for Attorneys' Fees, according to the following breakdown:

| Action | Hours | Fees |
|---|---|---|
| Initial Analysis, Strategy and Defense | 47 | $34,707.97 |
| Motion to Transfer | 143.25 | $102,977.32 |
| Motion to Dismiss/Strike | 230.5 | $139,899.21 |
| Motion for Attorneys' Fees and Sanctions | 88.5 | $63,975.00 |
| Reply brief and appearance at hearing re Fee Motion | TBD | TBD |
| **TOTAL** (excluding Reply and hearing on Fee Motion) | **509.25** | **$341,559.50** |

[*See* Harder Dec., Ex. A.]

**B.  Mr. Trump's Fees Are Reasonable**

The only limitation on a fee award under the TCPA is that the amount must be "reasonable."  *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (holding "justice and equity" modifier in statute applies only to "other expenses.").  The determination of what is reasonable "rests within the court's sound discretion" and is an issue of fact.  *Id.*; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 865 (Tex. App. 2017).

In analyzing the fees sought, the following factors are considered: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the

fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

These factors are not elements of proof, but instead general guidelines to be considered when determining the reasonableness of fees. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App. 2004); *Acad. Corp. v. Interior Buildout & Turnkey Const., Inc.*, 21 S.W.3d 732, 742 (Tex. App. 2000). It is not necessary for the record to include evidence on each of these factors, and not all factors must be considered in every case. *Id*.

### 1.      The First Factor Supports Granting the Motion

This case involved, among other things: novel questions of law, including what appears to be the first application of the TCPA in California federal court; complex choice of law issues relating to California, New York and Texas law; a fact-intensive analysis of the appropriate venue for this action; and the application of a vast body of state and federal case law relating to the First Amendment.

It cannot be overstated the extraordinary nature of this action, which involves a claim for defamation against the sitting President of the United States, bears directly upon his reputation and credibility, and seeks to interfere with both the carrying out of his duties as President, as well as his efforts to seek re-election. The sustained media campaign by Plaintiff and her counsel has been virtually unprecedented, and all or much of it became relevant to the Motion to Strike, as set forth therein.

For the reasons discussed immediately below, the novel and complex legal questions raised by this case, the efforts expended by Mr. Trump's counsel to combat Plaintiff's aggressive litigation tactics and gamesmanship, and the results obtained for

1  Mr. Trump, support the amount of fees sought by Mr. Trump.

2              a.  Initial Analysis, Strategy and Defense

3        Mr. Trump seeks reimbursement for **47 hours** expended by Mr. Trump's

4  attorneys to initially analyze and defend against this action.  Plaintiff commenced this

5  action in the SDNY, even though there was a related case with substantial factual

6  overlap already pending before this Court (i.e. the Dec. Relief Action).  [ECF No. 1.]

7  Mr. Trump's attorneys immediately began researching and analyzing Plaintiff's claim

8  and potential strategies for responding to the claim. [Harder Decl., Ex. A.]  Mr.

9  Trump's attorneys also had to deal with issues relating to service of process on a

10  sitting President, before agreeing to accept service on his behalf.  [*Id.*; ECF No. 7.]

11        The Initial Pre-Trial Conference was scheduled to take place prior to Mr.

12  Trump's deadline to respond to the complaint.  [ECF Nos. 6-7.]  Thus, Mr. Trump's

13  attorneys prepared a letter motion to the Court requesting a continuance because,

14  among other things, the Motion to Transfer rendered the conference premature.

15  [Harder Dec., Ex. A; ECF Nos. 6, 9.]  Mr. Trump's attorneys met and conferred with

16  Plaintiff's attorneys, who consented to the letter motion, but advised that they would

17  oppose the Motion to Transfer.  [Harder Decl., Ex. B.]

18              b.  The Motion to Transfer

19        Mr. Trump seeks reimbursement for **143.25 hours** expended by his attorneys to

20  litigate the Motion to Transfer.  [Harder Decl., Ex. A.]  The Motion to Transfer

21  included a twenty-five (25) page Memorandum, a supporting Declaration with

22  twenty-seven (27) exhibits, and a Request for Judicial Notice.  [ECF No. 11.]  Mr.

23  Trump's attorneys conducted extensive research of New York law, including the

24  standards and factors for transferring actions under 28 U.S.C. § 1404(a), the effect of

25  related actions on a transfer request, the degree to which actions must relate, the effect

26  of a venue selection clause on a transfer request, and the interplay between a transfer

27  pursuant to 28 U.S.C. § 1404(a) and the "first-filed" rule.  [*Id.*]  The Motion to

28  Transfer also involved considerable fact investigation into potential witnesses to

1    support the various "convenience factors." [*Id.*]

2        Multiple updates and revisions to the Motion to Transfer also were required due

3    to ongoing factual and procedural developments, including Plaintiff's Motion for

4    Reconsideration in the Dec. Relief Action and the Court's denial of the same [ECF

5    No. 56-59, 63 (Dec. Relief Action)], and Plaintiff's and her attorney's constant

6    statements to the media about her dispute with Mr. Trump.  Plaintiff then filed a

7    twenty-five (25) page Opposition, a supporting Declaration with fifteen (15) exhibits,

8    and evidentiary objections.  [ECF Nos. 13-16.]  Mr. Trump's attorneys immediately

9    began reviewing these filings and preparing a Reply brief.  [Harder Decl., Ex. A.]

10       The fees incurred by Mr. Trump related to the Motion to Transfer are directly

11   attributable to the gamesmanship by Plaintiff and her attorneys.  Plaintiff initially

12   filed this case in the wrong court (the SDNY), despite Mr. Avenatti's public

13   statements that it would be filed in the correct court (the CDCA).  Mr. Trump's

14   counsel gave notice of the Motion to Transfer to Plaintiff **40 days** before it was

15   actually filed.  [Harder Decl., Ex. B; ECF No. 9.]  Plaintiff vowed to oppose the

16   Motion, filed an Opposition, then stipulated to the transfer one day after filing the

17   Opposition.  [*Id.*; ECF No. 17.]  The fees associated with the Motion to Transfer

18   could have been avoided altogether if Plaintiff filed in the correct court initially, or

19   stipulated to the transfer when Mr. Trump's counsel first gave notice of the motion.

20                    c.    The Motion to Strike

21       Mr. Trump seeks reimbursement for **230.5 hours** expended by his attorneys to

22   litigate the Motion to Strike.  [Harder Decl., Ex. A.]  The Motion to Strike included an

23   18 page Memorandum, and a supporting Declaration with nineteen (19) exhibits.

24   [ECF No. 28.]  To prepare this Motion, Mr. Trump's attorneys conducted extensive

25   research of specialized and complex legal issues under Texas law, including the

26   applicability of the TCPA to this action, constitutionally protected opinion, the

27   relationship between the Texas defamation *per se* doctrine and the pleading standards

28   for damages, malice requirements and conflicts of law principles under California,

New York and Texas law.  [*See Id.*; Harder Dec., Ex. A.]  Mr. Trump's attorneys also conducted extensive fact investigation in support of their arguments that Plaintiff is a political adversary of Mr. Trump and a public figure, and that Mr. Trump's tweet involved his right of free speech regarding a matter of public concern.  [*Id.*]

In response to the Motion to Strike, Plaintiff filed a twenty (20) page Memorandum, two (2) supporting Declarations, four (4) exhibits, and evidentiary objections.  [ECF No. 30.]  Mr. Trump's counsel immediately began their analysis of these filings and researched and drafted their Reply brief, which addressed issues raised by Plaintiff, including the timeliness of the Motion to Strike, further analysis of conflicts of law principles, constitutionally protected opinion, pleading requirements for damages under Texas law, the right to discovery in connection with anti-SLAPP motions and distinguished the legal authority cited by Plaintiff.  [*See* ECF No. 32; Harder Dec., Ex. A.]  Mr. Trump's attorneys also prepared evidentiary objections to the Declarations filed in support of Plaintiff's Opposition.  [*Id.*]

Mr. Trump's attorneys conducted extensive preparation for oral argument on the Motion, which included reviewing the pleadings, further analysis of the authorities cited in the parties' briefs and additional research of legal authority to support Mr. Trump's position.  [Harder Dec., Ex. A.]  Because of the complexity of the issues and the nature of relief sought, the hearing and argument on the Motion to Strike lasted for nearly ninety (90) minutes.  [ECF No. 34, pp. 3, 44.]

Mr. Trump obtained a full and complete dismissal, with prejudice, of the action, plus an award of his attorneys' fees, because of the extensive time and effort expended by his attorneys.  [ECF No. 36, Order.]  In light of the foregoing, reimbursement for 230.5 hours to litigate the Motion to Strike is reasonable.

Courts have held that a similar number of hours are reasonable to litigate anti-SLAPP motions.  In *Stephen Wynn v. Chanos*, No. 14-CV-04329 (N.D. Cal. 2015), the U.S. District Court determined that **281 hours** of attorneys time to prepare defendant's first anti-SLAPP motion, which included investigation, preparing moving

papers, preparing the reply and attending the hearing, was reasonable and awarded defendant the corresponding attorneys' fees.  [Harder Dec., Ex. D, p. 7, 10.]

In *Charalambopoulos v. Grammer*, 2016 WL 915739 (N.D. Tex. 2016), attorneys for Camille Grammer, the former wife of actor Kelsey Grammer, spent **500** hours seeking dismissal of plaintiff's claims under the TCPA, which included **259.6** hours spent researching, preparing and drafting the briefs for the anti-SLAPP Motion and reviewing plaintiff's response.  *Id.* at *6.  [Harder Dec., Ex. E, p. 3.]  In granting Ms. Grammer's motion, the court held that nearly all of the 500 hours were "necessary for Grammer to pursue her motion to dismiss (such as researching the TCPA)."  *Id.* at *5.  While the court reduced the amount of fees requested by 33%, it was because Ms. Grammer was only able to successfully dismiss four of the seven claims against her, which is not the case here—Mr. Trump's attorneys obtained a full and complete dismissal of Plaintiff's claims in this action.  *Id.*[2]

d.  The Motion for Attorneys' Fees

To prepare this motion, Mr. Trump's attorneys conducted comprehensive research of Texas and California law, including issues relating to the scope of the fee award permitted under the TCPA and the reasonableness of the requested fees.  [ECF No. 39; Harder Dec., Ex. A.]  Mr. Trump's attorneys also analyzed their billing records and prepared a detailed summary of the same for submission to the Court. [*Id.*]  To date, Mr. Trump has incurred **88.5 hours** in preparation of the instant

---

[2] Similarly, in *Fein v. Kesterson*, 2010 WL 4902281 (C.D. Cal. 2010), a congressional candidate was sued for defamation, and prevailed on his anti-SLAPP motion.  *Id.* at *1.  In granting the candidate's fee motion, the court described that 90 hours spent on the anti-SLAPP motion as "relatively modest" because the case involved "complex constitutional and defamation issues and complex factual issues," and the "stakes in this lawsuit were high because [candidate's] reputation as a congressional candidate was implicated by Plaintiff's lawsuit."  *Id.* at *3.  The same holds true for this case— this case involved complex factual and legal issues, and placed at issue the credibility and reputation of the President of the United States, and also threatened to require him to sit for a sworn deposition, among other discovery.

Motion.  [Harder Dec., Ex. A.]  It is anticipated that Mr. Trump's attorneys will spend at least an additional **36 hours** to review Plaintiff's Opposition to this motion, prepare a Reply and prepare for and attend a hearing on the motion.  [Harder Dec., ¶ 3.]  Upon request of the Court, Mr. Trump's attorneys will provide additional documentation supporting any additional hours worked subsequent to the filing of this Motion.

### 2.     Experience, Reputation and Ability of the Attorneys

Mr. Trump seeks reimbursement for the services of the following attorneys, each of whom specializes in defamation, First Amendment, and anti-SLAPP law:

- **Charles Harder**: Mr. Harder's effective hourly rate for this case is **$841.64**.[3]  [Harder Dec., Ex. A.]  Mr. Harder has been practicing law for nearly twenty-two (22) years, and is a founding partner of Harder LLP.  [Harder Dec., ¶ 8.a., Ex. F, Bio.]  Among his many high-profile successes, in 2016, Mr. Harder won a $140 million jury trial verdict for Terry Bollea (a.k.a. Hulk Hogan) in an invasion of privacy lawsuit in Florida against Gawker Media.  [*Id.*]  In 2017, Mr. Harder won a nearly $3 million dollar settlement payment and full retraction and apology on behalf of First Lady Melania Trump in a defamation lawsuit against the *Daily Mail*.  [*Id.*]  In 2017, Mr. Harder was named California Lawyer of the Year in Media by *California Lawyer* magazine.  [*Id.*]  Mr. Harder has also been listed in the Top 100 Lawyers in California by the *Daily Journal* in 2017 and 2018, and in the Top 100 "Power Lawyers" in America by *The Hollywood Reporter*, in four different years, and as a "Super Lawyer" by Thompson Reuters [*Id.*]  In 2016, *The Hollywood Reporter* described Mr. Harder as "[a]rguably the highest-profile media lawyer in America." [*Id.*]  Mr. Harder also is the founding Editor and Co-Author of the law treatise ENTERTAINMENT LAW & LITIGATION (Oxford University Press 2011-12, Lexis/Nexis

---

[3] Attorney "effective rates", as used herein, takes into account courtesy discounts that Harder LLP applied to Mr. Trump's invoices which, in effect, brings down the standard hourly rates for these attorneys.

2013-18 Editions), which includes a chapter on Defamation law and a chapter on Anti-SLAPP law. [*Id.*] Mr. Harder is a 1996 graduate of Loyola Law School, Los Angeles, and after law school served as a one-year law clerk for U.S. District Judge A. Andrew Hauk in the CDCA. [*Id.*]

- **Ryan Stonerock**: Mr. Stonerock's effective hourly rate for this case is **$756.49**. [Harder Dec., Ex. A.] Mr. Stonerock is a partner at Harder LLP, and has been practicing law for nearly twelve (12) years. [Harder Dec., ¶ 8.b. Ex. G, Bio.] Prior to joining Harder LLP, Mr. Stonerock was a partner at the Los Angeles law firm, Wolf Rifkin Shapiro Schulman & Rabkin LLP. [*Id.*] Mr. Stonerock has represented numerous high profile individuals and companies in connection with the publication of false and defamatory statements, unauthorized images and private information. [*Id.*] Mr. Stonerock worked closely with Mr. Harder in obtaining a multi-million dollar settlement, retraction and apology for First Lady Melania Trump, among his many other defamation lawsuits. [*Id.*] Mr. Stonerock has been named a Southern California "Rising Star" by Super Lawyers in 2009, 2010 and 2013-2017. [*Id.*] Mr. Stonerock is a 2006 graduate of Georgetown Law School. [*Id.*]

- **Dilan Esper**: Mr. Esper's effective hourly rate for this case is **$611.99**. [Harder Dec., Ex. A.] Mr. Esper is a senior attorney at Harder LLP, and has been practicing law for nearly twenty-three (23) years. [Harder Dec., ¶ 8.c., Ex. H, Bio.] He has participated in the litigation of numerous First Amendment cases, including preparing an *amicus* brief for the ACLU Foundation of Southern California filed in the California Supreme Court in *Keenan v. Superior Court*, representing homeless protesters who successfully sued the City of Los Angeles for violating their First Amendment rights, and authoring a number of appellate briefs and petitions, including in the California Supreme Court and the United States Supreme Court. [*Id.*] Most recently, Mr. Esper spearheaded the preparation of two pending petitions for *certiorari* before the United States Supreme Court in *McKee v. Cosby* and *Hassell v. Yelp Inc.*, which both involve First Amendment issues. [*Id.*] Mr. Esper is a 1995

graduate of the University of Southern California Law Center where he was Order of the Coif and an Editor of the *Southern California Law Review*.  [*Id.*]

- **Steven Frackman**: Mr. Frackman's effective hourly rate for this case is **$586.50**.  [Harder Dec., Ex. A.]  Mr. Frackman is an attorney at Harder LLP, and has been practicing law for nearly nine (9) years.  [Harder Dec., ¶ 8.d., Ex. I, Bio.]  Prior to joining Harder LLP, Mr. Frackman worked at one of the largest law firms in Los Angeles where he litigated matters on behalf of numerous prominent clients including Beats Electronics, Public Storage, and the Trustee for the Bankruptcy Estate of Billy Preston.  [*Id.*]  Mr. Frackman is a 2009 graduate of Loyola Law School, where he was a Production Editor of the *Loyola Entertainment Law Review*, and served as Judicial Extern to the Hon. Charles F. Eick in the CDCA.  [*Id.*]

- **Ted Nguyen**: Mr. Nguyen's effective hourly rate for this case is **$307.60**.  [Harder Dec., Ex. A.]  Mr. Nguyen is an attorney at Harder LLP, and has been practicing law for nearly two (2) years.  [*Id.*, ¶ 8.e., Ex. J.]  Prior to working at Harder LLP, Mr. Nguyen completed an appellate clerkship at a prominent Los Angeles law firm.  [*Id.*]  Mr. Nguyen is a 2016 graduate of Loyola Law School, where he served as an Editor of the *Loyola International and Comparative Law Review*.  [*Id.*][4]

### 3.   The Fee Customarily Charged in the Locality

When analyzing the reasonableness of the rates charged by Mr. Trump's attorneys, the Court looks to "the fee customarily charged in the locality for similar legal services."  *Arthur Andersen & Co. v. Perry Equip. Corp.*, *supra*, 945 S.W.2d at 818.  Based on the experience and qualifications of these attorneys, their hourly rates are reasonable and within prevailing market rates.

In *Stephen Wynn v. Chanos*, *supra*, No. 14-CV-04329 (N.D. Cal. 2015), an anti-SLAPP matter, the hourly rates for the partners who worked on the case were

---

[4] Additional professional information about each of the aforementioned attorneys is listed in their bios at www.HarderLLP.com.  [Harder Dec., Exs. F-J.]

**$1,085** and **$920**, **$750** for "one of the country's pre-eminent anti-SLAPP and defamation attorneys" and **$710** and **$640** for the associates. [Harder Dec., Ex. D, pp. 3-4.] The court held that these hourly rates were reasonable. [*Id.* at p. 10.]

In *Open Source Sec., Inc. v. Perens*, 2018 WL 2762637 (N.D. Cal. 2018), an anti-SLAPP matter, the hourly rates for the two partners, including one "with experience in defamation" were **$995** and **$880**, while the hourly rates for the associates ranged between **$355-$535**. *Id.* at *6-7, Ex. 1. The court held that based on its own experience with fee applications, it was "satisfied that the rates are consistent with prevailing rates in the community by comparable lawyers doing similar work." *Id.* at *3.

See also *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, *9 (N.D. Cal. 2017) (between **$870** and **$1,200** per hour for the three most senior attorneys on the case "who are highly-respected members of the bar with extensive experience prosecuting high-stakes complex litigation" was fair and reasonable.); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, *15 (C.D. Cal. 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (hourly rate of **$930** for a senior partner with 29 years of experience, **$750** for junior partners and **$350-$690** for associates was reasonable and "consistent with prevailing market rates."); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 WL 5279897, *7 (C.D. Cal. 2007) (average hourly rate for **$1,000** for "one of the foremost trial attorneys in the country" was reasonable); *Aecom Energy & Construction, Inc., Plaintiff, v. John Ripley*, 2018 WL 4904774, *3 (C.D. Cal. 2018) (hourly rate of **$892** for a partner and **$554** for an associate were "reasonable and in line with rates that courts in the Central District have previously approved."); *Hill v. Berryhill*, 2018 WL 4039912, at *2 (C.D. Cal. 2018) (an effective hourly rate of approximately **$1,067.20** is reasonable).

### 4.    The Other *Andersen* Factors Support the Requested Fees

Mr. Trump's attorneys could not have obtained a better result for Mr. Trump in this action. Plaintiff asserted a claim for defamation against Mr. Trump and sought

1  compensatory and punitive damages against him.  [ECF No. 1, pp. 4, 7.]  Mr.

2  Trump's attorneys obtained a transfer of this action from the SDNY to this Court, and

3  were able to secure a complete dismissal of this action, with prejudice, and an award

4  of attorneys' fees for Mr. Trump, all while subject to intense media scrutiny.  These

5  are exceptional results by any measure, and warrant an order of the total fees sought.

6          Additionally, the fees incurred in defending against this case were fixed and not

7  contingent on the results obtained.  [Harder Dec., ¶ 2.]  Thus, Mr. Trump bore the risk

8  of having to pay all the fees incurred had he not prevailed on the Motion to Strike.

9          **C.      <u>Sanctions Against Plaintiff Are Mandatory</u>**

10         Under the TCPA, a successful movant is entitled to sanctions "to deter the party

11  who brought the legal action from bringing similar actions described in this chapter."

12  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  "[W]hen a legal action is dismissed

13  under the TCPA, an award of sanctions against the party who brought the action **is**

14  **mandatory** under section 27.009." *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 612–

15  13 (Tex. App. 2017) (emphasis added); *see also Serafine v. Blunt*, 2017 WL 2224528,

16  at *7 (Tex. App. 2017) (Section 27.009(a)(2) gives "the trial court broad discretion to

17  determine an amount" of sanctions.)

18         Here, a substantial award of sanctions is appropriate to deter Plaintiff from

19  bringing similar actions in the future.  To begin, this action should never have been

20  filed.  This Court appeared to agree by stating that it is "troubled" by the filing of this

21  action and the Plaintiff appears to have filed as part of an attempt to "exploit the legal

22  process."  [ECF No. 34, p. 28:5-6, ECF No. 36, p. 12.]

23         This is not the first meritless defamation claim that Plaintiff has brought in

24  connection with the same related facts and circumstances.  In the Dec. Relief Action,

25  Plaintiff brought a meritless claim for defamation against Michael Cohen, which

26  closely mirrors the defamation claim she brought in this action.  [ECF No. 14 (Dec.

27  Relief Action), ¶¶ 64-71.]  That claim is the subject of a pending Motion to Strike

28  under California anti-SLAPP law.  [ECF No. 31 (Dec. Relief Action).]  Moreover,

1   Plaintiff has refused to dismiss her claim against Mr. Trump in the Dec. Relief Action,

2   despite the lack of an actual controversy.  [ECF No. 87 (Dec. Relief Action).]

3   Plaintiff filed a statement attacking Mr. Trump and reflecting her ongoing vendetta

4   against him, stating, without any valid legal basis, that "the Court cannot simply allow

5   Defendants to exit the case without facing any true consequences or a meaningful

6   inquiry into the truth." [ECF No. 81 (Dec. Relief Action), p. 3.]

7        Plaintiff's attorney has also made numerous public statements on Twitter that

8   suggest that he and Plaintiff desire to bring **additional actions** against Mr. Trump,

9   including that they "are not going to stop until the truth about the cover-up is fully

10  disclosed to the American people and justice is served,"; "are going to continue to

11  push until we force the disclosure of all of the facts and all of the evidence" and are

12  "not going to stop punching. We are just getting started."  [Harder Dec., Exs. K-M,

13  Tweets.]   These are just a few examples of the threats Plaintiff and her attorney have

14  made throughout their ongoing media and legal war against the President.  Moreover,

15  after the Court's ruling on the Motion to Strike, Mr. Avenatti issued a statement

16  attacking Mr. Trump and his counsel, Mr. Harder, stating:  "Mr. Harder and Mr.

17  Trump…purposely lied to the press and public…The American Public deserves far

18  better from Mr. Trump.  And Mr. Harder." [Harder Dec., Ex. N.]

19       Plaintiff has capitalized on her dispute with Mr. Trump, embarking on a

20  nationwide tour of adult live entertainment venues for which she admittedly is being

21  paid at least four times her normal appearance fee, an extensive publicity campaign

22  against Mr. Trump, which has included appearances on *60 Minutes*, *The View* and

23  *Saturday Night Live*, and the publication of a book.  [ECF No. 28-1, Exs. B-E, J, P-Q;

24  ECF No. 87-1 (Dec. Relief Action), Ex. H.]

25       The conduct of Plaintiff and her counsel suggest they will continue to bring

26  similar claims and meritless lawsuits against Mr. Trump, if sufficient sanctions do not

27  deter them from doing so.  The court's award of sanctions in *Kinney v. BCG Attorney*

28  *Search, Inc.*, 2014 WL 1432012 (Tex. App. Apr. 11, 2014) is instructive.  There, the

-19-

Court of Appeals affirmed the trial court's award of sanctions under the TCPA in the amount of $**75,000** against plaintiff. *Id.* at \*12.  The court held that "given the history of litigation, the trial court could have reasonably determined that a lesser sanction would not have served the purpose of deterrence." *Id.*  In doing so, the Court noted that $45,000 in attorneys' fees had been awarded to defendant in a **prior litigation** between the parties. *Id.*

In *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865 (Tex. App. 2014), the trial court awarded sanctions in the amount of $15,000. *Id.* at 881.  The defendant "argue[d] that the sanction amount was supported by the evidence" because his "attorneys' fees were $15,616" and "the trial judge acted reasonably by concluding that a sanction of a similar amount would deter [plaintiff] from bringing a similar action in the future." *Id.*  The Court of Appeal affirmed.

Accordingly, Mr. Trump requests that the Court consider the conduct and statements of Plaintiff and her counsel, and the benefits they have received from maintaining a dispute against Mr. Trump, and enter a sanctions award of an amount equal to or greater than the fee award, to deter Plaintiff from bring similar meritless actions in the future.

V.   **CONCLUSION**

For the foregoing reasons, Mr. Trump respectfully requests that the Court award him reasonable attorneys' fees in the amount of $341,559.50, plus any additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion, and sanction Plaintiff in an amount sufficient to deter her from bringing similar claims in the future.

Dated: October 29, 2018                    HARDER LLP


                                           By: _/s/ Charles J. Harder_
                                           CHARLES J. HARDER
                                           Attorneys for Defendant DONALD J. TRUMP