1  AVENATTI & ASSOCIATES, APC
   Michael J. Avenatti, State Bar No. 206929
2  Ahmed Ibrahim, State Bar No. 238739
   520 Newport Center Drive, Suite 1400
3  Newport Beach, CA 92660
   Telephone:  949.706.7000
4  Facsimile:   949.706.7050

5  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STEPHANIE CLIFFORD a.k.a.          CASE NO.:  2:18-cv-06893-SJO-FFM
    STORMY DANIELS,
12                                     **PLAINTIFF'S OPPOSITION TO**
                  Plaintiff,           **DEFENDANT DONALD J. TRUMP'S**
13                                     **MOTION FOR ATTORNEYS' FEES**
          vs.                          **AND MONETARY SANCTIONS**
14
                                       Assigned to the Hon. S. James Otero
15  DONALD J. TRUMP,
                                       Action Filed: April 30, 2018
16                Defendant.
17                                     **Hearing Date:  November 26, 2018**
                                       **Hearing Time: 10:00 a.m.**
18                                     **Location:        350 West 1st Street**
19                                     **                 Courtroom 10C**
                                       **                 Los Angeles, CA 90012**
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT BACKGROUND ...................................................................... 3

III.    STANDARD OF REVIEW ........................................................................... 3

IV.     ARGUMENT .................................................................................................. 4

        A.      The Rates Sought by Mr. Trump are Not Reasonable. ................... 4

        B.      Mr. Trump's Request for Attorneys' Fees in Connection with
                the Motion to Strike and Motion for Attorneys' Fees is
                "Excessive" and "Extreme." ............................................................. 5

        C.      Mr. Trump Should Not Be Permitted to Recover Any Fees
                Unrelated to the TCPA Motion to Strike and Pertaining to the
                Motion to Transfer or "Initial Strategy." ...................................... 11

        D.      Under the Circumstances, Sanctions are Not Authorized. ........... 15

        E.      The TCPA Does Not Apply in Federal Court. ............................... 17

V.      CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**

American Heritage Capital, LP v. Gonzalez,
  436 S.W.3d 865 (Tex. App. 2014) ...................................................................11

AT&T Mobility LLC v. Yeager,
  No. 2:13-CV-00007 KJM DB, 2018 WL 1567819 (E.D. Cal. Mar. 30, 2018)..............8, 9

Barron v. Ashland, Inc.,
  No. CV1001301SJOVBKX, 2012 WL 13001044 (C.D. Cal. Jan. 9, 2012) .....................9

Charalambopoulos v. Grammer,
  No. 3:14-CV-2424-D, 2016 WL 915739 (N.D. Tex. Mar. 10, 2016)............................9

Christian Research Inst. v. Alnor,
  165 Cal.App.4th 1315 (2008) ........................................................................12

Crowe v. Gogineni,
  No. 2:11-CV-3438 JAM, 2014 WL 130488 (E.D. Cal. Jan. 13, 2014)............................8

Cruz v. Van Sickle
  452 S.W.3d 503 (Tex. App. 2014) ...................................................................12

Cuba v. Pylant,
  814 F.3d 701 (5th Cir. 2016) .........................................................................17

El Apple I, Ltd. v. Olivas,
  370 S.W.3d 757 (Tex. 2012) .......................................................................4, 12

Foundation for Taxpayer & Consumer Rights v. Garamendi
  132 Cal.App.4th 1375 (2005) ..........................................................................8

Garcia v. Gomez,
  319 S.W.3d 638 (Tex. 2010) ............................................................................4

Hersh v. Tatum,
  526 S.W.3d 462 (Tex. 2017) ..........................................................................11

Hicks v. Toys 'R' Us-Delaware, Inc.,
  No. CV13-1302-DSF JCGX, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014) ...............4, 5

Klocke v. University of Texas at Arlington,
     No. 4:17-CV-285-A, 2017 WL 6767252 (N.D. Tex. Oct. 17, 2017)...............1, 7, 10, 15

La'Tiejira v. Facebook,
     No. CV H-16-2574, 2017 WL 6949295 (S.D. Tex. Nov. 15, 2017).....................1, 6, 10

Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento,
     No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014).......................8

Luna v. Universal City Studios, LLC,
     No. CV 12-9286 PSG (SSX), 2016 WL 10646310 (C.D. Cal. Sept. 13, 2016)...............4

Mathiew v. Subsea 7 (US) LLC,
     No. 4:17-CV-3140, 2018 WL 1515264 (S.D. Tex. Mar. 9, 2018)................................17

Maughan v. Google
     143 Cal.App.4th 1242 (2006) ......................................................................8, 10

McGibney v. Rauhauser,
     549 S.W.3d 816 (Tex. App. 2018) ...........................................................passim

Moreau v. Daily Indep.,
     No. 1:12-CV-01862-LJO, 2013 WL 796621 (E.D. Cal. Mar. 4, 2013)..........................9

Rich v. Range Res. Corp.,
     535 S.W.3d 610 (Tex. App. 2017) ......................................................................16, 17

Ruder v. Jordan,
     No. 05-16-00742-CV, 2018 WL 672091 (Tex. App. Feb. 2, 2018) ......................4, 6, 13

Rudkin v. Roger Beasley Imports,
     No. A-17-CV-849-LY, 2017 WL 6622561 (W.D. Tex. Dec. 28, 2017).........................17

Salazar v. Midwest Servicing Grp., Inc.,
     No. CV 17-0137 PSG (KSX), 2018 WL 4802139 (C.D. Cal. Oct. 2, 2018) ........4, 10, 11

Serafine v. Blunt,
     466 S.W.3d 352 (Tex. App. 2015) ......................................................................12

Smith v. Payne,
     No. C 12-01732 DMR, 2013 WL 1615850 (N.D. Cal. Apr. 15, 2013) ..........................9

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION FOR ATTORNEYS' FEES**

Sullivan v. Abraham,
    488 S.W.3d 294 (Tex. 2016) ....................................................................passim

Tatum v. Hersh,
    No. 05-14-01318-CV, -- S.W.3d --, 2018 WL 1477597 (Tex. App. Mar. 27, 2018) .2, 16

Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.,
    834 F.2d 833 (9th Cir. 1987) ...........................................................................15

**STATUTES**

28 U.S.C. § 1404(a)...............................................................................................13

Tex. Civ. Prac. & Rem. Code Ann. § 27.003(c) ....................................................12

Tex. Civ. Prac. & Rem. Code Ann. § 27.009 ....................................................4, 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION FOR ATTORNEYS' FEES**

## I.     INTRODUCTION

Plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") opposes Defendant Donald J. Trump's ("Mr. Trump") Motion for Attorneys' Fees.  While Mr. Trump is permitted to recover "reasonable" attorneys' fees, his request is anything but reasonable.  On the contrary, Mr. Trump seeks to recover the staggering and grossly inflated sum of ***$341,559.50*** in attorneys' fees accounting for an alleged ***509.25*** hours of attorney time (over 12.7 weeks of full time work for a single individual) is both "excessive" and "extreme" and is most certainly not "moderate or fair" as is required by Texas law.  Sullivan v. Abraham, 488 S.W.3d 294, 299 (Tex. 2016).  Accordingly, the vast majority of the fees Mr. Trump requests should be denied.

Mr. Trump divides his fee request into four categories: (1) "initial strategy;" (2) motion to transfer; (3) motion to strike; and (4) motion for fees.  [Hader Decl. Exh. A.]  Mr. Trump also requests sanctions, but fails to request a specific amount of sanctions.  Mr. Trump's request should be denied and dramatically reduced for multiple reasons discussed in more detail herein.  However, these reasons may be summarized as follows:

*First*, Mr. Trump is only entitled to recover reasonable fees incurred in connection with the latter two categories – namely his motion to strike and his motion for fees.  However, even with respect to these categories, the $203,841.21 in fees Mr. Trump requests which accounts for 319 hours of attorney time (or almost 8 weeks of full time work for a single individual) is not reasonable and is extreme and excessive.  See McGibney v. Rauhauser, 549 S.W.3d 816, 821 (Tex. App. 2018), review denied (Sept. 28, 2018) (request for over $300,000 in fees was excessive.).  The attorney hourly rates requested by Mr. Trump for his attorneys are similarly unreasonable.  Consequently, although Mr. Trump may be entitled to reasonable fees, the amount should be reduced dramatically.  See, e.g., La'Tiejira v. Facebook, No. CV H-16-2574, 2017 WL 6949295, at *2 (S.D. Tex. Nov. 15, 2017), report and recommendation adopted, No. 4:16-CV-02574, 2017 WL 6949276 (S.D. Tex. Dec. 4, 2017) (permitting recovery of $24,150.00 in fees); Klocke v. University of Texas at Arlington, No. 4:17-CV-285-A, 2017 WL

6767252, at *1 (N.D. Tex. Oct. 17, 2017) (permitting recovery of $25,000.).

*Second*, with regard to the fees associated with Mr. Trump's motion to transfer and "initial strategy," neither of which have anything to do with the motion to strike filed pursuant to the TCPA, Mr. Trump should not recover *any* fees. This is so because Mr. Trump fails to meet his burden to establish that Texas law actually permits recovery of fees for work entirely unrelated to the motion to strike under the TCPA. However, even if the recovery of these fees was in principle statutorily authorized, the request here should be denied entirely because recovery in this instance would not be "moderate or fair." Sullivan, 488 S.W.3d at 299. To begin with, there was never any reason for Mr. Trump to file the motion to transfer in the first place. Mr. Trump could have had his motion to strike heard by the Southern District of New York. Moreover, the purported basis for the transfer, namely, the risk of inconsistent rulings on the enforceability of the Settlement Agreement has been supposedly negated (if Mr. Trump is to be believed) by Mr. Trump's own covenant not to "bring any action, proceeding or claim against Plaintiff to enforce any of the terms of the Settlement Agreement." [Avenatti Decl. Exh. 1 at 1 (emphasis added).] Similarly, Mr. Trump's request for fees in connection with "initial strategy" is excessive and unrecoverable. Mr. Trump should not recover any fees in connection with these categories. To the extent that he is permitted to recover any of these fees, the amount requested is excessive and should also be reduced dramatically.

*Finally*, no sanctions are authorized under the circumstances of this action and Mr. Trump's request. Mr. Trump fails to request a specific amount of sanctions. Accordingly, Mr. Trump does not afford Plaintiff a meaningful opportunity to be heard and respond to the specific nature of the sanctions sought. Moreover, because there is no need to deter Plaintiff from filing other "similar actions" the only possible sanctions that could be awarded would be nominal sanctions in the amount of $1. Tatum v. Hersh, No. 05-14-01318-CV, -- S.W.3d --, 2018 WL 1477597, at *5 (Tex. App. Mar. 27, 2018).

Accordingly, for these and the other reasons discussed below, the amount of any fees awarded to Mr. Trump should be dramatically reduced to a "moderate or fair" amount

1    as is required by Texas law.   <u>Sullivan</u>, 488 S.W.3d at 299.

2    **II.**    **RELEVANT BACKGROUND**

3        The background to the present motion is not complicated.  The action was filed on

4 or about April 30, 2018 in the Southern District of New York and asserted a single cause

5 of action for defamation.  [Dkt. 1.]  On or about July 23, 2018, Mr. Trump filed a motion

6 to transfer venue to this Court.  [Dkt. 11.]  Mr. Trump did not assert that venue was

7 improper, but instead invoked the court's discretion to transfer venue.  [<u>Id.</u>]  On August 6,

8 Plaintiff filed an opposition to the motion to transfer.  [Dkt. 13.]  However, on or about

9 August 8, the parties stipulated to the transfer of the action to this Court.  [Dkt. 17.]

10        After the action was transferred to this Court, on August 28, Mr. Trump filed a

11 motion to strike and/or dismiss the complaint pursuant to the Texas Citizens Participation

12 Act ("TCPA").  [Dkt. 28.]  Significant to the amount of time Mr. Trump's attorneys spent

13 on their motion, Plaintiff had only *one week* to oppose the motion and filed her opposition

14 on September 3.  [Dkt. 30.]  Mr. Trump filed a reply (limited to 5 pages) on September 10.

15 [Dkt. 32.]  After a hearing on September 24, the Court granted Mr. Trump's motion to

16 strike in an order dated October 15.  [Dkt. 36.]  Mr. Trump filed the present motion on

17 October 29.  [Dkt. 32.]  Plaintiff has appealed the Court's order granting the motion to

18 strike.  [Avenatti Decl. Exh. 2.]

19        In sum, the action has been pending for roughly six (6) months and has not been the

20 subject of extensive motion practice.  Indeed, only two substantive motions were filed and

21 one was resolved via stipulation.  No discovery was ever conducted.  In spite of this, Mr.

22 Trump's attorneys have somehow managed to spend an astonishing (and wasteful) 509.25

23 hours of attorney time litigating these issues over the span of six months.   The

24 unreasonableness of Mr. Trump's request for fees is apparent on the face of the request.

25 Nevertheless, as discussed above and below, there are numerous grounds to deny the

26 request and dramatically reduce the amount of recoverable fees.

27 **III.**    **STANDARD OF REVIEW**

28        Under the TCPA, a party is only entitled to recover "reasonable attorney's fees."

Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1).  "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'"  Sullivan v. Abraham, 488 S.W.3d 294, 299 (Tex. 2016) (citing Garcia v. Gomez, 319 S.W.3d 638, 642 (Tex. 2010)). "Whether attorney's fees are reasonable and necessary is a fact question."  Ruder v. Jordan, No. 05-16-00742-CV, 2018 WL 672091, at *3 (Tex. App. Feb. 2, 2018).  "The party applying for the award bears the burden of proof."  El Apple I, Ltd. v. Olivas, 370 S.W.3d 757, 762–63 (Tex. 2012).  In examining the reasonableness of the request, "a trial judge is obliged to do more than simply act as a rubber-stamp, accepting carte blanche the amount appearing on the bill."  McGibney v. Rauhauser, 549 S.W.3d 816, 821 (Tex. App. 2018), review denied (Sept. 28, 2018).

## IV.   ARGUMENT

### A.   The Rates Sought by Mr. Trump are Not Reasonable.

Mr. Trump seeks to recover fees for time spent by five (5) different attorneys with billing rates ranging from $307.60/hour to $841.64/hour.  [Harder Decl. Exh. at 18.]  Two of the attorneys in question have billable hour rates in excess of $750/hour and four of the five attorneys have rates over $550/hour.  [Id.]  These rates are not reasonable under the circumstances.  [Avenatti Decl. ¶11, Exh. 5.]  As one court in this District has found, "[i]n Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."  Salazar v. Midwest Servicing Grp., Inc., No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018); see also Luna v. Universal City Studios, LLC, No. CV 12-9286 PSG (SSX), 2016 WL 10646310, at *8 (C.D. Cal. Sept. 13, 2016).

Indeed, according to the 2017 Real Rate Report Snapshot, "a CEB and TyMetrix publication that identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as the specific practice areas," median partner rates for firms of all sizes and practice areas in the Los Angeles area was $640.00/hour, $452.50/hour for commercial litigation (across all locations), and $276.20/hour for litigation partners in firms with 50 or fewer attorneys.  [Avenatti Decl. Exh. 5.]  Hicks v. Toys'R' Us-Delaware, Inc., No. CV13-1302-DSF JCGX, 2014 WL 4670896, at *1 (C.D.

Cal. Sept. 2, 2014) (finding Real Rate Report Snapshot to be "persuasive" because "it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies[.]").   For associates, the median rates were $478.74/hr, $300.00/hr, and $225.00/hr, respectively.  [Avenatti Decl., Exh. 5.]

Here, only two of Mr. Trump's attorneys are partners, but four out of five seek to recover based on hourly rates that are in the upper end of rates for partners in litigation within this District.  The Court should exercise its discretion to determine more reasonable rates in line with the prevailing rates in this District by applying one or more of the median rates identified above.  Mr. Trump's fee request should be reduced accordingly.

**B.    Mr. Trump's Request for Attorneys' Fees in Connection with the Motion to Strike and Motion for Attorneys' Fees is "Excessive" and "Extreme."**

With regard to his motion to strike under the TCPA and motion for attorneys' fees filed in connection therewith, Mr. Trump requests fees in excess of **$203,874** based on **319** hours of attorney time.  [Harder Decl. Exh. A.]  More specifically, with respect to the TCPA motion, Mr. Trump requests over **$139,899** in fees based on **230.5** hours of attorney time and, with respect to the motion for attorneys' fees, **$63,975** in fees based on **88.5** hours of attorney time.  [Id.]  No fewer than five (5) different attorneys spent time working on these motions.  Indeed, Mr. Trump's attorneys apparently spent *almost 70 hours of attorney time drafting a five (5) page reply* in support of the motion to strike. [Id. at 11-13.]  Considered collectively, **319** hours of attorney time amounts to almost *eight (8) weeks of full time work (for a single individual) based on a 40 hour week*.  The motion to strike itself would amount to over 5.75 weeks of work.  The motion for attorneys' fees equals over **2.20** weeks of work.  Mr. Trump's request is patently excessive.  [Avenatti Decl. ¶8.]

Under Texas law, Mr. Trump's request for fees is both "excessive" and "extreme" and is anything but "moderate or fair."  Sullivan, 488 S.W.3d at 299.  The excessiveness and unreasonable nature of this request is made plain by decisions discussing an award of attorneys' fees under the TCPA as well as under California's anti-SLAPP statute.  For

example in <u>McGibney</u>, the Texas Court of Appeal reversed the trial court's award and held an award of attorneys' fee in the amount of $300,838.84 in connection with a motion under the TCPA to be excessive.  549 S.W.3d at 821.  The court in <u>McGibney</u> found that the requested fees and substance of the work involved "went well beyond the depth of research and preparation ordinarily expended in the early stages of any lawsuit" and what would be reasonable given the procedural posture of the case and its resolution under the TCPA.  <u>Id.</u> at 824.  The court in <u>McGibney</u> concluded that the trial court had erred in awarding 100% of the requested fees and remanded the matter for further consideration. <u>Id.</u> at 826.

Similarly, in <u>Ruder</u>, the Texas Court of Appeal affirmed the reduction of a request for $30,380 for attorney time and $5,464 for costs and expenses to $9,000 for attorney's fees and $600 for costs.  2018 WL 672091, at *3-4.  Among other things, the Texas Court of Appeal noted that the trial court took issue with "18.7 hours expended by one attorney to draft an 18–page reply brief … with additional time expended by another attorney on the same task."  <u>Id.</u> at *4.  Here, as noted, Mr. Trump's attorneys seek to recover 70 hours of attorney time drafting a five (5) page reply. [Harder Decl. Exh. A at 11-13.]  The court in <u>Ruder</u> held that the trial court did not abuse its discretion in reducing the requested fees. 2018 WL 672091 at *4.

In <u>La'Tiejira v. Facebook</u>, the court in the Southern District of Texas reduced a request for attorneys' fees in connection with the TCPA of over $68,000 to $24,150.00. No. CV H-16-2574, 2017 WL 6949295, at *2 (S.D. Tex. Nov. 15, 2017), <u>report and recommendation adopted,</u> No. 4:16-CV-02574, 2017 WL 6949276 (S.D. Tex. Dec. 4, 2017).  There, the court discussed the fact that "that *four* attorneys worked on this case for Defendants, with their hourly rates ranging from $348.50 to $627.00" and "worked, collectively, a total of 138.1 hours."  <u>Id.</u> (emphasis in original).  This is of course far less than what Mr. Trump contends his attorneys spent in this action.  Nevertheless, the court in <u>La'Tiejira</u> found that "[b]oth the hourly rates and the number of hours expended by counsel in 2017" were unreasonable.  <u>Id.</u>  The court further found the number of attorneys

working on the filings to have been unreasonable.  Id.  The court also held as unreasonable the fact that "three attorneys collectively worked on Defendants' Motion for Attorneys' Fees, a relatively short and uncomplicated fourteen page motion which included a summary of those attorneys' billing records, for a total of 23 hours."  Id.  Needless to say, the 230.5 hours of time expended by five (5) different attorneys on the motion to strike and the 88.5 hours (and counting, allegedly) expended on the present motion dwarfs what the court in La'Tiejira determined to be unreasonable.

In Klocke v. University of Texas at Arlington, the district court in the Northern District of Texas reduced a request for $63,822.70 in attorneys' fees in connection with a motion under the TCPA to $25,000.  No. 4:17-CV-285-A, 2017 WL 6767252, at *1 (N.D. Tex. Oct. 17, 2017).  There, counsel sought "to recover for 201.9 hours of attorney time and 8.2 hours of paralegal time" and "[o]f that amount, 36.8 hours [was] attributable to work on the motion for attorney's fees."  Id. at *2.  The court found the number of hours excessive.  Id.  The court further found, as Mr. Trump's attorneys do here, that "the bills reflect that counsel charged for matters that should not have been billed, such as becoming familiar with the local rules," and that "billing judgment was not exercised."  Id.  Accordingly, the court held that the amount sought was "excessive" and that a "moderate or fair amount" would be $25,000.  Id.  Of particular note, the court came to this conclusion despite determining that the case presented "novel issues" and that "lead counsel is represented to be an authority on cases like this one and to have substantial experience."  Id.  Indeed, based on counsel's expertise, the court concluded that it would have expected the work to be done "expeditiously with little overlap between work done by … attorneys and paralegals and without need to endlessly research matters not necessary to the disposition of the claim…"  Id.  Again, the amount of time expended by the attorneys in Klocke, which the court determined to be excessive, was but a small fraction of the amount of time Mr. Trump's attorneys have spent in this action.

Mr. Trump looks to California to establish the reasonableness of his request – in particular as to the reasonableness of the hourly rates requested.  However, recourse to

California law is not helpful to Mr. Trump.  For example, in <u>Maughan v. Google</u>, the California Court of Appeal affirmed the trial court's reduction of attorneys' fees in an anti-SLAPP motion from the $112,288.63 sought to $23,000.  143 Cal.App.4th 1242, 1253 (2006).   The trial court's decision in that action was based in part on "the court's own experience and expertise in handling complex civil cases" and assessment of what was reasonable.  <u>Id.</u> at 1251.  The trial court found that the over 200 hours of work claimed by counsel was excessive – particularly since counsel in that action "acknowledge that they are old hats at [anti-]SLAPP motions and experts in defamation."  <u>Id.</u> Consequently, the "motion should not have been such a monumental undertaking."  <u>Id.</u> The court further found that it was "hard to believe that counsel for Google spent approximately four 50–hour work weeks preparing the [anti-]SLAPP motion."  <u>Id.</u>  Here, of course, Mr. Trump seeks even more.

In <u>Foundation for Taxpayer & Consumer Rights v. Garamendi</u>, the California Court of Appeal in affirmed the trial court's award of attorneys' fees which amounted to a reduction in the attorneys' fees requested from $135,894.75 to $70,429.04.   132 Cal.App.4th 1375, 1394 (2005).  There, the Court of Appeal noted the $70,429.04 actually awarded was "generous."   <u>Id.</u>  Indeed, numerous courts have determined anti-SLAPP litigation to be relatively straight forward and not particularly complex.  <u>See</u>, <u>e.g.</u>, <u>Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento</u>, No. CIV. S-14-0666 KJM, 2014 WL 5698448, at *4 (E.D. Cal. Nov. 4, 2014) ("Given the non-complex nature of the anti-SLAPP motion, the 211.25 hours sought by defendants is high.").  The clear weight of authority in California is that anti-SLAPP motions should involve far less attorney time than the over 230 hours requested by Mr. Trump.  <u>See</u> <u>AT&T Mobility LLC v. Yeager</u>, No. 2:13-CV-00007 KJM DB, 2018 WL 1567819, at *3 (E.D. Cal. Mar. 30, 2018) ("The total hours expended on the anti-SLAPP motion and instant attorney fee motion, including paralegal time, is thus reduced from 92.3 to 74.8. This total, *while on the high end*, is reasonable in the context of this heavily litigated case.") (emphasis added);  <u>Crowe v. Gogineni</u>, No. 2:11-CV-3438 JAM, 2014 WL 130488, at *5 (E.D. Cal. Jan. 13, 2014),

report and recommendation adopted, No. 2:11-CV-3438 JAM DAD, 2014 WL 1513277 (E.D. Cal. Apr. 16, 2014) (finding 75 hours of attorney time, rather than the 157.4 hours requested to be reasonable.); Moreau v. Daily Indep., No. 1:12-CV-01862-LJO, 2013 WL 796621, at *3 (E.D. Cal. Mar. 4, 2013) (determining reasonable amount of time spent on anti-SLAPP motion to be 40 hours.); Smith v. Payne, No. C 12-01732 DMR, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15, 2013) (concluding that 66.5 hours of attorney time was reasonable.). The authority cited establishes that as a rule of thumb, 75 hours is the upper limit of reasonable time spent prosecuting an anti-SLAPP motion, with considerably less time spent being the norm. Here, however, Mr. Trump seeks over ***three times*** the high end of reasonableness on the TCPA motion alone.

Likewise, with respect to a motion for attorneys' fees, this Court has held that 33.6 hours is excessive and permitted recovery of 10 hours of attorney time for such a motion. Barron v. Ashland, Inc., No. CV1001301SJOVBKX, 2012 WL 13001044, at *4 (C.D. Cal. Jan. 9, 2012) (Otero, J.); see also Smith, 2013 WL 1615850, at *3 (awarding 12 hours of work in connection with fee motion on anti-SLAPP motion.). Mr. Trump's attorneys here have already spent over 88 hours of attorney time, and supposedly, are not finished. Indeed, Mr. Trump contends that they will spend additional time drafting a reply brief and attending any hearing on this Motion. This is patently excessive and exceeds even the amount of a high end award in connection with the anti-SLAPP motion itself. See AT&T Mobility, 2018 WL 1567819, at *3 (finding 74.8 hours of attorney and paralegal time to be "on the high end" of reasonable.). Even if the Court were to assume that somehow this particular TCPA motion was exceedingly complex (which it was not) there is no reason to conclude that the motion for attorneys' fees is unusually complicated. There is simply no justification for the "excessive" and "extreme" request made by Mr. Trump. Sullivan, 488 S.W.3d at 299.

Mr. Trump cites only two cases to support the amount of his request, Charalambopoulos v. Grammer, No. 3:14-CV-2424-D, 2016 WL 915739 (N.D. Tex. Mar. 10, 2016) and Stephen Wynn v. James Chanos, Northern District of California, Case No.

14-cv-04329 – the latter of which is apparently not even available on Lexis or Westlaw. While these decisions lend some surface support to Mr. Trump's requests, in light of the foregoing authority, these decisions can only be characterized as outliers. Neither is binding on this Court and neither decision should be viewed as persuasive. Indeed, Mr. Trump's exorbitant request seems to be premised on the notion that the defamation claim was somehow exceptional. In this regard, Mr. Trump references the media attention paid to Plaintiff and her claim, but this did not of course impact the merits of the defamation claim, the motion to strike, or the law governing these issues. And further, Mr. Trump's attorneys point to nothing suggesting they had to spend additional time making any media appearances or speaking with members of the media, or that they had to spend more time on their briefs because of the media attention the case garnered. That the litigation captured some public interest does not render the defamation claim itself more complex or exceptional. As such, this provides no basis for the exorbitant fee request made by Mr. Trump.

In sum, based on the foregoing authority as well as the circumstances of this action, Mr. Trump should not be permitted to recover anywhere near the $203,874.21 he requests in connection with the motion to strike under the TCPA and the motion for attorneys' fees. Instead, Mr. Trump should not recover more than roughly $25,000 in connection with these motions. See La'Tiejira, 2017 WL 6949295, at *2 (reducing request to $24,150.00.); Klocke, 2017 WL 6767252, at *1 (reducing request to $25,000.). In the event that the Court believes additional fees are warranted, the amount should not exceed reimbursement for 50 hours of attorney time at one or more of the median hourly rates identified above. See Maughan, 143 Cal.App.4th at 1249 (finding that "reasonable time spent on the [anti-] *SLAPP motion and the instant motion* [for fees and costs] is, as [Maughan and Brown & Maughan] have suggested, approximately 50 hours…") (emphasis in original). Even assuming a billing rate on the high end for this district of $745/hour, this would amount to no more than $37,250. See Salazar, 2018 WL 4802139, at *7 (discussing rates in the Central District). The remaining balance of Mr. Trump's

**PLAINTIFF'S OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION FOR ATTORNEYS' FEES**

request should be denied.

**C.   Mr. Trump Should Not Be Permitted to Recover Any Fees Unrelated to the TCPA Motion to Strike and Pertaining to the Motion to Transfer or "Initial Strategy."**

Mr. Trump seeks **$102,977.32** in fees for over **143** hours of attorney time in connection with his previously filed motion to transfer venue. Mr. Trump further seeks **$34,707.97** for **47** hours of attorney time in connection with "initial strategy." [Harder Decl. Exh. A.] Neither request bears any apparent connection to the motion to strike filed under the TCPA as the fees incurred in connection with that motion are enumerated separately. [Id.] Nevertheless, Mr. Trump contends he is entitled to recover attorneys' fees for these matters that are entirely unrelated to his motion to strike under the TCPA. Mr. Trump cites no authority under the TCPA requiring such an expansive interpretation of its provisions. However, even if in principle recovery of these fees is statutorily authorized, any such recovery here would be unreasonable and excessive. Accordingly, Mr. Trump should not recover *any* of these requested fees at all.

In support of his request, Mr. Trump cites American Heritage Capital, LP v. Gonzalez, 436 S.W.3d 865, 879 (Tex. App. 2014), disapproved of by Hersh v. Tatum, 526 S.W.3d 462 (Tex. 2017), for the proposition that he is entitled to recover the entirety of his fees incurred in the action even if completely unrelated to his motion under the TCPA. Nothing in American Heritage supports this expansive interpretation. Rather, American Heritage stands only for the limited holding that, within the meaning of the TCPA, "the term 'legal action' is not limited to formal judicial pleadings and proceedings-it also includes 'cause[s] of action'" such that the party can recover attorneys' fees from work performed prior to formal joinder of a party. Id. at 879–80. The actual work at issue in American Heritage plainly related to the substance of the defamation cause of action at issue and that was ultimately dismissed under the TCPA. See id. at 880 (discussing that the fees pertained to the "validity of the defamation claims" and settlement negotiations.).

Therefore, American Heritage does not amount to authority for the proposition that a party can recover fees for work, such as the motion to transfer, which is entirely

unrelated to the validity of the claims at issue or the viability of the cause of action under the TCPA.  Indeed, it is noteworthy, given Mr. Trump's recourse to California law to attempt to justify his exorbitant fee request, that under California law it is clear that a party "may recover fees and costs only for the motion to strike, *not the entire litigation*." Christian Research Inst. v. Alnor, 165 Cal.App.4th 1315, 1320 (2008) (emphasis added). California's anti-SLAPP statute "was … a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." Serafine v. Blunt, 466 S.W.3d 352, 386 (Tex. App. 2015) (Pemberton, J. *concurring*).[1]

Accordingly, Mr. Trump cites no authority that permits him to recover attorneys' fees incurred in connection with the motion to transfer or for "strategy" entirely unrelated to the merits of the defamation claim or motion under the TCPA or for the motion to transfer itself which was unrelated to any issue pertaining to the TCPA.  [See Harder Decl. Exh. A at 1-3 (seeking to recover, among other things, fees for research regarding "service of summons," "SDNY local rules," and "potential discovery."[2]), id. at 4-7 (seeking recovery of fees pertaining to motion to transfer venue).  Mr. Trump thus fails to satisfy his burden of proof.  El Apple I, 370 S.W.3d at 762–63.  In fact, Texas law would not permit recovery of fees for this type of work.  For example, the Texas Court of Appeal in McGibney faulted counsel for a "troublesome pattern of heavy front-end loading of legal work that might very well have been reasonable, if the case had ever moved beyond the chapter 27 dismissal stage, but was nevertheless premature and of questionable reasonableness in the early stages of the lawsuit."  549 S.W.3d at 824.  Similarly, the Court of Appeal in Ruder affirmed the reduction of a fee request that included matters

---

[1] Mr. Trump also cites statute Cruz v. Van Sickle, for the proposition that he is permitted to recover fees in connection with his motion for attorneys' fees.  452 S.W.3d 503, 526 (Tex. App. 2014).  With the caveat that Mr. Trump's request is not reasonable in amount, Plaintiff does not dispute entitlement to reasonable fees in connection with the motion for attorneys' fees under the TCPA itself.  Cruz does not stand for the broader proposition, however, that Mr. Trump is entitled to recover fees for work entirely unrelated to the TCPA.

[2] "Potential discovery" is of course unrelated to the TCPA because filing a motion under the TCPA stays all discovery.  Tex. Civ. Prac. & Rem. Code Ann. § 27.003(c).

unrelated to the defamation claim at issue under the TCPA.  2018 WL 672091, at *3 (faulting counsel for the "absence of segregation between the contract claim and the defamation claim.").

However, even if in principle the recovery of these fees was statutorily authorized, the particular request here is neither "moderate" nor "fair" and is instead "excessive" and "extreme."  <u>Sullivan</u>, 488 S.W.3d at 299.  This is so, first and foremost, because filing the motion to transfer was entirely unnecessary.  There is absolutely no reason why Mr. Trump could not have filed his motion to strike under the TCPA while the case was pending before the Southern District of New York.  In making his motion to transfer, Mr. Trump did not contend that venue in the Southern District of New York was improper.  [See Dkt. No. 11-1.]  Rather, the motion invoked the court's discretion under 28 U.S.C. § 1404(a).  [Id.]  Accordingly, by his own account, it would have been possible to file the motion to strike before the Southern District of New York.

The motion was further unnecessary because its primary point of emphasis and reason for seeking transfer was, according to Mr. Trump, the argument that the defamation claim "falls squarely within the same arbitration provision in the Settlement Agreement at issue in the First California Action."  [Id. at 3.]  Thus, Mr. Trump contended that the court in the Southern District of New York "could be required to rule upon the enforceability of the very arbitration provision in the Settlement Agreement that is the subject of Plaintiff's declaratory relief claim, and the Arbitration Motion, in the First California Action" thereby, again according to Mr. Trump, creating a "substantial risk of duplicative litigation and inconsistent rulings … *regarding the enforceability of the Settlement Agreement and arbitration provision therein*."  [Id. at 3 (emphasis added).]

The frivolity of this argument was laid bare when Mr. Trump, in an attempt to moot Plaintiff's claims, agreed "that he does not, and *will not, contest Plaintiff's assertion that the Settlement Agreement was never formed*" and covenanted that Mr. Trump "*will not bring any action, proceeding or claim against Plaintiff to enforce any of the terms of the Settlement Agreement*."  [Avenatti Decl. Exh. 1 at 1 (emphasis added).]  Needless to say,

if it is now truly Mr. Trump's position that the Settlement Agreement was never formed and that he supposedly never had any intention to enforce the Settlement Agreement (a claim that is plainly at odds with reality), then there was never any risk of "inconsistent rulings" regarding the enforceability of the Settlement Agreement as Mr. Trump claimed in his motion to transfer. Accordingly, Mr. Trump should not be able to recover over one hundred thousand dollars in attorneys' fees, specifically **$102,977.32**, for a motion he never should have filed in the first place. In short, Mr. Trump should not be permitted to recover *any* of the fees associated with the motion to transfer.

However, even if recovery of attorneys' fees in connection with the motion to transfer is not categorically denied, the actual amount requested is "excessive" and "extreme" and should be reduced dramatically. Sullivan, 488 S.W.3d at 299. Attorneys working for Mr. Trump apparently spent over **143** hours working on the motion to transfer. [Harder Decl. Exh. A at 18.] For a single attorney working a 40 hour week, that amounts to approximately 3.57 weeks of non-stop full time work on a motion that is routine in the practice of law. [Avenatti Decl. ¶9.] Revealing how exaggerated and wasteful Mr. Trump's request for fees is, Mr. Trump's counsel apparently spent *almost three (3) hours of attorney time on a stipulation* to transfer this action to California – a stipulation that was drafted by *Plaintiff's counsel*. [Harder Decl. Exh. A at 7.] This same inflated approach to billing appears to have been applied across the board to all the fees requested in Mr. Trump's motion. This is neither moderate nor fair. Sullivan, 488 S.W.3d at 299. If any recovery is permitted, it should be for far less than the $102,977.32 requested.

The fees requested in connection with "initial strategy" are similarly excessive. Seeking 47 hours of attorney time solely for "initial strategy" is akin to the circumstances in McGibney where the Texas Court of Appeal found that the requested fees and substance of the work involved "went well beyond the depth of research and preparation ordinarily expended in the early stages of any lawsuit" and what would be reasonable given the procedural posture of the case and its resolution under the TCPA. 549 S.W.3d

1   at 824.  Here, as in <u>Klocke</u>, Mr. Trump's attorneys seek to recover "for matters that should

2   not have been billed, such as becoming familiar with the local rules."  2017 WL 6767252

3   at *1.  [<u>See</u> Harder Decl. Exh. A at 1-2 (including roughly 7 hours' worth of entries

4   regarding matters such as research "regarding SDNY service and filing requirements" as

5   well as "research SDNY local rules.").]  Accordingly, Mr. Trump should not be permitted

6   to recovery any of the time requested in connection with "initial strategy."  But, if some

7   recovery is permitted, it should be for far less than the $34,707.97 requested.

8          In sum, Mr. Trump should not recover any attorneys' fees in connection with the

9   motion to transfer and "initial strategy."  However, should some recovery be permitted,

10  for the same reasons discussed above in connection with the fee request for the motion to

11  strike and motion for attorneys' fees, the amount should be substantially reduced to reflect

12  a reasonable amount of time and a reasonable rate.  In view of the circumstances,

13  particularly the lack of any meaningful necessity for the motion to transfer, recovery for

14  these fees should not exceed 10 attorney hours at one or more of the median hourly rates

15  identified above in the *2017 Real Rate Report Snapshot*–if it is permitted at all.

16  **D.    Under the Circumstances, Sanctions are Not Authorized.**

17         No sanctions should be imposed at all because Mr. Trump has not requested a

18  specific amount and has therefore deprived Plaintiff of the opportunity to meaningfully

19  respond to the request.  Alternately, the Court should award only nominal sanctions of $1

20  because there is no need for further deterrence.

21         As an initial matter, Mr. Trump does not provide Plaintiff with notice of the amount

22  of sanctions he seeks.  It is of course an elementary principle of due process that, prior to

23  the imposition of a sanction, a party must have notice and an opportunity to be heard.  <u>See</u>,

24  <u>e.g.</u>, <u>Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.</u>, 834 F.2d 833, 835 (9th Cir.

25  1987) ("In the absence of extraordinary circumstances, procedural due process requires

26  notice and an opportunity to be heard *before* any governmental deprivation of a property

27  interest.").  Here, Mr. Trump's failure to request a specific amount of sanctions deprives

28  Plaintiff of a meaningful opportunity to both notice and an opportunity to be heard

-15-

because Plaintiff has no prior notice of the amount of sanctions requested.  Under the TCPA, the evidentiary record must support the specific amount of sanctions awarded.  See McGibney, 549 S.W.3d at 836 ("We agree that based on the meager evidence before us, the $150,000 sanction award was excessive.").  In the absence of a request for a specific amount of sanctions, Plaintiff has no ability to present evidence against, or meaningfully rebut, any purported evidentiary basis for the amount of sanctions that may be imposed.  For this reason, Mr. Trump's request for sanctions should be denied entirely.

However, should the Court reach the substantive question, under the TCPA, sanctions shall be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2).  Courts interpret this requirement according to its plain language with the purpose of a sanctions award being deterrence "from bringing similar actions in the future."  Rich v. Range Res. Corp., 535 S.W.3d 610, 613 (Tex. App. 2017), review denied (June 1, 2018).  Sanctions under the TCPA "*are not aimed to punish but rather only to deter.*"  McGibney, 549 S.W.3d at 836 (emphasis added).  Should "the trial court determine[] that the plaintiff does not need deterring from filing similar actions, the court may award a nominal sanction such as $1.00."  Tatum v. Hersh, No. 05-14-01318-CV, -- S.W.3d --, 2018 WL 1477597, at *5 (Tex. App. Mar. 27, 2018).  Indeed, while the award of sanctions is mandatory, because a court has discretion to award nominal sanctions, the failure to award nominal sanctions and a denial of sanctions entirely where no deterrence is necessary amounts to harmless error.  Tatum, 2018 WL 1477597, at *6; Rich, 535 S.W.3d at 614.

The relevant consideration for the purposes of deterrence is whether the Plaintiff may file "similar actions" – i.e., those running afoul of the TCPA.  There is no reason to believe that Plaintiff may do so.  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  Indeed, Mr. Trump has subsequently tweeted additional false and insulting statements about Plaintiff – going so far as to call her "horseface" and threatening her with additional litigation even in the face of a purported covenant not to sue Plaintiff.  [Avenatti Decl.

Exh. 3.]  Plaintiff has not taken any additional legal action against Mr. Trump.  Moreover, as to the defamation claim against Mr. Cohen presently pending, Plaintiff wishes to amend the complaint in that action to omit the defamation claim.   [Avenatti Decl. Exh. 4.] Accordingly, there is no basis to impose sanctions in order to deter Plaintiff from filing other similar actions.

In short, no sanctions are authorized given Mr. Trump's failure to provide notice of the amount of sanctions he seeks.  However, if any sanctions are imposed at all, the Court should only impose the nominal sanction of $1.  Rich, 535 S.W.3d at 614.

**E.     The TCPA Does Not Apply in Federal Court.**

Lastly, for the purpose of preserving the record on appeal, Plaintiff reiterates her objection that the TCPA does not apply in federal court.  See, e.g., Cuba v. Pylant, 814 F.3d 701, 719 (5th Cir. 2016) ("Applying an *Erie* analysis, I conclude that the TCPA is procedural and must be ignored.") (Graves, J. *dissenting*); Mathiew v. Subsea 7 (US) LLC, No. 4:17-CV-3140, 2018 WL 1515264, at *7 (S.D. Tex. Mar. 9, 2018), report and recommendation adopted, No. 4:17-CV-3140, 2018 WL 1513673 (S.D. Tex. Mar. 26, 2018) (the "TCPA directly conflicts with the 'integrated program' Rules 12 and 56 create for determining whether to grant pre-trial judgment in cases in federal court because it changes the burdens of proof applicable to both parties" and as a result "the procedural mechanisms of the TCPA must yield to the Federal Rules of Civil Procedure."); Rudkin v. Roger Beasley Imports, No. A-17-CV-849-LY, 2017 WL 6622561, at *3 (W.D. Tex. Dec. 28,  2017), report  and  recommendation  approved, No.  A-17-CV-849-LY,  2018  WL 2122896 (W.D. Tex. Jan. 31, 2018) ("Even if the [TCPA] is viewed to be somehow substantive, it still cannot be applied in federal court, as its provisions conflict with Rules 12 and 56, rules well within Congress's rulemaking authority.  Accordingly, the motion to dismiss under the TCPA should be denied.").  Indeed, Plaintiff has already filed a notice of appeal regarding the Court's ruling on the merits of the motion to strike.  [Avenatti Decl. Exh. 2.]  The Court should therefore refrain from ruling on this request for fees prior to resolution of this issue by the Ninth Circuit.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Mr. Trump's Motion as to the vast majority of the fees requested by Mr. Trump.  Mr. Trump's fee request must be reduced dramatically as argued herein.

Dated:  November 5, 2018                    AVENATTI & ASSOCIATES, APC

                                  By:        /s/ Michael J. Avenatti
                                          Michael J. Avenatti
                                          Ahmed Ibrahim
                                          Attorneys for Plaintiff Stephanie Clifford
                                          a.k.a. Stormy Daniels