# Exhibit 1

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:      CHarder@HarderLLP.com
            RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-02217-SJO-FFM<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT DONALD J. TRUMP TO DISMISS PLAINTIFF'S DECLARATORY RELIEF CAUSE OF ACTION FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>[Declaration of Charles J. Harder Filed Concurrently Herewith]<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:        December 3, 2018**<br>**Time:        10:00 a.m.**<br>**Location:  350 West 1st Street Courtroom 10C, 10th Floor Los Angeles, CA 90012**<br><br>Action Filed:  April 30, 2018 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendant Donald J. Trump ("Mr. Trump") will move and hereby does move to dismiss with prejudice plaintiff Stephanie Clifford's declaratory relief cause of action against him pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction.

This Motion shall be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Charles J. Harder, the anticipated reply papers, all materials that may be properly considered in connection with this motion, and oral argument at the hearing.

Mr. Trump files this Motion in accordance with the Court's September 24, 2018 scheduling order.  [ECF No. 83, Order.]  Plaintiff and Mr. Trump have exchanged their respective positions in connection with this Motion in correspondence and filings with the Court, and following the Court's scheduling order, Mr. Trump received no response to his offer to further meet and confer with Plaintiffs regarding this Motion.  [Harder Dec., ¶ 11; Ex. A, Covenant; Exs. I-J, Emails; ECF Nos. 80-82.]


Dated: October 8, 2018                    HARDER LLP


                                          By:  /s/ Charles J. Harder
                                          CHARLES J. HARDER
                                          Attorneys for Defendant
                                          DONALD J. TRUMP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..........................................................................................1

II.    STATEMENT OF FACTS ..........................................................................2

III.   ARGUMENT ...............................................................................................5

     A.    Legal Standard ................................................................................5

     B.    The Federal Declaratory Judgment Act Governs Plaintiff's
            Claim ...............................................................................................5

     C.    A Claim For Declaratory Relief Requires The Presence Of
            An Actual Controversy ...................................................................6

     D.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's
            Declaratory Relief Claim Against Mr. Trump Because There
            Is No Actual Controversy ...............................................................7

     E.    Mr. Trump's Covenant Is Sufficient To Divest The Court Of
            Jurisdiction ...................................................................................10

     F.    Plaintiff Is Not Entitled To A Judgment Against Mr. Trump ...........12

     G.    Plaintiff Cannot Create An Actual Controversy Based On
            A Potential Claim For Her Attorneys' Fees Or Disposition
            Of The $130,000 She Received ........................................................13

IV.   CONCLUSION ..........................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boccato v. City of Hermosa Beach*,
   158 Cal. App. 3d 804 (Cal. Ct. App. 1984)..................................................7

*City of Parma, Ohio v. Cingular Wireless, LLC*,
   278 F. App'x 636 (6th Cir. 2008)...................................................11, 14

*Clear Channel Outdoor, Inc. v. Lee*,
   2009 WL 57110 (N.D. Cal. Jan. 8, 2009) ...............................................14

*Columbian Fin. Corp. v. BancInsure, Inc.*,
   650 F.3d 1372 (10th Cir. 2011) ..............................................................10

*Connerly v. Schwarzenegger*,
   146 Cal. App. 4th 739 (2007) .....................................................................7

*Dow Jones & Co. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed. Cir. 2010) ...............................................................13

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) ....................................................................5

*Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*,
   471 F.3d 1100 (9th Cir. 2006) ....................................................................7

*Fleming v. Coverstone*,
   2010 WL 11508869 (S.D. Cal. June 17, 2010)...............................8, 9, 12

*Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*,
   2008 WL 11334169 (C.D. Cal. July 10, 2008) ...........................1, 5, 6, 8, 12

*Golden Eagle Ins. Co. v. Travelers Companies*,
   103 F.3d 750 (9th Cir. 1996)......................................................................5

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014).......................................................6

*Int'l Video Corp. v. Ampex Corp.*,
   484 F.2d 634 (9th Cir. 1973) .....................................................................5

ii

*Lee v. Silveira*,
   6 Cal. App. 5th 527 (Cal. Ct. App. 2016)..................................................................6

*Lincoln Benefit Life Co. V. Paige Fundament*,
   2018 WL 3854053 (C.D. Cal. Aug. 7, 2018) ........................................................5

*Mytee Prod., Inc. v. Studebaker Enterprises, Inc.*,
   2012 WL 4471246 (S.D. Cal. Sept. 26, 2012) ..............................................10, 13

*Paramount Pictures Corp. v. Replay TV*,
   298 F. Supp. 2d 921 (C.D. Cal. 2004)..................................................................9

*Preiser v. Newkirk*,
   422 U.S. 395 (1975) ........................................................................................1, 6

*Rhoades v. Avon Prod., Inc.*,
   504 F.3d 1151 (9th Cir. 2007)...........................................................................6, 7

*Snell v. Cleveland, Inc.*,
   316 F.3d 822 (9th Cir. 2002) ..............................................................................5

*Spicy Beer Mix, Inc. v. New Castle Beverage*,
   2014 WL 7672167 (C.D. Cal. Aug. 1, 2014) ..............................................11, 12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...........................................................................................14

*Sunshine Kids Juvenile Prod., LLC v. Indiana Mills & Mfg., Inc.*,
   2011 WL 2020761 (W.D. Wash. May 24, 2011)................................................11

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
   57 F.3d 1054 (Fed. Cir. 1995) ......................................................................10, 11

*Toyo Tire & Rubber Co., Ltd v. Doublestar Dong Feng Tyre Co., Ltd*,
   2018 WL 1896310 (C.D. Cal. Mar. 28, 2018) ....................................................5

*True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*,
   402 F. Supp. 2d 1093 (D. Ariz. 2005)...........................................................11, 14

*Wahlberg v. Benson Builders, LLC*,
   2012 WL 3027984 (W.D. Mich. July 24, 2012) ................................................10

**Statutes**

28 U.S.C. § 2201.................................................................................................5, 6

Cal. Code Civ. Proc. § 1060.............................................................................5, 6

Federal Rule of Civil Procedure 12(b)(1)..............................................2, 5, 15

Federal Rule of Civil Procedure 12(h)(3)................................................................5

**Other Authorities**

U.S. Const. art. III, § 2, cl.1................................................................................6

10B Wright & Miller, Federal Practice and Procedure § 2757......................................7

MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Stephanie Clifford's ("Plaintiff") claim for declaratory relief against defendant Donald J. Trump ("Mr. Trump") should be dismissed because it is moot and requests an impermissible advisory opinion.  As a result, the Court lacks subject matter jurisdiction to decide this claim.

The parties are in agreement that Mr. Trump did not sign the Confidential Settlement Agreement (the "Settlement Agreement"), dated October 28, 2016, at issue in Plaintiff's declaratory relief claim, and that Mr. Trump has never taken the position that he is a party to the Settlement Agreement, or affirmatively sought to invoke any rights under the Settlement Agreement.  [Harder Dec., Ex. B, Plaintiff's Opposition to Motion to Transfer SDNY Case No. 1:18-cv-03842, pp. 1-2, 8, 17.]  Moreover, Mr. Trump has covenanted that he does not, and will not, contest Plaintiff's assertion that the Settlement Agreement was never formed or in the alternative, should be rescinded, and Mr. Trump has also covenanted that he will not bring any action, proceeding or claim against Plaintiff to enforce any of the terms of the Settlement Agreement.  [Harder Dec., Ex. A, Covenant, p. 1.]  Mr. Trump has confirmed these covenants in several court filings.  [*See* ECF Nos. 80, 82.]

Under well-established precedent, Mr. Trump's covenant renders Plaintiff's declaratory relief claim against him moot and divests this Court of subject matter jurisdiction over the claim because there is no actual controversy between Mr. Trump and Plaintiff.  *See Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*, 2008 WL 11334169, at *3 (C.D. Cal. July 10, 2008) (*Otero, S.J.*), quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  ("Not only must there been an actual controversy between interested parties, the 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'").

Accordingly, Mr. Trump respectfully requests that the Court dismiss with prejudice Plaintiff's declaratory relief claim against him for lack of subject matter

1  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

2  **II.   STATEMENT OF FACTS**

3      On March 26, 2018, Plaintiff filed her First Amended Complaint ("FAC") in

4  this action.  [ECF No. 14, FAC.]  The FAC asserts one cause of action against Mr.

5  Trump for declaratory relief, seeking a declaration that the Settlement Agreement was

6  never formed, or **in the alternative**, is void, invalid or otherwise unenforceable.  [*See*

7  *Id.*, at pp. 8, 17 (prayer for relief requesting "a judgment declaring that no agreement

8  was formed between the parties, or in the alternative, to the extent an agreement was

9  formed, it is void, invalid, or otherwise unenforceable.").]

10     It is undisputed that Mr. Trump did not sign the Settlement Agreement.  [*Id.*, ¶¶

11  23-24, 41; Settlement Agreement, Ex. 1 to FAC, p. 14; Harder Dec., Ex. A, Covenant,

12  p. 1.]  It also is undisputed that Mr. Trump has never taken the position that he is a

13  party to the Settlement Agreement, or affirmatively sought to invoke any rights under

14  the Settlement Agreement.  Plaintiff recently confirmed these facts in her separate

15  defamation action against Mr. Trump, which has been transferred to this Court,

16  stating:

17              Mr. Trump has never in fact taken the position that he is a

18              party to the Settlement Agreement or affirmatively sought to

19              invoke any rights under the Settlement Agreement in any

20              action now pending – including those in California.

21  [Harder Dec., Ex. B, Plaintiff's Opposition to Motion to Transfer SDNY Case

22  No. 1:18-cv-03842, pp. 1-2.]

23     Plaintiff further stated that "[Mr. Trump] has not in any action asserted

24  standing under the Settlement Agreement."  [*Id.*, at p. 8.]

25     Plaintiff further stated:

26

27

28

-2-
MOTION TO DISMISS

1         The fact that Mr. Trump has not taken these actions is, again,
2         not surprising in light of his consistent refusal to take a
3         position as to whether he is a party to the Settlement
4         Agreement or to affirmatively seek to enforce any rights
5         under it.
6    [*Id.*, at p. 17.]

7         Meanwhile, Plaintiff has consistently conducted herself as if the Settlement
8    Agreement was never formed or is already void.  Plaintiff has embarked on an
9    extensive publicity campaign for the purpose of describing an alleged relationship
10   with Mr. Trump, including appearances on *60 Minutes*, *The View*, *Saturday Night*
11   *Live*, and press conferences outside of U.S. courthouses, as well as widespread
12   television news appearances and press conferences by her litigation counsel, Michael
13   Avenatti, acting on her behalf.  [Harder Dec., Ex. C, *60 Minutes* transcript; Ex. D, *The*
14   *View* transcript; Ex. E, *The View* tweet; Ex. F, *Saturday Night Live* transcript; Ex. G,
15   Chart of Interviews.]  Plaintiff also recently released a book, entitled *Full Disclosure*,
16   which purports to tell her story about her alleged relationship with Mr. Trump.
17   [Harder Dec., Ex. H, Amazon.com page for *Full Disclosure*.]  The purported
18   Settlement Agreement unambiguously prohibits such activities.  [ECF No. 14,
19   Settlement Agreement, Ex. 1 to FAC.]  Thus, by engaging in such activities, while her
20   pending declaratory relief claim seeks a declaration that the Settlement Agreement
21   was never formed or is void, Plaintiff has consistently conducted herself as if the
22   Settlement Agreement was never formed or is already void.

23        On September 8, 2018, Mr. Trump, through his counsel, provided a covenant to
24   Plaintiff (the "Covenant"), stating that Mr. Trump does not, and will not contest
25   Plaintiff's assertion that the Settlement Agreement was never formed or in the
26   alternative, should be rescinded.  [Harder Dec., Ex. A, p. 1.]  Moreover, the Covenant
27   provided that "Mr. Trump hereby covenants that he will not bring any action,
28   proceeding or claim against Ms. Clifford to enforce any of the terms of the Settlement

Agreement." [*Id.*]  Because no actual controversy between Plaintiff and Mr. Trump regarding the Settlement Agreement remains, the Covenant requested that Plaintiff dismiss Mr. Trump from this action, or in the alternative, provide availability to meet and confer pursuant to Local Rule 7-3 regarding Mr. Trump's contemplated motion to dismiss for lack of subject matter jurisdiction.  [*Id.*, at p. 3.]

On September 8, 2018, Mr. Trump filed a Supplemental Statement regarding the parties' Joint Rule 26(f) Report, which advised the Court of the Covenant.  [ECF No. 80, Mr. Trump's Supplemental Statement.]  Mr. Trump's Supplemental Statement also requested that, in light of the fact that no actual controversy exists, the Court dismiss, *sua sponte*, Plaintiff's declaratory relief claim against Mr. Trump pursuant to the Court's inherent power.  [*Id.*]

On September 10, 2018, Plaintiff filed a Response to Mr. Trump's September 8, 2018 Supplemental Statement, which opposed dismissal of the declaratory relief claim.  [ECF No. 81, Plaintiff's Response to Supplemental Statement.]

On September 14, 2018, Mr. Trump filed a Response to Plaintiff's September 10, 2018 Response to his Supplemental Statement, which further explained the legal basis for dismissal and provided authority to show that Plaintiff's position was contrary to law and without merit.  [ECF No. 82, Mr. Trump's Response.]

On September 25, 2018, the Court issued an Order setting a briefing schedule and hearing on whether a case in controversy remains with regard to Plaintiff's declaratory relief claim.  [Order, ECF No. 83.]

On September 27, 2018, Mr. Trump's counsel emailed Plaintiff's counsel with an offer to further meet and confer on Mr. Trump's then-forthcoming motion. [Harder Dec., Ex. J, Email.]  Plaintiff's counsel did not respond to the email.  [Harder Dec., ¶ 11.]

-4-
MOTION TO DISMISS

**III.    ARGUMENT**

   **A.    Legal Standard**

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  "It is elementary that the subject matter jurisdiction of the district court is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n. 2 (9th Cir. 1988); *see also Snell v. Cleveland, Inc.,* 316 F.3d 822, 826 (9th Cir. 2002).

"Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims.  Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists." *Lincoln Benefit Life Co. V. Paige Fundament*, 2018 WL 3854053, at *2 (C.D. Cal. Aug. 7, 2018).  "Rule 12 dismissals for lack of a justiciable controversy are nondiscretionary and are to be entered whether the parties object or not." *Toyo Tire & Rubber Co., Ltd v. Doublestar Dong Feng Tyre Co., Ltd*, 2018 WL 1896310, at *6 (C.D. Cal. Mar. 28, 2018), citing *Int'l Video Corp. v. Ampex Corp.*, 484 F.2d 634, 636 (9th Cir. 1973).  "The party seeking a declaratory judgment bears the burden of showing an 'actual controversy'." *Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*, 2008 WL 11334169, at *4 (C.D. Cal. July 10, 2008) (*Otero, S.J.*).

   **B.    The Federal Declaratory Judgment Act Governs Plaintiff's Claim**

As an initial matter, although the FAC refers to both the California Declaratory Relief Act (Cal. Code Civ. Proc. § 1060) and the Federal Declaratory Judgment Act (28 U.S.C. § 2201), The Federal Declaratory Judgment Act governs this case.  *See Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 753 (9th Cir. 1996), overruled on other grounds by *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (applying Federal Declaratory Relief Act to California state complaint

because "When [defendant] removed the case [for declaratory relief under the California Declaratory Relief Act] to federal court, based on diversity of citizenship, the claim remained one for declaratory relief, but the question whether to exercise federal jurisdiction to resolve the controversy became a procedural question of federal law… The Declaratory Judgment Act, 28 U.S.C. § 2201, is the procedural statute under which a federal court determines whether to exercise its jurisdiction to hear a case such as the present one.") In any event, "whether the state or federal statute applies makes little difference as a practical matter, as the two statutes are broadly equivalent." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014).

## C. A Claim For Declaratory Relief Requires The Presence Of An Actual Controversy

"As required by Article III, courts may adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl.1. When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). Similarly, Cal. Code Civ. Proc. § 1060 "does not embrace controversies that are conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court." *Lee v. Silveira*, 6 Cal. App. 5th 527, 546 (Cal. Ct. App. 2016) (internal quotations omitted).

"Not only must there been an actual controversy between interested parties, the 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*, 2008 WL 11334169, at *3 (C.D. Cal. July 10, 2008) (*Otero, S.J.*), quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Similarly under Cal. Code Civ. Proc. § 1060, "[a] question may be deemed moot when, although it initially presented an existing controversy, the passage of time or the acts of the parties or a court decision have deprived the

controversy of its life." *Boccato v. City of Hermosa Beach*, 158 Cal. App. 3d 804, 808 (Cal. Ct. App. 1984).

Absent a true case or controversy, a complaint for declaratory relief "will fail for lack of jurisdiction under Rule 12(b)(1)." *Rhoades v. Avon Prod.*, Inc., 504 F.3d 1151, 1157 (9th Cir. 2007); *see also Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103-04 (9th Cir. 2006). "Where there is no justiciable controversy the proper remedy is not to render judgment for one side or the other, but to dismiss." *Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739,752 (2007).

**D.      The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Declaratory Relief Claim Against Mr. Trump Because There Is No Actual Controversy**

This Court lacks subject matter jurisdiction over Plaintiff's declaratory relief claim against Mr. Trump because no actual controversy exists between the parties. Mr. Trump has expressly disclaimed any potential countervailing rights under the Settlement Agreement by: (a) confirming that the parties are in agreement that he did not sign the Settlement Agreement; (b) stipulating that he does not, and will not, contest Plaintiff's assertion that the Settlement Agreement was never formed; and (c) covenanting not to sue Plaintiff to enforce any terms of the Settlement Agreement. [Harder Dec., Ex. A, Covenant, p. 1.] *See* 10B Wright & Miller, Federal Practice and Procedure § 2757 ("The presence of a controversy must be measured at the time the court acts.  It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy, or if the opposing party disclaims the assertion of countervailing rights.").  Plaintiff's declaratory relief claim is therefore moot and she is not entitled to any judgment against Mr. Trump because it would be nothing more than an advisory opinion, which this Court does not have jurisdiction to render.  Additionally, Plaintiff need not consent to Mr. Trump's disclaimer to warrant dismissal of the claim for lack of

1  subject matter jurisdiction.

2      Courts routinely dismiss declaratory relief claims for lack of subject matter

3  jurisdiction, despite opposition from the recipient of the covenant, under similar

4  circumstances.  In *Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*, 2008 WL

5  11334169 (C.D. Cal. July 10, 2008) (*Otero, S.J.*), General Motors brought a

6  declaratory relief claim against several defendants for a judgment that it was the sole

7  owner of the patents at issue.  *Id.*, at *2.  Certain defendants (the "Professors") moved

8  to dismiss the action for lack of subject matter jurisdiction on the ground that there

9  was no actual controversy as to the Professors because they disclaimed any ownership

10 interest in the patents and covenanted that they would not claim any such rights in the

11 future.  *Id.*, at *5-6.  General Motors opposed this motion and argued that the

12 covenants entitled it to to a summary judgment on its declaratory relief claims.  *Id.*

13 This Court expressly rejected this argument and held that the Professors' covenants

14 "divest[ed] this Court of subject matter jurisdiction."  *Id.*, at *6.  In granting the

15 motion, this Court held that it lacked subject matter jurisdiction because "there is no

16 actual controversy between GM and the Professors" on the basis of the Professors'

17 "unconditional promise not to sue" General Motors.  *Id.*

18      In *Fleming v. Coverstone*, 2010 WL 11508869 (S.D. Cal. June 17, 2010), the

19 defendant ("Coverstone") brought a declaratory relief claim against the

20 counterdefendant ("Fleming"), seeking a judgment that Coverstone owed Fleming no

21 obligations under the contract at issue.  *Id.*, at *4.  Fleming moved to dismiss the

22 claim for lack of subject matter jurisdiction and claimed that there was no case or

23 controversy because she "unambiguously declared that she is not a signator to any

24 contract with Coverstone," and covenanted that she would not file any action against

25 Coverstone related to the contract at issue.  *Id.*  Although Coverstone opposed, the

26 court granted the motion because there was no actual controversy as to whether

27 Fleming had any rights under the contract at issue, stating:

28

1  [W]here "the opposing party disclaims the assertion of
2  countervailing rights," a claim for a declaratory judgment is
3  moot. 10B Charles Alan Wright & Arthur Miller, *Federal*
4  *Practice and Procedure* § 2757, citing *Eccles v. Peoples Bank*
5  *of Lakewood Village*, 333 U.S. 426, 434-35 (1947).
6  **[Fleming's] statements that she did not sign the contract**
7  **and will not sue moot the declaratory judgment claim.**
8  *Id*, at *5 (emphasis added).

9  In *Paramount Pictures Corp. v. Replay TV*, 298 F. Supp. 2d 921 (C.D. Cal.
10  2004), defendants ("Copyright Owners") moved to dismiss plaintiffs' ("*Newmark*
11  Plaintiffs") declaratory relief claim for lack of subject matter jurisdiction after
12  Copyright Owners covenanted not to sue *Newmark* Plaintiffs related to potential
13  copyright infringement claims, which covenant was made after the action had been
14  filed. *Id.*, at 924.  The *Newmark* Plaintiffs opposed, arguing that the covenant did not
15  resolve the controversy because the covenant was unilateral and not supported by
16  consideration.  *Id.*, at 926.  The court rejected this argument and granted the motion
17  because the covenant not to sue and the dismissal of related actions "put an end to the
18  controversy":

19  The *Newmark* Plaintiffs' claims have been mooted by the
20  dismissal of the *RePlayTV* actions and the Copyright
21  Owners' covenant not to sue.  In the absence of an actual case
22  or controversy, the Court is without subject matter
23  jurisdiction and is constitutionally constrained from further
24  considering the issues presented by the *Newmark* Plaintiffs'
25  claims.   Accordingly, the Copyright Owners' Motion to
26  Dismiss is granted.

27  *Id.*, at 927.

28

-9-
MOTION TO DISMISS

1    *See also Mytee Prod., Inc. v. Studebaker Enterprises, Inc.*, 2012 WL 4471246,

2    at *2-3 (S.D. Cal. Sept. 26, 2012) (granting defendants' motion to dismiss for lack of

3    subject matter jurisdiction because defendants' covenant not to sue made after filing

4    of declaratory relief claim "removed any continuing case or controversy between [the]

5    parties."); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1373 (10th Cir.

6    2011) (vacating district court's judgment on grounds that it lacked subject matter

7    jurisdiction because, at time of judgment, defendant stipulated to plaintiff's position

8    on issue in dispute, and "[a]bsent another identifiable claim against [plaintiff], there

9    was no actual controversy to be resolved in the declaratory-judgment action.");

10   *Wahlberg v. Benson Builders, LLC*, 2012 WL 3027984, at *7 (W.D. Mich. July 24,

11   2012) (dismissing declaratory relief claim related to validity and enforceability of

12   agreement for lack of subject matter jurisdiction because defendant did not claim any

13   countervailing rights and there were no facts to support that a breach of contract claim

14   was likely or imminent).

15        Accordingly, because there is no actual controversy between Plaintiff and Mr.

16   Trump, the Court lacks subject matter jurisdiction over her declaratory relief claim

17   against him.

18        **E.    Mr. Trump's Covenant Is Sufficient To Divest The Court Of**

19             **Jurisdiction**

20        It is well-established that a covenant not to sue need not take any specific form

21   to be effective, and may be made by counsel.

22        In *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir.

23   1995), overruled on other grounds by *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

24   118, 127 (2007), the Federal Circuit affirmed the district court's dismissal of the

25   declaratory relief action for lack of subject matter jurisdiction based on a covenant not

26   to sue made by plaintiff's counsel in motion papers.  *Id.,* at 1059.  In opposing the

27   dismissal, the defendant argued that "[plaintiff's promise not sue] as a statement of

28   counsel in motion papers and briefs, rather than a covenant signed by [plaintiff] itself

and filed with the court—deprives the promise of any power it might otherwise have to moot this case." *Id.* The Court of Appeals rejected this argument and held the covenant in motion papers was sufficient to divest the court of subject matter jurisdiction, stating: "[plaintiff] cannot free itself of the estoppel that its counsel has created with respect to [defendant] merely by retaining different counsel, and no rule of agency law with which we are familiar can relieve [plaintiff] of the estoppel on the ground that its current counsel acted *ultra vires*…[plaintiff] itself is bound, both now and in the future, by its promise not to sue [defendant]." *Id.*

Similarly, in *Spicy Beer Mix, Inc. v. New Castle Beverage*, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014) (*Otero, S.J.*), this Court held that a letter from defendants' counsel, containing a promise not to sue on behalf of defendants, constituted a valid and enforceable covenant that divested the Court of subject matter jurisdiction. *Id.*, at *6. Citing, *Super Sack*, this Court further held that: "[i]t makes no difference that this representation [about the scope of the covenant] is made by Defendants' counsel in motion papers and briefs, rather than in a covenant signed by Defendants themselves. Defendants would still be estopped from asserting anything to the contrary in any future judicial proceedings." *Id.*, at *6; *See also Sunshine Kids Juvenile Prod., LLC v. Indiana Mills & Mfg., Inc.*, 2011 WL 2020761, at *6 (W.D. Wash. May 24, 2011) ("[T]he form of [defendant's] covenant as a statement of counsel in motion papers and briefs (and without a signature) does not undermine the enforceability of an otherwise sufficient covenant not to sue."); *City of Parma, Ohio v. Cingular Wireless, LLC*, 278 F. App'x 636, 640 (6th Cir. 2008) (defendant's counsel's oral statements to court that his client disclaimed rights under agreement at issue divested court of jurisdiction); *True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093, 1095 (D. Ariz. 2005) (counsel's covenant on behalf of defendants in filings and on the record at court hearing divested the court of jurisdiction).

Accordingly, Mr. Trump's Covenant, signed by his counsel and confirmed in multiple court filings, is valid, enforceable and sufficient to divest this Court of

1    subject matter jurisdiction.  [*See* Harder Dec., Ex. A, Covenant.]

2          **F.  Plaintiff Is Not Entitled To A Judgment Against Mr. Trump**

3          Mr. Trump does not contest Plaintiff's assertion that the Settlement Agreement

4    was never formed, which is the primary relief sought in the FAC.  All other relief is

5    pled **in the alternative**.  [ECF No. 14, FAC, p. 17.]  In any event, it is settled law that

6    Mr. Trump's covenant not to sue Plaintiff to enforce the Settlement Agreement

7    divests the Court of subject matter jurisdiction, without the entry of any judgment.

8          In *Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"*, 2008 WL 11334169

9    (C.D. Cal. July 10, 2008) (*Otero, S.J.*), plaintiff General Motors argued that

10   defendants' covenants entitled General Motors to a summary judgment on its

11   declaratory relief claim related to ownership of the patents at issue.  *Id.*, at *6.  This

12   Court rejected the argument and held that the "covenants divest this Court of subject

13   matter jurisdiction," and dismissed the declaratory relief claim against the

14   covenanting defendants without issuing a judgment.  *Id.*

15         In *Spicy Beer Mix, Inc. v. New Castle Beverage*, 2014 WL 7672167 (C.D. Cal.

16   Aug. 1, 2014) (*Otero, S.J.*), plaintiff filed a declaratory relief action to invalidate the

17   patents at issue and for a judgment that the patents were unenforceable based on

18   inequitable conduct by defendants.  *Id.*, at *2.  In holding that the letter from

19   defendants' counsel was a sufficient covenant to divest the Court of subject matter

20   jurisdiction, this Court dismissed the declaratory relief claims without ruling on the

21   validity or unenforceability of the patents.  *Id*., at *7.

22         In *Fleming v. Coverstone*, 2010 WL 11508869 (S.D. Cal. June 17, 2010), the

23   defendant brought a declaratory relief claim against the counterdefendant, seeking a

24   judgment that defendant owed counterdefendant no obligations under the contract at

25   issue.  *Id.*, at *4.  After counterdefendant declared that she was not a party to the

26   contract and covenanted not to sue thereunder, the court dismissed the declaratory

27   relief claim for lack of subject matter jurisdiction without ruling on the validity of the

28   contract or the parties' obligations thereunder.  *Id.*, at 4-5.

1    In *Mytee Prod., Inc. v. Studebaker Enterprises, Inc.*, 2012 WL 4471246 (S.D.

2    Cal. Sept. 26, 2012), the court granted defendants' motion to dismiss plaintiff's

3    declaratory relief claim for non-infringement and invalidity of patent for lack of

4    subject matter jurisdiction, without determining the validity of the patent, based upon

5    a covenant not to sue. *Id.,* at 3.  In dismissing the claim, the court stated: "a covenant

6    not to sue for patent infringement divests the trial court of subject matter jurisdiction

7    over claims that the patent is invalid, because the convent eliminates any case or

8    controversy between the parties." *Id.*, at *2, citing *Dow Jones & Co. v. Ablaise Ltd.*,

9    606 F.3d 1338, 1346 (Fed. Cir. 2010).

10    Here, Mr. Trump's Covenant divests the Court of subject matter jurisdiction

11    because it eliminates any actual controversy.  Accordingly, Plaintiff is not entitled to a

12    judgment on her declaratory relief claim against Mr. Trump.

13    **G. Plaintiff Cannot Create An Actual Controversy Based On A Potential**

14    **Claim For Her Attorneys' Fees Or Disposition Of The $130,000 She**

15    **Received**

16    Plaintiff is not entitled an award of attorneys' fees against Mr. Trump.  Both

17    Plaintiff and Mr. Trump are in agreement that Mr. Trump did not sign the Settlement

18    Agreement, has never taken the position that he is a party to the Settlement

19    Agreement, and has never affirmatively sought to invoke any rights under the

20    Settlement Agreement.  [Harder Dec., Ex. B, Plaintiff's Opposition to Motion to

21    Transfer SDNY Case No. 1:18-cv-03842, pp. 1-2, 8, 17.][1]  Even so, a dispute over

22    attorneys' fees is not sufficient to create subject matter jurisdiction where it does not

23    otherwise exists.

24

25

26    _____

27    [1] Plaintiff's original Complaint and FAC do not seek attorneys' fees.  [*See* ECF

28    No. 1-1, Complaint, p. 7; ECF No. 14, FAC, p. 17.]  Mr. Trump reserves the right to contest Plaintiff's ability to make such a request.

In *City of Parma, Ohio v. Cingular Wireless, LLC*, 278 F. App'x 636 (6th Cir. 2008), plaintiff filed suit against defendant for anticipatory breach of an agreement between the parties and for a declaratory judgment that defendant could not terminate the agreement. *Id.*, at 638. During a hearing before the court, the defendant's counsel represented that the defendant did not take the position that it could terminate the agreement and disclaimed any right to do so. *Id.*, at 640-41. Additionally, defendant never asserted that it could terminate the agreement and the defendant sent a letter to plaintiff stating that it would not seek to terminate the agreement. *Id.* Based on these facts, the Sixth Circuit affirmed the district court's dismissal based on the "absence of a case or controversy." *Id.*, at 641-42. The court also expressly held that "if [plaintiff's] efforts to secure a declaratory judgment are for the purpose of exacting attorney's fees, that interest alone will not suffice to satisfy the case or controversy requirement." *Id.*, at 642, citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("An interest in attorney's fees is … insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").

Similarly, the court in *True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093 (D. Ariz. 2005) held that the plaintiffs' "prayer for attorneys' fees does not provide an independent basis for jurisdiction" after it found that the defendants' covenant, made by counsel in fillings and on the record at a hearing, divested the court of jurisdiction to hear plaintiffs' declaratory relief claim because "[plaintiff's] fees request is simply a remedy sought for the declaratory judgment claims over which the Court has no subject matter jurisdiction." *Id.*, at 1100; *see also Clear Channel Outdoor, Inc. v. Lee*, 2009 WL 57110, at *2 (N.D. Cal. Jan. 8, 2009) (declining to consider motion for attorneys' fees after finding the court lacked subject matter jurisdiction).

Here, a request for attorneys' fees by Plaintiff would be nothing more than a remedy sought in connection with her declaratory relief claim, over which this Court does not possess subject matter jurisdiction. Accordingly, subject matter jurisdiction

1   cannot exist based on Plaintiff's potential claim for her attorneys' fees.

2        Finally, any dispute between Plaintiff and defendant Essential Consultants,

3   LLC ("EC") relating to the $130,000 that EC paid to Plaintiff does not create an

4   actual controversy between Plaintiff and Mr. Trump.  Mr. Trump takes no position

5   regarding these funds.  In other words, Mr. Trump is not making any claim, and will

6   not make any claim, to these funds.

7   **IV.   <u>CONCLUSION</u>**

8        For the foregoing reasons, Mr. Trump respectfully requests that the Court

9   dismiss with prejudice Plaintiff's declaratory relief claim against him for lack of

10  subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

11

12  Dated: October 8, 2018            HARDER LLP

13

14                          By:  */s/ Charles J. Harder*
                                 _____
14                                CHARLES J. HARDER

15                                Attorneys for Defendant
                                  DONALD J. TRUMP

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS

# Exhibit 2

1   AVENATTI & ASSOCIATES, APC
    Michael J. Avenatti, State Bar No. 206929
2   Ahmed Ibrahim, State Bar No. 238739
    520 Newport Center Drive, Suite 1400
3   Newport Beach, CA 92660
    Telephone:   949.706.7000
4   Facsimile:   949.706.7050

5   Attorneys for Plaintiff Stephanie Clifford
    a.k.a. Stormy Daniels

6

7

8                  **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STEPHANIE CLIFFORD a.k.a.              CASE NO.:  2:18-cv-06893-SJO-FFM
    STORMY DANIELS,
12
                       Plaintiff,          **PLAINTIFF STEPHANIE**
13                                         **CLIFFORD'S NOTICE OF APPEAL**
            vs.                            **TO THE UNITED STATES COURT**
14                                         **OF APPEALS FOR THE NINTH**
                                           **CIRCUIT**
15  DONALD J. TRUMP,

16
                       Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF APPEAL

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **NOTICE IS HEREBY GIVEN** that plaintiff Stephanie Clifford hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order Granting Defendant Donald J. Trump's Special Motion to Dismiss/Strike Complaint and Order Denying as Moot Defendant Donald J. Trump's Alternative Motion to Dismiss Complaint, entered in this Court on October 15, 2018 [Dkt No. 36], and all other orders and rulings of the Court that were adverse to Plaintiff, whether or not subsumed within the October 15 Order.

Dated:  October 15, 2018          AVENATTI & ASSOCIATES, APC

                     By:      /s/ Michael J. Avenatti
                            Michael J. Avenatti
                            Attorneys for Plaintiff Stephanie Clifford
                            a.k.a. Stormy Daniels

# Exhibit 3



# Exhibit 4

1
AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
2
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
3
Newport Beach, CA 92660
Telephone: 949.706.7000
4
Facsimile: 949.706.7050

5
Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson
6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11
STEPHANIE CLIFFORD a.k.a.
STORMY DANIELS a.k.a. PEGGY          CASE NO.: 2:18-cv-02217-SJO-FFM
12
PETERSON, an individual,
                                     **PLAINTIFF'S RESPONSE TO**
13
            Plaintiff,               **DEFENDANT MICHAEL COHEN'S**
                                     **SPECIAL MOTION TO STRIKE**
14
      vs.

15

16
DONALD J. TRUMP a.k.a. DAVID
DENNISON, and individual,
17
ESSENTIAL CONSULTANTS, LLC, a
Delaware Limited Liability Company,
18
MICHAEL COHEN and DOES 1
through 10, inclusive,

19

20
            Defendants.

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Defendant Michael Cohen ("Mr. Cohen") has filed a California Code of Civil Procedure section 425.16 Special Motion to Strike Plaintiff Stephanie Clifford's Defamation claim against him.   Alternatively, Mr. Cohen seeks to dismiss the claim under Federal Rules of Civil Procedure 12(b)(6).   Mr. Cohen's Motion should be denied outright or otherwise deemed moot.

*First*, the California anti-SLAPP statute is treated as substantive law in federal court.   As substantive law, it is subject to a choice of law analysis.   <u>Francis v. Wynn Las Vegas</u>, 557 F. App'x 662, 664 (9th Cir. 2014).   Under California's governmental interest analysis, the Court must apply New York, not California law because California has no interest in the litigation.   By contrast, New York has a strong interest because Mr. Cohen resides there.   Because New York's anti-SLAPP statute would not be applicable here, Mr. Cohen's anti-SLAPP motion must be denied without further analysis.   Indeed, even if the law of Texas, Plaintiff's domicile, were to govern, Mr. Cohen has not invoked Texas law and his Motion should thus be denied.

*Second*, Mr. Cohen's Motion should be denied as moot.   Pursuant to Federal Rule of Civil Procedure 15, Plaintiff intends to seek leave to file a Second Amended Complaint that does not include the defamation claim.   Because denial of leave to amend would directly conflict with the Federal Rules of Civil Procedure, application of California's anti-SLAPP statute is improper.   <u>Verizon Delaware, Inc. v. Covad Communications</u>, 377 F.3d 1081, 1091 (9th Cir. 2004).   Accordingly, there is no reason to address the Motion on the merits and it should be denied regardless of what law applies.

**PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL COHEN'S SPECIAL MOTION TO STRIKE**

## II.   ARGUMENT

### A.   California's Anti-SLAPP Statute Does Not Govern.

#### 1.   Because Anti-SLAPP Statutes are Treated as Substantive Law in Federal Court, the Court Must Perform a Choice of Law Analysis to Determine Whether California's Anti-SLAPP Law Applies.

Mr. Cohen's claim that California's anti-SLAPP statute applies because the procedural laws of California apply is false and at odds with extensive controlling Ninth Circuit precedent.  It is a fundamental rule of federal litigation that "[w]hen a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."  Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Therefore, if the law to be applied is substantive, it is subject to a choice of law analysis. To the extent the statute applies at all, the Ninth Circuit has repeatedly stated that California's anti-SLAPP statute is treated as substantive, not procedural, law in federal courts.  See Francis v. Wynn Las Vegas, 557 F. App'x 662, 664 (9th Cir. 2014) (performing choice of law analysis do determine which state's anti-SLAPP law to apply); Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1184 (9th Cir. 2013) ("Every circuit that has considered the issue has agreed with our conclusion in Newsham that anti-SLAPP statutes like California's confer substantive rights under Erie").

If federal courts sitting in diversity automatically applied the anti-SLAPP statute of the state where they sat, a choice of law analysis on which state's anti-SLAPP law should apply would not be necessary.  However, the Ninth Circuit has performed such an analysis in multiple cases.  In 2014, the Ninth Circuit performed a choice of law analysis to determine whether a federal court sitting in California should apply California or Nevada anti-SLAPP law.  See Francis, 557 F. App'x at 664.  The Ninth Circuit in 2016 engaged in an extensive choice of law analysis regarding whether to apply California's anti-SLAPP statute in a case that had been transferred from New Jersey.  See Sarver v. Chartier, 813 F.3d 891, 897-900 (9th Cir. 2016).  If the Ninth Circuit followed Mr. Cohen's line of reasoning, no choice of law analysis would have

1   been necessary because New Jersey was the original forum and New Jersey has no anti-
2   SLAPP law.  See id. at 899.

3   The primary authority Mr. Cohen cites in support of his argument, <u>Liberty</u>
4   <u>Synergistics Inc. v. Microflo Ltd.</u>, 718 F.3d 138 (2d Cir. 2013), actually decided a very
5   narrow point that is irrelevant here.  It explicitly stated that

> if state conflict-of-law principles call for a rule of decision ***(1) that would***
> ***apply to the suit if it were brought in state court***, (2) that is "substantive"
> within the meaning if <u>Erie</u>, and (3) that is not displaced by a valid federal
> law or rule governing the same issue, then the Rules of Decision Act . .
> . requires the federal court sitting in diversity to apply the state rule,
> irrespective of whether that rule is understood to be "procedural" or
> "substantive" as a matter of state law. ***We address below the first of these***
> ***issues, which is the only one contested by the parties.***

12   <u>Liberty Synergistics Inc.</u>, 718 F.3d at 153 (emphasis added).  In other words, <u>Liberty</u>
13   <u>Synergistics</u> *only* considered whether California *state* courts treat the state's anti-SLAPP
14   law as procedural, not whether *federal* courts should do so as well, or whether the anti-
15   SLAPP law was subject to a choice of law analysis.  This fact has been recognized by
16   the Second Circuit in a subsequent appeal *in the same case*.  See <u>Liberty Synergistics</u>
17   <u>Inc. v. Microflo Ltd.</u>, 637 F. App'x 33, 34 (2d Cir. 2016) ("We further note that, despite
18   the district court's and the parties' apparent assumption that our decision in the prior
19   appeal of this case answered [whether the California's anti-SLAPP law applied in
20   federal courts] in the affirmative, our prior decision expressly declined to reach it."); <u>see</u>
21   <u>also</u> <u>In re Gawker Media LLC</u>, 571 B.R. 612, 626–27 (Bankr. S.D.N.Y. 2017) ("The
22   Second Circuit did not decide in <u>Liberty Synergistics</u> whether the California anti-SLAPP
23   statute is substantive under <u>Erie</u>).  By his own admission, the two district court cases
24   Cohen cites rely on <u>Liberty Synergistics</u> and should be disregarded as well.

25   In sum, a choice of law analysis is necessary to determine whether California's
26   anti-SLAPP statute applies.

27

28

**PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL COHEN'S SPECIAL MOTION TO STRIKE**

## 2. New York, Not California, Law Governs the Anti-SLAPP Motion.

Mr. Cohen's anti-SLAPP Motion applies California law.  However, the law of New York, the state where Mr. Cohen resides [Dkt. 1 at 6], should govern the anti-SLAPP motion.  Therefore a choice of law analysis is necessary.  California courts use the governmental interest choice of law analysis:

> To determine the correct choice of law, we apply a three-step analysis. First, we determine whether the two concerned states have different laws. Second, we consider whether each state has an interest in having its law applied to this case. Finally, if the laws are different and each state has an interest in having its own law applied, we apply the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state.

Paulsen v. CNF Inc., 559 F.3d 1061, 1080 (9th Cir. 2009) (quotation omitted).

The first question, whether New York and California anti-SLAPP law differs, is simple.  California's anti-SLAPP statute is very broad.  See Cal. Civ. Proc. Code § 425.16.  New York's statute is significantly narrower and only applies to actions related to applying for permits, zoning changes, licenses, or similar entitlements from the government.  See N.Y. Civ. Rights Law § 76-a.  It is therefore apparent that Ms. Clifford's defamation claims are outside of the scope of New York's anti-SLAPP statute.  Accordingly, a conflict is present between the anti-SLAPP laws of the two states.

The Court must next consider the interests of New York and California.  See Paulsen, 559 F.3d at 1080.  Where no party resides in California, California's interest is very weak and the party seeking the application of another state's law "need only show some legitimate . . . interest." McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1424–25 (9th Cir. 1989); see also Payoda, Inc. v. Photon Infotech, Inc., No. 14-CV-04103-BLF, 2016 WL 1059515, at *7 (N.D. Cal. Mar. 17, 2016) (performing governmental interest analysis in a defamation case and determining that Indian law would apply because "California has no interest in applying its laws to a case between a New York

**PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL COHEN'S SPECIAL MOTION TO STRIKE**

corporation and an Indian company"); <u>Mero v. U.S. Figure Skating Ass'n</u>, No. 05-CV-73069, 2006 WL 163529, at *6–7 (E.D. Mich. Jan. 20, 2006) (performing California governmental interest analysis and concluding the California anti-SLAPP law would not apply because no party was a resident of California). Accordingly, California has no interest in a dispute between a New York resident [Dkt. No. 1 at 6] and a Texas resident. New York, on the other hand, has an interest in its law being applied because Mr. Cohen resides there.

Further, anti-SLAPP laws serve to protect the defendant, so the state of the defendant's residence is the only one that has an interest. <u>See Competitive Techs. v. Fujitsu Ltd.</u>, 286 F. Supp. 2d 1118, 1158–59 (N.D. Cal. 2003) ("California appears to have no governmental interest in having its [anti-SLAPP] law applied" where none of the counterclaim defendants resided in California); <u>Hurtado v. Superior Court</u>, 11 Cal. 3d 574, 581, 522 (1974) ("Mexico has no interest in applying its limitation of damages—Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by nonMexican defendants."). On the other hand, New York "has an interest in regulating the conduct of its citizens, the state has an interest in having its defamation rules apply when an allegedly defamatory statement is uttered within that state." <u>Condit v. Dunne</u>, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004); <u>see also</u> <u>Block v. First Blood Assocs.</u>, 691 F. Supp. 685, 698 (S.D.N.Y. 1988) (in defamation action transferred from California, court performing governmental interest analysis concluded that New York law would apply on litigation privilege to defamation because "New York has a compelling interest in policing tortious conduct committed in New York, by a New York attorney, with reference to future or pending litigation in New York."); <u>Reich v. Purcell</u>, 67 Cal. 2d 551, 556 (1967) ("A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile. . ."). Accordingly, California has no interest in applying its anti-SLAPP statute to protect Mr. Cohen, a nonresident, while New York has an interest in

applying its defamation law because he resides there and uttered the defamatory statement there.

In sum, California's interest in this action is nonexistent, while New York's interest is strong.  Therefore, California anti-SLAPP law cannot be applied.

### 3.  Even if Texas Law Applied, the Motion Should Still be Denied.

As the Court will likely recall, this Court previously determined that because Plaintiff is a citizen of the state of Texas, Texas law governed Plaintiff's defamation claim against Mr. Trump.  Even if this was the case here as well,[1] and Texas law were to apply, California law would not govern.  Accordingly, because Mr. Cohen has failed to invoke Texas law or brief substantive Texas law, the Motion should still be denied.

### B.  Alternately, the Motion Should Be Denied as Moot Because Plaintiff Intends to Seek Leave to Amend the Complaint.

In the alternative, and regardless of the foregoing, Mr. Cohen's Motion should be denied as moot.  Pursuant to Federal Rule of Civil Procedure 15, Plaintiff intends to seek leave to file a Second Amended Complaint that does not include the defamation claim against Mr. Cohen.  Accordingly, there is no reason to address the Motion on the merits.

In Verizon Delaware, Inc. v. Covad Communications, the Ninth Circuit affirmed the district court's denial of a California anti-SLAPP motion after the plaintiff in that action sought leave to amend the complaint.  377 F.3d 1081, 1091 (9th Cir. 2004).  The Ninth Circuit acknowledged that California's anti-SLAPP statute does not govern when its application would conflict with the application of the Federal Rules of Civil Procedure.  Id.  The Court held that to deny leave to amend under Rule 15 in the face of a California anti-SLAPP motion would present "a direct collision with a federal procedural rule."  Id.  Accordingly, the district court did not err when it refused to consider the anti-SLAPP motion.  Id.

---

[1] The same result should not be reached here because in that instance the case originated in New York before it was transferred to California.  As a result, the Court was applying New York's choice of law analysis, not California's.  Here, California's choice of law analysis dictates that New York law governs.

**PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL COHEN'S SPECIAL MOTION TO STRIKE**

1       The same result should be reached here.  Plaintiff will seek leave to amend to omit

2 the defamation claim and Mr. Cohen's Motion is therefore moot and should be denied as

3 such.[2]

4 **III.   CONCLUSION**

5       For the reasons stated above, Plaintiff respectfully requests that Mr. Cohen's

6 Motion be denied because California's anti-SLAPP statute does not govern.

7 Alternatively, the Motion should be denied as moot because Plaintiff intends to seek

8 leave to amend to omit the defamation claim against Mr. Cohen.

9

10 Dated:  October 26, 2018                AVENATTI & ASSOCIATES, APC

11                            By:      /s/ Michael J. Avenatti

12                               Michael J. Avenatti
                              Ahmed Ibrahim

13                               Attorneys for Plaintiff Stephanie Clifford
                              a.k.a. Stormy Daniels a.k.a. Peggy Peterson

14

15

16

17

18

19

20

21

22

23

24

25

26

27 _____

28 [2] Should the Court reach the merits of the Motion for any reason, Plaintiff reserves all rights to oppose any subsequent request for attorneys' fees filed by Mr. Cohen.

**PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL COHEN'S SPECIAL MOTION TO STRIKE**

# Exhibit 5

# 2017 Real Rate Report® Snapshot

The Industry's
Leading Analysis
of Law Firm
Rates, Trends,
and Practices

 Wolters Kluwer

 CEB
is now Gartner.

# Table of Contents—2017 Snapshot

**A Letter to Our Readers** • 4

**How to Use This Report** • 5

**A Note on Comparability of Data** • 6

**Section I: High-Level Data Cuts** • 9
- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis** • 42
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Partners and Associates by Industry Group, Division, and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Professional Services
- Technology and Telecommunications

**Section III: Practice Area Analysis** • 60
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Intellectual Property: Other
- Labor and Employment
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities** • 122
- Baltimore, MD
- Boston, MA
- Chicago, IL
- Houston, TX
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- San Jose, CA
- Washington, DC

**Section V: International Analysis** • 148

**Section VI: Matter Staffing Analysis** • 167

**Appendix: Data Methodology** • 172

# Section I: High-Level Data Cuts

## Cities

2016—Real Rates for Partners and Associates                                        Trend Analysis (Mean)

| City | Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Jacksonville, FL | Partner | 50 | $247.25 | $325.00 | $400.00 | $332.82 | $348.71 | $330.45 |
| | Associate | 30 | $173.89 | $185.08 | $250.51 | $223.85 | $228.16 | $242.37 |
| Kansas City, MO | Partner | 214 | $320.00 | $395.60 | $475.00 | $406.44 | $403.99 | $376.65 |
| | Associate | 207 | $215.60 | $250.00 | $300.00 | $267.90 | $269.31 | $256.98 |
| Knoxville, TN | Partner | 23 | $200.00 | $230.00 | $300.00 | $261.38 | $256.42 | $248.08 |
| | Associate | 13 | $200.00 | $200.00 | $200.00 | $206.57 | $190.19 | $186.51 |
| Las Vegas, NV | Partner | 73 | $250.00 | $373.01 | $475.00 | $382.93 | $340.42 | $355.24 |
| | Associate | 55 | $185.00 | $250.00 | $290.00 | $251.20 | $238.69 | $236.38 |
| Lexington, KY | Partner | 30 | $290.00 | $302.50 | $365.00 | $317.72 | $335.59 | $310.31 |
| | Associate | 18 | $160.00 | $190.00 | $212.14 | $193.61 | $209.22 | $198.41 |
| Little Rock, AR | Partner | 41 | $219.52 | $250.00 | $301.74 | $274.21 | $278.90 | $278.72 |
| | Associate | 17 | $170.00 | $175.00 | $210.00 | $191.99 | $192.19 | $192.36 |
| Los Angeles, CA | Partner | 1,125 | $425.00 | $640.00 | $869.75 | $660.94 | $649.85 | $599.77 |
| | Associate | 1,566 | $325.00 | $478.74 | $638.97 | $496.77 | $461.72 | $435.33 |
| Louisville, KY | Partner | 61 | $269.71 | $335.00 | $406.48 | $336.97 | $335.38 | $311.57 |
| | Associate | 36 | $177.50 | $197.50 | $215.00 | $197.62 | $194.10 | $189.58 |
| Madison, WI | Partner | 32 | $331.50 | $375.00 | $431.61 | $408.26 | $403.92 | $344.60 |
| | Associate | 25 | $260.00 | $290.59 | $360.00 | $331.06 | $277.89 | $257.83 |
| Memphis, TN | Partner | 59 | $275.00 | $332.65 | $395.97 | $334.75 | $298.81 | $303.72 |
| | Associate | 36 | $185.00 | $207.42 | $257.88 | $215.74 | $210.89 | $206.83 |
| Miami, FL | Partner | 371 | $275.00 | $400.00 | $556.65 | $433.71 | $430.78 | $409.51 |
| | Associate | 282 | $200.00 | $267.38 | $375.00 | $302.93 | $289.89 | $267.59 |
| Milwaukee, WI | Partner | 177 | $280.00 | $360.00 | $438.13 | $380.74 | $379.93 | $365.91 |
| | Associate | 144 | $216.97 | $255.00 | $285.50 | $257.93 | $244.78 | $241.89 |
| Minneapolis, MN | Partner | 286 | $287.78 | $404.50 | $520.00 | $417.38 | $427.59 | $404.16 |
| | Associate | 253 | $218.18 | $275.00 | $325.83 | $282.26 | $275.79 | $262.10 |
| Mobile, AL | Partner | 13 | $225.00 | $285.00 | $382.50 | $296.45 | $259.59 | $264.74 |
| | Associate | n/a | n/a | n/a | n/a | n/a | $165.68 | $166.43 |
| Montgomery, AL | Partner | 15 | $195.00 | $290.00 | $350.00 | $291.59 | $296.58 | $300.52 |
| | Associate | n/a | n/a | n/a | n/a | n/a | $176.25 | $183.41 |
| Nashville, TN | Partner | 134 | $300.00 | $388.40 | $460.00 | $385.17 | $369.18 | $353.25 |
| | Associate | 107 | $202.50 | $225.00 | $285.00 | $243.53 | $222.77 | $203.15 |
| New Haven, CT | Partner | 25 | $360.00 | $400.00 | $444.44 | $405.57 | $383.89 | $368.70 |
| | Associate | 19 | $250.00 | $275.00 | $295.99 | $266.40 | $263.48 | $295.09 |
| New Orleans, LA | Partner | 128 | $215.00 | $280.00 | $346.55 | $291.49 | $291.94 | $275.40 |
| | Associate | 102 | $160.00 | $200.00 | $225.75 | $200.29 | $200.58 | $210.45 |

© 2017 Gartner, Inc. and/or its affiliates. All rights reserved. GCR174551

# Section II: Industry Analysis

## Industrials
By Practice Area and Matter Type

### 2016—Real Rates for Partners and Associates

Trend Analysis (Mean)

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|---|---|---|---|
| Bankruptcy and Collections | Litigation | Partner | 53 | $315.00 | $366.42 | $424.00 | $370.11 | $346.99 | $361.19 |
| | | Associate | 43 | $225.00 | $250.00 | $370.00 | $278.01 | $275.30 | $248.06 |
| | Non-Litigation | Partner | 19 | $340.00 | $395.00 | $500.00 | $424.54 | $613.01 | $524.00 |
| | | Associate | 12 | $221.00 | $255.50 | $313.83 | $287.86 | $391.79 | $397.99 |
| Commercial | Litigation | Partner | 258 | $305.50 | $452.50 | $627.61 | $486.46 | $463.29 | $447.62 |
| | | Associate | 238 | $240.00 | $300.00 | $440.00 | $341.58 | $313.90 | $298.19 |
| | Non-Litigation | Partner | 262 | $370.00 | $465.00 | $600.00 | $517.51 | $548.98 | $502.13 |
| | | Associate | 143 | $244.48 | $308.71 | $455.00 | $362.96 | $355.14 | $337.75 |
| Corporate: Mergers, Acquisitions, and Divestitures | Non-Litigation | Partner | 706 | $418.00 | $644.50 | $825.00 | $647.12 | $665.66 | $631.27 |
| | | Associate | 580 | $310.00 | $423.00 | $569.75 | $446.91 | $441.81 | $428.06 |
| Corporate: Regulatory and Compliance | Litigation | Partner | 65 | $683.00 | $759.00 | $865.00 | $758.81 | $679.98 | $643.86 |
| | | Associate | 63 | $390.00 | $480.00 | $586.35 | $492.41 | $435.10 | $420.55 |
| | Non-Litigation | Partner | 226 | $400.00 | $546.50 | $755.00 | $604.48 | $589.84 | $526.99 |
| | | Associate | 140 | $265.00 | $340.00 | $510.50 | $403.80 | $425.67 | $361.37 |
| Corporate: Other | Litigation | Partner | 755 | $290.00 | $499.80 | $725.00 | $536.78 | $512.60 | $485.73 |
| | | Associate | 757 | $195.00 | $350.00 | $490.00 | $369.40 | $350.66 | $340.22 |
| | Non-Litigation | Partner | 1,465 | $485.00 | $695.00 | $922.50 | $719.68 | $747.91 | $656.16 |
| | | Associate | 1,452 | $350.00 | $476.17 | $655.00 | $509.91 | $499.77 | $434.56 |
| Environmental | Litigation | Partner | 38 | $375.00 | $470.00 | $525.00 | $469.53 | $487.81 | $419.44 |
| | | Associate | 25 | $280.00 | $295.00 | $305.00 | $310.55 | $335.83 | $320.50 |
| | Non-Litigation | Partner | 81 | $385.80 | $516.47 | $612.00 | $522.95 | $490.06 | $478.16 |
| | | Associate | 53 | $270.00 | $350.00 | $410.00 | $357.48 | $352.58 | $317.10 |
| Finance and Securities | Litigation | Partner | 9 | $420.74 | $674.00 | $950.00 | $657.48 | $742.07 | $631.74 |
| | | Associate | 7 | $300.00 | $392.00 | $444.00 | $376.99 | $363.98 | $384.62 |
| | Non-Litigation | Partner | 287 | $383.00 | $650.00 | $836.25 | $642.24 | $690.75 | $624.85 |
| | | Associate | 280 | $265.00 | $415.00 | $589.50 | $449.47 | $498.30 | $438.32 |
| General Liability | Litigation | Partner | 664 | $210.00 | $258.49 | $366.00 | $329.07 | $312.84 | $316.62 |
| | | Associate | 564 | $175.00 | $205.00 | $253.74 | $240.79 | $226.84 | $225.00 |
| Intellectual Property: Patents | Litigation | Partner | 89 | $460.00 | $625.00 | $740.00 | $627.35 | $589.24 | $594.62 |
| | | Associate | 74 | $289.08 | $367.50 | $487.30 | $389.36 | $383.56 | $355.27 |
| | Non-Litigation | Partner | 147 | $324.00 | $380.00 | $525.00 | $455.23 | $477.01 | $469.70 |
| | | Associate | 198 | $240.00 | $295.00 | $461.50 | $369.95 | $345.85 | $332.60 |
| Intellectual Property: Trademarks | Non-Litigation | Partner | 31 | $355.00 | $505.00 | $650.00 | $535.64 | $525.81 | $472.32 |
| | | Associate | 27 | $235.00 | $288.73 | $525.06 | $383.24 | $328.56 | $304.56 |

© 2017 Gartner, Inc. and/or its affiliates. All rights reserved. GCR373651

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Firm Size and Matter Type

**2016—Real Rates for Partners and Associates**                    Trend Analysis (Mean)

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Litigation | Partner | 110 | $235.00 | $276.20 | $350.06 | $299.65 | $291.39 | $301.52 |
| | | Associate | 75 | $185.00 | $225.00 | $275.00 | $237.21 | $224.78 | $214.47 |
| | Non-Litigation | Partner | 88 | $235.00 | $263.64 | $325.00 | $274.66 | $292.95 | $307.42 |
| | | Associate | 55 | $185.00 | $210.00 | $240.00 | $213.48 | $215.86 | $218.92 |
| 51-200 Lawyers | Litigation | Partner | 114 | $285.14 | $335.89 | $417.36 | $363.75 | $342.45 | $352.70 |
| | | Associate | 70 | $200.00 | $245.00 | $275.00 | $254.18 | $230.22 | $233.72 |
| | Non-Litigation | Partner | 130 | $288.00 | $360.00 | $410.00 | $363.22 | $353.98 | $365.67 |
| | | Associate | 85 | $200.00 | $224.00 | $255.20 | $229.05 | $288.82 | $352.07 |
| 201-500 Lawyers | Litigation | Partner | 81 | $300.00 | $360.00 | $510.00 | $427.40 | $424.71 | $428.56 |
| | | Associate | 54 | $250.00 | $265.84 | $305.00 | $285.01 | $303.60 | $297.48 |
| | Non-Litigation | Partner | 147 | $350.00 | $422.03 | $519.00 | $460.43 | $436.46 | $414.89 |
| | | Associate | 93 | $239.75 | $276.26 | $350.00 | $321.26 | $277.18 | $271.27 |
| 501-1,000 Lawyers | Litigation | Partner | 24 | $394.00 | $475.00 | $579.00 | $519.27 | $546.74 | $526.67 |
| | | Associate | 26 | $250.00 | $292.50 | $460.00 | $344.85 | $371.82 | $332.48 |
| | Non-Litigation | Partner | 35 | $428.00 | $595.00 | $710.00 | $587.98 | $632.48 | $567.52 |
| | | Associate | 31 | $325.00 | $395.90 | $504.00 | $418.83 | $393.92 | $370.23 |
| More Than 1,000 Lawyers | Litigation | Partner | 34 | $395.00 | $446.89 | $625.00 | $532.81 | $618.26 | $660.20 |
| | | Associate | 34 | $190.00 | $238.01 | $370.00 | $279.27 | $378.84 | $394.45 |
| | Non-Litigation | Partner | 34 | $410.00 | $484.23 | $800.00 | $583.01 | $707.08 | $698.65 |
| | | Associate | 25 | $275.00 | $350.00 | $425.00 | $367.45 | $475.52 | $474.56 |

© 2017 Gartner Inc. and/or its affiliates. All rights reserved. GCR17A661

wkelmsolutions.com
gartner.com/ceb

# Section V: International Analysis

## United Kingdom

### 2016—Real Rates for Partners, Associates, and Paralegals

Trend Analysis (Mean)

| Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|---|---|
| Partner | 782 | $550.00 | $697.67 | $848.04 | $705.14 | $746.69 | $723.71 |
| Associate | 1,636 | $341.57 | $439.76 | $574.68 | $467.02 | $488.92 | $473.58 |
| Paralegal | 685 | $167.68 | $213.41 | $250.34 | $216.97 | $221.57 | $214.04 |

## United Kingdom
By Practice Area and Matter Type

### 2016—Real Rates for Partners, Associates, and Paralegals

Trend Analysis (Mean)

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | Litigation | Partner | 21 | $511.21 | $603.17 | $691.85 | $611.72 | $774.87 | $786.09 |
| | | Associate | 29 | $372.57 | $425.78 | $543.47 | $435.60 | $499.02 | $498.63 |
| | | Paralegal | n/a | n/a | n/a | n/a | n/a | $229.75 | $280.77 |
| | Non-Litigation | Partner | 81 | $481.55 | $653.80 | $732.35 | $627.08 | $653.24 | $660.58 |
| | | Associate | 129 | $330.77 | $386.18 | $460.00 | $411.88 | $423.26 | $419.35 |
| | | Paralegal | 38 | $143.37 | $203.78 | $260.09 | $204.73 | $217.34 | $216.11 |
| Corporate: Mergers, Acquisitions, and Divestitures | Non-Litigation | Partner | 62 | $570.75 | $726.17 | $925.88 | $753.93 | $801.62 | $778.27 |
| | | Associate | 131 | $377.50 | $549.96 | $724.50 | $549.87 | $547.72 | $469.84 |
| | | Paralegal | 12 | $214.87 | $283.09 | $332.60 | $278.37 | $280.96 | $238.91 |
| Corporate: Regulatory and Compliance | Litigation | Partner | 11 | $724.41 | $775.00 | $951.24 | $849.11 | $862.45 | $882.48 |
| | | Associate | 28 | $328.67 | $432.06 | $552.71 | $460.04 | $489.69 | $534.63 |
| | | Paralegal | 52 | $144.58 | $240.34 | $243.07 | $205.73 | $173.84 | $200.33 |
| | Non-Litigation | Partner | 78 | $618.50 | $713.27 | $862.87 | $708.37 | $722.73 | $706.77 |
| | | Associate | 112 | $373.45 | $456.72 | $559.39 | $470.27 | $443.48 | $473.31 |
| | | Paralegal | 25 | $189.15 | $225.11 | $258.69 | $225.74 | $231.06 | $219.93 |
| Corporate: Other | Litigation | Partner | 25 | $645.74 | $851.94 | $1,035.99 | $838.95 | $680.91 | $856.87 |
| | | Associate | 47 | $404.89 | $489.00 | $649.25 | $520.00 | $429.78 | $485.70 |
| | | Paralegal | 15 | $245.36 | $279.30 | $283.56 | $261.04 | $233.06 | $272.12 |
| | Non-Litigation | Partner | 132 | $639.45 | $730.74 | $857.17 | $753.59 | $731.78 | $706.38 |
| | | Associate | 250 | $367.50 | $479.43 | $576.83 | $483.76 | $468.80 | $458.76 |
| | | Paralegal | 120 | $166.19 | $212.62 | $253.54 | $203.68 | $165.32 | $161.39 |
| Finance and Securities | Litigation | Partner | 11 | $629.43 | $888.69 | $1,098.92 | $872.95 | $820.01 | $942.92 |
| | | Associate | 35 | $254.58 | $310.79 | $411.95 | $368.55 | $537.74 | $502.31 |
| | | Paralegal | 13 | $165.38 | $203.98 | $269.93 | $220.13 | $208.89 | $242.89 |
| | Non-Litigation | Partner | 276 | $651.74 | $743.13 | $892.75 | $772.42 | $840.18 | $808.66 |
| | | Associate | 590 | $363.11 | $477.48 | $618.00 | $495.63 | $526.48 | $508.73 |
| | | Paralegal | 230 | $174.39 | $211.69 | $262.87 | $233.74 | $244.97 | $222.76 |

© 2017 Gartner, Inc. and/or its affiliates. All rights reserved. GCB173651