# EXHIBIT "A"

Case 2:19-cv-06893-MWF-RAO Document 48 1464 Filed 10/03/19 Page 11 of 48 Page ID #226
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 1 of 11 PAGEID #: 1
#:1466

AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 18-cv-06893-SJO-FFM |
| Donald J. Trump | ) |
| *Defendant* | ) |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*   12/11/2018   .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date:  9-30-2019

*CLERK OF COURT*

Derek Davis

*Signature of Clerk or Deputy Clerk*

1183



**EXHIBIT**

tabbies®

"A"

UNITED STATES DISTRICT COURT
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.: CV 18-06893-SJO (FFMx)**      **DATE: December 11, 2018**

**TITLE:** Stephanie Clifford v. Donald J. Trump et al.

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                        Carol Zurborg
Courtroom Clerk                         Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**     **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                                 Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For
Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie
Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition").
Defendant filed a Reply on November 12, 2018. The Court held argument on this matter on
December 3, 2018. For the following reasons, the Court **GRANTS IN PART AND DENIES IN
PART** Defendant's Motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case.
(See Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's
Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the
Complaint. (See generally Order Granting Special Motion.)  The Court concluded that Mr.
Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion.
(Order Granting Special Motion at 10-12.)  The Court also granted Defendant attorneys' fees
under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion.
(Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion. (See Tr. of Proceedings,
ECF No. 45.)  The Court subsequently submitted this matter.

///
///
///
///
///

Case 2:19-cv-00893-MHW-KAJ Doc #: 48 Filed 10/03/19 Page 4 of 48 PAGEID #: 228
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 3 of 11 PAGEID #: 3
#: 1468

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**       **DATE:** **December 11, 2018**

II.    ANALYSIS

    A.    Legal Standard

        1.    Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs. The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court "**shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees. "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity." *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)). To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.    Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA. (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

Case 2:19-cv-00883-MHW-KAJ Doc #: 48-16 Filed: 06/03/19 Page: 5 of 29 PAGEID #: 1229
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 4 of 11 PAGEID #: 4
#: 1469
Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 3 of 9 Page ID #:1340

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** **CV 18-06893-SJO (FFMx)**     **DATE:** **December 11, 2018**

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive." *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018). When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance. Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions. *See id.* In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure. *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

B.     Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

1.     What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4, ECF No. 43.) Defendant divides his request into four distinct categories of fees: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.) Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation. (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike. For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract. *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**      **DATE:** **December 11, 2018**

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example. In the instant case, Plaintiff only brought a single defamation cause of action against Defendant. However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion. The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position. In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted). The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).' In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant. As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion. Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim. The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum. The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)). The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184 ("Here, because defendants achieved the dismissal of all

---

[1] Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court. "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

Case 2:19-cv-06893-MHW-FERD Doc #: 48-16 Filed: 06/03/19 Page: 1 of 11 PAGEID #: 231
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 6 of 11 PAGEID #: 6
Case 2:18-cv-06893-SJO-FFM   Document 46   Filed 12/11/18   Page 5 of 9   Page ID #:1342

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: __CV 18-06893-SJO (FFMx)__        DATE: __December 11, 2018__

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014). The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs. The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527. When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing. Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added). Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several. In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action. In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case. "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at \*2 (C.D. Cal. June 12, 2012). Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

### 2.      Is Defendant's Request Reasonable?

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related questions. First, are Defendant's requested hourly

Case 2:19-cv-06669-MHW-KAJ Doc #: 48-2 Filed: 06/31/9720 Page: 8 of 48 ERage #: 132
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 7 of 11 PAGEID #: 7

Case 2:18-cv-06893-SJO-FFM   Document 46   Filed 12/11/18   Page 6 of 9   Page ID #:1343

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-06893-SJO (FFMx)**          **DATE:  December 11, 2018**

rates per attorney reasonable?  Second, are the hours expended per task by attorney reasonable? The Court addresses these questions in turn.

        a.    Rates Charged

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour. (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210–11. Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law. (Mot. at 14-16.) The Court also is mindful of the fact that the instant litigation is unique in its nature and scope. It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account. (*See* Tr. of Proceedings at 11:8-15.) The President has used this Twitter account extensively, both during his campaign and afterwards. The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable. In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO:** **CV 18-06893-SJO (FFMx)**   **DATE:** **December 11, 2018**

were entitled to $355 per hour. *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). *See also Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

            b.    Hours Spent

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%. *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%). The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates. *See Wynn*, 2015 WL 3832561 at *5. To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates. Defendant could have streamlined litigation by distributing more work to the junior associates. (*See* Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive. For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike. (*See, e.g.*, Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  **CV 18-06893-SJO (FFMx)**         **DATE:**  **December 11, 2018**

of factual research. (See Tr. of Proceeding at 19:14-24.)  That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable.  See Wynn, 2015 WL 3832561 at *5.  Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making.  Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court. (See, e.g., Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the Wynn court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." Wynn, 2015 WL 3832561 at *6.  The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%.  See id.  Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

     C.    Sanctions Under TCPA

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him. Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2).  The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue.  See Kinney v. BCG Attorney Search, Inc., No. 03-12-00579-CV, 2014 WL 1432012, at *12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); Am. Heritage Capital, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees).  Defendant points to American Heritage Capital for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff.  (See Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here.  Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future.  See Truesdell v. S. California Permanente Med. Grp., 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11); Metabolife Int'l, Inc. v. Wornick, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling**, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 9 of 9 Page ID #:1346

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-06893-SJO (FFMx)**          **DATE:  December 11, 2018**

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (see Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (see, e.g., Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000.  Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.    RULING

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.  This case shall close.

IT IS SO ORDERED.

I hereby attest and certify on 9·30·2019
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Derek Davis
DEPUTY CLERK

(1099)

# EXHIBIT "B"

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
Email:       CHarder@HarderLLP.com
             RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,<br><br>        Plaintiff,<br><br>    v.<br><br>DONALD J. TRUMP,<br><br>        Defendant. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**NOTICE OF LODGING [PROPOSED] JUDGMENT IN FAVOR OF DEFENDANT DONALD J. TRUMP**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>Action Filed: April 30, 2018 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant Donald J. Trump hereby lodges with the Court a [Proposed] Judgement in Favor of defendant Donald J. Trump, attached hereto as **Exhibit 1**.

Dated: December 3, 2018        HARDER LLP

By: _/s/ Charles J. Harder_
        CHARLES J. HARDER
        Attorneys for Defendant DONALD J. TRUMP

# Exhibit 1

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:  (310) 546-7400
Facsimile:  (310) 546-7401
Email:       CHarder@HarderLLP.com
             RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>Defendant. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**[PROPOSED] JUDGMENT IN FAVOR OF DEFENDANT DONALD J. TRUMP**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>Action Filed:  April 30, 2018 |

On October 15, 2018, the Court issued an Order granting defendant Donald J. Trump's Motion to Strike/Dismiss ("Motion to Strike") the Complaint of plaintiff Stephanie Clifford ("Plaintiff"). [ECF No. 36.] In the Order, the Court held that Mr. Trump "is entitled to attorney's fees" under the Texas Citizens Participation Act (the "TCPA"). [*Id.*, p. 14.]

On October 29, 2018, Mr. Trump filed a Motion for Attorneys' Fees and Monetary Sanctions (the "Motion") under the TCPA. [ECF No. 39.] On November 5, 2018, Plaintiff filed an Opposition to the Motion. [ECF No. 40.] On November 12, 2018, Mr. Trump filed a Reply in support of the Motion. [ECF No. 41.] On December 3, 2018, the Motion came on regularly for hearing in Courtroom 10C of the above-entitled Court.

This Court, having read and considered the supporting and opposing points and authorities and evidence, having heard the argument of counsel, and good cause appearing therefor, hereby orders as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is entered in favor of Donald J. Trump and against Plaintiff Stephanie Clifford in the amount of $_____$, including the amount of $_____$ in attorneys' fees incurred to defend this lawsuit pursuant to Texas Civil Practice & Remedies Code § 27.009(a)(1), and the amount of $_____$ in monetary sanctions pursuant to Texas Civil Practice & Remedies Code § 27.009(a)(2).

DATED: _____

_____
Honorable S. James Otero
U.S. DISTRICT COURT JUDGE

[PROPOSED] JUDGMENT

# EXHIBIT "C"

**IN THE UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-cv-00119 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| SHANA M. KECKLEY, ET AL. | : | |
| | : | |
| Defendants. | : | |

## NOTICE OF REGISTRATION OF FOREIGN JUDGMENT IN UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION, CASE NO. 2:19-MC-00047-MHW-KAJ

The undersigned hereby gives Notice that Donald J. Trump ("Judgment Creditor") obtained a judgment against Plaintiff, Stephanie Clifford ("Clifford") in the United States District Court, Central District of California in the amount of $293,052.33 in Case No. CV 18-06893-SJO (FFMx) on December 11, 2018 ("Foreign Judgment").

The Foreign Judgment was registered with the Clerk of this Court, United States District Court, Southern District of Ohio, Eastern Division, on October 8, 2019, being Case No. 2:19-mc-00047-MHW-KAJ, a time-stamped copy of which is attached hereto as Exhibit "A".

Respectfully submitted,

*/s/ Dan J. Binau*
DAN J. BINAU (0025376), *Trial Attorney*
EMILY J. JACKSON (0078425)
Harris, McClellan, Binau & Cox P.L.L.
37 West Broad Street, Suite 950
Columbus, Ohio 43215
Telephone: (614) 464-2572
Facsimile: (614) 464-2245
E-Mail: dbinau@hmbc.com
ejackson@hmbc.com
Counsel for Judgment Creditor, Donald J. Trump

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed through the Court's CM/EFC filing system this 6th day of November, 2019, which shall serve a copy of the document upon all registered counsel of record.

*/s/ Dan J. Binau* _____

DAN J. BINAU         (0025376)
Counsel for Judgment Creditor, Donald J. Trump

Case: 2:19-cv-06893-MWF-FFM Document 43-64-2 Filed 10/31/19 Page 22 of 48 Page ID #:226
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 1 of 11 PAGEID #: 1
#:1486

AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 18-cv-06893-SJO-FFM |
| Donald J. Trump | ) |
| *Defendant* | ) |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*    12/11/2018    .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: 9-30-2019

*CLERK OF COURT*

Derek Davis

*Signature of Clerk or Deputy Clerk*

1183

**EXHIBIT**

tabbies

"A"

Case 2:18-cv-06893-SJO-FFM   Document 46   Filed 12/11/18   Page 1 of 9   Page ID #:1338

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**Priority** ____

**CASE NO.:** CV 18-06893-SJO (FFMx)          **DATE:** December 11, 2018

**TITLE:** Stephanie Clifford v. Donald J. Trump et al.

===============================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                           Carol Zurborg
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**        **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                                    Present

===============================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For
Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie
Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition").
Defendant filed a Reply on November 12, 2018. The Court held argument on this matter on
December 3, 2018. For the following reasons, the Court **GRANTS IN PART AND DENIES IN
PART** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case.
(See Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's
Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the
Complaint. (See generally Order Granting Special Motion.) The Court concluded that Mr.
Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion.
(Order Granting Special Motion at 10-12.) The Court also granted Defendant attorneys' fees
under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion.
(Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion. (See Tr. of Proceedings,
ECF No. 45.) The Court subsequently submitted this matter.

///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | |
| Send | ____ |
| Enter | |
| Closed | |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** __CV 18-06893-SJO (FFMx)__      **DATE:** __December 11, 2018__

II.      ANALYSIS

    A.      Legal Standard

        1.      Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs. The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court "**shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees. "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity." *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)). To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.      Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA. (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**        **DATE:** **December 11, 2018**

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive." *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018). When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance. Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions. *See id.* In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure. *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

    B.    Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

    1.    What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4, ECF No. 43.) Defendant divides his request into four distinct categories of fees: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.) Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation. (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike. For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract. *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

Case: 2:19-cv-06893-MHW-EMD Doc #: 43-64-2 Filed: 10/063/19 Page: 26 of 48 PageID #: 280
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 5 of 11 PAGEID #: 5
#: 1490

Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 4 of 9 Page ID #:1341

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:**  **CV 18-06893-SJO (FFMx)**  **DATE:**  **December 11, 2018**

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example. In the instant case, Plaintiff only brought a single defamation cause of action against Defendant. However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion. The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position. In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted). The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).' In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant. As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion. Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim. The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum. The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)). The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184 ("Here, because defendants achieved the dismissal of all

---

[1] Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court. "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

Case 2:18-cv-06893-MLW-FFM Doc #: 43-6 Filed: 06/19/20 Page 27 of 48 Page ID #:281
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 6 of 11 PAGEID #: 6
Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 5 of 9 Page ID #:1342

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** __CV 18-06893-SJO (FFMx)__     **DATE:** __December 11, 2018__

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014). The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs. The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527. When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing. Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added). Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several. In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action. In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case. "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at *2 (C.D. Cal. June 12, 2012). Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

    2.    Is Defendant's Request Reasonable?

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related questions. First, are Defendant's requested hourly

Case 2:18-cv-06893-MWF-FFM Doc #: 43-64-2 Filed 10/08/19 Page 28 of 48 Page 282
Case: 2:19-mc-00047-MHW-KAJ Doc #: 1 Filed: 10/08/19 Page: 7 of 11 PAGEID #: 7
Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 6 of 9 Page ID #:1343

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | |
| Send | ___ |
| Enter | ___ |
| Closed | ___ |
| JS-5/JS-6 | ___ |
| Scan Only | ___ |

**CASE NO.:** **CV 18-06893-SJO (FFMx)**    **DATE:** **December 11, 2018**

rates per attorney reasonable? Second, are the hours expended per task by attorney reasonable? The Court addresses these questions in turn.

      a.   Rates Charged

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour. (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id*. at 1210–11. Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law. (Mot. at 14-16.) The Court also is mindful of the fact that the instant litigation is unique in its nature and scope. It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account. (*See* Tr. of Proceedings at 11:8-15.) The President has used this Twitter account extensively, both during his campaign and afterwards. The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable. In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority      _____
Send          _____
Enter         _____
Closed        _____
JS-5/JS-6     _____
Scan Only     _____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**          **DATE:** **December 11, 2018**

were entitled to $355 per hour. See *Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). See also *Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

b.     Hours Spent

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%. See *Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%). The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates. See *Wynn*, 2015 WL 3832561 at *5. To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates. Defendant could have streamlined litigation by distributing more work to the junior associates. (See Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive. For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike. (See, e.g., Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** **CV 18-06893-SJO (FFMx)**  **DATE:** **December 11, 2018**

of factual research. (*See* Tr. of Proceeding at 19:14-24.) That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable. *See Wynn*, 2015 WL 3832561 at *5. Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making. Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court. (*See, e.g.*, Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the *Wynn* court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." *Wynn*, 2015 WL 3832561 at *6. The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%. *See id.* Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

    C.    Sanctions Under TCPA

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him. Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2). The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); *Am. Heritage Capital*, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees). Defendant points to *American Heritage Capital* for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff. (*See* Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here. Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future. *See Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11); *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling,** 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 18-06893-SJO (FFMx)**         **DATE: December 11, 2018**

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (*see* Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (*see, e.g.*, Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000. Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.    RULING

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions. This case shall close.

IT IS SO ORDERED.

I hereby attest and certify on 9.30.2019
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Derek Davis
DEPUTY CLERK

(1099)

# EXHIBIT "D"

12/11/2019          Case 2:18-cv-06893-JLS-FFM   Document 54-2   Filed 03/19/20   Page 34 of 48   Page ID
Stormy Daniels to receive $450,000 settlement over arrest at Ohio strip club
#:1498

U.S. NEWS

# Stormy Daniels to receive $450,000 settlement over arrest at Ohio strip club

The porn star claimed in her suit that officers arrested her in a bid to protect President Donald Trump.



Stormy Daniels exits the U.S. District Court Southern District of New York on April 16, 2018.
Drew Angerer / Getty Images file

Sept. 27, 2019, 1:26 PM CDT

**By Andrew Blankstein and David K. Li**

[Porn star Stormy Daniels settled her lawsuit against the city of Columbus](#), Ohio, over her arrest last year at a strip club, officials said Friday.

Daniels will receive $450,000 and drop all claims made in her federal civil complaint against the city, according to her attorney, Chase Mallory, and a spokeswoman for City Attorney Zach Klein.

Case 2:18-cv-06893-JLS-FFM  Document 54-2  Filed 03/19/20  Page 35 of 48   Page ID
#:1499

Her lawyer said that Daniels, whose real name is Stephanie Clifford, could have reached a settlement for more than $450,000, but she was satisfied with changes implemented by the Columbus Police Department following her arrest.

"That's the only reason she agreed to settle the case for what she did," Mallory told NBC News. "Her main goal was to make sure people weren't going to be treated like she was going forward."

Mallory credited both the Columbus police chief, Thomas Quinlan, and the city attorney's office, saying, "They have really done a great job of addressing the problems here."

The settlement still has to be formally approved by the City Council at its next meeting Oct. 7.

"All parties agreed that a settlement of $450,000 was fair, given the facts and circumstances involved," Klein's spokeswoman, Meredith Tucker, said.

Police arrested Daniels on July 11, 2018, at the Sirens Gentlemen's Club on misdemeanor charges of inappropriately touching customers. The charges were quickly dropped.

Daniels' lawsuit accused police of staging the arrest in a bid to protect President Donald Trump. Daniels claims she had an affair with Trump more than a decade ago.

Andrew Blankstein

Andrew Blankstein is an investigative reporter for NBC News. He covers the Western United States, specializing in crime, courts and homeland security.



David K. Li

David K. Li is a breaking news reporter for NBC News.



ABOUT                                              TERMS OF SERVICE

CONTACT                                            NBCNEWS.COM SITE MAP

CAREERS                                            ADVERTISE

PRIVACY POLICY     ADCHOICES

© 2019 NBC UNIVERSAL

NEWS          MSNBC          TODAY

# EXHIBIT "E"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| AKA STORMY DANIELS | : | Civil Action No. 2:19-MC-47-MHW-KAJ |
| | : | |
| Plaintiff, | : | Judge: Michael H. Watson |
| | : | |
| v. | : | Magistrate Judge: Kimberly A. Jolson |
| | : | |
| DONALD J. TRUMP | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| STEPHANIE CLIFFORD a.k.a. | : | Civil Action No. 2:19-CV-00119 |
| STORMY DANIELS, an individual, | : | |
| | : | Judge:  Michael H. Watson |
| | : | |
| Plaintiff, | : | Magistrate Judge: Elizabeth P. Deavers |
| | : | |
| v. | : | |
| | : | |
| SHANA M. KECKLEY, et. al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION TO ANNUL OR VACATE
## THE REGISTERED JUDGMENT FILED BY DONALD J. TRUMP

Plaintiff, Stephanie Clifford, moves the Court to annul or vacate Mr. Trump's Certification of Judgment [Dkt. No. 1 in Case No. 2:19-cv-47] and subsequently filed, the "Notice of Registration of Foreign Judgment" ("Notice") [Dkt. No. 43 in Case No. 2:19-cv-119]. Mr. Trump's Notice is null and void because there is no registered judgment. The Notice should be vacated from the record.

1

# I. INTRODUCTION

Ms. Stephanie Clifford, the alleged judgment-debtor, moves this Court to strike Mr. Donald J. Trump's attempt to register an out-of district judgment.

The judicial order at issue stems from a diversity jurisdiction case from the U.S. District Court for the Central District of California. Ms. Clifford sued Mr. Trump for a defamatory tweet. Mr. Trump filed a motion to dismiss to the Complaint, coupled with a motion to strike, based on a Texas anti-SLAPP statute. That statute provides that a court should award a prevailing defendant attorney fees and costs. The California federal court granted Mr. Trump's motions. Ms. Clifford appealed. Ms. Clifford's appeal is pending before the Ninth Circuit.

While that appeal was pending, Mr. Trump moved for attorney fees and costs under the Texas anti-SLAPP statute. On December 11, 2018, the California federal court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. The court never entered a judgment. Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to enter a final judgment. *See* Ex. "A" – Notice of Lodging. That motion is still pending. The Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments or appealable orders. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999). Under that court's local rules, "minute orders" are not judgments, nor can a court clerk, acting alone, without affirmative approval by the court, enter final judgment. Under Ninth Circuit precedent and the California's federal court's local rules, there was never a judgment issued. See Local Rules for the Central District of California, L.R. 58-6.[1]

---

[1] L.R. 58-6 Entry of Judgment - Memorandum of Decision, Opinion, Minute Order. Notation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge.

Against this background, Mr. Trump's Ohio counsel makes the claim that the California civil minute is a registrable judgment under 28 U.S.C. §1963. But that provision only applies when there is: (i) a judgment; (ii) that is final by appeal or expiration of the time to appeal; or (iii) when a party shows good cause, the issuing court orders the court to certify a judgment. *F.D.I.C. v. McFarland*, 243 F.3d 878, 892 (5th Cir. 2001). To begin, and as noted, a minute order does not qualify as a judgment. *See* Fed. R. Civ. P. 54 & 58. None of these conditions exist and the CIVIL MINUTE cannot be bootstrapped into a judgment or appealable order.

Mr. Trump's minute order is not a judgment nor is it final by appeal or because the time to appeal has expired. As presented, Mr. Trump's filing is a demonstrable instance of abuse of this Court's process. *See Ohio Hoist Mfg. Co. v. LiRocchi*, 490 F.2d 105, 108 (6th Cir.1974) (holding that the registering court has pendent-jurisdiction to adjudicate a state law abuse of process claim that accrues from a registering party's wrongful registration under §1963). This Court should nullify or vacate Mr. Trump's registration.

## II. DETAILED BACKGROUND

### A. The facts that prompted litigation between the parties

Ms. Clifford filed a Complaint against Mr. Trump in the Southern District of New York. She alleged that he had defamed her in a tweet. The parties' story stretches back to 2006. Ms. Clifford began an affair with Mr. Trump in the summer of 2006 until sometime in 2007. In May 2011, *In Touch* magazine sought an interview with Ms. Clifford about her affair with Mr. Trump. She agreed to an interview. *See* Dkt. 43.1 (19-CV-00119) ("Dkt. 43.1" hereinafter).

Before the interview, a man threatened Ms. Clifford and her daughter in Las Vegas, Nevada. The man told Ms. Clifford to leave Mr. Trump's story alone. Sometime after, Ms. Clifford

3

worked with a sketch artist to generate a sketch of the man who threatened her. She publicly

released that sketch on April 17, 2018. See

The next day, Mr. Trump released a false statement about the sketch on his private Twitter

account. Mr. Trump tweeted: "A sketch years later about a nonexistent man. A total con job."

Based on that false tweet, Ms. Clifford filed a defamation lawsuit against Mr. Trump. In essence,

Ms. Clifford alleged that Mr. Trump's tweet made her out as a liar and that it falsely portrayed to

the public that her claims of a threatening encounter never happened.

### B. The defamation litigation

As noted, Ms. Clifford at first filed her lawsuit in New York federal court. But Mr. Trump

moved to transfer venue from New York federal court to the U.S. District Court for the Central

District of California. While that motion was pending, the parties stipulated to transferring the case

from New York to California.

In California, Mr. Trump moved to dismiss/strike Ms. Clifford's Complaint. In his motion,

Mr. Trump asserted that Texas substantive law applied to the lawsuit. As a result, the Texas anti-

SLAPP statute—The Texas Citizens' Participation Act—applied. Under that statute, a defendant

can attain relief by showing that the targeted speech is a matter of public concern. When a

defendant shows that, the statute mandates dismissal. Besides requiring dismissal of the suit, the

anti-SLAPP statute also affords a prevailing defendant his attorney fees and costs.

The court agreed with Mr. Trump and dismissed Ms. Clifford's lawsuit. The court held that

the Texas anti-SLAPP statute applied.[2] The court also held that Mr. Trump could recover his

---

[2] Throughout the California litigation, whether the TCPA applies in federal court was an open question in the Fifth Circuit; the federal appellate court that oversees diversity jurisdiction appeals involving Texas law. But the Fifth Circuit recently held that the TCPA does not apply in federal court in diversity jurisdiction cases. *Klocke v. Watson*, 936 F.3d 240, 245-246 (5th Cir. 2019). Thus, a substantial reason for the California district court's dismissal of Ms. Clifford's case and the sole basis for the attorney fees and costs award, was a law that should not have been applied in the first place. Ms. Clifford filed a Fed. R. App. P. 28 (j) letter brief in her pending Ninth Circuit Court of Appeals appeal on the TCPA's applicability.

attorney fees and costs under the anti-SLAPP statute. Ms. Clifford appealed. The appeal is pending.

### C. The attorney fee and costs award — the order at issue

Mr. Trump moved the court for an award of attorney fees and costs. After briefing and oral argument, the court issued an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. But the court never entered a judgment, nor did it direct the court clerk to do so. Neither did the court hold that its minute order should serve as a final judgment. The next day, after the court's issuance of its minute order, Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to approve and enter a final judgment. That motion is still pending. Neither the district court nor the court clerk has entered any judgment on the record (*see* Fed. R. Civ. P. 79(a)) or made any other findings other than those in the civil minute order.

### D. Registration proceedings in this district

On September 30, 2019, Mr. Trump's attorneys secured a Clerk's Certification of a Judgment To Be Registered in Another District (Form AO-451).[3] In trying to register an out-of-district judgment under 28 U.S.C. §1963, Mr. Trump filed the California Form AO-451, together with the California federal court's civil minute order. But Mr. Trump failed to attach a final judgment or appealable order together with his Form AO-451. Noting that no final judgment or appealable order was issued in California, Ms. Clifford moves to quash Mr. Trump's attempted registration of judgment under 28 U.S.C. §1963.

---

[3] The Form AO-451 is standard form that various federal courts use to certify court orders and judgments. In contrast, Form AO-450 is a form federal court clerks use to enter final judgment when the court orders them to do so.

### III. STANDARD OF REVIEW

The Sixth Circuit has outlined the remedial steps an aggrieved party may take with the registering court when a judgment has been erroneously registered in its district:

> (I)t seems clear that the registering court has authority, necessarily implied from §1963 and as a matter of inherent jurisdiction, where a foreign judgment has been registered in knowing violation of the terms of the registration statute to grant relief (a) by annulling or vacating the registered judgment ...; (b) by vacating any process or executions which may have issued upon the registered judgment; and (c) by restoring to the aggrieved parties any assets or properties which may have been seized or levied upon.

*Goldsmith v. Midwest Energy Co.*, 90 F.R.D. 249, 250 (N.D. Ohio 1980) (Battisti, C.J.) (quoting *Ohio Hoist Mfg. Co. v. LiRocchi*, 490 F.2d 105, 108 (6th Cir. 1974)).

### IV. ARGUMENT

Under 28 U.S.C. §1963 before a moving party can register a court order, it must be (i) a judgment; that is (ii) "final." *Id.* If the order at issue is not a judgment or final after appeal, it cannot be registered. *Urban Ind., Inc. v. Thevis*, 670 F.2d 981, 985 (11th Cir. 1982) ("[T]he language of section 1963 is unambiguous in requiring that a judgment be final before it may be registered in another judicial district."). The minute order here is not a final judgment or an appealable order. And since that order is not a final judgment or appealable order, *the appellate clock never started, let alone lapsed.* Finally, the California federal court did make a good-faith finding necessary to sidestep the completion of an appeal requirement of §1963. Thus, the order is unregistrable.

**A. The California order is not a judgment that can be registered under §1963**

"[W]e begin, as we must, with a careful examination of the statutory text." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). The text of 28 U.S.C. §1963 provides that a "*judgment* in an action for the recovery of money or property entered in any, . . . district court, . . . may be registered by filing a certified copy of the *judgment* in any other district

. . . when the judgment has become final by appeal or expiration of the time for appeal." *Id.*
(Emphasis added). But when either the time for appealing has not expired or the judgment has not
become final by appeal, the issuing court, may, when "good cause is shown" order that a court
clerk certify a judgment for registration. *Id.* When a party registers a judgment in a registering
district, it "may be registered in like manner in any district in which the judgment is a lien." *See*
§1963. In other words, a registered judgment "becomes the judgment of that court as well as the
judgment of the court which originally rendered it." *Sheridan v. Broadway Co.*, 1989 WL 48416,
at *2 (D.N.J. May 3, 1989), *aff'd*, 891 F.2d 283 (3d Cir. 1989); *Condaire, Inc. v. Allied Piping,
Inc.*, 286 F.3d 353, 357 (6th Cir. 2002) (registering a judgment under §1963 "has the same effect
as a judgment of the [registering] district court.") (citations omitted).

To begin, §1963 only allows a party to register a judgment. *Monge v. Rojas*, 150 F. Supp.
3d 1244, 1250 (D.N.M. 2015) ("Section 1963 allows a party to register only 'the *judgment*' not
parts of the judgement, or more precisely, interlocutory orders entered before judgment.")
(Emphasis in original). Federal law—specifically the Federal Rules of Civil Procedure[4]—have a
specific meaning for what amounts to a judgment. A judgment "includes a decree and *any order
from which an appeal lies*." Fed. R. Civ. P. 54(a) (emphasis added). But a judgment does not
"include recitals of pleadings, a master's report, *or a record of prior proceedings*." *Id.* (emphasis
added). Thus, minute orders—which are a record of prior court proceedings—are not judgments.
*Id.*; *Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189 (9th Cir.1989) (A minute order
is "a description of what transpired in the courtroom.").

---

[4] The Federal Civil Rules of Procedure have the same status as federal statutes. *See Gallivan v. United States*, No. 18-
3874, 2019 WL 5793013, at *3, --- F.3d --- (6th Cir. Nov. 7, 2019); *see also Harris v. Nelson*, 394 U.S. 286, (1969)
(federal courts must treat the federal rules of civil procedure as they would statutes, and may not modify them by
judicial construction).

A judgment is final and able to trigger appeal rights when it complies with both Fed. R. Civ. P. 58 and 79. "A judgment is effective only . . . when entered as provided in Rule 79(a)." Fed. R. Civ. P. 58; *see also Radio Tele. Espanola*, 183 F.3d at 930 (unless both Rule 58 and 79(a) are satisfied, there is no valid judgment). Indeed, the Central District of California's Local Rules "clarify what cannot constitute an 'entry of judgment' in the Central District under Rules 58 and 79(a)." *Radio Tele. Espanola*, 183 F.3d at 930. Under those Local Rules, neither "a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall . . . constitute entry of judgment pursuant to F.R. Civ. P. 58 and 79(a) unless specifically ordered by the judge." L.R. 58-6 (C.D. Cal. 2019). Nor can a court clerk, acting alone, without affirmative approval by the court on the record, enter final judgment. *See* L.R. 58-5 (C.D. Cal. 2019).

As applied here, Mr. Trump's registration lacks a registrable judgment. The California federal court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. But the court never entered a judgment, nor did it direct the court clerk to do so. *See* Fed. R. Civ. P. 79(a)(2)(C) (court clerk "must" enter on the docket "orders, verdicts, judgments"); *see also* L.R. 58-5 (C.D. Cal. 2019). Neither "a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall . . . constitute entry of judgment . . . ." L.R. 58-6 (C.D. Cal. 2019). In fact, the Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments or appealable orders. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999).

**B. Mr. Trump's wrongfully registered order is not final under §1963**

Besides not being truly a judgment, the order at issue is not final under the clear terms of §1963. To be final under §1963, a judgment must be so "by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." *Id.*;

*McFarland*, 243 F.3d at 892. "[F]inal by appeal" means a judgment that withstands an appeal. *Monge*, 150 F. Supp. at 1250 (citations omitted). The time for filing an appeal, on the other hand, is within 30-days after a final judgment or an order denying post-judgment motion issues. *See* Fed. R. App. P. 4(a)(1) & (4). But when a court has not issued a final judgment, the time within which to appeal never begins to run nor expires. *See McFarland*, 243 F.3d at 892 n. 86; *accord Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688 & n.10 (4th Cir. 1978).

The order at issue never triggered the appellate clock. As noted, the order is a minute order, which under settled Ninth Circuit precedent and Central District's Local Rules, is not a final judgment able to trigger the appellate clock. *Radio Tele. Espanola*, 183 F.3d at 930; *accord* L.R. 58-6 (C.D. Cal. 2019). Without a final judgment, a party cannot maintain an appeal.[5] Thus, Ms. Clifford could not have appealed.

Finally, §1963's good cause exception does not apply. Under that exception, a district court can order a clerk to certify a judgment when it finds good cause to permit registration, even though an appeal has not been completed. *See* §1963. The statute does not define good cause. But federal courts have found the existence of substantial assets in another district sufficient good cause. *See Monge*, 150 F. Supp. at 1249 (collecting cases).

Here, that exception does not apply for two reasons. First, and as noted, there is no judgment to trigger §1963's provisions. *Monge*, 150 F. Supp. 3d at 1250 ("Section 1963 allows a party to register only *'the judgment'* not parts of the judgement, or more precisely, interlocutory orders entered before judgment.") (Emphasis in original). Second, the Central District of California never entered any order finding good cause; only that court can make that finding. *See Woodward*

---

[5] Fed. R. Civ. P. 54(b) allows a party to appeal a non-final judgment, but that provision requires court certification. The record in California does not record a Rule 54(b) certification. *See, e.g.*, Fed. R. Civ. 79(a) (requiring the court clerk to record on the record all official court papers).

*& Dickerson v. Kahn*, No. 89 CIV. 6733 (PKL), 1993 WL 106129, at *1 n. 1 (S.D.N.Y. April 2, 1993) (court which rendered the judgment may enter an order allowing the litigant to register the judgment elsewhere); *accord Monge*, 150 F. Supp. 3d at 1250.

The Ninth Circuit and the local rules of the U.S. District Court for the Central District of California are clear: "Notation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge." The documents filed by Mr. Trump cannot become a final order or judgment by the mere recognition by the court clerk that the appeal time has expired. The CIVIL MINUTES possess none of the hallmarks of a final order or appealable judgment which both Ninth Circuit caselaw and local rule recognize as an unappealable order which does not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a). Mr. Trump's attorneys long ago recognized this fact when they filed Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to enter a final judgment. See Ex. "A" – Notice of Lodging.

## V. CONCLUSION

In conclusion, this Court should find that the order at issue is unregistrable. Thus, the Court should annul or vacate the registration. *See Ohio Hoist Mfg.*, 490 F.2d at108.

Respectfully Submitted,

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
Chase@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Daniel J. Sabol*
Daniel J. Sabol (0081403)
Dan@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Guy A. Fortney*
Clark O. Brewster - OBA #1114 (Admitted Pro Hac)
Guy A. Fortney - OBA #17027 (Admitted Pro Hac)
Mbilike Mwafulirwa OBA# 31164 (Pro Hac)
BREWSTER & DE ANGELIS
2617 East 21st Street
Tulsa, OK 74114
(918) 742-2021 - Telephone
(918) 742-2197 - Facsimile

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2019 a true and exact copy of the above and foregoing document was served via the Court's CM/ECF filing system to all registered counsel of record.

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
*Attorney for the Plaintiff*

11