# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels,<br><br>               Plaintiff,<br><br>      - against –<br><br>Donald J. Trump,<br><br>               Defendant. | Civil Action No.<br><br><br><br><br><br><br><br>APRIL 30, 2018 |

### COMPLAINT FOR DEFAMATION AND JURY DEMAND

Plaintiff Stephanie Clifford a.k.a. Stormy Daniels ("Ms. Clifford" or "Plaintiff"), by and through her attorneys, for her complaint alleges as follows:

### THE PARTIES

1.　Plaintiff Ms. Clifford, an individual, is a resident of the State of Texas.

2.　Defendant Donald J. Trump ("Mr. Trump" or "Defendant"), an individual, is a resident of the State of New York.

### JURISDICTION AND VENUE

3.　Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiff's claims based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000.

4.　Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391, because this Court has personal jurisdiction over Defendant and by reason of the fact that, among other things, this is a judicial district in which the Defendant resides.

## FACTUAL BACKGROUND

5.      Ms. Clifford began an intimate relationship with Mr. Trump in the summer of 2006 in Lake Tahoe.

6.      In May 2011, Ms. Clifford agreed to cooperate with *In Touch Magazine* in connection with an article about her relationship with Mr. Trump that the magazine was preparing at the urging of Ms. Clifford's ex-husband, who approached the magazine without approval from Ms. Clifford. She did so only after being told that the magazine was going to be running the story with or without her cooperation.

7.      A few weeks later, in Las Vegas, Nevada, Ms. Clifford was approached and threatened by a man regarding her intention to tell the story of her relationship with Mr. Trump. The threat occurred in the presence of Ms. Clifford's infant daughter, in a parking lot.

8.      The man approached Ms. Clifford in the parking lot and said to her, "Leave Trump alone. Forget the story."

9.      The man then leaned around and looked at Ms. Clifford's infant daughter and said, "That's a beautiful little girl. It'd be a shame if something happened to her mom." The man then left.

10.      Ms. Clifford was shaken by the experience and understood the man's statement to be a direct threat.

11.      Because Ms. Clifford was frightened, however, she did not go to the police and did not seek to go public with her story at that time. She likewise did not go to the police at that time because she was concerned about her relationship at the time and the impact that disclosure of the threat might have on her relationship.

12.     The story was never run by *In Touch* because, on information and belief, after the magazine called Mr. Trump seeking comment, his attorney Michael Cohen threatened and intimated the magazine into not proceeding with the story.

13.     Mr. Trump was elected President of the United States on November 8, 2016.

14.     Thereafter, on or about April 17, 2018 and on behalf of Ms. Clifford, a sketch of the man who threatened her in 2011 was released publicly. The sketch was created in consultation with Ms. Lois Gibson, one of the foremost forensic artists in the world. Ms. Gibson met with Ms. Clifford for an extended period of time while compiling the sketch and asked her numerous questions about the encounter and the assailant.

15.     The next day, on April 18, 2018, Mr. Trump, from his verified personal Twitter account (@realDonaldTrump) posted the following false statement regarding Ms. Clifford, the sketch, and her account of the threatening incident that took place in 2011:

A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!

16.     The statement posted by Mr. Trump was in response to another tweet posted by the account DeplorablyScottish (@ShennaFoxMusic) which showed side-by-side images of the sketch of Ms. Clifford's harasser and a picture of Ms. Clifford and her husband.

17.     Mr. Trump's statement falsely attacks the veracity of Ms. Clifford's account of the threatening incident that took place in 2011. It also operates to accuse Ms. Clifford of committing a crime under New York law, as well as the law of numerous other states, in that it effectively states that Ms. Clifford falsely accused an individual of committing a crime against her when no such crime occurred. Mr. Trump's statement is false and defamatory. In making the statement, Mr. Trump used his national and international audience of millions of people to make a false factual statement to denigrate and attack Ms. Clifford. Mr. Trump knew that his false, disparaging

3

statement would be read by people around the world, as well as widely reported, and that Ms. Clifford would be subjected to threats of violence, economic harm, and reputational damage as a result.

18.     At the time Mr. Trump made the statement, Mr. Trump knew his statement was false or was made with reckless disregard for the truth or falsity of his statement.

19.     Mr. Trump's false statement about Ms. Clifford is defamation *per se* because, among other things, it charged Ms. Clifford with committing a serious crime.

20.     Ms. Clifford has suffered damage as a result of Mr. Trump's false and defamatory statement in an amount to be proven at trial but in excess of $75,000.

## CAUSE OF ACTION FOR DEFAMATION

21.     Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 20 above as if fully set forth herein.

22.     On or about April 18, 2018, Mr. Trump made the above mentioned false statement regarding Ms. Clifford, her account of the 2011 threatening incident, and the sketch of the man who threatened her: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!"

23.     Mr. Trump's statement was made in writing online and released by Mr. Trump with the intent that it be widely disseminated and repeated. Indeed, Mr. Trump knows that his personal Twitter account has an audience of over 50 million followers and that the Twitter post would be repeated and reported upon by other news and media outlets online, in print, and on television and radio.

4

24.     Mr. Trump's defamatory statements clearly identified Ms. Clifford and the statement was made in response to Ms. Clifford releasing the sketch.  It was apparent on its face to those who read the statement that Mr. Trump's defamatory statement was about Ms. Clifford.

25.     Mr. Trump's statement was defamatory *per se*.

26.     The plain import of the statement is an attack on the truthfulness of Ms. Clifford and is reasonably understood to state that Ms. Clifford is lying about the threatening encounter and the sketch of the man responsible.

27.     Moreover, by calling the incident a "con job" Mr. Trump's statement would be understood to state that Ms. Clifford was fabricating the crime and the existence of the assailant, both of which are prohibited under New York law, as well as the law of numerous other states

28.     Thus, both on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was apparent that Mr. Trump meant to convey that Ms. Clifford is a liar, someone who should not be trusted, that her claims about the threatening encounter are false, and that she was falsely accusing the individual depicted in the sketch of committing a crime, where no crime had been committed.

29.     Mr. Trump's defamatory statement was false because Ms. Clifford was in fact threatened in 2011 as she has recounted and the sketch was the result of her recollection regarding the appearance of the assailant.

30.     Mr. Trump made his statement either knowing it was false, had serious doubts about the truth of his statement, or made the statement with reckless disregard for its truth or falsity.

31.     Given the circumstances surrounding the threatening incident in 2011, namely that Ms. Clifford had not at the time gone public with her story and very few people knew of the possible In Touch story, it is reasonable to infer that the person who threatened Ms. Clifford could

have only been acting directly or indirectly on behalf of Mr. Trump and/or Mr. Cohen. Thus, Mr. Trump may have actual knowledge of the incident and of the falsity of his statement.

32. Alternately, if Mr. Trump in fact had no direct or indirect connection to the incident, then Mr. Trump necessarily acted in reckless disregard of the truth or falsity of his statement because he would have no way of knowing one way or the other as to whether the incident occurred. Nevertheless, and in spite of this, he chose to defame and disparage Ms. Clifford to his audience of over 50 million Twitter followers and many more worldwide.

33. Mr. Trump's statement exposed Mr. Clifford to hatred, contempt, ridicule, and shame, and discouraged others from associating or dealing with her.

34. As a result, Ms. Clifford has suffered damages in an amount to be proven at trial, including but not limited to, harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life.

35. In particular, since the statement, Ms. Clifford has been exposed to death threats and other threats of physical violence, causing her both emotional and economic damages.

36. By way of example only, Ms. Clifford has had to retain the services of professional bodyguards and other protective services to ensure her personal safety.

37. Ms. Clifford's damages exceed $75,000.

38. In making the defamatory statement identified herein, Mr. Trump acted with malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be proven at trial according to proof.

## PRAYER FOR RELIEF

1.      Compensatory damages in an amount to be proven at trial;

2.      Punitive damages;

3.      Pre-judgment and post-judgment interest;

4.      Costs of suit; and

5.      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes so triable.

Dated: April 30, 2018
       Greenwich, CT

/s/ Catherine R. Keenan
Catherine R. Keenan, Esq.
Federal Bar No. CK5925
66 Field Point Road
Greenwich, CT 06830
Tel: (203) 661-4200
Fax: (203) 661-3666
E-Mail: efile@greenwichlegal.com

AVENATTI & ASSOCIATES, APC
Michael J. Avenatti (*Pro Hac Vice*
application forthcoming)
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel: (949) 706-7000
E-Mail: mavenati@eoalaw.com

# EXHIBIT "B"

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

<table>
<tr><td>Priority</td><td>____</td></tr>
<tr><td>Send</td><td>____</td></tr>
<tr><td>Enter</td><td>____</td></tr>
<tr><td>Closed</td><td>____</td></tr>
<tr><td>JS-5/JS-6</td><td>____</td></tr>
<tr><td>Scan Only</td><td>____</td></tr>
</table>

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>      **DATE:** <u>October 15, 2018</u>

**TITLE:**     <u>Stephanie Clifford v. Donald J. Trump</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                               Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT DONALD J. TRUMP'S SPECIAL MOTION TO DISMISS/STRIKE COMPLAINT** [Docket No. 28]**; ORDER DENYING AS MOOT DEFENDANT DONALD J. TRUMP'S ALTERNATIVE MOTION TO DISMISS COMPLAINT** [Docket No. 28]

This matter is before the Court on Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff Stephanie Clifford's Complaint Pursuant To Anti-SLAPP Statute ("Special Motion") Or Alternatively Defendant's Motion To Dismiss Complaint Pursuant To FRCP 12(b)(6) ("Motion"), filed August 27, 2018. Plaintiff opposed the Special Motion and the Motion ("Opposition") on September 3, 2018. Plaintiff replied ("Reply") on September 10, 2018. The Court held argument on the Special Motion and the Motion on September 24, 2018. (*See* Transcript of Proceedings, ECF No. 34.) For the following reasons, the Court **GRANTS** Defendant's Special Motion To Dismiss/Strike. The Court **DENIES AS MOOT** Defendant's alternative Motion To Dismiss.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Plaintiff's Allegations In The Operative Complaint

Plaintiff Stephanie Clifford filed the operative Complaint against Defendant Donald J. Trump on April 30, 2018 in the Southern District of New York. In the Complaint, Ms. Clifford alleges as follows.

Ms. Clifford began an intimate relationship with Mr. Trump in the summer of 2006. (Compl.¶ 5, ECF No. 1.) In May of 2011, she agreed to cooperate with *In Touch Magazine* in connection with an article about her relationship with Mr. Trump. (Compl. ¶ 6.) She agreed to speak to the magazine after her ex-husband approached the magazine without her approval. (Compl. ¶ 6.) A few weeks after agreeing to speak to the magazine, a man approached and threatened Ms. Clifford in Las Vegas, Nevada. (Compl.¶ 7.) The man purportedly approached Ms. Clifford, threatened Ms. Clifford's daughter, and told her to "Leave Trump alone. Forget the story." (Compl. ¶¶ 8-9.)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  **CV 18-06893 SJO (FFMx)**          **DATE:**  **October 15, 2018**

After Mr. Trump was elected President of the United States on November 8, 2016, Ms. Clifford worked with a sketch artist to render a sketch of the person who had purportedly threatened her in 2011. (Compl. ¶ 14.) Ms. Clifford released the sketch publicly on April 17, 2018. (Compl. ¶ 14.)

The next day, on April 18, 2018, Mr. Trump, from his personal Twitter account (@RealDonaldTrump), posted a purportedly false statement regarding Ms. Clifford, the sketch, and Ms. Clifford's account of the threatening incident that took place in 2011. (Compl. ¶ 15.) Mr. Trump's tweet read as follows: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" (Compl. ¶ 15.) Mr. Trump posted this tweet in response to another tweet posted by an account named DeplorablyScottish (@ShennaFoxMusic), which showed side-by-side images of the sketch released by Ms. Clifford and a picture of Ms. Clifford and her husband. (Compl. ¶ 16.)

Based on this tweet, Ms. Clifford brings the instant lawsuit against Mr. Trump for defamation. (*See* Compl. ¶¶ 21-38.) She argues that Mr. Trump's tweet attacks the veracity of her account of the threatening incident that took place in 2011. (Compl. ¶ 17.) She also contends that Mr. Trump's tweet suggests that she is falsely accusing an individual of committing a crime against her. (Compl. ¶ 17.) According to Plaintiff, "Mr. Trump meant to convey that Ms. Clifford is a liar, someone who should not be trusted, that her claims about the threatening encounter are false, and that she was falsely accusing the individual depicted in the sketch of committing a crime, where no crime had been committed." (Compl. ¶ 28.) As a result, she contends that Mr. Trump's tweet was false and defamatory, and that the tweet was defamation *per se* because it charged her with committing a serious crime. (Compl. ¶¶ 17, 19.)

Ms. Clifford goes on to claim that Mr. Trump acted with actual malice in issuing the tweet because he knew the falsity of his tweet. This is because, according to Ms. Clifford, the person who threatened her in 2011 acted at the direction of Mr. Trump or Mr. Trump's attorney, Michael Cohen. (Compl. ¶ 31.) In the alternative, she contends that Mr. Trump acted with reckless disregard for the truth or falsity of his tweet because he had no way of knowing whether the 2011 incident had occurred. (Compl. ¶ 32.)

Finally, Ms. Clifford contends that she suffered damages as a result of the tweet because Mr. Trump's statement exposed her to "hatred, contempt, ridicule, and shame, and discouraged others from associating or dealing with her." (Compl. ¶ 33.) Therefore, she "has suffered damages in an amount to be proven at trial, including but not limited to, harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life." (Compl. ¶ 34.) Mr Clifford claims that she has retained the services of professional bodyguards and other protective services because of the threats that she has received. (Compl. ¶ 36.)

B.    Procedural History

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority     _____
Send     _____
Enter     _____
Closed     _____
JS-5/JS-6     _____
Scan Only     _____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>      **DATE:** <u>October 15, 2018</u>

Ms. Clifford first brought this lawsuit in the United States District Court for the Southern District of New York. She initially contended that venue was appropriate in the Southern District of New York because it is the district in which Mr. Trump resides. (Compl. ¶ 4.)

On July 23, 2018, Mr. Trump filed a motion to transfer the case from the Southern District of New York to this Court pursuant to 28 U.S.C. § 1404(a). (*See* Motion To Transfer, ECF No. 11.) Defendant argued in part that this lawsuit relates to other litigation before this Court involving Plaintiff and Defendant concerning the enforceability of a non-disclosure agreement. (*See* Memorandum In Support of Motion To Transfer at 1, ECF No. 11-1.)

Plaintiff initially opposed the transfer, arguing in part that the instant action was not closely related to the other litigation before this Court. (*See* Response In Opposition To Motion To Transfer, ECF No. 13 at 1.) After a meet and confer process, Plaintiff and Defendant jointly agreed to transfer Plaintiff's defamation case to this Court. On August 8, 2018, the district court in the Southern District of New York granted Plaintiff and Defendant's joint stipulation to transfer. (*See* ECF No. 17, ECF No. 18.)

On August 27, 2018, Defendant brought the instant Special Motion To Dismiss/Strike Plaintiff's Complaint. In the Special Motion, Defendant contends that Ms. Clifford's Complaint fails to state a cause of action for defamation because (1) Mr. Trump's tweet is a protected opinion, (2) Ms. Clifford did not suffer damages as a result of the tweet, and (3) Mr. Trump did not act with malice or reckless disregard for the truth when he issued the tweet. (*See* Special Motion at 1.) Defendant argues that Ms. Clifford's lawsuit is a Strategic Lawsuit Against Public Participation ("SLAPP"). (*See id.*)

The Court held argument on September 24, 2018 and subsequently submitted this matter.

II.    <u>ANALYSIS</u>

     A.    <u>Choice of Law</u>

Before addressing the substance of Defendant's Special Motion To Dismiss/Strike, this Court must decide which state's substantive law governs its analysis. Applying New York choice-of-law principles, Defendant argues that the Texas Citizens Participation Act ("TCPA" or "Texas Anti-SLAPP statute") governs this case. (*See* Special Motion at 7-9.) Plaintiff disagrees, arguing that New York's anti-SLAPP law governs this dispute because Mr. Trump is a citizen of the state of New York. (*See* Opposition at 8.)

The Court applies the Texas anti-SLAPP statute because Ms. Clifford brought this diversity action in the Southern District of New York, and a state court in New York would apply the TCPA to this case.

**JS-6**

Case 2:18-cv-06893-SJO-FFM Document 62 Filed 10/15/18 Page 4 of 14 Page ID #:1026

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 18-06893 SJO (FFMx)          **DATE:** October 15, 2018

1.      New York Choice-of-Law Provisions Govern This Court's Analysis of
         Defendant's Special Motion.

"For the convenience of parties and witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where it might have been brought." 28
U.S.C. § 1404(a).  In *Van Dusen v. Barrack*, the United States Supreme Court held that where a
defendant seeks to transfer an action to another district court in the country, "the transferee district
court must be obligated to apply the state law that would have been applied if there had been no
change of venue."  376 U.S. 612, 639 (1964).  In *Ferens v. John Deere Company*, the Supreme
Court extended this rule to those cases where a plaintiff initiates a transfer.  494 U.S. 516, 525
(1990).

Ms. Clifford, a citizen of the state of Texas, brings this defamation action against Mr. Trump, a
citizen of the state of New York.[1]  This Court has diversity jurisdiction under 28 U.S.C. Section
1332.  The instant case is a diversity action transferred to this Court from the Southern District of
New York with the consent of both parties.  Therefore, the Court applies New York choice-of-law
principles to determine which forum's substantive law governs the Court's analysis of the Special
Motion To Dismiss/Strike.

2.      Under New York Choice Of Law Principles, Texas Law Applies To Plaintiff's
         Allegations of Defamation and the Special Motion To Dismiss/Strike.

Under New York's choice-of-law principles, the law of the situs of the injury generally applies to
a tort lawsuit involving diverse parties.  *See Stoyanovskiy v. Amerada Hess Corp.*, 286 A.D.2d
727, 728 (2001).  However, in this day and age, with the publication of statements in online fora,
the tort of defamation often involves a plaintiff injured in several jurisdictions.  For multistate
defamation actions, where the situs of the injury may be in multiple jurisdictions, "New York
applies the law of the state with the most significant interest in litigation," which generally is the
state where a plaintiff is domiciled.  *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d. Cir.
1999).  Plaintiff alleges in the Complaint that Ms. Clifford is a "resident of the State of Texas,"
(Compl. ¶ 1), and   conceded during argument on September 24, 2018 that Ms. Clifford is
domiciled in Texas.  (*See* Transcript of Proceedings at 11: 7.)  Therefore, this Court applies Texas
law to Plaintiff's allegations of defamation and Defendant's Special Motion To Dismiss/Strike.[2]

_____

[1]  Defendant Mr. Trump argues that he is a citizen of Washington D.C. because he resides
at the White House, not in New York city.  For purposes of the Court's choice-of-law
analysis here, the Court is required to apply Texas law to Ms. Clifford's defamation action,
whether Mr. Trump is a citizen of New York or Washington D.C.

[2]  In analyzing Defendant's Special Motion To Dismiss/Strike under the TCPA, the Court
borrows from courts' analysis of California's anti-SLAPP statute.  "The California

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority      ____
Send          ____
Enter         ____
Closed        ____
JS-5/JS-6     ____
Scan Only     ____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>      **DATE:** <u>October 15, 2018</u>

The Restatement (Second) Conflicts of Law supports this Court's holding that Texas law applies. In defamation lawsuits involving "multistate communication," a court must apply "the local law of the state where the plaintiff has suffered the greatest injury by reason of [her] loss of reputation," which "will usually be the state of the plaintiff's domicil if the matter complained of has there been published." Restatement (Second) of Conflict of Laws § 150 (1971).

  B. <u>Defendant's Special Motion To Strike/Dismiss Is Analogous To A Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6).</u>

Having concluded that the TCPA applies to the Complaint and the Special Motion, the Court next determines if it is appropriate to adjudicate the Special Motion at the present stage of litigation before any discovery has taken place. Plaintiff argues that Mr. Trump's Special Motion should be adjudicated as a motion for summary judgment. (*See* Opposition at 5-6; Transcript of Proceedings at 15:3-16:6, 17:5-24.) If this were the case, the parties would be permitted to pursue discovery prior to a ruling on the Special Motion. Plaintiff's argument, however, has no merit.

For purposes of the Federal Rules of Civil Procedure, a motion brought on anti-SLAPP grounds can either be analogous to a motion to dismiss or a motion for summary judgment. If a defendant moves to strike/dismiss based on purely legal arguments and the fact that a complaint does not allege sufficient facts to support its stated causes of action, this Court analyzes the motion under the standards set out in Federal Rule of Civil Procedure 8 and 12(b)(6). *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018). If a defendant makes a factual challenge to a complaint, including by providing alternate facts to challenge the allegations in a complaint, this Court treats the motion to strike/dismiss as a motion for summary judgment. *See id.*

Here, Mr. Trump's Special Motion is analogous to a motion to dismiss because it makes three main arguments, all of which assume the truth of the allegations in the Complaint and ask this Court to dismiss Plaintiff's action because these facts do not sustain a cause of action for defamation. First, Defendant argues that although Plaintiff alleges that the President made a defamatory statement in a tweet,[3] the statement, as alleged in the Complaint, is a constitutionally-

---

statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

[3] For purposes of arguing the Motion To Strike/Dismiss, Defendant accepts that Mr. Trump sent the tweet stating "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" Defendant assumes that Mr. Trump issued this tweet and argues that Plaintiff cannot sue Defendant for defamation

---

MINUTES FORM 11
CIVIL GEN
Initials of Preparer _____
__ : __

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>          **DATE:** <u>October 15, 2018</u>

protected opinion. (*See* Special Motion at 9-10.) Second, Defendant argues that Plaintiff has not sufficiently alleged damages as a result of Mr. Trump's purported defamation because the damages that she suffered could have arisen from an alternate cause. (*See* Special Motion at 11-14.) Third, Defendant argues that Plaintiff has not alleged sufficient facts to show that Mr. Trump acted with actual malice or reckless disregard for the truth, aside from Plaintiff's conclusory statements that Mr. Trump had knowledge of the threat that Plaintiff received in 2011. (*See* Special Motion at 14-16.) Each of these arguments largely assume the truth of the Complaint, but nevertheless make the point that the Complaint does not allege sufficient facts to meet each prong of the defamation standard.

In addition to these three arguments, Defendant's Special Motion sets forth some facts beyond those alleged in the Complaint.[4]  For example, Defendant argues that Ms. Clifford did not sufficiently allege that she suffered damages because, in fact, she benefitted economically from Mr. Trump's defamatory statement.  To prove this, Defendant points to evidence outside the Complaint of Ms. Clifford's economic well-being.  (*See* Special Motion at 13-14.)  In making its ruling, the Court takes no position as to any argument concerning the purported benefit that Ms. Clifford received as a result of the tweet in question.  The remainder of Defendant's arguments are properly brought at the present stage of litigation.

     C.    <u>Defendant's Special Motion To Dismiss/Strike Is Timely</u>.

The next threshold inquiry is whether the Special Motion is timely.  Plaintiff contends that it is not, because Mr. Trump should have brought the Special Motion within 60 days of May 23, 2018, as required by the TCPA.  This is the date on which Mr. Trump waived service of Ms. Clifford's defamation action.  (*See* Opposition at 7.)

The Court holds that although  Mr. Trump may not have complied with the filing deadline, there is good cause to permit the Special Motion to proceed given the procedural history of this case, which includes a transfer to this Court from a district court in the Southern District of New York.

---

based on the content of the tweet.

[4]  Plaintiff and Defendant have filed evidentiary objections to several of the factual submissions.  In doing so, both parties correctly point out that this Court should not take into account facts outside the Complaint in deciding this Special Motion.  Aside from otherwise judicially-noticeable facts, the Court does not take into account facts outside the Complaint in reaching its final holding that Mr. Trump's tweet is a non-actionable opinion that cannot be the subject of a defamation claim.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  CV 18-06893 SJO (FFMx)          **DATE:** October 15, 2018

Plaintiff's argument concerning the applicability of the 60-day deadline in federal court raises an unresolved issue of law. Like the TCPA, California's anti-SLAPP statute contains a 60-day requirement. No court in this Circuit, or the Fifth Circuit, has ruled on whether an anti-SLAPP motion, brought as a motion to dismiss as opposed to a motion for summary judgment, is subject to the 60-day deadline. To be sure, federal courts have held that the 60-day deadline in California's anti-SLAPP statute does not apply to anti-SLAPP motions that are analogous to motions for summary judgment. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citing *Rogers*, 57 F. Supp. 2d at 982). The 60-day deadline is a procedural rule under the *Erie* doctrine that conflicts with Federal Rule of Civil Procedure 56. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016). This is because the 60-day deadline seeks to limit discovery and allow for anti-SLAPP motions at an early stage of litigation, while Rule 56 seeks to promote discovery, requiring motions for summary judgment after litigation has proceeded for some time. *See id.* As analyzed above, however, Mr. Trump's anti-SLAPP motion is analogous to a motion to dismiss, not a motion for summary judgment. The discovery rationale that underpins a case like *Metabolife International* does not exist here.

Nevertheless, the Court does not need to address the applicability of the 60-day deadline to the Special Motion because there is "good cause" to permit it to proceed. *See Schimmel v. McGregor*, 438 S.W.3d 847, 856 (Tex. App. 2014) (holding that the TCPA allows a court to waive the motion filing deadline where "good cause" exists). Ms. Clifford initially filed her defamation action in the Southern District of New York, and there was some dispute as to whether that district was the appropriate venue for this case. After briefing on the matter, Ms. Clifford's defamation action was transferred to this Court on August 8, 2018. After the transfer, Defendant did not delay bringing this Special Motion, filing it on August 27, 2018, nineteen days after the transfer and well-within the 21-day deadline in which a defendant must normally file a responsive pleading after a plaintiff files a complaint. *See* Fed. Rule Civ. P. Rule 12(a). Importantly, the instant case did not proceed in any material respect after Plaintiff's initial filing of the Complaint in April 2018. This limits the prejudice that Plaintiff may face from an untimely anti-SLAPP motion. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1100 (C.D. Cal. 2004). Defendant's filing of this Special Motion after the 60-day deadline also does not frustrate the TCPA's purpose of dismissing improper lawsuits at an early stage of litigation. *See id.* (holding that one purpose of California's 60-day deadline for anti-SLAPP motions was to dismiss lawsuits early in litigation). Accordingly, "good cause" exists to allow Defendant to proceed with this Special Motion, even if the filing did not comply with the TCPA's 60-day deadline.

      D.    Standard Under The TCPA

Having determined (1) that the TCPA applies to the Special Motion and Ms. Clifford's defamation action, (2) that this Court treats the Special Motion as analogous to a motion to dismiss under

JS-6

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 18-06893 SJO (FFMx)</u>       **DATE:** <u>October 15, 2018</u>

Federal Rule of Civil Procedure 12(b)(6), and (3) that there is "good cause" to permit the Special Motion after the expiration of 60 days from the initial filing of the Complaint, the Court next applies the substantive requirements of the TCPA to the Special Motion and the allegations in the Complaint.

Texas offers robust protection for the freedom of speech. The TCPA, like analogous anti-SLAPP statutes in other jurisdictions including California, seeks to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002.

Analysis of an anti-SLAPP motion under the TCPA proceeds in three steps. First, a defendant must show, by a preponderance of the evidence, that a plaintiff's complaint is based on, relates to, or is in response to the defendant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b); *In re Lipsky*, 460 S.W.3d 579, 586 (Texas 2015). The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). A communication includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" includes an issue related to: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). Second, the burden then shifts to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Third, the defendant can still prevail under the TCPA if he/she "establishes by a preponderance of the evidence each essential element of a valid defense" to the plaintiff's claim. *Id.* § 27.005(d). *See also ExxonMobil Pipeline Company v. Coleman*, 512 S.W.3d 895, 898-99 (summarizing the standard under the TCPA).

Here, Defendant's Special Motion does not allege any defenses to plaintiff's defamation claim. The Court addresses the other two steps of the TCPA analysis in turn.

     1.   <u>Plaintiff's Defamation Lawsuit Relates To Defendant's Right of Free Speech.</u>

There is little dispute that Ms. Clifford's Complaint relates to Mr. Trump's exercise of his right of free speech on an issue of public concern. In reaching this conclusion, the Court is mindful of the fact that Texas "look[s] to the entire communication as well as the context of the communication in which the allegedly defamatory statement is made." *Cruz v. Van Sickle*, 452 S.W.3d 503, 514 (Tex. App. 2014). Here, the statement at issue is Mr. Trump's reaction to Plaintiff's release of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>          **DATE:** <u>October 15, 2018</u>

sketch of a person who threatened Plaintiff in connection with a purported affair that she had with Mr. Trump.  Although Mr. Trump was not the President at the time of the purported affair or the purported threat that Plaintiff received, Mr. Trump is now the President and was the President at the time of the tweet.  Moreover, Mr. Trump issued the tweet in the context of Plaintiff publicly styling herself as an adversary to the President, including in filings before this Court.  (*See, e.g.*, First Amended Complaint in *Stephanie Clifford v. Donald Trump et al.* at ¶ 17, No. 2:18-cv-02217-SJO-FFM (arguing that "Mr. Trump, with the assistance of his attorney Mr. Cohen, aggressively sought to silence Ms. Clifford as part of an effort to avoid her telling the truth, thus helping to ensure he won the Presidential Election").)  The tweet in question, therefore, relates to an issue involving a public official on a matter of public concern.  *See id.* (holding that the TCPA applies to a defamation claim involving "a public official or public figure," including a candidate for judicial office).  Accordingly, the TCPA applies to the Special Motion To Dismiss/Strike.

            2.    <u>Plaintiff Fails To Establish a Prima Facie Case For Defamation.</u>

The Court next analyzes whether Plaintiff has established a prima facie case for defamation.  To prevail on a cause of action for defamation under Texas law, Plaintiff must allege that: (1) Mr. Trump published a false statement; (2) that defamed Ms. Clifford; (3) with the requisite degree of fault regarding the truth of the statement (negligence if Ms. Clifford is a private individual or malice if Ms. Clifford is a public individual); and (4) damages (unless the statement constitutes defamation per se).  *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).

                  a.    <u>False Statement</u>

In the Special Motion, Mr. Trump argues that the tweet at issue is a non-actionable opinion, not a statement of fact about Ms. Clifford.  (Special Motion at 9.)  "Expressions of opinion may be derogatory and disparaging; nevertheless they are protected by the First Amendment of the United States Constitution and by article I, section 8 of the Texas Constitution."  *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App. 2006).

The Court agrees with Mr. Trump's argument because the tweet in question constitutes "rhetorical hyperbole" normally associated with politics and public discourse in the United States.  The First Amendment protects this type of rhetorical statement.

"It is well settled that 'the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."  *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTROK Television, Inc.*, 38 S.W. 3d 103, 115 (Tex. 2000)).  To assess whether a statement is "rhetorical hyperbole," this Court looks to the statement "as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** CV 18-06893 SJO (FFMx)          **DATE:** October 15, 2018

*Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App. 2015). Because Mr. Trump's tweet involves a matter of public concern, including purported acts committed by the now President of the United States, the Court applies the following three principles to determine if the tweet is actionable for defamation (the "*Bentley/Milkovich*" analysis). *See Bentley*, 94 S.W.3d at 580. *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (setting out the standard summarized below).

    1.    A statement on matters of public concern must be provable as false before there can be liability for defamation.

    2.    The United States Constitution protects statements that cannot reasonably be interpreted as stating actual facts about an individual made in debate over public matters in order to provide assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of the United States.

    3.    Where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth, and where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault.

Mr. Trump's tweet stated as follows: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" When the first step in the *Bentley/Milkovich* analysis is applied to this tweet, Plaintiff correctly points out that Mr. Trump's tweet contains two verifiably true/false statements: (1) that the man who threatened Ms. Clifford in 2011 does not exist and therefore, that Plaintiff is lying about her encounter with him; and (2) that Ms. Clifford is engaging in a "con job" or is lying to Mr. Trump, the public, and the media about the threat (and by implication her affair with Mr. Trump). If the man who threatened Ms. Clifford in 2011 does exist, or if Ms. Clifford is not lying to Mr. Trump, the public, and the media about the threats that she received or her affair with Mr. Trump, Mr. Trump's tweet would be verifiable as false.

Plaintiff's argument crumbles when it comes to the second step in the *Bentley/Milkovich* analysis. Mr. Trump's tweet constitutes "rhetorical hyperbole," which is "'extravagant exaggeration [that is] employed for rhetorical effect.'" *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex. App. 2015) (quoting *Am. Broad. Cos. v. Gill*, 6 S.W.3d 19, 30 (Tex. App. 1999)). Specifically, Mr. Trump's tweet displays an incredulous tone, suggesting that the content of his tweet was not meant to be understood as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>     **DATE:** <u>October 15, 2018</u>

a literal statement about Plaintiff. Instead, Mr. Trump sought to use language to challenge Plaintiff's account of her affair and the threat that she purportedly received in 2011. As the United States Supreme Court has held, a published statement that is "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage" cannot constitute a defamatory statement. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 32 (1990).

Mr. Trump also issued the tweet in the context of Plaintiff presenting herself as a political adversary to the President. *Rehak Creative Services, Inc. v. Witt* is instructive in this regard. *See* 404 S.W.3d 716 (Tex. App. 2013), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). In *Rehak*, an advertising agency that worked with Jim Murphy, a state representative serving in the Texas House of Representatives, sued Ann Witt, a candidate who ran against Murphy in the Republican primary. *Id.* at 722. The advertising agency sued Witt for defamation on the grounds that Witt's website contained a series of defamatory statements against Murphy, including Witt's accusations that Murphy "sidestepped" the Texas Constitution by serving as a legislator while receiving payment as a consultant. *Id.* at 720. Witt's website also compared Murphy to a character in the book and musical, *How to Succeed in Business Without Really Trying*, accused Murphy of "ripping off taxpayers," and stated that among Jim Murphy's "sleazy steps" to success included "STEP 6: Reward your supporters with government contracts." *Id.* at 721. The Texas Court of Appeals held that none of the statements on Witt's website constituted defamation in large part because Witt's "website's tone" and the "campaign context" of the statements suggested that the statements constituted "rhetorical hyperbole" that was part of politics. *Id.* at 730. The website "demonstrate[d] an attempt to deliver a political message about the use of public money in an exaggerated, provocative and amusing way," expression that lies at "the heart of the First Amendment." *Id.* at 730. *See also Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App. 2015) (collecting cases on "rhetorical hyperbole" in the political context).

The instant case is similar to *Rehak* in that Mr. Trump, as President, made a hyperbolic statement against a person who has sought to publicly present herself as a political adversary to him. In filings before this Court, Ms. Clifford has challenged the legitimacy of Mr. Trump's victory in the 2016 Presidential election. Mr. Trump's tweet served as a public rejoinder to allegations made by Plaintiff. If this Court were to prevent Mr. Trump from engaging in this type of "rhetorical hyperbole" against a political adversary, it would significantly hamper the office of the President. Any strongly-worded response by a president to another politician or public figure could constitute an action for defamation. This would deprive this country of the "discourse" common to the political process. In short, should Plaintiff publicly voice her opinions about Mr. Trump, Mr. Trump is entitled to publicly voice non-actionable opinions about Plaintiff. To allow Plaintiff to proceed with her defamation action would, in effect, permit Plaintiff to make public allegations against the President without giving him the opportunity to respond. Such a holding would violate the First Amendment.

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>     **DATE:** <u>October 15, 2018</u>

Mr. Trump also made a one-off rhetorical comment, not a sustained attack on the veracity of Plaintiff's claims. This distinguishes the instant case from other cases where courts have determined that public statements constituted defamation. In *Bentley*, for example, the host of a call-in talk show on a public-access channel repeatedly accused a judge of being corrupt. *See Bentley*, 94 S.W.3d at 584. When confronted about the veracity of the allegations, the talk show host doubled down, falsely claiming that he had proof of the judge's corruption, including public records and records of conversations with courthouse employees. *See id.* The Texas Supreme Court held that while a "single, excited reference to [the judge's corruption] might be taken to be rhetorical hyperbole . . . [the host's] characterization of [the judge's] conduct as criminal is only part of [the host's] efforts over many months to prove [the judge] corrupt." *Id.* at 581. Here, Mr. Trump's tweet falls far more in line with a "single, excited reference." Unlike the defendant in *Bentley*, Mr. Trump provided no support for his views in the tweet nor did not he repeat the allegations in the tweet.

Accordingly, the Court grants the Special Motion because Mr. Trump's statement constituted "rhetorical hyperbole" that is protected by the First Amendment.

### b.   Actual Malice or Reckless Disregard For The Truth

Having determined that Mr. Trump's tweet is non-actionable, the Court's analysis of the Special Motion ends. In the interest of completeness, the Court briefly addresses a few of the other arguments made by the parties in the briefing.

The parties spend some time debating whether Mr. Trump acted with "actual malice" or "reckless disregard for the truth" in issuing the tweet in question. Assuming that Plaintiff is a "public figure," Plaintiff would have to show that Defendant acted with "actual malice" or "reckless disregard for the truth" to prevail on a cause of action for defamation. *See Bentley*, 94 S.W.3d at 580.

Plaintiff's focus on the actual malice argument comes as no surprise because Plaintiff stands on thin ice in asserting that Mr. Trump's tweet is an actionable statement. Instead, Plaintiff seeks to use her defamation action to engage in a "fishing expedition" concerning the conclusory allegations in the Complaint. The Court will not permit Plaintiff to exploit the legal process in this way.

Specifically, Plaintiff contends that she needs to conduct discovery to determine if Mr. Trump was involved in the 2011 threat against her or if he purposefully avoided learning about the 2011 threat. *See* Opposition at 11. Plaintiff believes that discovery pertaining to these issues will help her to establish that Mr. Trump acted with actual malice or reckless disregard for the truth (i.e. if Ms. Clifford can provide evidence showing that Mr. Trump knew of the 2011 threat, then he tweeted a lie when he challenged Plaintiff's reporting of the 2011 threat). (*See* Transcript of Proceedings

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  <u>CV 18-06893 SJO (FFMx)</u>       **DATE:** <u>October 15, 2018</u>

at 29:23-30:4.)  However, Plaintiff's reasoning is entirely circular.  She assumes that Mr. Trump knew of the 2011 threat, argues in her Complaint and her briefing that Mr. Trump knew of the 2011 threat, and then asks this Court for discovery to prove that Mr. Trump knew of the 2011 threat. In doing so, Plaintiff does not allege facts establishing how Mr. Trump knew or did not know about the 2011 threat in the first place.  Plaintiff must do this to sustain a cause of action for defamation.

        c.    Damages

Defendant's Special Motion also alleges that Plaintiff has not adequately pleaded damages. (Special Motion at 11-14.)  The Court declines to address this.  As with the issue of actual malice, the Court does not need to reach the damages question because it grants the Special Motion on other grounds.

    D.    Leave To Amend

Having granted the Special Motion, the Court next determines if it should grant Plaintiff leave to amend the Complaint.  While recognizing that courts in this Circuit sometimes do grant plaintiffs the opportunity to amend a complaint before granting an anti-SLAPP motion to strike, the Court holds that Ms. Clifford should not have this opportunity because any amendment would be futile. *See Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (denying leave to amend on futility grounds).

The Court holds that Mr. Trump's tweet is "rhetorical hyperbole" and is protected by the First Amendment.  Plaintiff cannot amend the Complaint in a way that challenges this holding.  During argument on this matter, Plaintiff suggested that she could amend her Complaint to "shore up the malice allegations" and to "provide context for the statement to show that, in fact, it was not political nature at the time it was made."  (Transcript of Proceedings at 44: 8-13.)  The former amendments are futile because this Court rules that Mr. Trump's tweet is protected by the First Amendment.  The issue of malice is irrelevant to this holding.  The latter amendments are futile because there is no way for Plaintiff to amend the Complaint to transform the tweet from "rhetorical hyperbole" into an actionable statement.  *See Gardner*, 563 F.3d at 992.  "A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'"  *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).  Plaintiff cannot change Mr. Trump's tweet or the basic context of the tweet.  Nor can Plaintiff withdraw factual allegations that she has made in pleadings before this Court.  In the other litigation before

**JS-6**

Case 2:18-cv-06893-SJO-FFM Document 46 Filed 10/15/18 Page 14 of 14 Page ID #:1023

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

---

**CASE NO.:** <u>CV 18-06893 SJO (FFMx)</u>     **DATE:** <u>October 15, 2018</u>

---

this Court, Ms. Clifford argues that Mr. Trump sought to silence her as a strategy to win the Presidential election, a clear argument against the legitimacy of Mr. Trump's Presidency. (*See* First Amended Complaint in *Stephanie Clifford v. Donald Trump et al.* at ¶ 17, No. 2:18-cv-02217-SJO-FFM.) Mr. Trump issued the tweet as a rejoinder against an individual challenging him in the public arena. This is the definition of protected rhetorical hyperbole. The Court denies Plaintiff leave to amend the Complaint.

    E.   <u>Attorney's Fees</u>

Having granted the Special Motion and denied Plaintiff leave to amend, the Court finally holds that Defendant is entitled to attorney's fees. Texas law is unambiguous that "the TCPA requires an award of 'reasonable attorney's fees' to the successful movant." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Id.* (quoting *Garcia v. Gomez,* 319 S.W.3d 638, 642 (Tex.2010)).

III.   <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Special Motion To Strike/Dismiss. Defendant is entitled to attorney's fees under the Texas Citizen Participation Act. Should Defendants move for attorneys' fees, the motion must be filed within **fourteen (14)** days from the date of this order. The Court **DENIES AS MOOT** Defendant's Motion To Dismiss.

IT IS SO ORDERED.

---

# EXHIBIT "C"

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

=====================================================================

**CASE NO.:**  **CV 18-06893-SJO (FFMx)**        **DATE:**  **December 11, 2018**

**TITLE:**    **Stephanie Clifford v. Donald J. Trump et al.**

=====================================================================

**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                    Carol Zurborg
Courtroom Clerk                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**    **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                             Present

=====================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition"). Defendant filed a Reply on November 12, 2018.  The Court held argument on this matter on December 3, 2018.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case. (*See* Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the Complaint.  (*See generally* Order Granting Special Motion.)  The Court concluded that Mr. Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion. (Order Granting Special Motion at 10-12.)  The Court also granted Defendant attorneys' fees under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion. (Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion. (*See* Tr. of Proceedings, ECF No. 45.)  The Court subsequently submitted this matter.

///
///
///
///
///

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  CV 18-06893-SJO (FFMx)          DATE:  December 11, 2018

II.    ANALYSIS

    A.    Legal Standard

        1.    Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs.  The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court "**shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees.  "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity." *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)).  To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts.  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).  "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate.  The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).  *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.    Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA.  (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2)).  Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority       ____
Send           ____
Enter          ____
Closed         ____
JS-5/JS-6      ____
Scan Only      ____

**CASE NO.:   CV 18-06893-SJO (FFMx)            DATE:   December 11, 2018**

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive."   *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018).  When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance.  Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions.  *See id.*  In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure.  *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

B.   Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

1.   What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4, ECF No. 43.)  Defendant divides his request into four distinct categories of fees:  (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.)  Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation. (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike.  For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract.  *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**   **CV 18-06893-SJO (FFMx)**        **DATE:**   **December 11, 2018**

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example. In the instant case, Plaintiff only brought a single defamation cause of action against Defendant. However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion. The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position. In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted). The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).' In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant. As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion. Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim. The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum. The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)). The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184 ("Here, because defendants achieved the dismissal of all

---

[1] Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court. "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  **CV 18-06893-SJO (FFMx)**          DATE:  **December 11, 2018**

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014).  The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs.  The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527.  When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing.  Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added).  Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several.  In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action.  In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case.  "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at *2 (C.D. Cal. June 12, 2012).  Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses:  (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

        2.    Is Defendant's Request Reasonable?

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related  questions.  First, are Defendant's requested hourly

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 18-06893-SJO (FFMx)</u>          **DATE:**  <u>December 11, 2018</u>

rates per attorney reasonable?   Second, are the hours expended per task by attorney reasonable?  The Court addresses these questions in turn.

   a.   <u>Rates Charged</u>

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour.  (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Id.* at 1210–11.  Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law.  (Mot. at 14-16.)  The Court also is mindful of the fact that the instant litigation is unique in its nature and scope.  It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account.  (*See* Tr. of Proceedings at 11:8-15.)  The President has used this Twitter account extensively, both during his campaign and afterwards.  The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable.  In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority     ____
Send         ____
Enter        ____
Closed       ____
JS-5/JS-6    ____
Scan Only    ____

**CASE NO.:**   <u>CV 18-06893-SJO (FFMx)</u>          **DATE:**   <u>December 11, 2018</u>

were entitled to $355 per hour. *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). *See also Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

b.   <u>Hours Spent</u>

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%. *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%). The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates. *See Wynn*, 2015 WL 3832561 at *5. To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates. Defendant could have streamlined litigation by distributing more work to the junior associates. (*See* Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive. For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike. (*See, e.g.*, Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:   CV 18-06893-SJO (FFMx)**        **DATE:   December 11, 2018**

of factual research.  (*See* Tr. of Proceeding at 19:14-24.)  That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable.  *See Wynn*, 2015 WL 3832561 at *5.  Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making.  Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court.  (*See, e.g.*, Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the *Wynn* court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." *Wynn*, 2015 WL 3832561 at *6.  The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%.  *See id.*  Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

   C.   Sanctions Under TCPA

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him. Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2).  The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); *Am. Heritage Capital*, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees).  Defendant points to *American Heritage Capital* for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff.  (*See* Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here.  Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future. *See Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11);  *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling**, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  <u>CV 18-06893-SJO (FFMx)</u>          DATE:  <u>December 11, 2018</u>

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (*see* Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (*see, e.g.*, Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000. Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.    <u>RULING</u>

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.  This case shall close.

IT IS SO ORDERED.

# EXHIBIT "D"

1  HARDER LLP
2  CHARLES J. HARDER (CA Bar No. 184593)
   RYAN J. STONEROCK (CA Bar No. 247132)
3  132 S. Rodeo Drive, Fourth Floor
4  Beverly Hills, California 90212
   Telephone:   (310) 546-7400
5  Facsimile:    (310) 546-7401
6  Email:        CHarder@HarderLLP.com
                 RStonerock@HarderLLP.com
7
   Attorneys for Defendant
8  DONALD J. TRUMP

9           UNITED STATES DISTRICT COURT
10
11          CENTRAL DISTRICT OF CALIFORNIA

12 | STEPHANIE CLIFFORD a.k.a. | Case No. 2:18-cv-06893-SJO-FFM
13 | STORMY DANIELS, | **NOTICE OF LODGING**
14 | Plaintiff, | **[PROPOSED] JUDGMENT IN**
15 | | **FAVOR OF DEFENDANT**
   | v. | **DONALD J. TRUMP**
16 |
17 | DONALD J. TRUMP, | Assigned for All Purposes to the
                     | Hon. S. James Otero
18 | Defendant. |
19 | | Action Filed:  April 30, 2018
20
21
22
23
24
25
26
27
28

────────────────────────────────
NOTICE OF LODGING

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that defendant Donald J. Trump ("Mr. Trump") hereby lodges with the Court a [Proposed] Judgment in Favor of Mr. Trump, attached hereto as **Exhibit 1,** which reflects the amount to be paid by plaintiff Stephanie Clifford to Mr. Trump pursuant to the Court's Order on Mr. Trump's Motion for Attorneys' Fees and Sanctions.  [ECF No. 46.]


Dated: December 12, 2018        HARDER LLP

                  By: _/s/ Charles J. Harder_
                     CHARLES J. HARDER
                     Attorneys for Defendant DONALD J. TRUMP

Case 2:18-cv-06893-SJO-FFM Document 47-1 Filed 12/12/18 Page 1 of 3 Page ID #:1349

# Exhibit 1

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       CHarder@HarderLLP.com
             RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,<br><br>          Plaintiff,<br><br>     v.<br><br>DONALD J. TRUMP,<br><br>          Defendant. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**[PROPOSED] JUDGMENT IN FAVOR OF DEFENDANT DONALD J. TRUMP**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>Action Filed:  April 30, 2018 |

On October 15, 2018, the Court issued an Order granting defendant Donald J. Trump's Motion to Strike/Dismiss ("Motion to Strike") the Complaint of plaintiff Stephanie Clifford ("Plaintiff"). [ECF No. 36.] In the Order on the Motion to Strike, the Court held that Mr. Trump "is entitled to attorney's fees" under the Texas Citizens Participation Act (the "TCPA"). [*Id.*, p. 14.]

On October 29, 2018, Mr. Trump filed a Motion for Attorneys' Fees and Monetary Sanctions (the "Motion") under the TCPA. [ECF No. 39.] On November 5, 2018, Plaintiff filed an Opposition to the Motion. [ECF No. 40.] On November 12, 2018, Mr. Trump filed a Reply in support of the Motion. [ECF No. 41.] On December 3, 2018, the Motion came on regularly for hearing in Courtroom 10C of the above-entitled Court. On December 11, 2018, the Court issued its Order on the Motion (the "Order") in favor of Mr. Trump. [ECF No. 46.]

This Court, having read and considered the supporting and opposing points and authorities and evidence, having heard the argument of counsel, good cause appearing therefor and pursuant to the Order, hereby orders as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is entered in favor of Donald J. Trump and against Plaintiff Stephanie Clifford in the amount of **$293,052.33**, including the amount of **$292,052.33** in attorneys' fees incurred to defend this lawsuit pursuant to Texas Civil Practice & Remedies Code § 27.009(a)(1), and the amount of **$1,000.00** in monetary sanctions pursuant to Texas Civil Practice & Remedies Code § 27.009(a)(2).


DATED: _____

_____
Honorable S. James Otero
U.S. DISTRICT COURT JUDGE

# EXHIBIT "E"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| AKA STORMY DANIELS | : | Civil Action No. 2:19-MC-47-MHW-KAJ |
| | : | |
| Plaintiff, | : | Judge: Michael H. Watson |
| | : | |
| v. | : | Magistrate Judge: Kimberly A. Jolson |
| | : | |
| DONALD J. TRUMP | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| STEPHANIE CLIFFORD a.k.a. | : | Civil Action No. 2:19-CV-00119 |
| STORMY DANIELS, an individual, | : | |
| | : | Judge:  Michael H. Watson |
| | : | |
| Plaintiff, | : | Magistrate Judge: Elizabeth P. Deavers |
| | : | |
| v. | : | |
| | : | |
| SHANA M. KECKLEY, et. al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION TO ANNUL OR VACATE
## <u>THE REGISTERED JUDGMENT FILED BY DONALD J. TRUMP</u>

Plaintiff, Stephanie Clifford, moves the Court to annul or vacate Mr. Trump's Certification of Judgment [Dkt. No. 1 in Case No. 2:19-cv-47] and subsequently filed, the "Notice of Registration of Foreign Judgment" ("Notice") [Dkt. No. 43 in Case No. 2:19-cv-119]. Mr. Trump's Notice is null and void because there is no registered judgment. The Notice should be vacated from the record.

# I. INTRODUCTION

Ms. Stephanie Clifford, the alleged judgment-debtor, moves this Court to strike Mr. Donald J. Trump's attempt to register an out-of district judgment.

The judicial order at issue stems from a diversity jurisdiction case from the U.S. District Court for the Central District of California. Ms. Clifford sued Mr. Trump for a defamatory tweet. Mr. Trump filed a motion to dismiss to the Complaint, coupled with a motion to strike, based on a Texas anti-SLAPP statute. That statute provides that a court should award a prevailing defendant attorney fees and costs. The California federal court granted Mr. Trump's motions. Ms. Clifford appealed. Ms. Clifford's appeal is pending before the Ninth Circuit.

While that appeal was pending, Mr. Trump moved for attorney fees and costs under the Texas anti-SLAPP statute. On December 11, 2018, the California federal court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. The court never entered a judgment. Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to enter a final judgment. *See* Ex. "A" – Notice of Lodging. That motion is still pending. The Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments or appealable orders. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999). Under that court's local rules, "minute orders" are not judgments, nor can a court clerk, acting alone, without affirmative approval by the court, enter final judgment. Under Ninth Circuit precedent and the California's federal court's local rules, there was never a judgment issued. See Local Rules for the Central District of California, L.R. 58-6.[1]

---

[1] L.R. 58-6 Entry of Judgment - Memorandum of Decision, Opinion, Minute Order. Notation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge.

Against this background, Mr. Trump's Ohio counsel makes the claim that the California civil minute is a registrable judgment under 28 U.S.C. §1963. But that provision only applies when there is: (i) a judgment; (ii) that is final by appeal or expiration of the time to appeal; or (iii) when a party shows good cause, the issuing court orders the court to certify a judgment. *F.D.I.C. v. McFarland*, 243 F.3d 878, 892 (5th Cir. 2001). To begin, and as noted, a minute order does not qualify as a judgment. *See* Fed. R. Civ. P. 54 & 58. None of these conditions exist and the CIVIL MINUTE cannot be bootstrapped into a judgment or appealable order.

Mr. Trump's minute order is not a judgment nor is it final by appeal or because the time to appeal has expired. As presented, Mr. Trump's filing is a demonstrable instance of abuse of this Court's process. *See Ohio Hoist Mfg. Co. v. LiRocchi*, 490 F.2d 105, 108 (6th Cir.1974) (holding that the registering court has pendent-jurisdiction to adjudicate a state law abuse of process claim that accrues from a registering party's wrongful registration under §1963). This Court should nullify or vacate Mr. Trump's registration.

## II. DETAILED BACKGROUND

### A. The facts that prompted litigation between the parties

Ms. Clifford filed a Complaint against Mr. Trump in the Southern District of New York. She alleged that he had defamed her in a tweet. The parties' story stretches back to 2006. Ms. Clifford began an affair with Mr. Trump in the summer of 2006 until sometime in 2007. In May 2011, *In Touch* magazine sought an interview with Ms. Clifford about her affair with Mr. Trump. She agreed to an interview. *See* Dkt. 43.1 (19-CV-00119) ("Dkt. 43.1" hereinafter).

Before the interview, a man threatened Ms. Clifford and her daughter in Las Vegas, Nevada. The man told Ms. Clifford to leave Mr. Trump's story alone. Sometime after, Ms. Clifford

worked with a sketch artist to generate a sketch of the man who threatened her. She publicly released that sketch on April 17, 2018. See

The next day, Mr. Trump released a false statement about the sketch on his private Twitter account. Mr. Trump tweeted: "A sketch years later about a nonexistent man. A total con job." Based on that false tweet, Ms. Clifford filed a defamation lawsuit against Mr. Trump. In essence, Ms. Clifford alleged that Mr. Trump's tweet made her out as a liar and that it falsely portrayed to the public that her claims of a threatening encounter never happened.

**B. The defamation litigation**

As noted, Ms. Clifford at first filed her lawsuit in New York federal court. But Mr. Trump moved to transfer venue from New York federal court to the U.S. District Court for the Central District of California. While that motion was pending, the parties stipulated to transferring the case from New York to California.

In California, Mr. Trump moved to dismiss/strike Ms. Clifford's Complaint. In his motion, Mr. Trump asserted that Texas substantive law applied to the lawsuit. As a result, the Texas anti-SLAPP statute—The Texas Citizens' Participation Act—applied. Under that statute, a defendant can attain relief by showing that the targeted speech is a matter of public concern. When a defendant shows that, the statute mandates dismissal. Besides requiring dismissal of the suit, the anti-SLAPP statute also affords a prevailing defendant his attorney fees and costs.

The court agreed with Mr. Trump and dismissed Ms. Clifford's lawsuit. The court held that the Texas anti-SLAPP statute applied.[2] The court also held that Mr. Trump could recover his

---

[2] Throughout the California litigation, whether the TCPA applies in federal court was an open question in the Fifth Circuit; the federal appellate court that oversees diversity jurisdiction appeals involving Texas law. But the Fifth Circuit recently held that the TCPA does not apply in federal court in diversity jurisdiction cases. *Klocke v. Watson*, 936 F.3d 240, 245-246 (5th Cir. 2019). Thus, a substantial reason for the California district court's dismissal of Ms. Clifford's case and the sole basis for the attorney fees and costs award, was a law that should not have been applied in the first place. Ms. Clifford filed a Fed. R. App. P. 28 (j) letter brief in her pending Ninth Circuit Court of Appeals appeal on the TCPA's applicability.

attorney fees and costs under the anti-SLAPP statute. Ms. Clifford appealed. The appeal is pending.

### C. The attorney fee and costs award — the order at issue

Mr. Trump moved the court for an award of attorney fees and costs. After briefing and oral argument, the court issued an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. But the court never entered a judgment, nor did it direct the court clerk to do so. Neither did the court hold that its minute order should serve as a final judgment. The next day, after the court's issuance of its minute order, Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to approve and enter a final judgment. That motion is still pending. Neither the district court nor the court clerk has entered any judgment on the record (*see* Fed. R. Civ. P. 79(a)) or made any other findings other than those in the civil minute order.

### D. Registration proceedings in this district

On September 30, 2019, Mr. Trump's attorneys secured a Clerk's Certification of a Judgment To Be Registered in Another District (Form AO-451).[3] In trying to register an out-of-district judgment under 28 U.S.C. §1963, Mr. Trump filed the California Form AO-451, together with the California federal court's civil minute order. But Mr. Trump failed to attach a final judgment or appealable order together with his Form AO-451. Noting that no final judgment or appealable order was issued in California, Ms. Clifford moves to quash Mr. Trump's attempted registration of judgment under 28 U.S.C. §1963.

---

[3] The Form AO-451 is standard form that various federal courts use to certify court orders and judgments. In contrast, Form AO-450 is a form federal court clerks use to enter final judgment when the court orders them to do so.

## III. STANDARD OF REVIEW

The Sixth Circuit has outlined the remedial steps an aggrieved party may take with the registering court when a judgment has been erroneously registered in its district:

> (I)t seems clear that the registering court has authority, necessarily implied from §1963 and as a matter of inherent jurisdiction, where a foreign judgment has been registered in knowing violation of the terms of the registration statute to grant relief (a) by annulling or vacating the registered judgment ...; (b) by vacating any process or executions which may have issued upon the registered judgment; and (c) by restoring to the aggrieved parties any assets or properties which may have been seized or levied upon.

*Goldsmith v. Midwest Energy Co.*, 90 F.R.D. 249, 250 (N.D. Ohio 1980) (Battisti, C.J.) (quoting *Ohio Hoist Mfg. Co. v. LiRocchi*, 490 F.2d 105, 108 (6th Cir. 1974)).

## IV. ARGUMENT

Under 28 U.S.C. §1963 before a moving party can register a court order, it must be (i) a judgment; that is (ii) "final." *Id.* If the order at issue is not a judgment or final after appeal, it cannot be registered. *Urban Ind., Inc. v. Thevis*, 670 F.2d 981, 985 (11th Cir. 1982) ("[T]he language of section 1963 is unambiguous in requiring that a judgment be final before it may be registered in another judicial district."). The minute order here is not a final judgment or an appealable order. And since that order is not a final judgment or appealable order, *the appellate clock never started, let alone lapsed.* Finally, the California federal court did make a good-faith finding necessary to sidestep the completion of an appeal requirement of §1963. Thus, the order is unregistrable.

### A. The California order is not a judgment that can be registered under §1963

"[W]e begin, as we must, with a careful examination of the statutory text." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). The text of 28 U.S.C. §1963 provides that a "*judgment* in an action for the recovery of money or property entered in any, . . . district court, . . . may be registered by filing a certified copy of the *judgment* in any other district

. . . when the judgment has become final by appeal or expiration of the time for appeal." *Id.* (Emphasis added). But when either the time for appealing has not expired or the judgment has not become final by appeal, the issuing court, may, when "good cause is shown" order that a court clerk certify a judgment for registration. *Id.* When a party registers a judgment in a registering district, it "may be registered in like manner in any district in which the judgment is a lien." *See* §1963. In other words, a registered judgment "becomes the judgment of that court as well as the judgment of the court which originally rendered it." *Sheridan v. Broadway Co.*, 1989 WL 48416, at *2 (D.N.J. May 3, 1989), *aff'd*, 891 F.2d 283 (3d Cir. 1989); *Condaire, Inc. v. Allied Piping, Inc.*, 286 F.3d 353, 357 (6th Cir. 2002) (registering a judgment under §1963 "has the same effect as a judgment of the [registering] district court.") (citations omitted).

To begin, §1963 only allows a party to register a judgment. *Monge v. Rojas*, 150 F. Supp. 3d 1244, 1250 (D.N.M. 2015) ("Section 1963 allows a party to register only 'the *judgment*' not parts of the judgement, or more precisely, interlocutory orders entered before judgment.") (Emphasis in original). Federal law—specifically the Federal Rules of Civil Procedure[4]—have a specific meaning for what amounts to a judgment. A judgment "includes a decree and *any order from which an appeal lies*." Fed. R. Civ. P. 54(a) (emphasis added). But a judgment does not "include recitals of pleadings, a master's report, *or a record of prior proceedings*." *Id.* (emphasis added). Thus, minute orders—which are a record of prior court proceedings—are not judgments. *Id.*; *Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189 (9th Cir.1989) (A minute order is "a description of what transpired in the courtroom.").

---

[4] The Federal Civil Rules of Procedure have the same status as federal statutes. *See Gallivan v. United States*, No. 18-3874, 2019 WL 5793013, at *3, --- F.3d --- (6th Cir. Nov. 7, 2019); *see also Harris v. Nelson*, 394 U.S. 286, (1969) (federal courts must treat the federal rules of civil procedure as they would statutes, and may not modify them by judicial construction).

A judgment is final and able to trigger appeal rights when it complies with both Fed. R. Civ. P. 58 and 79. "A judgment is effective only . . . when entered as provided in Rule 79(a)." Fed. R. Civ. P. 58; *see also Radio Tele. Espanola*, 183 F.3d at 930 (unless both Rule 58 and 79(a) are satisfied, there is no valid judgment). Indeed, the Central District of California's Local Rules "clarify what cannot constitute an 'entry of judgment' in the Central District under Rules 58 and 79(a)." *Radio Tele. Espanola*, 183 F.3d at 930. Under those Local Rules, neither "a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall . . . constitute entry of judgment pursuant to F.R. Civ. P. 58 and 79(a) unless specifically ordered by the judge." L.R. 58-6 (C.D. Cal. 2019). Nor can a court clerk, acting alone, without affirmative approval by the court on the record, enter final judgment. *See* L.R. 58-5 (C.D. Cal. 2019).

As applied here, Mr. Trump's registration lacks a registrable judgment. The California federal court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. But the court never entered a judgment, nor did it direct the court clerk to do so. *See* Fed. R. Civ. P. 79(a)(2)(C) (court clerk "must" enter on the docket "orders, verdicts, judgments"); *see also* L.R. 58-5 (C.D. Cal. 2019). Neither "a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall . . . constitute entry of judgment . . . ." L.R. 58-6 (C.D. Cal. 2019). In fact, the Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments or appealable orders. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999).

**B. Mr. Trump's wrongfully registered order is not final under §1963**

Besides not being truly a judgment, the order at issue is not final under the clear terms of §1963. To be final under §1963, a judgment must be so "by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." *Id.*;

*McFarland*, 243 F.3d at 892. "[F]inal by appeal" means a judgment that withstands an appeal. *Monge*, 150 F. Supp. at 1250 (citations omitted). The time for filing an appeal, on the other hand, is within 30-days after a final judgment or an order denying post-judgment motion issues. *See* Fed. R. App. P. 4(a)(1) & (4). But when a court has not issued a final judgment, the time within which to appeal never begins to run nor expires. *See McFarland*, 243 F.3d at 892 n. 86; *accord Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688 & n.10 (4th Cir. 1978).

The order at issue never triggered the appellate clock. As noted, the order is a minute order, which under settled Ninth Circuit precedent and Central District's Local Rules, is not a final judgment able to trigger the appellate clock. *Radio Tele. Espanola*, 183 F.3d at 930; *accord* L.R. 58-6 (C.D. Cal. 2019). Without a final judgment, a party cannot maintain an appeal.[5] Thus, Ms. Clifford could not have appealed.

Finally, §1963's good cause exception does not apply. Under that exception, a district court can order a clerk to certify a judgment when it finds good cause to permit registration, even though an appeal has not been completed. *See* §1963. The statute does not define good cause. But federal courts have found the existence of substantial assets in another district sufficient good cause. *See Monge*, 150 F. Supp. at 1249 (collecting cases).

Here, that exception does not apply for two reasons. First, and as noted, there is no judgment to trigger §1963's provisions. *Monge*, 150 F. Supp. 3d at 1250 ("Section 1963 allows a party to register only *'the judgment'* not parts of the judgement, or more precisely, interlocutory orders entered before judgment.") (Emphasis in original). Second, the Central District of California never entered any order finding good cause; only that court can make that finding. *See Woodward*

---

[5] Fed. R. Civ. P. 54(b) allows a party to appeal a non-final judgment, but that provision requires court certification. The record in California does not record a Rule 54(b) certification. *See, e.g.*, Fed. R. Civ. 79(a) (requiring the court clerk to record on the record all official court papers).

& *Dickerson v. Kahn*, No. 89 CIV. 6733 (PKL), 1993 WL 106129, at *1 n. 1 (S.D.N.Y. April 2, 1993) (court which rendered the judgment may enter an order allowing the litigant to register the judgment elsewhere); *accord Monge*, 150 F. Supp. 3d at 1250.

     The Ninth Circuit and the local rules of the U.S. District Court for the Central District of California are clear: "Notation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge." The documents filed by Mr. Trump cannot become a final order or judgment by the mere recognition by the court clerk that the appeal time has expired. The CIVIL MINUTES possess none of the hallmarks of a final order or appealable judgment which both Ninth Circuit caselaw and local rule recognize as an unappealable order which does not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a). Mr. Trump's attorneys long ago recognized this fact when they filed Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to enter a final judgment. See Ex. "A" – Notice of Lodging.

**V. CONCLUSION**

     In conclusion, this Court should find that the order at issue is unregistrable. Thus, the Court should annul or vacate the registration. *See Ohio Hoist Mfg.*, 490 F.2d at108.

                                 Respectfully Submitted,

                                 /s/ *Chase A. Mallory*____
                                 Chase A. Mallory (0084728)
                                 Chase@SabolMallory.com
                                 SABOL MALLORY, LLC
                                 743 South Front Street
                                 Columbus, Ohio 43206
                                 phone: (614) 300-5088
                                 fax: (614) 636-4545

/s/ *Daniel J. Sabol*
Daniel J. Sabol (0081403)
Dan@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Guy A. Fortney*
Clark O. Brewster - OBA #1114 (Admitted Pro Hac)
Guy A. Fortney - OBA #17027 (Admitted Pro Hac)
Mbilike Mwafulirwa OBA# 31164 (Pro Hac)
BREWSTER & DE ANGELIS
2617 East 21st Street
Tulsa, OK 74114
(918) 742-2021 - Telephone
(918) 742-2197 - Facsimile

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2019 a true and exact copy of the above and foregoing document was served via the Court's CM/ECF filing system to all registered counsel of record.

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
*Attorney for the Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS, an individual, | : | Civil Action No. 2:19-CV-00119 |
| | : | |
| | : | Judge:  Michael H. Watson |
| | : | |
| Plaintiff, | : | Magistrate Judge: Elizabeth P. Deavers |
| | : | |
| v. | : | |
| | : | |
| SHANA M. KECKLEY, et. al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

_____

| | | |
|---|---|---|
| STEPHANIE CLIFFORD AKA STORMY DANIELS | : | Civil Action No. 2:19-MC-47-MHW-KAJ |
| | : | |
| Plaintiff, | : | Judge: Michael H. Watson |
| | : | |
| v. | : | Magistrate Judge: Kimberly A. Jolson |
| | : | |
| DONALD J. TRUMP | : | |
| | : | |
| Defendant. | : | |

_____

## **NOTICE TO THE COURT**

Plaintiff Stephanie Clifford files this Notice to bring to the Court's attention a "NOTICE OF CLERICAL ERROR" by the Central District of California Court Clerk stating that putative judgment creditor Donald J. Trump **did not secure a money judgment** in *Clifford v. Trump*, Case No. CV 18-06893-SJO (FFMx) (Cal. C.D.). The "NOTICE OF CLERICAL ERROR" is attached as Exhibit A. Below, Plaintiff Clifford also advises the Court that:

1. Plaintiff Clifford obtained a settlement in a lawsuit she filed with this Court for a violation of her civil rights under 42 U.S.C. § 1983 by individual officers and the City of Columbus for false arrest. *Clifford v. Keckley, et al.*, Case No. 2:19-cv-119 (S.D. Ohio).

2. The amount of settlement is a matter of public record, $450,000.00, and it seems that word of the monies caused two parties: Donald J. Trump and Michael Avenatti to attempt to assert liens over the settlement monies.

3. Donald J. Trump claimed a judgment lien based on a CIVIL MINUTE ORDER that awarded him $293,052.33 in attorney fees, costs and sanctions from the Central District of California in *Clifford v. Trump*, Case No. CV 18-06893-SJO (FFMx) (Cal. C.D.).

4. Donald J. Trump claimed that the Central District of California's CIVIL MINUTE ORDER was a final judgment eligible for registration as a foreign money judgment under 28 U.S.C.§1963. *See Clifford v. Keckley*, Case No. 2:19-cv-119 (S.D. Ohio) (the civil rights case); *Clifford v. Trump*, Case No. 2:19-MC-47 (S.D. Ohio) (proceeding to register foreign judgment).

5. As a result of his claims, Donald J. Trump claimed that he was entitled to a lien on Plaintiff Clifford's settlement proceeds. Plaintiff Clifford has objected to those claims.

6. On March 19, 2020, Plaintiff Clifford filed a motion with the Central District of California asserting that the CIVIL MINUTE ORDER was a not final money judgment and the clerk's certification was in error.

7. On April 10, 2020, the Central District of California issued a Notice of Clerical Error, making clear that the CIVIL MINUTE ORDER that Donald J. Trump sought to register in this district "was a Minute Order . . ., entered on 12/11/2018, [and] not a judgment. Therefore, it cannot be certified as a judgment." *See* Exhibit A.

8. Thus, based on the Central District of California's Notice of Clerical Error, Donald J. Trump **did not secure a money judgment against Plaintiff Clifford and is not entitled to a judicial lien on the settlement proceeds**. Accordingly, the Notice of Registration of Foreign Judgment, Dkt. No. 43, is without force and effect as there is no underlying foreign judgment. It should be stricken from the record a legal nullity.

9. The other party that claimed an adverse lien on the settlement proceeds—Michael Avenatti—has withdrawn his claim for a lien.

10. There being no adverse party before the Court with a valid judicial lien on the settlement proceeds, this Court should release those proceeds deposited with the Court to Ms. Clifford and her counsel.

Respectfully Submitted,

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
Chase@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Daniel J. Sabol*
Daniel J. Sabol (0081403)
Dan@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Guy A. Fortney*
_____
Clark O. Brewster - OBA #1114 (Admitted Pro Hac)
Guy A. Fortney - OBA #17027 (Admitted Pro Hac)
Mbilike Mwafulirwa OBA# 31164 (Pro Hac)
BREWSTER & DE ANGELIS
2617 East 21st Street
Tulsa, OK 74114
(918) 742-2021 - Telephone
(918) 742-2197 - Facsimile

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

    I certify that on April 10, 2020 a true and exact copy of the above and foregoing document was served via the Court's CM/ECF filing system to all registered counsel of record.

*/s/ Guy A. Fortney*
_____

**IN THE UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-cv-00119 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| SHANA M. KECKLEY, ET AL. | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-mc-00047 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| DONALD J. TRUMP | : | |
| | : | |
| Defendant. | : | |

## JUDGMENT CREDITOR DONALD J. TRUMP'S RESPONSE TO PLAINTIFF STEPHANIE CLIFFORD'S NOTICE TO THE COURT (DOC. 57)

Judgment Creditor Donald J. Trump ("Judgment Creditor") submits the following Response to Plaintiff Stephanie Clifford's ("Ms. Clifford") *Notice to the Court* (Doc. 57), filed on April 10, 2020:

The Central District of California Clerk's April 10, 2020 Notice states that Judge Otero's December 11, 2019 Order awarding Judgment Creditor a total of $293,052.33 in attorneys' fees and sanctions against Ms. Clifford (the "Attorneys' Fees Order") is a minute order that "cannot be certified as a judgment." Judgment Creditor submits that the Clerk's conclusion is erroneous. The Attorney's Fees Order is a valid, final judgment against Ms. Clifford that is registrable with

this Court for among other reasons, the reasons stated in *Judgment Creditor Donald J. Trump's Response To Plaintiff Stephanie Clifford's Brief At The Request Of Court Re: Attorney Fees* (Doc. 55 in *Clifford v. Keckley*, Case No. 19-cv-00119), incorporated by reference as if fully rewritten herein.

All that is required to duly register a foreign judgment is (i) a judgment (ii) that has become final by appeal or expiration of the time for appeal. 28 U.S.C. § 1963. These requirements have been satisfied because, under well-settled law, the Attorneys' Fees Order is a valid judgment. Federal Rule of Civil Procedure 58, as amended in 2002, sets forth the procedures for entry of judgment and provides that a judgment for attorneys' fees need not be set out in a separate document. Fed. R. Civ. Proc. 58(a)(3). "[S]ince 2002, Rule 58(a)(3) has provided that no separate document is required 'for an order disposing of a motion for attorney's fees under Rule 54.'" *Feldman v. Olin Corp.*, 673 F.3d 515, 516 (7th Cir. 2012). The *Feldman* Court further explained that the "no separate document" rule is not limited to attorneys' fees specifically awarded pursuant to Federal Rule of Civil Procedure 54. Further, the Attorneys' Fees Order is final because the time to appeal has expired. The Central District of California Clerk's stated "clerical error" does not change the validity of the judgment or any of the propositions of law cited in *Judgment Creditor Donald J. Trump's Response To Plaintiff Stephanie Clifford's Brief At The Request Of Court Re: Attorney Fees* (Doc. 55 in *Clifford v. Keckley*, Case No. 19-cv-00119).

Despite Ms. Clifford's arguments, the Central District of California Clerk cannot de-certify a certified final judgment by stating it was a clerical error. Further, in Ms. Clifford's *Notice To The Court* she asserts that on March 19, 2020, she filed a Motion with the Central District of California asserting that the CIVIL MINUTE ORDER was not a final money

judgment and the clerk's certification was in error (the "Motion"). Ms. Clifford fails to attach a copy of the Motion, **which was never ruled upon** by Judge Otero or the new presiding judge: Judge Josephine L. Staton. The Central District of California Clerk does not have judicial authority to rule upon the Motion. Such a determination is contrary to the power of the judiciary and could only be made by Judge Otero or Judge Staton.

Accordingly, and notwithstanding the fact that it was not the Central District of California Clerk's original Certification that made the Attorneys' Fees Order a final judgment, Judgment Creditor intends to file a motion with the Central District of California to certify that Judgment Creditor possesses a valid and enforceable judgment against Ms. Clifford. Judgment Creditor respectfully requests that the Court stay the release of any of the funds it is holding in this matter until said motion is decided. In the alternative, and if this Court is not willing to wait on a judicial ruling from Central District of California, Judgment Creditor respectfully requests that the parties be permitted to formally and fully brief the issues with this Court, prior to the release of any of the funds.

Respectfully submitted,

*/s/ Dan J. Binau*
DAN J. BINAU (0025376), *Trial Attorney*
Harris, McClellan, Binau & Cox P.L.L.
37 West Broad Street, Suite 950
Columbus, Ohio 43215
Telephone: (614) 464-2572
Facsimile: (614) 464-2245
E-Mail: dbinau@hmbc.com
Counsel for Judgment Creditor, Donald J. Trump

{00107400;2}                                                    3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed through the Court's CM/EFC filing system this 13th day of April, 2020, which shall serve a copy of the document upon all registered counsel of record.

*/s/ Dan J. Binau*
DAN J. BINAU (0025376)
Counsel for Judgment Creditor, Donald J. Trump

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

STEPHANIE CLIFFORD a.k.a.      :    Civil Action No. 2:19-CV-00119
STORMY DANIELS, an individual,    :
     :    Judge:  Michael H. Watson
     :
       Plaintiff,    :    Magistrate Judge: Elizabeth P. Deavers
     :
   v.    :
     :
SHANA M. KECKLEY, et. al.    :
     :
     :
       Defendants.    :

---

STEPHANIE CLIFFORD    :
AKA STORMY DANIELS    :    Civil Action No. 2:19-MC-47-MHW-KAJ
     :
     Plaintiff,    :    Judge: Michael H. Watson
     :
     v.    :    Magistrate Judge: Kimberly A. Jolson
     :
DONALD J. TRUMP    :
     :
     Defendant.    :

---

# PLAINTIFF CLIFFORD'S REPLY TO TRUMP'S RESPONSE TO PLAINTIFF'S NOTICE TO THE COURT

---

Plaintiff Stephanie Clifford replies to Donald J. Trump's Response (Dkt. 58) to her Notice to the Court (Dkt. 57). In her notice, Ms. Clifford had advised this Court that following her motion to the Central District of California to annul its Court Clerk's Certification of Judgment, the Clerk, within days of that motion, *sua sponte* filed a Notice of Clerical Error. The Notice of Clerical Error rescinded the Court Clerk's prior certification of the CIVIL MINUTE ORDER that Mr. Trump sought to have registered in this district as a money judgment. The C.D. of California Court Clerk made clear that the order Mr. Trump was calling a judgment is "not a judgment. Therefore, it cannot be certified as a judgment." Dkt. 57-1.

In his response, Mr. Trump essentially claims that, even without a certified judgment, this Court can ignore 28 U.S.C. §1963's clear words and register and enforce a minute order awarding attorney fees and costs as a "final judgment." Second, he also claims that the Court Clerk's decision and conclusion to rescind certification of the order are erroneous and this Court should essentially ignore them. Finally, he claims that the Court Clerk's actions do not have the imprimatur of the C.D. of California, thus are invalid.

Mr. Trump's arguments lack merit and are unmoored from the salient facts and procedural posture of this proceeding. To begin with, Mr. Trump sought to register the CIVIL MINUTE-ORDER GENERAL in this district under 28 U.S.C. §1963, the registration of judgments statute. "We begin, as usual, with the statutory text." *Maslenjak v. United States*, 137 S. Ct. 1918, 1924 (2017). Section 1963 provides that a judgment can be registered only in another federal judicial district "by filing **a certified copy of the judgment** . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. §1963 (emphasis added). If, as here, "the language of the statute is clear, the court applies the statute as written." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017).

The C.D. of California Court Clerk rescinded the prior certification because it was as a result of a clerical error. *See* Dkt. 57-1. With that rescission, the prior certification was effectively abrogated and canceled. *See*, *Rescind*, *Black's Law Dictionary* 1562 (11th 2019). There is, thus, no certified judgment (or otherwise) to trigger registration under 28 U.S.C. §1963. The C.D. of California Court Clerk also confirmed that the order Mr. Trump sought to register in this district is not a final judgment. *See* Dkt. 57-1.

Mr. Trump's claims that the Court Clerk's actions where done without the C.D. of California's approval or acquiescence lack merit. As noted, the C.D. of California Court Clerk, within days of Ms. Clifford's motion challenging the propriety of her certification of a minute order as a final judgment, *sua sponte* filed a Notice of Clerical Error. The Court Clerk's actions have received the District Judge's imprimatur because after reviewing Ms. Clifford's motion and the Court Clerk's actions, the district court judge determined that Plaintiff's grievance and motion about the propriety of the Court Clerk's certification were moot. *See* Order of C.D. of California Denying as Moot Motion to Annul or Vacate Court Clerk's Certification, enclosed as Exhibit A.

Thus, without a certified final judgment, Mr. Trump cannot satisfy 28 U.S.C. §1963. That is reason enough for this Court not to register (or enforce as a valid judicial lien in this district) the minute order. More so when, as here, the issuing court does not even consider the minute order a final registrable judgment. *See* Dkt. 57-1; *see also* Ex. A. In fact, this is a fitting juncture to apply "the cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — [which] counsels [this Court] to go no further." *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

Simply put, there is no underlying judgment that this Court may register as a foreign judgment. As a result, the plain language of 28 U.S.C. §1963 excludes the erroneous registering of any order that lacks certification as a judgment by the issuing clerk.

Mr. Trump was wrong to attack the actions of the C.D. Court Clerk in this Court. Whether the C.D. of California or its Court Clerk are wrong about the status of the minute order at issue are not questions this Court has subject-matter jurisdiction to review. We are unaware of any subject-matter jurisdiction that exists for one federal judge from one district to review (and essentially entertain an appeal) of an order from another federal judge *under these circumstances*. Cf. *Welch v. Coffman*, 8 F. App'x 435, 436 (6th Cir. 2001) (unpublished) (dismissing for lack of subject-matter jurisdiction a lawsuit against a district court judge for dismissing a case brought before another district court judge in the same district).

In sum, there being no adverse party here with a valid judicial lien on the settlement proceeds, this Court should release those proceeds deposited with the Court to Ms. Clifford and her counsel.

Respectfully Submitted,

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
Chase@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Daniel J. Sabol*
Daniel J. Sabol (0081403)
Dan@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088

/s/ Guy A. Fortney
Clark O. Brewster - OBA #1114 (Admitted Pro Hac)
Guy A. Fortney - OBA #17027 (Admitted Pro Hac)
Mbilike Mwafulirwa OBA# 31164 (Pro Hac)
BREWSTER & DE ANGELIS
2617 East 21st Street
Tulsa, OK 74114
(918) 742-2021 - Telephone
(918) 742-2197 - Facsimile

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 17, 2020 a true and exact copy of the above and foregoing document was served via the Court's CM/ECF filing system to all registered counsel of record.

/s/ Guy A. Fortney

# EXHIBIT "F"

**CLARK O. BREWSTER, OBA # 1114,** *Admitted* **Pro Hac Vice**
cbrewster@brewsterlaw.com
**MBILIKE M. MWAFULIRWA, OBA # 31164,** *Admitted* **Pro Hac Vice**
mmm@brewsterlaw.com
**BREWSTER & DE ANGELIS**
**2617 E. 21st St.**
**Tulsa, OK 74114**
**Telephone:    (918) 742-2021**
*Attorneys for Plaintiff Stephanie Clifford*

**DAVID OLAN**
david@olanlaw.com
**TROY SKINNER**
Troy@olanlaw.com
**OLAN LAW OFFICE**
**212 Marine Street, Suite 100,**
**Santa Monica, CA 90405**
**Telephone:    (310) 566-0010**
*Attorneys for Plaintiff Stephanie Clifford*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DONALD J. TRUMP,**<br><br>    Defendant. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**<br>**[Declaration of Clark O. Brewster and exhibits filed concurrently herewith]**<br><br>Assigned for All Purposes to the<br>Hon. S. James Otero<br>Action Filed: April 30, 2018<br><br>**Hearing Date: May 18, 2020**<br>**Hearing Time: 10:00 am**<br>**Location: 350 West 1st Street**<br>**Courtroom C, Los Angeles, CA 90012** |

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18, 2020, at 9:00 a.m., or as soon as the Court may hear the matter in Courtroom C, located at United States District Court, 350 West 1st St., Los Angeles, CA 90012, before the Honorable S. James Otero. Plaintiff Stephanie Clifford, will move the Court under the All Writs Act, the Federal Rules of Civil Procedure, or its inherent powers to Strike the Court Clerk's erroneous Certification of this Court's Minute Order (Dkt. 46.) as a final money judgment. In sum, Plaintiff contends that the Civil Minute Order is not a final money judgment and that the Court did not authorize the Court Clerk to enter final judgment or certify that its Civil Minute Order is a final money judgment. Thus, the Court Clerk erred.

This Motion will depend on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declaration of Clark O. Brewster, the anticipated reply papers, all materials that may be properly considered in connection with this motion and oral argument at the hearing (should the Court hold a hearing).

As Plaintiff's counsel's declaration outlines, the parties conferred on December 13, 2019 and March 12, 2020 about this motion. After discussions about the merits of this motion, the parties could not agree on a mutual resolution: Mr. Trump's counsel advised that they oppose this motion. Thus, this Court's intervention is warranted.

Dated: March 19, 2020

By:     */s/ Clark O. Brewster*
        CLARK O. BREWSTER

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S
CERTIFICATION OF CIVIL MINUTE ORDER**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff moves the Court to annul or vacate the Court Clerk's Certification of this Court's Civil Minute Order as a money judgment. (*See* Exhibit A to Declaration of Clark O. Brewster ("COB Decl.")). In Exhibit A, the Clerk of this Court certified this Court's Civil Minute Order (Dkt. 46)—that awarded Defendant $293,052.33 in attorney fees, costs and sanctions—as a final money judgment. And yet, this Court has never entered a money judgment. That perhaps explains why Defendant's local California counsel prepared a journal entry and filed a motion with this Court asking for a final money judgment. (*See* COB Decl. Ex. "B"). That motion is still pending.

Meanwhile, Mr. Trump's Ohio Counsel has filed this Court Clerk's Certification of that minute order in two cases pending in U.S. District Court for the Southern District of Ohio. Both cases concern Plaintiff Clifford. Those cases are: Case No. 2:19-MC-47 and in *Clifford v. Keckley*, U.S.D.C., Case No. 2:19-cv-119. (*See* COB Decl. Ex. "C"). Mr. Trump claims in those cases that this Court's civil minute is eligible for registration as a foreign money judgment under 28 U.S.C. §1963. But as detailed below, that is incorrect. To begin with, the Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999). In fact, Congress has declared that all money judgments "shall" have interest computed. *See* 28 U.S.C. §1961. The Civil Minute entry has no interest applied. In fact, under this Court's local rules, "minute orders" are not judgments, nor can a court clerk, acting alone as she did here, without affirmative approval by this Court, enter final judgment. *See* Local Rules for the C.D. California, L.R. 58-6. Echoing those pronouncements, the combined effect of Fed. R. Civ. P. 54, 58 and 79 is also clear: civil minutes are not money judgments. The Court should strike the Clerk of Court's Certification of Judgment.

**I. BACKGROUND**

Ms. Clifford sued Mr. Trump for a defamatory tweet. Mr. Trump moved to dismiss the Complaint, coupled with a motion to strike, based on a Texas anti-SLAPP statute. Mr. Trump asserted that Texas substantive law applied to the lawsuit. As a result, Mr. Trump claimed, the Texas anti-SLAPP statute—The Texas Citizens' Participation Act—applied. Under that statute,

a defendant can attain relief by showing that the targeted speech is a matter of public concern. When a defendant shows that, the statute mandates dismissal. *See* Dkt. 36.

The Court agreed with Mr. Trump and dismissed Ms. Clifford's lawsuit holding that the Texas anti-SLAPP statute applied.[1] *See* Dkt. 36. Ms. Clifford's appeal is pending before the Ninth Circuit. *Clifford v. Trump*, Case No. 18-56351.[2]

While that appeal was pending, Mr. Trump moved for attorney fees and costs under the Texas anti-SLAPP statute. On December 11, 2018, this Court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney fees and costs. Then, Mr. Trump's local California counsel prepared a journal entry and filed a motion with the California federal court to enter a final judgment. (*See* COB Decl. Ex. "B"). *That motion is still pending and this Court has never entered a final money judgment.*

Recently, Ms. Clifford obtained a settlement in an unrelated matter pending in the Southern District of Ohio for a violation of her civil rights under 42 U.S.C. § 1983 by individual officers and the City of Columbus for false arrest. *Clifford v. Keckley, et al.,* U.S.D.C., Southern District of Ohio, Case No. 2:19-cv-119. The amount of settlement is a matter of public record, $450,000.00, and it seems that word of the monies caused the Defendant to take an interest. The federal court in Ohio has not yet adjudicated the competing claims of the parties asserting liens. (COB Decl. Ex. "D"). Ms. Clifford has also challenged Mr. Trump's "Judgment Lien" based on this Court Clerk's Certification of the Minute Order in the Ohio matter. (*See* COB Decl. Ex. "E").

---

[1] Throughout this litigation, whether the TCPA applies in federal court was an open question in the Fifth Circuit; the federal appellate court that oversees diversity jurisdiction appeals involving Texas law. But as noted, the Fifth Circuit recently held that the TCPA does not apply in federal court in diversity jurisdiction cases. *Klocke v. Watson*, 936 F.3d 240, 245-246 (5th Cir. 2019). Thus, a substantial reason for this Court's dismissal of Ms. Clifford's case and the sole basis for the attorney fees and costs award, was a law that should not have been applied in the first place. Ms. Clifford filed an original and supplemental Fed. R. App. P. 28 (j) letter brief in her pending Ninth Circuit Court of Appeals appeal on the TCPA's applicability. That appeal is pending.

[2] On November 24, 2019, the Ninth Circuit submitted "Notice of Oral Argument." The Ninth Circuit held oral argument on February 4, 2020 at 9:30 a.m. The case is ripe for decision.

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

Case 2:18-cv-06893-SJO-FFM Document 64-1 Filed 05/28/20 Page 9 of 9 Page ID #:1459

## II.    ARGUMENT AND AUTHORITIES

### A. Standards of review

This Court possesses inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962). Indeed, a district court's exercise of its inherent powers is proper if it is a "reasonable response to the problems and needs" that arise during a court's fair attempt at administering justice. *Degen v. United States*, 517 U.S. 820, 823–824 (1996). A federal court can use its inherent powers "to correct that which," as the Court Clerk's unilateral certification of a minute order here, "has been wrongfully done by virtue of its process." *United States v. Morgan*, 307 U.S. 183, 197 (1939).

Alternatively, because this Court already has jurisdiction over this case, the All Writs Act (Act), 28 U.S.C. §1651, empowers this Court to issue any orders "in aid of . . . [its] jurisdiction" to parties and third parties. *Id.* "The All Writs Act invests this Court with a power to promote "the resolution of issues in a case properly before it." *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). As the United States Supreme Court has made clear, a federal court's powers under the All Writs Act "*extends*, under appropriate circumstances, *to persons who, though not parties to the original action* or engaged in wrongdoing are in a position to frustrate the implementation of a court order *or the proper administration of justice*, *and encompasses even those who have not taken any affirmative action to hinder justice*." *United States v. New York Times Tel. Co.*, 434 U.S. 159, 174 (1977) (emphasis added).

### B. The Clerk erred in certifying a minute order as though it was a money judgment

This Court's Clerk is without authority under the Federal Rules of Civil Procedure to certify the Court's Minute Order of December 11, 2018, as a money "judgment." As noted, the Ninth Circuit has long held that "Civil Minutes—General" or "minute order[s]" are not judgments or appealable orders. *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999). Under this Court's local rules, "minute orders" are not judgments, nor can a court clerk, acting alone, without affirmative approval by this Court, enter final judgment. Under Ninth

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

Circuit precedent and California's federal court's local rules, there was never a money judgment issued. *See* Local Rules for the Central District of California, L.R. 58-6.[3]

      Federal law—specifically the Federal Rules of Civil Procedure[4]—has a specific meaning for what amounts to a judgment. A judgment "includes a decree and *any order from which an appeal lies*." Fed. R. Civ. P. 54(a) (emphasis added). But a judgment does not "include recitals of pleadings, a master's report, *or a record of prior proceedings*." *Id.* (emphasis added). Thus, minute orders—which are a record of prior court proceedings—are not judgments. *Id.*; *Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189 (9th Cir.1989) (A minute order is "a description of what transpired in the courtroom.").

      A judgment is final and able to trigger appeal rights when it complies with both Fed. R. Civ. P. 58 and 79. "A judgment is effective only . . . when entered as provided in Rule 79(a)." Fed. R. Civ. P. 58; *see also Radio Tele. Espanola*, 183 F.3d at 930 (unless both Rule 58 and 79(a) are satisfied, there is no valid judgment). Indeed, the Central District of California's Local Rules "clarify what cannot constitute an 'entry of judgment' in the Central District under Rules 58 and 79(a)." *Radio Tele. Espanola*, 183 F.3d at 930. Under those Local Rules, neither "a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall . . . constitute entry of judgment under Fed. R. Civ. P. 58 and 79(a) unless specifically ordered by the judge." L.R. 58-6 (C.D. Cal. 2019). Perhaps that explains why Mr. Trump's California counsel lodged a proposed final judgment for this Court to enter. (*See* COB Decl., Ex. B). Nor can a court clerk, acting alone, enter final judgment. *See* L.R. 58-5 (C.D. Cal. 2019).

---

[3] L.R. 58-6 Entry of Judgment - Memorandum of Decision, Opinion, Minute Order. Notation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to Fed.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge.

[4] The Federal Civil Rules of Procedure have the same status as federal statutes. *See Gallivan v. United States*, 943 F.3d 291, 294-295 (6th Cir. Nov. 7, 2019); *see also Harris v. Nelson*, 394 U.S. 286 (1969) (federal courts must treat the federal rules of civil procedure as they would statutes, and may not modify them by judicial construction).

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

In fact, the federal interest rate statute (28 U.S.C. §1961) further underscores why this Court's civil minute order is not a money judgment. To be sure, §1961 states that interest "*shall be allowed on any money judgment* in a civil case recovered in a district court," to "be calculated from the date of the entry of the judgment." 28 U.S.C. §1961 (A) (emphasis added). The key word here is "shall," which federal courts usually regard as making a provision mandatory. *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573-574 (9th Cir. 2000). "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 609 (2002). Thus, given this Court's robust knowledge of federal law, had it intended its Civil Minute to become a money judgment, it would have applied statutory interest, as the law requires. *See* 28 U.S.C. §1961. But it did not because the order was not a money judgment. Again, perhaps that explains why Mr. Trump's local California counsel prepared a journal entry and filed a motion with this Court to enter a final money judgment. (*See* COB Decl. Ex. B). That motion is still pending. Thus, the Court Clerk erred in certifying the Civil Minute Order as a final money judgment.

## III. CONCLUSION

For all these reasons, the Court should strike the Court Clerk's erroneous certification of its civil minute order as a final money judgment.

Respectfully Submitted,

*/s/ Clark O. Brewster*
Clark O. Brewster - OBA #1114 (Admitted PHV)
Mbilike Mwafulirwa OBA#31164 (Admitted PHV)
BREWSTER & DE ANGELIS
2617 East 21st Street
Tulsa, OK 74114

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

**CLARK O. BREWSTER, OBA # 1114,** *Admitted Pro Hac Vice*
cbrewster@brewsterlaw.com
**MBILIKE M. MWAFULIRWA, OBA # 31164,** *Admitted Pro Hac Vice*
mmm@brewsterlaw.com
**BREWSTER & DE ANGELIS**
**2617 E. 21st St.**
**Tulsa, OK 74114**
**Telephone:    (918) 742-2021**

**DAVID OLAN**
david@olanlaw.com
**TROY SKINNER**
Troy@olanlaw.com
**OLAN LAW OFFICE**
**212 Marine Street, Suite 100,**
**Santa Monica, CA 90405**
**Telephone:    (310) 566-0010**
*Attorneys for Plaintiff Stephanie Clifford*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DONALD J. TRUMP,**<br><br>    **Defendant**. | Case No. 2:18-cv-06893-SJO-FFM<br><br>**DECLARATION OF CLARK O. BREWSTER IN SUPPORT OF PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br>Action Filed: April 30, 2018 |

I, Clark O. Brewster, declare:

1.      I am an attorney admitted *pro hac vice* as counsel for Plaintiff. I am an attorney with the law firm of Brewster & DeAngelis, PLLC, and counsel for Plaintiff, Stephanie Clifford ("Plaintiff"). I make this declaration based on my own personal knowledge and, if called and sworn as a witness, I could and would competently testify hereto.

2.      I submit this declaration in support of Plaintiff's Motion to Annul or Vacate the Clerk of Court's Certification of Judgment filed concurrently with this instrument.

3.      Attached as Exhibit "A" is the Clerk's Certification of a Judgment to Be Registered in Another District with attached Civil Minutes. The Clerk certified Dkt. 46 as a final judgment.

4.      Attached as Exhibit "B" is the Notice of Lodging and Proposed Judgment filed by Defendant Trump.

5.      Attached as Exhibit "C" is the Notice of Registration of Foreign Judgment in United States District Court, Southern District of Ohio, Eastern Division, Case. No. 2:19-MC-00047-MHW-KAJ, which was filed in United States District Court, Southern District of Ohio, Eastern Division, Case. No. 2:19-CV-00119-MHW-EPD.

6.      Attached as Exhibit "D" is a copy of a website page of NBCNEWS.COM, collected from the internet outlining Ms. Clifford's settlement amount and related info.

7.      Attached as Exhibit "E" is a copy of Ms. Clifford's motion filed in the U.S. District Court of the Southern Ohio challenging Mr. Trump's attempted registration of this Court's civil minute order (Dkt. 47).

8.      My office conferred with Mr. Trump's attorneys on December 13, 2019 and March 12, 2020 about this motion. The parties explored the merits of this motion and could not agree. Mr. Trump's counsel advised that they are opposed. Thus, this Court's intervention is warranted.

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Executed on March 19, 2020, at Tulsa, Oklahoma

           */s/ Clark O. Brewster*
           Clark O. Brewster (Admitted Pro Hac Vice)
           Page **2** of 2

**DECLARATION OF CLARK O. BREWSTER**

## **PROOF OF SERVICE**

**STATE OF OKLAHOMA, COUNTY OF TULSA**

At the time of service, I was over 18 years old and not a party to this action. I am employed in the County of Tulsa, State of Oklahoma. My business address 2617 E. 21st St., Tulsa, OK 74114.

On March 19, 2020, I served true copies of the following document(s) described as:

**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**
on the interested parties:

Charles J. Harder
charder@harderllp.com
Ryan Stonerock
RStonerock@harderllp.com
HARDER LLP
132 S. RODEO DR., FOURTH FLOOR
BEVERLY HILLS, CA 90212
TEL (424) 203-1600
MMORENO@HARDERLLP.com
www.HARDERLLP.com

**BY Email OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from email address to the persons at the email addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission did not succeed.

**XX BY ELECTRONIC SERVICE:** I served the document(s) on the person listed in the Service List by submitting an electronic version of the document(s) via the CM/ECF court filing system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 19, 2020.

*/s/ Clark O. Brewster* _____

Page **8** of **8**
**PLAINTIFF'S MOTION TO ANNUL OR VACATE THE CLERK OF COURT'S CERTIFICATION OF CIVIL MINUTE ORDER**

# EXHIBIT "G"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Stephanie Clifford

PLAINTIFF(S)

v.

Donald J. Trump

DEFENDANT(S)

CASE NUMBER

2:18-cv-06893-JLS-FFMx

**NOTICE OF CLERICAL ERROR**

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action

☒ the following scanned document ☐ docket entry   have/has been corrected as indicated below.

Title of scanned document:  Clerk's Certification of a Judgment to be Registered in Another District

Filed date: _____   Document Number(s): _____

☐ Incorrect case number _____ was assigned to this ☐ action ☐ document

☐ Case number has been corrected.  The correct case number is _____

☐ Incorrect judge's initials were indicated on this ☐ action ☐ document . The correct judge's initials are: _____

☐ Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document . The correct magistrate judge's

initials are: _____ .

☐ Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to

☐ Judge ☐ Magistrate Judge _____ . The initials of the new judge(s) are: _____

☐ Case was assigned to ☐ Western ☐ Southern ☐ Eastern  division.  Pursuant to General Order 19-03, the case

has been reassigned to the ☐ Western ☐ Southern ☐ Eastern  division. The former case number

_____ has been reassigned to new case number _____ .

☐ Case title is corrected from _____ to _____

☐ Document has been re-numbered as document number _____

☐ Incorrect ☐ Filed Date ☐ Date of Document ☐ Date ENTERED on CM/ECF   was stamped on the document.

The correct date is _____ .

☐ Document is missing page number(s): _____

☐ To ensure proper routing of documents, all documents filed with the court must reflect the following case number

and judge's initials: _____

☒ Other:   The attached Clerk's Certification of a Judgment to be Registered in Another District was issued in error by
the Clerk.  The document referenced in the Certification was a Minute Order (dkt. #46), entered on
12/11/2018, not a judgment.  Therefore, it cannot be certified as a judgment.

CLERK, U.S. DISTRICT COURT

Date: _____ April 10, 2020 _____

By:  C. Powers _____

Deputy Clerk

AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | | |
|---|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 18-cv-06893-SJO-FFM |
| Donald J. Trump | ) | |
| *Defendant* | ) | |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*      12/11/2018      .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: 9-30-2019

*CLERK OF COURT*

Derek Davis

*Signature of Clerk or Deputy Clerk*

1183

# EXHIBIT "H"

Case 2:18-cv-06893-JLS-FFM Document 69-2 Filed 05/22/20 Page 80 of 80 Page ID
Case 2:18-cv-06893-JLS-FFM Document 69 Filed 04/15/20 Page 1 of 1 Page ID #:1516
#:1686

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 2:18-cv-06893-JLS-FFM                                  Date: April 15, 2020
Title:  Stephanie Clifford v. Donald J. Trump

Present:  **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|  Terry Guerrero  | N/A |
| :---: | :---: |
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                          Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER DENYING AS MOOT MOTION
TO ANNUL OR VACATE (Doc. 64)**

       Before the Court is Plaintiff's Motion to Annul or Vacate the Clerk of Court's
Certification of Civil Minute Order, currently set for hearing on May 18, 2020, at 10:00
a.m.  (Doc. 64.)  On April 10, 2020, the Clerk of Court issued a Notice of Clerical Error
stating that the certification at issue (Doc. 46) had been issued in error.  Accordingly, the
Motion to Annul or Vacate is DENIED AS MOOT.

Initials of Preparer:  tg