HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
Email: CHarder@HarderLLP.com
RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>Defendant. | Case No. 2:18-cv-06893-JLS-FFM<br><br>**REQUEST FOR JUDICIAL NOTICE OF RULING BY UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

Defendant Donald J. Trump ("Mr. Trump") hereby requests, in support of his pending Motion to Certify Judgment [ECF No. 68], that this Court take judicial notice of the July 31, 2020 Memorandum of the United States Court of Appeals for the Ninth Circuit, attached hereto as Exhibit 1 (the "Memorandum").

The Memorandum **affirms** the October 15, 2018 Order in this case granting Mr. Trump's Motion to Dismiss/Strike Plaintiff Stephanie Clifford's ("Ms. Clifford") defamation claim pursuant to Texas Anti-SLAPP law ("the Anti-SLAPP Order") [ECF No. 36]. Accordingly, both the Anti-SLAPP Order and the subsequent December 11, 2018 Order [ECF No. 46] granting Mr. Trump's Motion for Attorneys' Fees and awarding Mr. Trump a total of $293,052.33 in attorneys' fees and sanctions, which was never appealed by Ms. Clifford, still stand.

Judicial notice of the Memorandum is properly taken by this Court. *See Fed. R. Evid.* 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Daniels v. Specialized Loan Servicing, LLC*, 2019 WL 6794212, at *1, fn. 2 (C.D. Cal. 2019) (taking judicial notice of appellate court ruling because "[u]nder Rule 201(b), a court may take judicial notice of the existence of matters of public record.").

Dated: July 31, 2020                           HARDER LLP

                                               By: */s/ Charles J. Harder*
                                                   CHARLES J. HARDER
                                                   Attorneys for Defendant
                                                   DONALD J. TRUMP

-1-
NOTICE OF RULING

# Exhibit 1

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 31 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEPHANIE CLIFFORD, AKA Stormy Daniels, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> DONALD J. TRUMP, <br><br> Defendant-Appellee. | No. 18-56351 <br><br> D.C. No. 2:18-cv-06893-SJO-FFM <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 4, 2020
Pasadena, California

Before: THOMAS, Chief Judge, and WARDLAW and NGUYEN, Circuit Judges.

Stephanie Clifford appeals the district court's dismissal of her defamation action against President Donald J. Trump.[1] We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] Because the operative complaint names President Trump in his personal capacity, the remainder of this disposition refers to the parties as Ms. Clifford and Mr. Trump.

1. The district court correctly concluded under the *Erie* doctrine that the motion to dismiss procedures of the Texas Citizens Participation Act (TCPA)—Texas's version of an anti-SLAPP law—apply in federal court. We have long held that analogous procedures in California's anti-SLAPP law apply in federal court, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), and the TCPA is indistinguishable from California's law in all material respects, *compare S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (describing the TCPA analysis), *with Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (describing California's anti-SLAPP analysis).

Though we recognize the Fifth Circuit recently held that the TCPA does not apply in federal court, *Klocke v. Watson*, 936 F.3d 240, 244–47 (5th Cir. 2019), the reasoning of the Fifth Circuit's opinion cannot be reconciled with our circuit's anti-SLAPP precedent, *compare Newsham*, 190 F.3d at 972 ("[T]here is no indication that [Federal Rules of Civil Procedure] 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims."), *with Klocke*, 936 F.3d at 247 ("Rules 8, 12, and 56 provide a comprehensive framework governing pretrial dismissal and judgment." (cleaned up)). We are bound to follow our own precedent, which requires us to apply the

TCPA.[2] *Miller v. Gammie*, 335 F.3d 889, 892–93, 900 (9th Cir. 2003) (en banc).

Because the TCPA motion in this case challenged the legal sufficiency of the allegations in the complaint, we "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

2.  The elements of a defamation claim under Texas law are (1) "the publication of a false statement of fact to a third party," (2) "that was defamatory concerning the plaintiff," (3) made with actual malice,[3] and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). We conclude, like the district court, that the complaint failed to plausibly allege an actionable false statement of fact, though for slightly different reasons.

As alleged in the complaint, Ms. Clifford began an intimate relationship with Mr. Trump in 2006. Five years later, in 2011, Ms. Clifford agreed to cooperate with a magazine that intended to publish a story about the relationship. Ms.

---

[2] We do not consider Ms. Clifford's argument, raised for the first time in her reply brief on appeal, that applying the TCPA would violate the Seventh Amendment. *Brown v. Rawson-Neal Psych. Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016) ("We generally do not consider issues that are not raised in the appellant's opening brief.").

[3] Actual malice is required because Ms. Clifford has not disputed that she is a public figure. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

3

Clifford alleges that a few weeks after she agreed to assist with the magazine story, she was approached by an unknown man in a Las Vegas parking lot who told her "Leave Trump alone. Forget the story," and threatened that harm would come to her if she continued to cooperate with the magazine. Ultimately, the story was not published.

In 2018, after Mr. Trump became President, Ms. Clifford went public with her account of this incident. With the assistance of a sketch artist, she prepared a composite sketch of the man from the parking lot, which was disseminated publicly.

Ms. Clifford's defamation claim is based on a tweet Mr. Trump published about the composite sketch. Shortly after the sketch was released, a Twitter user unrelated to the parties here tweeted the sketch juxtaposed with a photograph of Ms. Clifford's ex-husband, with a mocking message suggesting that the two men resembled one another. Mr. Trump retweeted this tweet, adding his own message: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!"

The two tweets appeared together as depicted below: [4]



Ms. Clifford responded by filing this suit, alleging that Mr. Trump's tweet is defamatory.

Under Texas law, as informed by the Supreme Court's First Amendment jurisprudence, "statements that are not verifiable as false are not defamatory. And even when a statement is verifiable, it cannot give rise to liability if the entire

---

[4] Mr. Trump's unopposed request that we consider the screenshot of the tweet is granted. The screenshot is properly before us because the tweet is described in the complaint and forms the basis of the defamation claim. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

5

context in which it was made discloses that it was not intended to assert a fact." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018) (cleaned up). Texas law refers to statements that fail either test—"verifiability or context"—as "opinion[s]." *Id.* The determination of whether a statement is "reasonably capable of a defamatory meaning" focuses on how the statement would be interpreted by an "objectively reasonable reader." *Id.* at 624, 631.

Ms. Clifford advances two arguments for why the tweet at issue is defamatory. First, citing the Black's Law Dictionary definition of "confidence man," she argues that the use of the term "con job" implied that she had literally committed the crime of fraud. But it would be clear to a reasonable reader that the tweet was not accusing Clifford of actually committing criminal activity. *See id.* at 638. Instead, as used in this context, the term "con job" could not be interpreted as anything more than a colorful expression of rhetorical hyperbole. *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970) (description of the plaintiff's negotiating position as "blackmail" could not reasonably be interpreted as having accused him of committing the crime of blackmail); *see also Milkovich v. Lorain J. Co.*, 497 U.S. 1, 16–17 (1990). Because the tweet could not reasonably be read as asserting that Ms. Clifford committed a crime, this theory of defamation is not viable. *Tatum*, 554 S.W.3d at 638; *see also Bresler*, 398 U.S. at 13–14.

Next, Ms. Clifford argues that the tweet is defamatory because it accused her

6

of lying about having been threatened because of her participation in a magazine story about her relationship with Mr. Trump. We agree that this is a reasonable interpretation of the tweet, but conclude that it is not actionable.

Under Texas law, a statement that merely interprets disclosed facts is an opinion, and, as noted, statements of opinion cannot form the basis of a defamation claim. *Tatum*, 554 S.W.3d at 639–40. Viewed through the eyes of an objectively reasonable reader, the tweet here reflects Mr. Trump's opinion about the implications of the allegedly similar appearances of Ms. Clifford's ex-husband and the man in the sketch. Mr. Trump's reference to a "sketch years later of a nonexistent man" signals that the allegedly defamatory conclusion that followed—that Ms. Clifford was pulling a "con job" and "playing the Fake News Media for Fools"—plainly concerns the similarities between the sketch and the photograph of Ms. Clifford's ex-husband. Because the tweet juxtaposing the two images was displayed immediately below Mr. Trump's tweet, the reader was provided with the information underlying the allegedly defamatory statement and was free to draw his or her own conclusions. Moreover, the tweet does not imply any undisclosed facts. Accordingly, the tweet, read in context, was a non-actionable statement of opinion. *Id.*; *Fox Ent. Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524, 560 (Tex. App. 2007) ("[T]here is no defamation liability for a statement of opinion when a report sets out the underlying facts in the publication itself, thereby allowing the listener

7

to evaluate the facts and either accept or reject the opinion." (citing *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App. 1998)).

Resisting this conclusion, Ms. Clifford argues that the tweet is reasonably construed as disputing not only her account of having been threatened over her cooperation with the magazine but also her broader allegation that she had an intimate relationship with Mr. Trump. Construed this way, Ms. Clifford contends that the tweet is actionable because a reasonable reader would appreciate that Mr. Trump had personal knowledge about whether there had in fact been a relationship, such that the tweet would be understood as a statement, based on undisclosed facts, that Ms. Clifford had fabricated her account of the relationship. We find this argument unpersuasive.

As an initial matter, in evaluating whether Ms. Clifford adequately pleaded a defamation claim, we are limited to the allegations in the complaint. *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019). The operative complaint specifically alleges that Mr. Trump's tweet was defamatory because it "falsely attack[ed] the veracity of Ms. Clifford's account of the threatening incident that took place in 2011." Nowhere does the complaint allege that the tweet was instead addressing Ms. Clifford's allegations about her relationship with Mr. Trump. This theory is therefore not before us.

More importantly, even if this theory had been properly presented, we do not

believe the tweet could be reasonably read as addressing Ms. Clifford's account of her relationship with Mr. Trump. The tweet did not reference the alleged relationship and instead focused on the sketch of the ostensibly "nonexistent man." This was plainly a reference to Ms. Clifford's account of having been threatened by a man in a Las Vegas parking lot. It follows that the statement in the following sentence that Ms. Clifford was pulling a "con job" and "playing the Fake News Media for Fools" was referring to her account of that same incident, not more broadly to other, unreferenced, statements by Ms. Clifford about the alleged relationship.

Because the complaint failed to plead an actionable false statement, the district court correctly granted the motion to dismiss.[5]

3. The district court did not abuse its discretion by denying leave to amend the complaint. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020). Amendment would have been futile because the tweet is not defamatory as a matter of law. *See id.* at 1239.

**AFFIRMED.**

---

[5] In light of our conclusion, we do not address whether the complaint adequately pleaded actual malice. We also need not, and do not, address the district court's conclusion that Ms. Clifford presented herself as a "political adversary" of Mr. Trump.

9