**Case No. 18-56351**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

STEPHANIE CLIFFORD, aka STORMY DANIELS,

Plaintiff/Appellant,

v.

DONALD J. TRUMP,

Defendant/Appellee.

_____

On Appeal from the United States District Court
For the Central District of California, Los Angeles
No. 2:18-cv-06893-SJO-FFM
Hon. S. James Otero

_____

**APPELLANT'S PETITION FOR REHEARING EN BANC**
_____

Clark O. Brewster
Guy A. Fortney
Mbilike M. Mwafulirwa
Brewster & De Angelis, P.L.L.C.
2617 E. 21 Street
Tulsa, OK  74114
(918) 742-2021
**_Counsel for Plaintiff/Appellant_**

**August 14, 2020**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... ii

I.     INTRODUCTION AND RULE 35 STATEMENT ........................................ 1

II.   STATEMENT OF THE CASE ........................................................ 4

III.  REASONS FOR GRANTING REHEARING EN BANC .............................. 7

    A.  The panel's decision conflicts with longstanding precedent of the Supreme Court and this Court ........................................................ 8

    B.  The panel's decision exacerbates a split with sister-circuits ..................... 13

    C.  The applicability of the TCPA is not an academic exercise: An impermissible sizeable attorney fee and sanctions award hangs over ...... 14

    D.   On the merits, the panel misapplied Supreme Court precedent and overlooked a sister-circuit opinion ................................................. 15

IV.  CONCLUSION ................................................................... 16

CERTIFICATES

OPINION

SUPPLEMENTAL ELECTRONIC RECORD

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Abbas v. Foreign Policy Grp.*,
   783 F.3d 1328 (D.C. Cir. 2015).......................................................................... 14

*Bentley v. Bunton*,
   94 S.W. 3d 561 (Tex. 2002) ...................................................................... 15, 16

*Carbone v. CNN, Inc.*,
   910 F.3d 1345 (11th Cir. 2018) ...................................................................... 13

*Cooper Ind., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004)...................................................................................... 10

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938)...................................................................................... 7, 8

*Fox Ent. Grp., Inc. v. Abdel-Hafiz*,
   240 S.W.3d 524 (Tex. App. 2007) .................................................................. 16

*Hanna v. Plumer*,
   380 U.S. 460 (1965)........................................................................................ 8

*In re Cty. of Orange*,
   784 F.3d 520 (9th Cir. 2015) ...................................................................... 9, 12

*In re Lipsky*,
   460 S.W. 3d 579 (Tex. 2015) ................................................................. 5, 7, 11

*KBMT Op. Co., LLC v. Toledo*,
   492 S.W.3d 710 (Tex. 2016) .......................................................................... 5

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) ..................................................................Passim

*Knight First Amend. Inst. v. Trump*,
   928 F.3d 226 (2d Cir. 2019) .......................................................................... 15

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ........................................................ 3, 13, 14

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ............................................................ 13

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) .............................................................. 2

*Makaeff v. Trump Univ., LLC*,
736 F.3d 1180 (9th Cir. 2013)(Order en banc)................................... 2, 10, 11, 13

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)................................................................................ 15

*Murray v. Mayo Clinic*,
934 F.3d 1101 (9th Cir. 2019) ............................................................ 13

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .............................................................. 4

*Planned Parenthood Fed. of Am., Inc. v. Cntr. for Med.*,
890 F.3d 828 (9th Cir. 2018) ......................................................... 3, 10

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
559 U.S. 393 (2010)......................................................................Passim

*Sims v. Great Am. Life Ins. Co.*,
469 F.3d 870 (10th Cir. 2006) ............................................................ 9

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018)........................................................................ 15

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ........................................................ 9, 10, 11

*United States v. AMC Entm't, Inc.*,
549 F.3d 760 (9th Cir. 2008) .............................................................. 8

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ............................................................................................ 12

## Statutes

Tex. Civ. Prac. Rem. §27.001(3) .......................................................................... 5
Tex. Civ. Prac. Rem. §27.003(a) ........................................................................... 5
Tex. Civ. Prac. Rem. §27.003(b) ........................................................................... 5
Tex. Civ. Prac. Rem. §27.003(c) ........................................................................... 5
Tex. Civ. Prac. Rem. §27.006(b) ........................................................................... 5
Tex. Civ. Prac. Rem. §27.008 ................................................................................ 5

## Rules

Fed. R. App. P. 35 ................................................................................................. 1
Fed. R. App. P. 35(b) ..................................................................................... 3, 14
Fed. R. Civ. P. 12 and 56 ............................................................................ 2, 7, 11, 12
Fed. R. Civ. P. 23 ........................................................................................... 9, 12
Ninth Cir. R. 35-1 ................................................................................................ 14

## Other Authorities

Restatement (Second) Conflict of Laws §150 ....................................................... 6

## I. INTRODUCTION AND RULE 35 STATEMENT

This Petition asks this Court to realign circuit law with U.S. Supreme Court precedent and decisions of sister-circuits. In the decision below, the panel acknowledged that in adhering to circuit precedent—while addressing the Texas Citizens' Participation Act ("TCPA") (an anti-SLAPP statute)—*it was creating a circuit split with the Fifth Circuit*. Op. 2. The panel believed it was powerless to do what only this En Banc Court can: align circuit law with controlling Supreme Court precedent and decisions of sister-circuits. *See* Op. 2-3; *see also* Fed. R. App. P. 35.

Begin with *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). *Shady Grove* held that a valid Federal Rule of Civil Procedure governs over a state procedural rule if the two rules "answer the same question." *Id.* at 399. In the parts that Justice Stevens joined the Plurality, making a majority opinion (Parts I and II-A), the Court outlined a two-tiered framework to govern when a federal rule governs over state law. The Court held that a federal rule governs (1) when it "answer[s] the same question" as the state law, and (2) it is not "ultra vires." *Id.* at 399. The Court also made clear that rules that govern pleading standards, summary judgment, pretrial discovery, and admissibility of evidence and the like are generally "ostensibly addressed to procedure." *Id.* at 404.

In a decision tracking *Shady Grove,* the Fifth Circuit held that the TCPA is inapplicable in federal court. *See Klocke v. Watson*, 936 F.3d 240, 244-249 (5th Cir.

2019). Adopting then-Judge Kavanaugh's reasoning from the D.C. Circuit, the Fifth Circuit held that the TCPA answers the same question as Fed. R. Civ. P. 12 and 56—*i.e.*, "what are the circumstances under which a court must dismiss a case before trial?" *Klocke*, 936 F.3d at 245. Under *Shady Grove*, the TCPA must yield to the Federal Rules of Civil Procedure. *Id.*

But in the decision below, the panel split with the Fifth Circuit over the TCPA. The panel affirmed on the TCPA because, in its view, it functions like California's anti-SLAPP statute. Op. 2-3. The TCPA only arose here because the district court, after applying conflict-of-law rules, held that Texas law applied to this case. Applying the TCPA, the district court dismissed Clifford's suit and later imposed nearly $300,000.00 in attorney fees, costs, and sanctions. E.R. 6-15; S.E.R. 1-9. Thus, following the panel's circuit-splitting decision, there is an anomaly in the law. A losing defamation plaintiff in the Fifth Circuit faces no threat of fees and sanctions, while those like Clifford who land in the Ninth Circuit (because of conflict-of-law or transfer-of-venue rules) do *based on the same Texas statute*.

That result cannot be squared with *Shady Grove.* Indeed, appreciating the unnecessary confusion and complexity that anti-SLAPP statutes create, several judges of this circuit have urged this Court to reconsider its anti-SLAPP jurisprudence. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272-275 (9th Cir. 2013) (Kozinski, Paez, JJ., concurring); *Makaeff v. Trump Univ., LLC*, 736 F.3d

1180, 1188-1190 (9th Cir. 2013) (Watford, Kozinksi, Paez, Bea, JJ., dissenting from order denying en banc rehearing). Even the judge who supplied the crucial vote initially upholding anti-SLAPPs now believes some of their features conflict with the Federal Rules of Civil Procedure. *See Planned Parenthood Fed. of Am., Inc. v. Cntr. for Med. Prog.*, 890 F.3d 828, 835-836 (9th Cir. 2018) (Gould, J., concurring).

In fact, following the Fifth Circuit's lead, the Second Circuit has also disagreed with this circuit. That court held that the California anti-SLAPP statute— the cornerstone of this circuit's anti-SLAPP jurisprudence—conflicts with the Federal Rules of Civil Procedure. *See La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020). To that list, add the 10th, 11th, and D.C. Circuits that have all rejected this circuit's anti-SLAPP jurisprudence because it conflicts with *Shady Grove*.

On the merits, the panel erred when it misapplied important Supreme Court and overlooked sister-circuit First Amendment precedent.

Altogether, those are enough reasons for this Court to grant en banc rehearing. *See* Fed. R. App. P. 35(b) (Court should grant en banc rehearing if petition "involves an issue on *which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals*") (Emphasis added). This case fits the bill.

## II. STATEMENT OF THE CASE

Appellant Stephanie Clifford is an adult movie actor and entertainer.[1] After Clifford agreed to an interview with *In Touch* Magazine about her affair with Trump in 2011, a stranger threatened her and her infant daughter. The man confronted Clifford in a parking lot telling her, "Leave Trump alone. Forget the story." The man then said, "That's a beautiful little girl. It'd be a shame if something happened to her mom." Clifford understood the man's statements to amount to direct threats. That experience left Clifford shaken. E.R. 264.

Clifford publicly released a sketch of the man who threatened her. But the next day, Trump accused Clifford of lying. Tweeting to millions of his followers, Trump claimed: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" E.R. 265.

After seeing Trump's tweet, Clifford sued him. Clifford filed defamation claims against Trump in the Southern District of New York. At the time, Trump was still a New York resident, while Clifford was a Texas resident. E.R. 265-268.

Trump moved in a combined motion to transfer venue or to stay or dismiss the action. His argument turned on that he and Clifford had other pending litigation

---

[1] Because this case was dismissed on the pleadings, this Court must accept, as true, allegations in the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

in this circuit. Trump and the other defendants removed one of those state cases to the Central District of California on diversity jurisdiction grounds. E.R. 5.

Meanwhile, before the Southern District of New York could rule on Trump's motions, the parties stipulated to a transfer to the Central District of California. E.R. 246-247. Thus, Clifford's defamation claims, together with her declaratory judgment case, ended up before the same judge: Senior U.S. Judge S. James Otero. E.R. 5.

Trump moved to dismiss the entire case based on the TCPA. The TCPA is an anti-SLAPP statute. *See KBMT Op. Co., LLC v. Toledo*, 492 S.W.3d 710, 713 n. 6 (Tex. 2016). An anti-SLAPP statute is a class of state legislation designed to curb meritless lawsuits filed to silence critics and to saddle them with litigation costs. *In re Lipsky*, 460 S.W. 3d 579, 586 (Tex. 2015). The most stringent anti-SLAPPs, like the TCPA, serve strong medicine to accomplish their goals: An accelerated dismissal procedure soon after suit is filed, *see* Tex. Civ. Prac. Rem. §27.003(c); and a complete stay of discovery, *see* §27.006(b). All the while, a plaintiff must, at the pleading stage, still come forward with evidence to establish her prima facie trial burden, *see* §§27.003(a)&(b); *In re Lipsky*, 460 S.W. 3d at 590. For the prevailing defendant, the TCPA awards mandatory attorney fees and costs, *see* §27.001(3); and an immediate appeal if the trial court denies the early dismissal motion, *see* §27.008.

The parties squared off on the TCPA motion. Trump claimed that his statements were protected opinion: hyperbole. Thus, he argued, Clifford's lawsuit

was an attempt to punish him for his protected speech. Clifford countered: the TCPA is inapplicable in federal court. Alternatively, because Trump's statements were provably false, they were actionable under longstanding law. *See* E.R. 7-15.

The district court ruled for Trump. Applying the Restatement (Second) Conflict of Laws §150, the court ruled that Clifford's Texas domicile was controlling. E.R. 5-7. Thus, the District Court held that the TCPA applied. Without much analysis, the court erroneously assumed that the TCPA is functionally the same as the California anti-SLAPP statute. The court applied this circuit's California anti-SLAPP precedents and dismissed. The court then awarded Trump nearly $300,000.00 in fees, costs, and sanctions based on the TCPA. E.R. 6-15; S.E.R. 1-9.

The panel affirmed. It too—without a detailed analysis—held that the TCPA is functionally the same as the California anti-SLAPP statute. While aware that the Fifth Circuit had held that the TCPA conflicts with the Federal Rules of Civil Procedure under *Shady Grove*, the panel believed that it was powerless to overturn circuit precedent. Thus, it applied Ninth Circuit precedent on the TCPA. On the merits, the panel—while acknowledging that one of Trump's two statements can be proven true or false—held that, in its view, the context of the publication made it clear that it was protected opinion. Op. 2-9. The panel affirmed. Op. 9.

## III. REASONS FOR GRANTING REHEARING EN BANC

The case turns on whether the TCPA answers the same questions as the Federal Rules of Civil Procedure 12 and 56—*i.e.*, under what circumstances must a court "dismiss a case before trial?" *Klocke*, 936 F.3d at 245. To ask the question is to answer it. *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (The TCPA also provides "a special *procedure* for *the expedited dismissal of* [meritless] *suits*.") (Emphasis added).

Against that background, *Shady Grove* leaves no doubt about the correct answer here: the TCPA is inapplicable. *See Shady Grove*, 559 U.S. at 399. After all, in diversity jurisdiction cases, federal courts apply federal (not state) procedural rules. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Because the TCPA is procedural, as *Lipsky* says it is, *Erie* and *Shady Grove* foreclose its application here.

The panel glossed over these concerns when it held that the district court did in fact apply Fed. R. Civ. P. 12 standards. That cannot be correct. The proof is in the pudding. In a later order relying on the TCPA, the district court imposed nearly $300,000 in fees and sanctions against Clifford (S.E.R. 1-9), something the federal rules do not mandate. Indeed, as the Fifth Circuit and several others have held, when an anti-SLAPP law like the TCPA is inapplicable, neither are its attendant attorney fees and sanctions provisions. That is the point that the panel missed.

7

As noted, the panel opinion has created an anomaly in the law. A losing defamation plaintiff in the Fifth Circuit faces *no* threat of fees and sanctions, while those like Clifford who land in the Ninth Circuit *do based on the same Texas statute.* Besides the noted circuit splits, that result also goes against this circuit's professed commitment to inter-circuit comity, as expressed in other legal contexts. *See, e.g. United States v. AMC Entm't, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008) ("Principles of comity require that, *once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area. Courts in the Ninth Circuit* should not grant relief that would *cause substantial interference with the established judicial pronouncements of such sister circuits*") (Emphasis added).

In short, by its own telling, the panel essentially claimed it was powerless to do only what it believed this Court can: realign circuit law with Supreme Court precedent and decisions of sister-circuits. This Court should grant rehearing en banc.

### A. The panel's decision conflicts with longstanding precedent of the Supreme Court and this Court

The Supreme Court has long held that in diversity jurisdiction cases, a federal court applies state substantive law and federal procedural rules. *Tompkins*, 304 U.S. at 78. Indeed, over the years, the Supreme Court has clarified that *Erie* is inapplicable to the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 469-470 (1965) ("*Erie R. Co. v. Tompkins* [does] [not] *constitute the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure*. The

*Erie* rule has never been invoked to void a Federal Rule.") (Emphasis added); *see also Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 877 (10th Cir. 2006) (stating that *Hanna* held that "*Erie* [is] inapplicable to the Federal Rules of Civil Procedure").

*Shady Grove* added to this primacy of the Federal Rules of Civil Procedure. In that case, the Supreme Court had to resolve whether to apply Fed. R. Civ. P. 23 in the wake of a state law that precluded class certification. *Id.* at 396-397. The Court ruled that, in a diversity jurisdiction case, a federal court should apply Rule 23. *Id.* at 399-400. In the process, the Court devised a two-tiered test: The Court held that a federal rule governs (1) when it "answer[s] the same question" as the state law, and (2) it is not "ultra vires." *Shady Grove*, 559 U.S. at 399. The Court made clear that rules on pleading, summary judgment, pretrial discovery, and admissibility of evidence are generally "ostensibly addressed to procedure." *Id.* at 404.

This Court's recent decisions have also adopted *Shady Grove*'s two-tiered framework. *See In re Cty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015). This Court now also first asks "whether a Federal Rule of Civil Procedure or a federal law governs." *Id.* If it does, this Court "will apply that rule—*even in the face of a countervailing state rule*—as long as it is constitutional and within the scope of the Rules Enabling Act." *Id.* (emphasis added).

In affirming the district court decision below, the panel incorrectly held itself bound by non-controlling circuit precedents. The panel cited *United States ex rel.*

*Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) and *Planned Parenthood,* 890 F.3d 828. That was wrong for two main reasons.

*First*, *Planned Parenthood* in essence reaffirmed *Newsham's* holding that the California anti-SLAPP law applied in federal court alongside the Federal Civil Procedure Rules. *Id.* at 833-834. But neither decision addressed the Supreme Court's intervening majority opinion in *Shady Grove* and its new two-tiered test and how it affects state laws like the TCPA. *See, e.g.*, *Shady Grove*, 559 U.S. at 399; *see also id.* at 442-443 (Ginsburg, J., dissenting) (noting that *Shady Grove* had departed from longstanding *Erie* precedents); *Makaeff*, 736 F.3d at 1181 (Wardlaw, J., concurring in denial of rehearing en banc) (*Shady Grove* "*framed the 'direct collision' inquiry in a new way*") (emphasis added). That matters here because preexisting cases are not precedent for questions they did not consider. *See Cooper Ind., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, *neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents*.") (Emphasis added).

*Second*, *Shady Grove*'s new two-tiered framework undercuts *Newsham* and *Planned Parenthood*. To be clear, in affirming that the California anti-SLAPP provisions apply in federal court, *Newsham* applied the "direct collision" test. That test asked whether the state laws could occupy the same field as the Federal Rules of Civil Procedure. *See Newsham*, 190 F.3d at 972. *Newsham* concluded that

California's anti-SLAPP provisions could co-exist with the federal rules because there was no direct collision. *Id.* at 973. Begin with noting the obvious: *Newsham* predates *Shady Grove*. And, as noted, *Planned Parenthood*, which reaffirmed *Newsham*'s principal holding, also did not address the intervening impact of *Shady Grove*. As noted, *Shady Grove* changed the controlling *Erie* test. *See Shady Grove*, 559 U.S. at 442-443 (Ginsburg, J., dissenting).

Applying that new framework here, *Newsham* fails to clear *Shady Grove*'s first prong. *Newsham* conceded that the California *"[a]nti–SLAPP statute and the Federal Rules do, in some respects, serve similar purposes*, namely the expeditious *weeding out of meritless claims before trial*." *Newsham*, 190 F.3d at 973 (emphasis added). So does the TCPA. *In re Lipsky*, 460 S.W.3d at 586 (The TCPA provides "a special *procedure for the expedited dismissal of* [meritless] suits."). The Federal Rules of Civil Procedure 12 and 56 also answer the same questions as those two anti-SLAPP statutes—*i.e.*, under what circumstances must a court "dismiss a case before trial?" *Klocke*, 936 F.3d at 245; *see also Makaeff*, 736 F.3d at 1188 (Watford, Kozinski, Paez, Bea, JJ., dissenting from rehearing en banc) (explaining that *Newsham* is no longer good law given the intervening *Shady Grove* decision).

We expect that some might suggest that the TCPA and the Federal Rules of Civil Procedure can co-exist. *See, e.g.*, *Makaeff*, 736 F.3d at 1182 (Wardlaw, J., concurring in the denial of rehearing en banc). That view goes against Supreme

Court precedent. To begin with, the Supreme Court has rejected any suggestion that federal courts should read the Federal Rules of Civil Procedure narrowly. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9 (1980) ("This is not to suggest that the Federal Rules of Civil Procedure are to be narrowly construed"). In any event, *Shady Grove* rejected a similar co-existence argument while addressing Fed. R. Civ. P. 23. *See Shady Grove*, 559 U.S. at 446-447 (Ginsburg, J., dissenting) (suggesting that Rule 23 could co-exist with state law). *Shady Grove* rejected that co-existence theory because both the state law and Rule 23 "answered the same question"—*i.e.* "whether a class action may proceed for a given suit." *Id.* at 401 (Maj. Op.). Because the two laws answered the same question, there was no room for co-existence. *Id. Shady Grove* also made it clear that states cannot superimpose additional requirements on the Federal Rules of Civil Procedure. *Id.* at 399-401 (Maj. Op.).

There is no principled reason why *Shady Grove*'s preclusive rationale cannot apply to Rules 12 and 56. Those rules—like the state anti-SLAPP statutes—also ask when can a court can dismiss a case before trial. *See Klocke*, 936 F.3d at 245.

Against this background, *Shady Grove* leaves no doubt about how the panel should have ruled here: that the TCPA should have yielded to the Federal Rules of Civil Procedure. *See Shady Grove*, 559 U.S. at 399; *In re Cty. of Orange*, 784 F.3d at 527 (if "*a Federal Rule of Civil Procedure . . . governs . . . this Court 'will apply that rule—even in the face of a countervailing state rule*'") (emphasis added). This

Court has long held that when intervening Supreme Court precedent "undercut[s]
the theory or reasoning underlying the prior circuit precedent in such a way that the
cases are clearly irreconcilable," a panel must disregard contrary circuit law. *See
Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). The panel erred here.

### B. The panel's decision exacerbates a split with sister-circuits

The panel acknowledged that it was creating a circuit split with the Fifth
Circuit. Op. 2-3. The last time several members of this Court voted to deny en banc
review, they did so, in part, because no other circuit had disagreed with Ninth Circuit
law. *See Makaeff*, 736 F.3d at 1184 (Wardlaw, J., concurring in denial of rehearing
en banc) ("If we had taken this appeal en banc, *and decided the other way . . . , we
would have created an inter-circuit split*") (emphasis added). The panel has now
created such a split. *See* Op. 2-3, *compare with Klocke*, 936 F.3d at 245.

Other circuits have also split with this Court on *Newsham* and its progeny.
Take first the Second Circuit. That court has held that the California anti-SLAPP
statute—the foundation of this circuit's anti-SLAPP jurisprudence—is inapplicable
in federal court after applying *Shady Grove*'s analytical framework. *See La Liberte*,
966 F.3d at 85-88. To compound matters, the Tenth, Eleventh, and D.C. Circuits
have all rejected this Court's anti-SLAPP jurisprudence. *See Los Lobos Renewable
Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 672 n.7 (10th Cir. 2018); *Carbone*

*v. CNN*, *Inc.*, 910 F.3d 1345, 1356 (11th Cir. 2018); *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1335-1336 (D.C. Cir. 2015).

Altogether, those are all reasons for this Court to grant rehearing en banc. *See* Fed. R. App. P. 35 (b); Ninth Cir. R. 35-1.

### C. The applicability of the TCPA is not an academic exercise: An impermissible sizeable attorney fee and sanctions award hangs over Clifford

When a defendant prevails on either the TCPA or California's anti-SLAPP motion, the district court must award attorney fees, costs, and sanctions. That makes the question of the TCPA's applicability all the more important here. As noted, a losing defamation plaintiff in the Fifth Circuit faces no threat of fees and sanctions. *See Klocke*, 936 F.3d at 247 n. 6 ("because the TCPA does not apply in federal court, the district court erred by awarding fees and sanctions pursuant to it"). Other circuits that have refused to apply anti-SLAPP statutes have also held the same. *See Abbas*, 783 F.3d at 474 n. 5 (because statute was inapplicable, "attorney's fees under the [anti]–SLAPP Act are not available to the defendants").

Thus, if this Court accepts Appellant's arguments, then the attorney fees and costs award cannot stand. *Id.*; *La Liberte*, 966 F.3d at 88 (no freestanding right to attorney fees and costs when California anti-SLAPP statute was inapplicable).

**D. On the merits, the panel misapplied Supreme Court precedent and
overlooked a sister-circuit opinion**

The panel found that at least one of Trump's statements was verifiable. Op.

6-7. Verifiable statements that convey a defamatory meaning are actionable. *See*

*Milkovich v. Lorain J. Co.,* 497 U.S. 1, 20 (1990) (provably false statement couched

as "opinion" was actionable); *Bentley v. Bunton*, 94 S.W. 3d 561, 582-586 (Tex.

2002) (because defendant made a verifiable statement on public access tv—a

platform the public usually associates with serious factual information—that made

it actionable). *Milkovich* and *Bentley*'s rationales apply to the President's Twitter

account that he uses "almost . . . daily . . . 'as a channel for communicating and

interacting with the public about his administration.'" *Knight First Amend. Inst. v.

Trump*, 928 F.3d 226, 235 (2d Cir. 2019). In fact, "the President's tweets from the

Account 'are official records that must be preserved under the Presidential Records

Act.'" *Id.* On his Twitter, the President makes several important official policy

announcements. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2438 n.1 (2018) (Sotomayor,

J., dissenting) ("According to the White House, President Trump's statements on

Twitter are 'official statements'"): *see also, e.g.* S.E.R. 10-15.

That all leads to this point: the President's Twitter is a serious factual platform.

As in *Milkovich* and *Bentley*, Trump also made a verifiably false statement on a

platform that the public usually associates with serious factual information—*i.e.*, his

official Twitter account. Thus, reasonable people could have understood him as

making serious factual statements. Thus, his verifiable false statement was actionable.

In affirming dismissal, the panel erred in relying on *Fox Ent. Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524 (Tex. App. 2007). In *Abdel-Hafiz*, the Texas court was evaluating so-called statements of "truth," that a tv host usually made at the beginning of his broadcasts as part of his presentation. *Id.* at 559. It was not clear from the language used whether the presenter was asserting a mere belief or concrete facts. *Id.* at 560. Thus, the presenter was giving an opinion. *Id.* Put differently, the context of the tv program—a political commentary tv show—gave notice to all that this was an opinionated commentary platform different in kind to the public platform in *Bentley* or the President's official Twitter account. Those are platforms that the public usually associates with serious factual information.

## IV. CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

*/s/ Clark O. Brewster*
Clark O. Brewster
Guy A. Fortney
Mbilike M. Mwafulirwa
BREWSTER & DE ANGELIS, P.L.L.C.
2617 East 21st Street
Tulsa, OK 74114
Tel: (918) 742-2021
cbrewster@brewsterlaw.com
*Attorneys for Plaintiff/Appellant S. Clifford*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Clark O. Brewster*
Clark O. Brewster

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants state that they are unaware of

any related case pending in this Court.

_/s/Clark O. Brewster_____

Clark O. Brewster

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Stephanie Clifford, an individual, certifies under Federal Rule of

Appellate Procedure 26.1(a), that she need not file a corporate disclosure statement.

_/s/Clark O. Brewster_____

Clark O. Brewster

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing or Answers

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 18-56351

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,899 |.

*(Petitions and answers must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Mbilike M. Mwafulirwa | **Date** | Aug 14, 2020
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2018*

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 31 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEPHANIE CLIFFORD, AKA Stormy Daniels, | No.   18-56351 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-06893-SJO-FFM |
| v. | |
| DONALD J. TRUMP, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 4, 2020
Pasadena, California

Before: THOMAS, Chief Judge, and WARDLAW and NGUYEN, Circuit Judges.

Stephanie Clifford appeals the district court's dismissal of her defamation

action against President Donald J. Trump.[1]  We have jurisdiction under 28 U.S.C.

§ 1291.  Reviewing de novo, we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] Because the operative complaint names President Trump in his personal capacity, the remainder of this disposition refers to the parties as Ms. Clifford and Mr. Trump.

1.     The district court correctly concluded under the *Erie* doctrine that the
motion to dismiss procedures of the Texas Citizens Participation Act (TCPA)—
Texas's version of an anti-SLAPP law—apply in federal court.  We have long held
that analogous procedures in California's anti-SLAPP law apply in federal court,
*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963,
973 (9th Cir. 1999), and the TCPA is indistinguishable from California's law in all
material respects, *compare S & S Emergency Training Sols., Inc. v. Elliott*, 564
S.W.3d 843, 847 (Tex. 2018) (describing the TCPA analysis), *with Oasis W.
Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (describing California's anti-
SLAPP analysis).

Though we recognize the Fifth Circuit recently held that the TCPA does not
apply in federal court, *Klocke v. Watson*, 936 F.3d 240, 244–47 (5th Cir. 2019), the
reasoning of the Fifth Circuit's opinion cannot be reconciled with our circuit's
anti-SLAPP precedent, *compare Newsham*, 190 F.3d at 972 ("[T]here is no
indication that [Federal Rules of Civil Procedure] 8, 12, and 56 were intended to
'occupy the field' with respect to pretrial procedures aimed at weeding out
meritless claims."), *with Klocke*, 936 F.3d at 247 ("Rules 8, 12, and 56 provide a
comprehensive framework governing pretrial dismissal and judgment."  (cleaned
up)).  We are bound to follow our own precedent, which requires us to apply the

2

TCPA.[2]  *Miller v. Gammie*, 335 F.3d 889, 892–93, 900 (9th Cir. 2003) (en banc).

Because the TCPA motion in this case challenged the legal sufficiency of the allegations in the complaint, we "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

2.     The elements of a defamation claim under Texas law are (1) "the publication of a false statement of fact to a third party," (2) "that was defamatory concerning the plaintiff," (3) made with actual malice,[3] and (4) damages, in some cases.  *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).  We conclude, like the district court, that the complaint failed to plausibly allege an actionable false statement of fact, though for slightly different reasons.

As alleged in the complaint, Ms. Clifford began an intimate relationship with Mr. Trump in 2006.  Five years later, in 2011, Ms. Clifford agreed to cooperate with a magazine that intended to publish a story about the relationship.  Ms.

---

[2] We do not consider Ms. Clifford's argument, raised for the first time in her reply brief on appeal, that applying the TCPA would violate the Seventh Amendment.  *Brown v. Rawson-Neal Psych. Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016) ("We generally do not consider issues that are not raised in the appellant's opening brief.").

[3] Actual malice is required because Ms. Clifford has not disputed that she is a public figure.  *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

Clifford alleges that a few weeks after she agreed to assist with the magazine story, she was approached by an unknown man in a Las Vegas parking lot who told her "Leave Trump alone.  Forget the story," and threatened that harm would come to her if she continued to cooperate with the magazine.  Ultimately, the story was not published.

In 2018, after Mr. Trump became President, Ms. Clifford went public with her account of this incident.  With the assistance of a sketch artist, she prepared a composite sketch of the man from the parking lot, which was disseminated publicly.

Ms. Clifford's defamation claim is based on a tweet Mr. Trump published about the composite sketch.  Shortly after the sketch was released, a Twitter user unrelated to the parties here tweeted the sketch juxtaposed with a photograph of Ms. Clifford's ex-husband, with a mocking message suggesting that the two men resembled one another.  Mr. Trump retweeted this tweet, adding his own message: "A sketch years later about a nonexistent man.  A total con job, playing the Fake News Media for Fools (but they know it)!"

The two tweets appeared together as depicted below: [4]



Ms. Clifford responded by filing this suit, alleging that Mr. Trump's tweet is

defamatory.

Under Texas law, as informed by the Supreme Court's First Amendment

jurisprudence, "statements that are not verifiable as false are not defamatory. And

even when a statement is verifiable, it cannot give rise to liability if the entire

---

[4] Mr. Trump's unopposed request that we consider the screenshot of the
tweet is granted. The screenshot is properly before us because the tweet is
described in the complaint and forms the basis of the defamation claim. *See Khoja
v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

context in which it was made discloses that it was not intended to assert a fact."

*Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018) (cleaned

up). Texas law refers to statements that fail either test—"verifiability or

context"—as "opinion[s]." *Id.* The determination of whether a statement is

"reasonably capable of a defamatory meaning" focuses on how the statement

would be interpreted by an "objectively reasonable reader." *Id.* at 624, 631.

Ms. Clifford advances two arguments for why the tweet at issue is

defamatory. First, citing the Black's Law Dictionary definition of "confidence

man," she argues that the use of the term "con job" implied that she had literally

committed the crime of fraud. But it would be clear to a reasonable reader that the

tweet was not accusing Clifford of actually committing criminal activity. *See id.* at

638. Instead, as used in this context, the term "con job" could not be interpreted as

anything more than a colorful expression of rhetorical hyperbole. *Greenbelt Coop.*

*Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970) (description of the plaintiff's

negotiating position as "blackmail" could not reasonably be interpreted as having

accused him of committing the crime of blackmail); *see also Milkovich v. Lorain J.*

*Co.*, 497 U.S. 1, 16–17 (1990). Because the tweet could not reasonably be read as

asserting that Ms. Clifford committed a crime, this theory of defamation is not

viable. *Tatum*, 554 S.W.3d at 638; *see also Bresler*, 398 U.S. at 13–14.

Next, Ms. Clifford argues that the tweet is defamatory because it accused her

6

of lying about having been threatened because of her participation in a magazine story about her relationship with Mr. Trump. We agree that this is a reasonable interpretation of the tweet, but conclude that it is not actionable.

Under Texas law, a statement that merely interprets disclosed facts is an opinion, and, as noted, statements of opinion cannot form the basis of a defamation claim. *Tatum*, 554 S.W.3d at 639–40. Viewed through the eyes of an objectively reasonable reader, the tweet here reflects Mr. Trump's opinion about the implications of the allegedly similar appearances of Ms. Clifford's ex-husband and the man in the sketch. Mr. Trump's reference to a "sketch years later of a nonexistent man" signals that the allegedly defamatory conclusion that followed— that Ms. Clifford was pulling a "con job" and "playing the Fake News Media for Fools"—plainly concerns the similarities between the sketch and the photograph of Ms. Clifford's ex-husband. Because the tweet juxtaposing the two images was displayed immediately below Mr. Trump's tweet, the reader was provided with the information underlying the allegedly defamatory statement and was free to draw his or her own conclusions. Moreover, the tweet does not imply any undisclosed facts. Accordingly, the tweet, read in context, was a non-actionable statement of opinion. *Id.*; *Fox Ent. Grp., Inc. v. Abdel-Hafiz*, 240 S.W.3d 524, 560 (Tex. App. 2007) ("[T]here is no defamation liability for a statement of opinion when a report sets out the underlying facts in the publication itself, thereby allowing the listener

to evaluate the facts and either accept or reject the opinion." (citing *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App. 1998)).

Resisting this conclusion, Ms. Clifford argues that the tweet is reasonably construed as disputing not only her account of having been threatened over her cooperation with the magazine but also her broader allegation that she had an intimate relationship with Mr. Trump. Construed this way, Ms. Clifford contends that the tweet is actionable because a reasonable reader would appreciate that Mr. Trump had personal knowledge about whether there had in fact been a relationship, such that the tweet would be understood as a statement, based on undisclosed facts, that Ms. Clifford had fabricated her account of the relationship. We find this argument unpersuasive.

As an initial matter, in evaluating whether Ms. Clifford adequately pleaded a defamation claim, we are limited to the allegations in the complaint. *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019). The operative complaint specifically alleges that Mr. Trump's tweet was defamatory because it "falsely attack[ed] the veracity of Ms. Clifford's account of the threatening incident that took place in 2011." Nowhere does the complaint allege that the tweet was instead addressing Ms. Clifford's allegations about her relationship with Mr. Trump. This theory is therefore not before us.

More importantly, even if this theory had been properly presented, we do not

believe the tweet could be reasonably read as addressing Ms. Clifford's account of

her relationship with Mr. Trump.  The tweet did not reference the alleged

relationship and instead focused on the sketch of the ostensibly "nonexistent man."

This was plainly a reference to Ms. Clifford's account of having been threatened

by a man in a Las Vegas parking lot.  It follows that the statement in the following

sentence that Ms. Clifford was pulling a "con job" and "playing the Fake News

Media for Fools" was referring to her account of that same incident, not more

broadly to other, unreferenced, statements by Ms. Clifford about the alleged

relationship.

Because the complaint failed to plead an actionable false statement, the

district court correctly granted the motion to dismiss.[5]

3.      The district court did not abuse its discretion by denying leave to

amend the complaint.  *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th

Cir. 2020).  Amendment would have been futile because the tweet is not

defamatory as a matter of law.  *See id.* at 1239.

**AFFIRMED.**

---

[5] In light of our conclusion, we do not address whether the complaint
adequately pleaded actual malice.  We also need not, and do not, address the
district court's conclusion that Ms. Clifford presented herself as a "political
adversary" of Mr. Trump.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ► The proceeding involves a question of exceptional importance; or
>
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)     Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)     Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)     Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**          **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| TOTAL: | | | | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10**                                    *Rev. 12/01/2018*

# SUPPLEMENTAL ELECTRONIC RECORD

Case 2:18-cv-06893-SJO-FFM Document 73-1 Filed 03/14/20 Page 39 of 53 Page ID
#:1748
Case 2:18-cv-06893-SJO-FFM Document 46 Filed 12/11/18 Page 1 of 9 Page ID #:1338

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

=====================================================================

**CASE NO.:**  **CV 18-06893-SJO (FFMx)**          **DATE:**  **December 11, 2018**

**TITLE:**     **Stephanie Clifford v. Donald J. Trump et al.**

=====================================================================

**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Carol Zurborg
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**     **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                                   Present

=====================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For
Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie
Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition").
Defendant filed a Reply on November 12, 2018.  The Court held argument on this matter on
December 3, 2018.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN
PART** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case.
(*See* Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's
Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the
Complaint.  (*See generally* Order Granting Special Motion.)  The Court concluded that Mr.
Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion.
(Order Granting Special Motion at 10-12.)  The Court also granted Defendant attorneys' fees
under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion.
(Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion.  (*See* Tr. of Proceedings,
ECF No. 45.)  The Court subsequently submitted this matter.

///
///
///
///
///

Exhibit "A"                                                      S.E.R. 1

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ___CV 18-06893-SJO (FFMx)___ | **DATE:** ___December 11, 2018___ |

II.   ANALYSIS

    A.   Legal Standard

        1.   Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs.  The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court "**shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees. "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]."  *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity."  *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)).  To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts.  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).  "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate.  The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986)).  *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.   Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA.  (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2)).  Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

Exhibit "A"                                                                              S.E.R. 2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **CV 18-06893-SJO (FFMx)**        DATE:  **December 11, 2018**

---

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive."  *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018).  When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance.  Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions.  *See id*.  In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure.  *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

    B.    Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

        1.    What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4, ECF No. 43.)  Defendant divides his request into four distinct categories of fees:  (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.)  Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation.  (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike.  For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract.  *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

---

Exhibit "A"                                              S.E.R. 3

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  <u>CV 18-06893-SJO (FFMx)</u>       DATE:  <u>December 11, 2018</u>

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example.  In the instant case, Plaintiff only brought a single defamation cause of action against Defendant.  However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion.  The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position.  In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted).  The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).'  In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant.  As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion.  Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim. The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum.  The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).  The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184  ("Here, because defendants achieved the dismissal of all

---

[1]  Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court.  "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  **CV 18-06893-SJO (FFMx)**          DATE:  **December 11, 2018**

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014).  The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs.  The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527.  When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing.  Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added).  Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several.  In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action.  In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case.  "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at *2 (C.D. Cal. June 12, 2012).  Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses:  (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

        2.        Is Defendant's Request Reasonable?

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related  questions. First, are Defendant's requested hourly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **CV 18-06893-SJO (FFMx)**          DATE: **December 11, 2018**

rates per attorney reasonable? Second, are the hours expended per task by attorney reasonable? The Court addresses these questions in turn.

a. Rates Charged

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour. (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210–11. Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law. (Mot. at 14-16.) The Court also is mindful of the fact that the instant litigation is unique in its nature and scope. It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account. (*See* Tr. of Proceedings at 11:8-15.) The President has used this Twitter account extensively, both during his campaign and afterwards. The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable. In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 18-06893-SJO (FFMx)</u>          **DATE:**  <u>December 11, 2018</u>

were entitled to $355 per hour. *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). *See also Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

        b.    <u>Hours Spent</u>

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%. *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%). The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates. *See Wynn*, 2015 WL 3832561 at *5. To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates. Defendant could have streamlined litigation by distributing more work to the junior associates. (*See* Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive. For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike. (*See, e.g.*, Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

| | | | Priority | |
|---|---|---|---|---|
| | | | Send | ___ |
| **UNITED STATES DISTRICT COURT** | | | Enter | ___ |
| **CENTRAL DISTRICT OF CALIFORNIA** | | | Closed | ___ |
| | | | JS-5/JS-6 | ___ |
| **CIVIL MINUTES - GENERAL** | | | Scan Only | ___ |

**CASE NO.:** __CV 18-06893-SJO (FFMx)__       **DATE:** __December 11, 2018__

of factual research. (*See* Tr. of Proceeding at 19:14-24.) That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable. *See Wynn*, 2015 WL 3832561 at \*5. Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making. Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court. (*See, e.g.*, Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the *Wynn* court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." *Wynn*, 2015 WL 3832561 at \*6. The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%. *See id.* Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

    C.     Sanctions Under TCPA

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him. Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2). The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at \*12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); *Am. Heritage Capital*, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees). Defendant points to *American Heritage Capital* for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff. (*See* Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here. Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future. *See Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11); *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling**, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**          **DATE:** **December 11, 2018**

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (*see* Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (*see, e.g.*, Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000. Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.     RULING

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.  This case shall close.

IT IS SO ORDERED.

Exhibit "A"                                    S.E.R. 9

← **Tweet**

**Donald J. Trump** ✔ @realDonaldTrump · Jun 5, 2017
That's right, we need a TRAVEL BAN for certain DANGEROUS countries, not some politically correct term that won't help us protect our people!

💬 30.5K    🔁 32.6K    ❤️ 102.3K    ↥

## Replies

**Jules Suzdaltsev** ✔ @jules_su · Jun 5, 2017
Replying to @jules_su and @realDonaldTrump
You even released a video "Calling for a total and complete shutdown of Muslims entering the United States"

> TRUMP: 'COMPLETE SHUTDOWN' ON MUSLIMS ENT...
> December 7, 2015 - Trump: "Total And Complete Shutdown Of Muslims Entering United States." U.S. ...
> 🔗 youtube.com

💬 70    🔁 109    ❤️ 953    ↥

**Katherine K Hrithik Roshan Fan #vetsresist** @Katheri... · Jun 20, 2018
Replying to @DikRediSr @AndyMilder and @realDonaldTrump
Aww, poor baby...you don't have to be afraid of people that haunt done anything. That's anti semetism talking. You could learn a few things.

💬    🔁    ❤️    ↥

**Hamberders** @sgleaks · Jun 7, 2017
Replying to @adamcbest @AustinOnSocial and 2 others
impeach b4 Russia take over!

GIF

💬    🔁    ❤️    ↥

View more replies

## More Tweets

**Barack Obama** ✔ @BarackObama · Aug 11
I've known Senator @KamalaHarris for a long time. She is more than

---

**Don't miss what's happening**
People on Twitter are the first to know.

**New to Twitter?**
Sign up now to get your own pers

Sign up

**Relevant people**

**Donald J. Trump** ✔
@realDonaldTrump
45th President of th
America

**What's happening**

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madri**
João Félix makes it 1-1 from
penalty spot
Trending with: Simeone

**#OnTheRecord**
Watch live at 7PM PT
Ⓟ Promoted by HBO Max

Trending in United States
**V-Bucks**
12K Tweets

Gaming · 25 minutes ago
**Apple removes Fortnite fro
Store after Epic Games low**
cost of V-Bucks
Trending with: #freefortnite and /

Pop · Trending
**#BrendonUrieSpeakUp**
Trending with: brendon urie
2,728 Tweets

Show more

Terms   Privacy policy   Cookies   /
© 2020 Twitter, Inc.

Log in   S

8/13/2020　　Donald J. Trump on Twitter: "Mike Pompeo, Director of the CIA, will become our new Secretary of State. He will do a fantastic job! Thank …

← **Tweet**

**Donald J. Trump** ✔ @realDonaldTrump · Mar 13, 2018
Mike Pompeo, Director of the CIA, will become our new Secretary of State. He will do a fantastic job! Thank you to Rex Tillerson for his service! Gina Haspel will become the new Director of the CIA, and the first woman so chosen. Congratulations to all!

💬 36.7K　　🔁 44.9K　　♡ 106.6K　　⬆

## Replies

¯\\_(ツ)_/¯ @chaneybl · Mar 13, 2018
Replying to @Snootch85 and @realDonaldTrump
He's still your President

💬 91　　🔁 6　　♡ 90　　⬆

**Donald Jar Jar Trump** @DJarJarTrump · Mar 13, 2018
Replying to @realDonaldTrump
.@realDonaldTrump Mike Pompeo, Director of da CIA, will become oursa new Secretary of State. Hesa do a bombad jobbin! Tank yousa to Rex Tillerson for hissen service! Gina Haspel will become da new Director of da CIA, un da first woman so chosen. Congradalations to all!

💬 12　　🔁 24　　♡ 144　　⬆

**sam** @sam4ng · Mar 13, 2018
Replying to @realDonaldTrump

💬 33　　🔁 108　　♡ 682　　⬆

View more replies

## More Tweets

**Barack Obama** ✔ @BarackObama · Aug 11
I've known Senator @KamalaHarris for a long time. She is more than prepared for the job. She's spent her career defending our Constitution and

**Don't miss what's happening**
People on Twitter are the first to know.

Log in

S

Exhibit "B"

S.E.R. 011

Search Twitter

**New to Twitter?**
Sign up now to get your own pers

Sign up

**Relevant people**

**Donald J. Trump** ✔
@realDonaldTrump
45th President of th
America

**What's happening**

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madr**
**Dani Olmo's header makes**
**for Leipzig**
Trending with Joao Felix and Féli

Trending in United States
**V-Bucks**
11.6K Tweets

Trending in United States
**#BrendonUrieSpeakUp**
Trending with: brendon urie
2,031 Tweets

MLB · LIVE
**Nationals at Mets**
Trending with: Billy Hamilton

Gaming · Trending
**#FreeFortnite**
34.8K Tweets

Show more

Terms　Privacy policy　Cookies　A
© 2020 Twitter, Inc.

Twitter · WILL S...

← **Tweet**

**Donald J. Trump** ✔ @realDonaldTrump · Jul 22, 2018
To Iranian President Rouhani: NEVER, EVER THREATEN THE UNITED STATES
AGAIN OR YOU WILL SUFFER CONSEQUENCES THE LIKES OF WHICH FEW
THROUGHOUT HISTORY HAVE EVER SUFFERED BEFORE. WE ARE NO
LONGER A COUNTRY THAT WILL STAND FOR YOUR DEMENTED WORDS OF
VIOLENCE & DEATH. BE CAUTIOUS!

🗨 111.6K      🔁 190.3K      ♡ 308.3K      ⬆

**Replies**

**David Hogg Text "our power" to 954-954** ✔ @david... · Jul 22, 2018
Replying to @realDonaldTrump
Speak softly and carry a big stick???

🗨 1.1K      🔁 917      ♡ 13.4K      ⬆

**پاپک_وزیر** @Babak_1992 · Jul 22, 2018
Replying to @realDonaldTrump
Dear @POTUS,
As an Iranian citizen, I'm grateful to you for standing w the oppressed ppl of
IRAN against their oppressors! As you told before, "it's now been almost 40
yrs since this dictatorship seized power and took a proud nation hostage."
That's why we say: #IslamicRegimeMustGo

🗨 131      🔁 1.7K      ♡ 3.3K      ⬆

**Scott Supak** @ssupak · Jul 22, 2018
Replying to @realDonaldTrump
LOL.

**Donald J. Trump** ✔ @realDonaldTrump · Nov 29, 2011
In order to get elected, @BarackObama will start a war with Iran.

🗨 19      🔁 137      ♡ 710      ⬆

View more replies

**More Tweets**

**Barack Obama** ✔ @BarackObama · Aug 11
I've known Senator @KamalaHarris for a long time. She is more than
prepared for the job. She's spent her career defending our Constitution and
fighting for folks who need a fair shake. This is a good day for our country.
Now let's go win this thing.

**Search Twitter**

🐦

# Explore

⚙ Settings

**New to Twitter?**

Sign up now to get your own pers

Sign up

**Relevant people**

**Donald J. Trump** ✔
@realDonaldTrump
45th President of th
America

**What's happening**

Gaming · 6 minutes ago
**Apple removes Fortnite fro**

**Store after Epic Games low
cost of V-Bucks**
Trending with #FreeFortnite and

#OnTheRecord
Watch live at 7PM PT
Ⓟ Promoted by HBO Max

Trending in United States
**V-Bucks**
11.5K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madr
Dani Olmo's header makes
for Leipzig**
Trending with: Simeone

**Don't miss what's happening**
People on Twitter are the first to know.

Log in      S

8/13/2020    Donald J. Trump on Twitter: "The Iran sanctions have officially been cast. These are the most biting sanctions ever imposed, in Nove…

Case 2:18-cv-06893-JS-PML Document 73-21 Filed 08/14/20 Page 51 of 53 Page ID #:1760

← **Tweet**

🐦 Twitter

\# **Explore**

⚙ **Settings**

**Donald J. Trump** ✔ @realDonaldTrump · Aug 7, 2018 ⌄
The Iran sanctions have officially been cast. These are the most biting sanctions ever imposed, and in November they ratchet up to yet another level. Anyone doing business with Iran will NOT be doing business with the United States. I am asking for WORLD PEACE, nothing less!

💬 25.5K    🔁 34.7K    ♡ 119.4K    ⬆

### Replies

**Jacob Gil** @jacob4kids · Aug 7, 2018 ⌄
Replying to @realDonaldTrump
#TuesdayThoughts
This is a list of records that @realDonaldTrump describes as WINNING.

• Most days vacationing
• Least amount of bills signed
• Most games of golf played
• Most provable lies
• Most cabinet resignations
• Most criminal indictments
• Lowest approval rating

💬 264    🔁 302    ♡ 1.6K    ⬆

View more replies

### More Tweets

**Barack Obama** ✔ @BarackObama · Aug 11 ⌄
I've known Senator @KamalaHarris for a long time. She is more than prepared for the job. She's spent her career defending our Constitution and fighting for folks who need a fair shake. This is a good day for our country. Now let's go win this thing.

💬 13.9K    🔁 93.8K    ♡ 491K    ⬆

**Donald J. Trump** ✔ @realDonaldTrump · 5h ⌄
HUGE breakthrough today! Historic Peace Agreement between our two GREAT friends, Israel and the United Arab Emirates!

💬 18K    🔁 54.9K    ♡ 201.4K    ⬆

**Hillary Clinton** ✔ @HillaryClinton · Aug 12 ⌄
Rent-free.

> **Christina Wilkie** ✔ @christinawilkie · Aug 11
> Missing from Trump's response to a softball question on @KamalaHarris' past remarks: any mention of Kamala Harris.
>
> Not missing: Hillary Clinton twitter.com/andrewfeinberg...

💬 4K    🔁 22.3K    ♡ 114.4K    ⬆

🔍 Search Twitter

**New to Twitter?**
Sign up now to get your own pers

Sign up

**Relevant people**

**Donald J. Trump** ✔
@realDonaldTrump
45th President of th
America

**What's happening**

Gaming · 1 minute ago
**Apple removes Fortnite fro Store after Epic Games low cost of V-Bucks**
Trending with: #FreeFortnite and

**#OnTheRecord**
Watch live at 7PM PT
📺 Promoted by HBO Max

Trending in United States
**V-Bucks**
11.4K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madr Dani Olmo's header makes for Leipzig**
Trending with: Simeone

Trending in United States
**Tim Sweeney**

Show more

Terms   Privacy policy   Cookies   A
© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.

Log in    S

Exhibit "B"        S.E.R. 013

Case 2:18-cr-00895-FES-PRM14-BOGOMBER17321-61eDDEFA4#206-PBage-542-563-Page iD
#:1761

🐦

# Explore

⚙ Settings

← **Thread**

**Donald J. Trump** ✓
@realDonaldTrump

I informed John Bolton last night that his services are no longer needed at the White House. I disagreed strongly with many of his suggestions, as did others in the Administration, and therefore....

10:58 AM · Sep 10, 2019 · Twitter for iPhone

**35K** Retweets and comments    **93.1K** Likes

💬    🔁    ♡    📤

**Donald J. Trump** ✓ @realDonaldTrump · Sep 10, 2019
Replying to @realDonaldTrump
....I asked John for his resignation, which was given to me this morning. I thank John very much for his service. I will be naming a new National Security Advisor next week.

💬 15K    🔁 17.4K    ♡ 70.1K    📤

**Mugged Tweets** @muggedtweets · Sep 10, 2019
Replying to @realDonaldTrump
muggedtweets.com/collections/do…

💬 3    🔁 7    ♡ 29    📤

**soap** @SoapLmao · Sep 10, 2019
Replying to @realDonaldTrump
THANK YOU greatest president of ALL TIME keep making our country GREAT AGAIN #MAGA

💬 194    🔁 55    ♡ 542    📤

**Soufiane Lailani** @SoufianeLailani · Sep 10, 2019
"All time"

**New to Twitter?**
Sign up now to get your own pers

Sign up

**Relevant people**

**Donald J. Trump** ✓
@realDonaldTrump
45th President of th
America

**What's happening**

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Mad**
João Félix makes it 1-1 fro
penalty spot
Trending with: Joao Felix and Lei

**#OnTheRecord**
Watch live at 7PM PT
📺 Promoted by HBO Max

Trending in United States
**V-Bucks**
11.9K Tweets

Gaming · 21 minutes ago
**Apple removes Fortnite fro**
Store after Epic Games low
cost of V-Bucks
Trending with: #freefortnite and A

Pop · Trending
**#BrendonUrieSpeakUp**
2,561 Tweets

Show more

Terms   Privacy policy   Cookies   A
© 2020 Twitter, Inc.

🔍 Search Twitter

**Don't miss what's happening**
People on Twitter are the first to know.        Log in    S

Exhibit "B"        S.E.R. 014

https://twitter.com/realDonaldTrump/status/1171452880055746560        1/3

Case 2:18-cv-06893-JLS-FFM  Document 138-1 Filed 08/14/20  Page 53 of 53  Page ID #:1762

Twitter

# Explore

## Settings

← **Tweet**

**Donald J. Trump** ✔ @realDonaldTrump · Sep 18, 2019
I have just instructed the Secretary of the Treasury to substantially increase Sanctions on the country of Iran!

💬 10.5K   🔁 20.5K   ♥ 83K   ⬆️

## Replies

**Wayne Alan** @WayneAlanKnapp1 · Sep 18, 2019
Replying to @realDonaldTrump
Excellent!

💬 1   🔁 2   ♥ 41   ⬆️

**Trump 2020** @1NYconservative · Sep 18, 2019
Replying to @realDonaldTrump

💬 55   🔁 23   ♥ 133   ⬆️

**LEEDING FREELANCERS** @LEEDINGFREELANC · Sep 18, 2019
Replying to @realDonaldTrump
Make America Great Again

💬 10   🔁   ♥ 43   ⬆️

View more replies

## More Tweets

**Barack Obama** ✔ @BarackObama · Aug 11
I've known Senator @KamalaHarris for a long time. She is more than prepared for the job. She's spent her career defending our Constitution and fighting for folks who need a fair shake. This is a good day for our country. Now let's go win this thing.

💬 13.9K   🔁 93.8K   ♥ 490.9K   ⬆️

**Donald J. Trump** ✔ @realDonaldTrump · 5h
HUGE breakthrough today! Historic Peace Agreement between our two

---

🔍 Search Twitter

### New to Twitter?
Sign up now to get your own pers

Sign up

### Relevant people

**Donald J. Trump** ✔
@realDonaldTrump
45th President of th
America

### What's happening

Gaming · 18 minutes ago
**Apple removes Fortnite fro
Store after Epic Games low
cost of V-Bucks**
Trending with: #FreeFortnite and

**#OnTheRecord**
Watch live at 7PM PT
📺 Promoted by HBO Max

Trending in United States
**#BrendonUrieSpeakUp**
Trending with: brendon urie
1,625 Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madr
Dani Olmo's header makes
for Leipzig**
Trending with: Simeone

Trending in United States
**MVP Russ**
Trending with: Finals Kyrie, C

Show more

Terms   Privacy policy   Cookies   A
© 2020 Twitter, Inc.

---

**Don't miss what's happening**
People on Twitter are the first to know.

Log in          S

Exhibit "B"          S.E.R. 015