**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  **CV 18-06893-SJO (FFMx)**       **DATE:**  **December 11, 2018**

**TITLE:**       **Stephanie Clifford v. Donald J. Trump et al.**

========================================================================

**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                   Carol Zurborg
Courtroom Clerk                                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**     **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                                               Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition"). Defendant filed a Reply on November 12, 2018.  The Court held argument on this matter on December 3, 2018.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

I.       FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case. (*See* Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the Complaint.  (*See generally* Order Granting Special Motion.)  The Court concluded that Mr. Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion. (Order Granting Special Motion at 10-12.)  The Court also granted Defendant attorneys' fees under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion. (Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion.  (*See* Tr. of Proceedings, ECF No. 45.)  The Court subsequently submitted this matter.

///
///
///
///
///

**EXHIBIT**

**2**

exhibitsticker.com

Case 2:18-cv-06893-SJO-FFM   Document 46   Filed 12/11/18   Page 2 of 9   Page ID #:1339

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ___ |
| Send | ___ |
| Enter | ___ |
| Closed | ___ |
| JS-5/JS-6 | ___ |
| Scan Only | ___ |

CASE NO.:   **CV 18-06893-SJO (FFMx)**          DATE:   **December 11, 2018**

II.   ANALYSIS

    A.   Legal Standard

        1.   Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs.  The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court "**shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees.  "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity." *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)).  To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts.  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).  "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate.  The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986)).  *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.   Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA.  (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2)).  Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| **Priority** | | ___ |
| **Send** | | ___ |
| **Enter** | | ___ |
| **Closed** | | ___ |
| **JS-5/JS-6** | | ___ |
| **Scan Only** | | ___ |

CASE NO.:   **CV 18-06893-SJO (FFMx)**          DATE:   **December 11, 2018**

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive."   *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018).   When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance.   Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions.   *See id.*   In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure.   *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

B.   Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

1.   What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4, ECF No. 43.)   Defendant divides his request into four distinct categories of fees:   (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.)   Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation. (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action."   Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).   Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike.   For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract.   *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority       ____
Send           ____
Enter          ____
Closed         ____
JS-5/JS-6      ____
Scan Only      ____

CASE NO.:   <u>CV 18-06893-SJO (FFMx)</u>          DATE:   <u>December 11, 2018</u>

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example.  In the instant case, Plaintiff only brought a single defamation cause of action against Defendant.  However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion.  The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position.  In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim.  *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted).  The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).'  In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant.  As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion.  Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim.  The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum.  The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).  The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184  ("Here, because defendants achieved the dismissal of all

---

[1]  Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court.  "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

MINUTES FORM 11
CIVIL GEN                                    Page 4 of  9                    Initials of Preparer _____

___ : ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:   **CV 18-06893-SJO (FFMx)**          DATE:   **December 11, 2018**

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014). The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs. The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527. When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing. Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added). Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several. In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action. In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case. "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at *2 (C.D. Cal. June 12, 2012). Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

2.   Is Defendant's Request Reasonable?

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related questions. First, are Defendant's requested hourly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority     _____
Send         _____
Enter        _____
Closed       _____
JS-5/JS-6    _____
Scan Only    _____

CASE NO.:   CV 18-06893-SJO (FFMx)          DATE:   December 11, 2018

rates per attorney reasonable?   Second, are the hours expended per task by attorney reasonable?  The Court addresses these questions in turn.

a.   Rates Charged

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour.  (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Id.* at 1210–11.  Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law.  (Mot. at 14-16.)  The Court also is mindful of the fact that the instant litigation is unique in its nature and scope.  It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account.  (*See* Tr. of Proceedings at 11:8-15.)  The President has used this Twitter account extensively, both during his campaign and afterwards.  The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable.  In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

Case 2:18-cv-06893-SJO-FFM   Document 46   Filed 12/11/18   Page 7 of 9   Page ID #:1344

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Priority  ____
Send  ____
Enter  ____
Closed  ____
JS-5/JS-6  ____
Scan Only  ____

**CASE NO.:**  <u>CV 18-06893-SJO (FFMx)</u>  **DATE:**  <u>December 11, 2018</u>

were entitled to $355 per hour. *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). *See also Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

### b. Hours Spent

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%. *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%). The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates. *See Wynn*, 2015 WL 3832561 at *5. To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates. Defendant could have streamlined litigation by distributing more work to the junior associates. (*See* Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive. For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike. (*See, e.g.*, Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-06893-SJO (FFMx)</u>          **DATE:** <u>December 11, 2018</u>

of factual research.  (*See* Tr. of Proceeding at 19:14-24.)  That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable.  *See Wynn*, 2015 WL 3832561 at \*5.  Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making.  Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court.  (*See, e.g.*, Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the *Wynn* court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality."  *Wynn*, 2015 WL 3832561 at \*6.  The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%.  *See id.*  Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

### C.     Sanctions Under TCPA

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him.  Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2).  The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue.  *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at \*12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); *Am. Heritage Capital*, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees).  Defendant points to *American Heritage Capital* for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff.  (*See* Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here.  Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future.  *See Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11); *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling**, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-06893-SJO (FFMx)</u>        **DATE:** <u>December 11, 2018</u>

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (*see* Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (*see, e.g.*, Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000. Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.   <u>RULING</u>

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.  This case shall close.

IT IS SO ORDERED.